UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PACIFIC WEST HEALTH MEDICAL CENTER INC. EMPLOYEES RETIREMENT TRUST, On Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>FAIRFIELD GREENWICH GROUP, FAIRFIELD GREENWICH LIMITED, FAIRFIELD GREENWICH (BERMUDA) LTD., FAIRFIELD GREENWICH ADVISORS LLC, WALTER M. NOEL, JR., ANDRES PIEDRAHITA, JEFFREY TUCKER, BRIAN FRANCOUER, AMIT VIJVERGIYA, YANKO DELLAW SCHIAVA, PHILIP TOUB, LOURDES BARRENECHE, CORNELIS BOELE, MATTHEW C. BROWN, VIANNEY D'HENDECOURT, HAROLD GREISMAN, JACQUELINE HARARY, DAVID HORN, RICHARD LANDSBERGER, DAVID LIPTON, JULIA LUONGO, MARK MCKEEFRY, MARIA TERESA PULIDO MENDOZO, CHARLES MURPHY, SANTIAGO REYES, and ANDREW SMITH,<br><br>Defendants. | Civil Action No. 09 CV 00134 (UA) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR A TRO AND
PRELIMINARY INJUNCTION FREEZING DEFENDANTS'
ASSETS, AND APPLICATION FOR EXPEDITED DISCOVERY**

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff seeks a preliminary injunction under Fed. R. Civ. P. 65 freezing the proceeds

from management, performance and placement fees (the "Fees") paid to Defendants derived

from Plaintiff and the Class's investments in Fairfield Sentry Limited ("Fairfield Sentry" or the

Doc. 162638

"Fund"). Those Fees, which are estimated to approximate $1 billion, were paid to Defendants in error based on the purported value and profits on assets managed for Fairfield Sentry by Bernard L. Madoff and Bernard L. Madoff Investment Securities LLC ("BMIS"). It is now known that those assets on which the Fees were based were fictitious and that the Fees paid to Defendants were not earned. This motion seeks to trace the payment of those Fees to Defendants and to restrain Defendants' assets that are derived from those Fees pending the determination of this action.

Defendants are the primary recipients of the Fees. Defendants are the corporate affiliates of the Fairfield Sentry Fund that were paid the Fees, an officer and director of one of those corporate affiliates, and the twenty-one partners of Fairfield Greenwich Group, the controlling entity of the corporate affiliates.

Plaintiff also seeks an accounting of the current financial condition of the Fund and a restraint on dissipation of its assets and an accounting of the Fees paid to Defendants. In connection with their request for injunctive relief, Plaintiff requests expedited discovery from the Defendants. Attached as Exhibit B to the accompanying Declaration are Interrogatories and Document Requests to Defendants which Plaintiff requests that the Court order be responded to within five (5) business days.

Plaintiff has met the Second Circuit's standard for showing a substantial likelihood of success on the merits and irreparable injury if the Court does not freeze such assets: (1) Defendants were paid Fees in error, and have been unjustly enriched; and (2) absent a freeze of proceeds of the Fees received by Defendants, Plaintiff and the Class it seeks to represent will be prejudiced in their ability to recover those Fees.

In sum, in support of the asset freeze, this Court should order an accounting and expedited discovery so that Plaintiff can quickly and accurately ascertain the amount of illegally obtained proceeds and collect necessary information about Defendants' financial condition.

## II. STATEMENT OF FACTS

On December 11, 2008, Bernard L. Madoff was arrested and charged with a criminal complaint after admitting to his sons that his money management operations were "all just one big lie" and "basically, a giant Ponzi scheme." ¶ 42.[1]  Fairfield Sentry had approximately $7.3 billion of exposure to this "giant Ponzi scheme" as Defendants had placed substantially all Fairfield Sentry's investment assets under Madoff's management.  ¶ 45.  The next day, December 12, 2008, Fairfield Greenwich Group issued a press release responding to Madoff's arrest in which Defendant Tucker, a founding partner of Fairfield Greenwich Group, claimed that the Defendants had no idea that Fairfield Sentry was exposed to such a "sophisticated" scheme: "We have worked with Madoff for nearly 20 years, investing alongside our clients. We had no indication that we and many other firms and private investors were the victims of such a highly sophisticated, massive fraudulent scheme."  ¶ 44.

The Fairfield Sentry Private Placement Memorandum (the "Private Placement Memorandum") dated August 14, 2006, governs the terms of Plaintiff's and the Class's investment in the Fund.  ¶¶ 49-50.  According to the Private Placement Memorandum, defendants FG Investment Manager was "responsible for the management of [Fairfield Sentry]'s investment activities, the selection of [Fairfield Sentry]'s investments, monitoring its investments and maintaining the relationship between [Fairfield Sentry] and its custodian,

---

[1] All references to "¶ ___" are to the Verified Class Action Complaint in this action.

administrator, registrar and transfer agent." ¶ 54. According to the Uniform Application For Investment Advisor Registration completed by FG Investment Manager and attached to the Private Placement Memorandum, FG Investment Manager delegates to Defendant Fairfield Greenwich Group's risk management team the responsibility to perform due diligence with respect to hedge fund managers. ¶ 57. Beyond the Private Placement Memorandum, Fairfield Greenwich Group issued statements through a brochure and its website in which it promises to perform due diligence and continued monitoring procedures. ¶ 60. According to a brochure issued by Fairfield Greenwich Group, once a relationship with a fund manager is established, the "due diligence process evolves into a similarly multi-faceted risk monitoring function." ¶ 61. The Fairfield Greenwich Group brochure goes on to say that "the purpose of this ongoing activity is to ensure that the fund continues to follow its investment methodology - and constraints - and otherwise acts in accordance with the operational and risk framework that was approved during the due diligence phase." Id.

The Private Placement Memorandum established a placement fee, management fee, and performance fee paid by Fairfield Sentry to defendant FG Placement Agent. According to the Private Placement Memorandum, FG Placement Agent received a placement fee of up to 3% of investments, a monthly management fee of 0.0833% (approximately 1% per annum) of the Net Asset Value of the Fund. FG Placement Agent also received quarterly performance fees of 20% of the net realized and net unrealized appreciation in the Net Asset Value of each share of the Fund. Bloomberg News reported on December 15, 2008 that if not for the revelation of Madoff's fraud, the Fairfield Greenwich Group would have collected about $135 million in fees in 2008. The management fee is paid to compensate Defendants for performing due diligence. The

performance fees paid to Fairfield Greenwich Group, or its constituent entities, were calculated on false assets and gains with respect to the portion of the Fund invested with Madoff and BMIS. ¶ 55.

Plaintiff and the members of the Class invested their assets in Fairfield Sentry pursuant to the Private Placement Memorandum and in reliance on the promises made by Fairfield Greenwich Group. However, Defendants failed to perform even the most basic due diligence procedures and ignored glaring red flags over the tenure of its relationship with Madoff.

Plaintiff, individually and on behalf of the Class, seeks to recover both its economic damages as well as all Fees and other amounts wrongfully paid to the Defendants. Those Fees, were paid in error to the Defendants, who were unjustly enriched, under the mistaken belief that assets and profits reported to Defendants by Bernard L. Madoff and Bernard L. Madoff Investment Securities LLC actually existed. Those Fees paid in error, based on mistaken beliefs, should be returned to Plaintiff and the Class. Plaintiff estimates, based on public reports, that those amounts paid to Defendants and recoverable in this action approximate $1,000,000,000 (one billion dollars).

## III. ARGUMENT

### A. Because Plaintiffs Will Likely Succeed On The Merits And Will Suffer Irreparable Harm If Defendants Dissipate or Secret Their Assets, This Court Should Issue A Preliminary Injunction And Temporary Restraining Order Freezing Defendants' Assets

Plaintiff's request for a preliminary injunction and temporary restraining order should be granted. The Second Circuit has found that "[i]n order to obtain a preliminary injunction, a party must demonstrate: 1) that it is subject to irreparable harm; and 2) either a) that it will likely

succeed on the merits or b) that there are sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and that a balancing of the hardships tips 'decidedly' in favor of the moving party." *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir. 1997) (citing *Warner-Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3, 6 (2d Cir. 1996).

Particularly where, as here, the plaintiff seeks equitable relief, such as a constructive trust, a preliminary injunction is appropriate to protect the Court's ability to protect such relief and do equity. *United States ex rel. Rahman v. Oncology Assocs. P.C.*, 198 F.3d 489, 494-501 (4th Cir. 1999). *See also Quantum Corporate Funding, Ltd. v. Assist You Home Health Care Servs. of Va., L.L.C.*, 144 F. Supp. 2d 241, 250 n. 9 (S.D.N.Y. 2001) (citing *Rahman* in finding that where plaintiffs seek both equitable and legal relief in relation to *specific* funds, a court retains its equitable power to freeze assets") (emphasis in original); *Trafalgar Power, Inc. v. Aetna Life Ins. Co.*, 131 F. Supp. 2d 341, 350 (N.D.N.Y 2001) (citing *Rahman* in finding that where plaintiff is seeking "mainly" equitable relief preliminary injunctive relief is proper).

Plaintiff Will Succeed On The Merits Of Its Claims

Plaintiff has pled claims of mistake, breach of fiduciary duty, breach of contract, and unjust enrichment. Plaintiff seeks this restraining order only on the Fees unjustly received by Defendants for their management of Fairfield Sentry funds that it placed under Madoff's management. It is indisputable that the asset balances and appreciation of the funds Fairfield Sentry placed with Madoff were false as the entire Madoff fund management was a "giant Ponzi scheme" according to Madoff himself. The profits and assets purported to have been generated or held by Madoff simply did not exist.

Plaintiff Will Suffer Irreparable Harm If An Injunction Is Not Granted

If an injunction is not granted, it is highly likely that Defendants, several of whom are non-U.S. residents with access to banks outside of this Court's jurisdiction, would funnel assets out of the reach of Plaintiff and members of the Class. Recent events concerning Madoff's efforts to transfer valuable jewelry to family members demonstrate the ease through which a defendant can secret assets during the pendency of an action. Thus, the likelihood of a dissipation of assets suggest the necessity for a preliminary injunction for Plaintiff to collect a money judgment.

The Balance Of The Hardships Favor Granting The Injunction

The balance of the hardships weighs heavily in favor of granting the preliminary injunction. Plaintiff faces irreparable harm - the dissipation or secreting of funds rightly belonging to Plaintiff and the Class. The preliminary injunction would simply serve to maintain the status quo. Plaintiff is only requesting that the Court unwind the Fees paid by the Fund to Defendants so that Defendants do not benefit from Madoff's fraud.

Further, Plaintiff plans to move quickly for summary judgment on its claim for mutual mistake. "Generally, a contract entered into under a mutual mistake of fact is voidable and subject to rescission." *Gould v. Board of Educ.*, 81 N.Y.2d 446, 453 (1993) (citing *Coffin v City of Brooklyn*, 116 N.Y. 159 (1889); *Schmidt v Magnetic Head Corp.*, 97 A.D.2d 151, 159 (N.Y. App. Div. 1983)). In *Gould* the court found that where both parties to the contract were mistaken at the time the agreement was made as to the nature of plaintiff's employment there was a "mutual mistake of fact as to a critical element" of the agreement. *Gould*, 81 N.Y.2d at 453. Similarly, here there is a mutual mistake of fact to as to the critical element of management

of the funds. The FG Placement Agent was paid and received proceeds for its management of the fund and for the performance of the investment assets in the fund. However, the performance reported by Madoff and his firm was indisputably false causing FG Placement Agent to receive Fees in error on false performance reports. The indisputable facts make this claim immediately ripe for summary judgment.

Injunction Bond

The Second Circuit has long held that the posting of a bond is <u>not</u> a prerequisite to the issuance of a temporary restraining order or a preliminary injunction in this situation because the Defendants cannot demonstrate that preserving the status quo will cause them recognizable economic harm. *See Ferguson v. Tabah*, 288 F.2d 665, 675 (2d Cir. 1961) (finding that "the District Court is vested with wide discretion in the matter of security and it has been held proper for the court to require no bond where there has been no proof of likelihood of harm, or where the injunctive order was issued 'to aid and preserve the court's jurisdiction over the subject matter involved.'") (citations omitted); *International Controls Co. v. Vesco*, 490 F.2d 1334, 1356 (2d Cir. 1974) (same). Because the management and performance fee proceeds will only be identified and transfer of those assets enjoined, pending determination of this action, the Defendants will not -- and cannot -- be harmed if preliminary injunctive relief is granted. *See Holborn Oil Trading Co. v. Interpetrol Bermuda, Ltd.*, 658 F. Supp. 1205, 1211-12 (S.D.N.Y. 1987) ("Where, as here, the preliminary injunction is phrased in terms of payment of an arbitration award into the registry of this Court *such that the funds earn interest during the pendency of this action*, the Court finds that the posting of a security is not necessary because there is no demonstration of harm . . . as a result of the imposition of the injunction.") (emphasis

added).  Moreover, this motion only seeks to maintain the status quo and secure moneys that were never earned.  Thus, the Defendants cannot demonstrate any harm.

### B.     Plaintiff Is Entitled To An Accounting

Plaintiff requests that this Court require Defendants to provide an accounting of the assets and liabilities of the Fund and the proceeds they received from the Fees.  Courts often order that a defendant who is subject to an asset freeze provide an accounting of funds to prevent dissipation.  *See  CFTC v. Commodity Inv. Group, Inc.*, 05 Civ. 5741 (HB), 2006 U.S. Dist. LEXIS 5772 (S.D.N.Y. Feb. 16, 2006); *SEC v. Cavanagh*, 1 F. Supp. 2d 337 (S.D.N.Y. 1998); *SEC v. Bremont*, 954 F. Supp. 726 (S.D.N.Y. 1997); *SEC v. Margolin*, 92 Civ. 6307 (PKL), 1992 U.S. Dist. LEXIS 14872 (S.D.N.Y. Sept. 30, 1992).

### C.     The Court Should Grant Leave For Plaintiff To Take Limited Expedited Discovery Regarding Defendants' Assets

Rules 30(a)(2)(c), 33(b)(5) and 34(b) of the Fed. R. Civ. P. allow a party to seek leave of court to conduct expedited discovery.  This Court should allow Plaintiff to immediately discover (1) the amount, use and location of the proceeds stemming from the Fees; (2) the assets held by Defendants; (3) the actual financial condition of all the member companies of the Fairfield Greenwich Group; (4) the relationship among the member companies of the Fairfield Greenwich Group.  Plaintiff has attached a First Set of Interrogatories and Document Request as Exhibit A to its Motion and is requesting the Court to order Defendants to answer within five (5) business days.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its motion for a temporary restraining order, preliminary injunction, order for a constructive trust, order for an accounting, and grant Plaintiff leave to conduct the expedited discovery it needs to support its motion the preliminary injunction.

Dated: January 9, 2009

Respectfully submitted,

WOLF POPPER LLP

By: s/Robert C. Finkel
Robert C. Finkel (RF 2373)
Chet B. Waldman (CW 1133)
Carl L. Stine (CS 3000)
James A. Harrod (JH 4400)
845 Third Avenue
New York, NY 10022
Telephone: (212) 759-4600
Facsimile: (212) 486-2093

GUSRAE, KAPLAN, BRUNO & NUSBAUM PLLC
David A. Gehn (DG 8236)
120 Wall Street
New York, New York 10005
Telephone: (212) 269-1400
Facsimile: (212) 809-5449

*Attorneys for Plaintiff*