**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

PACIFIC WEST HEALTH MEDICAL
CENTER INC. EMPLOYEES RETIREMENT
TRUST, On Behalf of Itself and All Others
Similarly Situated,

        Plaintiff,

    vs.

FAIRFIELD GREENWICH GROUP, FAIRFIELD
GREENWICH LIMITED, FAIRFIELD
GREENWICH (BERMUDA) LTD., FAIRFIELD
GREENWICH ADVISORS LLC, WALTER M.
NOEL, JR., ANDRES PIEDRAHITA, JEFFREY
TUCKER, BRIAN FRANCOUER, AMIT
VIJAYVERGIYA, YANKO DELLAW SCHIAVA,
PHILIP TOUB, LOURDES BARRENECHE,
CORNELIS BOELE, MATTHEW C. BROWN,
VIANNEY D'HENDECOURT, HAROLD
GREISMAN, JACQUELINE HARAY, DAVID
HORN, RICHARD LANDSBERGER, DAVID
LIPTON, JULIA LUONGO, MARK MCKEEFRY,
MARIA TERESA PULIDO MENDOZO,
CHARLES MURPHY, SANTIAGO REYES, and
ANDREW SMITH,

        Defendants.

Case No.:  09 Civ. 00134 (UA)

---

## JOINT MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION FREEZING DEFENDANTS' ASSETS AND APPLICATION FOR EXPEDITED DISCOVERY

January 13, 2009

Mark G. Cunha
Michael J. Chepiga
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for Defendants Fairfield Greenwich Advisors LLC,*
*Matthew Brown, Jacqueline Harary, Julia Luongo, Mark*
*McKeefrey, Andrew Smith, and Philip Toub*

# Table of Contents

PRELIMINARY STATEMENT .................................................................................................1

FACTS ..................................................................................................................................4

I.    PREJUDGMENT RESTRICTIONS ON THE DISPOSITION OF ASSETS ARE
      NOT PERMITTED WITH RESPECT TO CLAIMS SEEKING MONETARY
      RELIEF .......................................................................................................................5

II.   PLAINTIFF BEARS A HEAVY BURDEN TO OBTAIN A PRELIMINARY
      INJUNCTION ..............................................................................................................9

III.  PLAINTIFF HAS FAILED TO ESTABLISH IRREPARABLE HARM
      BECAUSE THE ESSENCE OF THE COMPLAINT IS A CLAIM FOR MONEY
      DAMAGES .................................................................................................................10

IV.   PLAINTIFF HAS FAILED TO DEMONSTRATE A LIKELIHOOD OF
      SUCCESS ON THE MERITS .....................................................................................11

V.    THE BALANCE OF THE HARDSHIPS STRONGLY WEIGHS AGAINST A
      PRELIMINARY INJUNCTION .................................................................................16

VI.   PLAINTIFF HAS NO RIGHT TO A PRE-JUDGMENT ATTACHMENT
      UNDER THE GUISE OF A PRELIMINARY INJUNCTION .........................................17

VII.  THE PROPOSED INJUNCTION IS OVERBROAD AND LACKS THE
      REQUIRED SPECIFICITY .......................................................................................20

      A.    *The Amount of Funds That Would Be Frozen Under Plaintiff's Proposed Order Is
            Grossly Excessive* ...........................................................................................20

      B.    *The Proposed Injunction Lacks The Required Specificity* .....................................21

VIII. A PRELIMINARY INJUNCTION WOULD REQUIRE POSTING OF
      SUBSTANTIAL SECURITY .....................................................................................21

IX.   PLAINTIFF IS NOT ENTITLED TO AN ACCOUNTING OR EXPEDITED
      DISCOVERY .............................................................................................................22

CONCLUSION ....................................................................................................................25

# Table of Authorities

**Page(s)**

## Cases

*Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs. Ltd.*, 1994 WL
719696 (S.D.N.Y. Dec. 28, 1994).................................................................... 28

*Arias-Zeballos v. Tan*, 2007 U.S. Dist. LEXIS 5069, 6-7 (S.D.N.Y. Jan. 24, 2007) .................. 10

*Ashland Oil, Inc. v. Gleave*, 540 F. Supp. 81 (W.D.N.Y. 1982)......................................... 22

*Banco Espirito Santo de Investimento, S.A. v. Citibank*, N.A., 2003 U.S. Dist.
LEXIS 23062 (S.D.N.Y. Dec. 22, 2003) ........................................................... 17

*Bank of Leumi Trust Co. of New York v. Is tim, Inc.*, 892 F. Supp. 478 (S.D.N.Y.
1995) ................................................................................................. 22

*Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp.*, 719 F.2d 42 (2d Cir.
1983) ................................................................................................. 11

*Bennett Silvershein Assocs. v. Furman*, No. 91 Civ. 3118 (JGK), 1997 WL
531310 (S.D.N.Y. Aug. 28, 1997) ..................................................................... 9

*Bertoni v. Catucci,* 117 A.D.2d 892, 498 N.Y.S.2d 902 (3d Dep't 1986) ................................. 10

*Bon Temps Agency Ltd.v. Mittman*, 260 A.D.2d 191 (1st Dep't 1999)....................................... 15

*Califano v. Yamasaki*, 442 U.S. 682 (1979) ............................................................ 25

*Castellano v. Young & Rubicain. Inc.*, 257 F.3d 171 (2d Cir. 2001)..................................... 14

*Citibank, N.A. v. Cititrust*, 756 F.2d 273 (2d Cir. 1985)............................................. 13

*Contichem LPG v. Parsons Shipping Co., Ltd.*, 229 F.3d 426, 2000 WL 1505315,
at *3 (2d Cir. 2000) .................................................................................. 6

*Counihan v. Allstate Ins. Co.,* 194 F.3d 357 (2d Cir. 1999) .......................................... 10

*Credit Agricole Inclosuez v. Rossiyskiy Kredit Bank*, 94 N.Y.2d 541, 708
N.Y.S.2d 26 (2000) .................................................................................. 6, 7

*Doppelt v. Perini Corp.*, 2002 U.S. Dist. LEXIS 4128 (S.D.N.Y. Mar. 12, 2002),
53 Fed. Appx. 174, 2002 U.S. App. LEXIS 26790 (2d Cir. N.Y. 2002)........................... 16

*Eurycleia Partners, LP v. Seward & Kissel, LLP*, 849 N.Y.S.2d 510 (1st Dep't
2007) ................................................................................................ 15

*Feit & Drexler, Inc. v. Drexler*, 760 F.2d 406 (2d Cir. 1985) ....................................... 21

*Filmtrucks, Inc. v. Earls*, 635 F. Supp. 1158(S.D.N.Y. 1986)...................................... 24

*General Textile Printing & Processing Corp. v. Expromtorg Int'l Corp.*, 862 F.
Supp. 1070 (S.D.N.Y. 1994).............................................................................. 12

*Gerard v. Almouli*, 746 F.2d 936 (2d Cir. 1984) ........................................................ 16

*Green v. Gaskell*, No. 87 Civ. 3861 (CSH) 1988 WL 42323 (S.D.N.Y. 1988)........................... 21

*Grigsby v. N. Miss. Med. Ctr., Inc.*, v. 586 F.2d 457 (5th Cir. 1982)............................... 28

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308
(1999) ........................................................................................... 6, 21, 26

*Hollon v. Mathis Independent School District*, 491 F.2d 92 (5th Cir. 1974)........................ 24

*Horn v. 440 B. 57th Co.*, 151 A.D.2d 112, 547 N.Y.S.2d 1 (1st Dep't 1989)......................... 14

*In re Weis Sec., Inc.*, 605 F.2d 590 (2d Cir. 1978) ................................................. 8

*Irish Lesbian & Gay Org. v. Giuliani*, 918 F. Supp. 728 (S.D.N.Y. 1996) ........................... 27

*IT Corp. v. Environmental Engineering*, P.C., 713 N.Y.S.2d 633 (N.Y. App. Div.
2000) ............................................................................................ 18

*Ivy Mar Co. v. C.R. Seasons Ltd.*, 907 F. Supp.547 (E.D.N.Y. 1995)................................ 15

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70 (2d Cir. 1979) ....................... 13

*Jana Master Fund v. JPMorgan Chase & Co.*, 19 Misc.3d 1106(A), 859 N.Y.S.2d
903, No. 604005/06,2008 WL 746540 (Sup. Ct., New York County Mar.
12, 2008) ........................................................................................ 14

*Jayaraj v. Scappini*, 66 F.3d 36 (2d Cir. 1995)................................................... 11

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. and Trade Servs., Inc.*,
306 F. Supp. 2d 482 (S.D.N.Y. 2004)................................................................ 22

*JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75 at 79 (2d Cir. 1990) ......................... 12

*Karan v. Nabisco, Inc.*, 78 F.R.D. 388 (W.D. Pa. 1978) .......................................... 28

*Kassover v. UBS AG*, No. 08 CV 2753 (LMM), 2008 WL 5331812 (S.D.N.Y.
Dec. 19, 2008).................................................................................... 14

*Key Equip. Finance Inc. v. Zip, L.L.C.*, No. 06-CV-944 (N.D.N.Y. May 29, 2007).................... 23

*LaSala v. E\*TRADE Secs. LLC*, 457 F. Supp. 2d 188 (S.D.N.Y. 2006) .......................................... 9

*Leasco Corp. v. Taussig*, 473 F.2d 777 (2d Cir. 1972)................................................................... 16

*Local 1814 Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224 (2d Cir. 1992) ......................................................................... 11

*Lon Tai Shing Co., Ltd. v. Koeh & Lowy*, 1991 WL 170734 (S.D.N.Y. 1991) ............................ 20

*Loveridge v. Pendleton Woolen Mills, Inc.*, 788 F.2d 914 (2d Cir. N.Y. 1986) ........................... 12

*Mazurek v. Armstrong*, 520 U.S. 968 (1997)................................................................................. 10

*McLein v. Halter*, 2001 WL 619177, \*1 (S.D.N.Y. 2001) ............................................................ 20

*Medical Soc. of the State of N.Y. v. Toia*, 560 F.2d 535 (2d Cir. 1977).......................................... 11

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993)........................................................ 15

*Nanjing Textiles Imp./Exp. Corp. Ltd. v. NCC Sportswear Corp.*, 2006 WL 2337186 (S.D.N.Y. Aug. 11, 2006) ....................................................................... 8

*Nanjing Textiles Imp/Exp Corp., Ltd. v. NCC Sportswear Corp.*, No. 06 Civ 52 (JGK)...................................................................................................................... 21

*National Center for Immigrants Rights, Inc. v. Immigration and Naturalization Service*, 743 F.2d 1365 (9th Cir. 1984)..................................................................... 24

*Newscope Tech., LTC. v. Ameritech Info. Indus. Servs., Inc.*, NO. 99 C 52, 1999 WL 199650 (N.D. Ill. April 5, 1999) ................................................................... 9

*Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982)........................................................................... 27

*Outrigger Constr. Co. v. Bank Leumi Trust Co.*, 658 N.Y.S.2d 394 (N.Y. App. Div. 1997) ................................................................................................................ 18

*Pena v. Gutierrez Guzman*, 2004 U.S. Dist. LEXIS 1844 (S.D.N.Y. Feb. 10, 2004) ........................................................................................................................ 10

*Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41 (2d Cir. 1996)....................................................... 25

*Pro Bono Investments, Inc. v. Gerry*, 2005 U.S. Dist. LEXIS 22348, 2005 WL 2429787 (S.D.N.Y. 2005)............................................................................................ 14

*Public Employee's Retirement Association of Colorado v. Deloitte & Touche LLP*, 2009 WL 19134 (4th Cir. Jan. 5, 2009) ................................................................... 17

*Pucci v. Litwin*, 828 F. Supp. 1285, 1300 (N.D. Ill. 1993) ........................................................... 8

*Reuters Ltd. v. United Press Int'l Inc.*, 903 F.2d 904 (2d Cir. 1990) ........................................... 12

*Rosewood Apts. Corp. v. Perpignano*, 200 F. Supp. 2d 269 (S.D.N.Y. 2002) ........................... 12

*Sampson v. Murray*, 415 U.S. 61 (1974) ................................................................................. 13

*SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096 (10th Cir. 1991) ........................................... 11

*Securities and Exchange Commission v. Unifund Sal*, 910 F.2d 1028 (1990) ........................... 21

*Signal Capital Corporation v. Frank*, 895 F. Supp. 62 (S.D.N.Y. 1995) ................................... 23

*Soltex Polymer Corp. v Fortex Indus., Inc.*, 832 F.2d 1325 (2d Cir. 1987) ................................ 20

*Spanierman Gallery, PSP v. Love,* 2003 U.S. Dist. LEXIS 19511, No. 03 Civ.
    3188, 2003 WL 22480055 (S.D.N.Y. Oct. 31, 2003) ....................................................... 10

*Speery v. Crompton*, 810 N.Y.S.2d 498 (N.Y. App. Div. 2006) ................................................. 18

*Strom v. Goldman, Sachs & Co.,* 202 F.3d 138 (2d Cir. 1999) ................................................. 10

*Swann v. Charlotte Mecklenburg Bd. Of Educ.*, 402 U.S. 1 (1971) ........................................... 20

*The Calibre Fund, LLC, et al. v. J. Ezra Merkin,* 08 CV 11002 (S.D.N.Y.) (RSJ) ....................... 3

*Travelers Cas. & Surety Co. of Am., Inc., v. Nw. Mut. Life Ins. Co.*, 480 F.3d 499
    (7th Cir. 2007) ................................................................................................................... 9

*United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411 (2d Cir. 2001) ............................... 9

*United States v. Ribadeneira*, 105 F.3d 833 (2d Cir. 1997) ...................................................... 10

*United States v. Stein*, 435 F. Supp. 2d 330 (S.D.N.Y. 2006) .................................................. 19

*Waldman Pub. Corp. v. Landoll, Inc.*, 43 F.3d 775 (2d Cir. 1994) ........................................... 20

*Zarycki v. Mount Sinai/NYU Health*, 2005 U.S. Dist. LEXIS 28104 (S.D.N.Y.
    Nov. 4, 2005) ............................................................................................................... 8, 10

*Zepeda v. United States I.N.S.*, 753 F.2d 719 (9th Cir. 1985) .................................................. 25

## Statutes

Fed. R. Civ. P 26(f) ................................................................................................................. 27

Fed. R. Civ. P. 64 ............................................................................................................... 21, 22

Fed. R. Civ. P. 64(d) ................................................................................................................ 27

Fed. R. Civ. P. 65(c) ...................................................................... 26

Fed. R. Civ. P. 65(d) ...................................................................... 25

NY CPLR § 6201 ............................................................................ 22

NY CPLR § 6201(3) ........................................................................ 23

NY CPLR § 6212 ............................................................................ 22

NY CPLR § 6212(a) ........................................................................ 23

### Other Authorities

Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 2948
     (1973 & Supp. 1991) .................................................................. 10

Joseph M. McLaughlin, McLaughlin on Class Actions § 3:9 (3d ed. 2008) ................. 24

Weinstein, Korn, Miller P 6201.12 (1996) .............................................. 20

Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE, Civil 2d § 2948
     (1995) .............................................................................. 9

## PRELIMINARY STATEMENT

Plaintiff Pacific West Health Medical Center Inc. Employees Retirement Trust ("Plaintiff" or "Pacific West") invested approximately $200,000 in January 2008 in a fund known as Fairfield Sentry Limited (the "Fund"), which is one of the victims of the Madoff fraud. Based solely on this investment, Pacific West seeks by its application for an injunction to freeze and effectively attach the assets of defendant management companies associated with the Fund and twenty two individual defendants associated with the management companies, without any reference or apparent thought to the hardship this would cause the individuals and their families, or the companies and their employees and other investors, and without any specific allegations regarding individual's conduct. The named defendants ("Defendants") themselves are victims of the same fraud, and in amounts that dwarf Plaintiff's losses.

Plaintiff's application is, in a word, outrageous. It should be summarily denied. To be successful, Plaintiff would have to satisfy the standards for entry of a preliminary injunction, which it has not done and cannot do, and the standards for an attachment under New York state law, which it also has not done and cannot do.

With respect to the standards for a preliminary injunction, an injunction attaching funds in advance of a judgment simply is unavailable on a claim for money damages, which is the essence of Plaintiff's claim here. In addition, the requisite showing of irreparable harm cannot be met, and Plaintiff's attempt to seek redress for the Madoff fraud from Defendants, who are themselves victims of the fraud, fails to even state a valid claim, much less demonstrate a likelihood of success on the merits as is required for the extraordinary relief Plaintiff seeks. There is no fact cited as to when the Madoff Ponzi scheme started and what fees, if any, may

have been paid with respect to assets that were misrepresented by Madoff. And even if there were, Plaintiff's conclusory and non-specific allegations of insufficient diligence by the Defendants – and apparently by all who did diligence on Madoff or investigated him, including the United States Securities and Exchange Commission – do not state causes of action.

Even if the Court thought serious enough questions existed to make the merits fair ground for litigation, the balance of hardships overwhelmingly weighs against entry of a restraining order. Plaintiff has not shown any hardship or irreparable injury whatsoever warranting a preliminary injunction. Perhaps recognizing that it cannot demonstrate irreparable injury on a $200,000 claim for monetary damages, Plaintiff waited almost a month after the Madoff scandal broke to bring this application, and has not prosecuted it with the urgency that must be shown to justify emergency relief. With respect to Defendants, on the other hand, entry of an order freezing their assets would subject them to a host of potentially disastrous consequences. Such consequences would include, among others, depriving the management companies of the ability to pay their employees and ordinary course creditors, potentially forcing them into liquidation, and preventing them from assisting in the recovery of lost assets, providing information to shareholders, regulators, the fund's directors, and the Securities Investor Protection Act Trustee, assisting in the ongoing SEC investigation, paying for their legal defense, and continuing operations of non-Madoff related funds. It will also threaten the ability of the individual Defendants to support themselves and their families, and perhaps force them into personal bankruptcy.[1]

_____

[1] Plaintiff seeks to freeze any and all property derived from payment of fees to Defendants from monies invested with Madoff. These fees have been among Defendants' earnings for several years, and there presently appears to be no practical way to disentangle property derived from them from Defendants' other property. Entry of the order requested by Plaintiff would appear to effectively freeze virtually all of Defendants' assets. *See* Declaration of Michael Thorne dated

Plaintiff is even less able to satisfy the standards for a pre-judgment attachment. Not only has it not demonstrated a likelihood of success on the merits, it has not made any showing whatsoever of actions by the Defendants seeking to frustrate any judgment that might be entered, nor any showing of secretion of funds by Defendants that would be required to satisfy the standard for entry of a pre-judgment attachment.

The sensationalist press accounts upon which Plaintiff seeks to rely do not change the demanding standards governing preliminary injunctions and pre-judgment attachments. An almost identical application for an order freezing a defendant manager's assets in a Madoff fraud related case was declined last month by Judge Richard J. Sullivan of this Court in *The Calibre Fund, LLC, et al. v. J. Ezra Merkin,* 08 CV 11002 (S.D.N.Y.) (RJS). There, counsel for the defendant stated that "an attempt to get an order freezing a defendant's assets in a case where a money judgment is sought is not something that this Court can do," to which Judge Sullivan responded: "That's what I always thought, Mr. Buchdahl."[2] Judge Sullivan further observed "I don't think you've made the case that some irreparable harm is going to befall your client if I don't enter the order of the relief that you're asking for....I'm not inclined to grant the TRO in this case. I don't find that there's been irreparable harm." Merkin Tr. at 23, 27. Putting the case in proper perspective, Judge Sullivan remarked:

> Am I literally going to get a TRO request every time somebody wants to basically send a letter to opposing counsel saying preserve documents and don't fraudulently convey remaining assets? I really need to be dropping everything, put it on the top of my pile, and do this sort of TRO work?...[This is] an unusual situation in the sense that it's part of the Madoff scheme, which is, let's be honest, it's tabloid fodder and on a scale it's nothing like anyone has ever seen. I get that.

January 12, 2009 in opposition to Plaintiffs' application ("Thorne Declaration") submitted herewith at ¶ 3-4.

[2] Transcript of Merkin TRO hearing ("Merkin Tr.") at 5-6, annexed as Exhibit 3 to the Thorne Declaration submitted herewith.

In terms of insolvency, as a motive for someone fraudulently conveying assets or deep-sixing documents? I mean, that's not terribly out of the ordinary, is it?

Merkin Tr. at 13-14.

In sum, as Judge Sullivan observed, the cases against managers of funds invested with Madoff are ordinary actions for monetary relief in which the extraordinary preliminary remedy of freezing defendants' assets is not authorized under the law. Plaintiff's showing is grossly deficient and its application should be denied.

## FACTS[3]

On information and belief, on December 11, 2008, Bernard L. Madoff was arrested and charged with a criminal complaint after admitting to his sons that his money management operations were "all just one big lie" and "basically, a giant Ponzi scheme." (Complaint ("Compl.") ¶ 42). The Fairfield Greenwich management companies and their employees were unaware of the fraud, shocked and appalled by it, and like their investors were victims in Madoff's scheme. *See* Thorne Declaration ¶ 7. There is no allegation in the Complaint as to when Madoff's operations went from being legitimate to fraudulent.

Following news of the fraud, the Fairfield funds with investments with Madoff, seeking to protect their direct and indirect investors, notified all investors on or before January 5, 2009 that no money had been paid out by the funds since December 11, 2008 and that the funds were taking steps to ensure that no money would be paid without their consent. Investors were also notified that the management companies had voluntarily suspended the receipt of its management fee and performance fee until further notice. Id. ¶ 6.

---

[3] This Statement of Facts is drawn from the allegations in the Complaint, which are treated, in part, as true solely for the purposes of this motion.

Press reports indicate that Madoff's fraud evaded detection by regulatory authorities in the United States and elsewhere, and by hundreds of sophisticated investors. Indeed, according to numerous published reports, the Enforcement Division of the United States Securities and Exchange Commission investigated Madoff's operations in 2005-06 and concluded by finding "no evidence of fraud". *See, e.g.*, Kara Scannell, "Madoff Chasers Dug for Years, to No Avail," Wall Street Journal, January 5, 2009, at C1.

Plaintiff concedes in its papers that Plaintiff is seeking money damages. Counsel for Plaintiff states in the Finkel Declaration in support of its application: "This Action seeks both money damages for the Class's out-of-pocket losses from investments in the Fund and specific performance for the benefit of the Class to recover the placement fees, management fees and performance fees (the 'Fees') paid in error to the Defendants." Finkel Declaration ¶ 5. Thus counsel states outright that Plaintiff is seeking money damages. And its secondary request for "specific performance" is just another way of stating a request for damages, as what Plaintiff seeks is recovery of money damages from Defendants measured by the amount of the Fees.

## ARGUMENT

### I.  PREJUDGMENT RESTRICTIONS ON THE DISPOSITION OF ASSETS ARE NOT PERMITTED WITH RESPECT TO CLAIMS SEEKING MONETARY RELIEF

In *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc*, the United States Supreme Court held that district courts have "no authority" to preliminarily enjoin a defendant from disposing of his assets pending adjudication of a plaintiff's claims for monetary relief. 527 U.S. 308, 333 (1999). The Court observed that historically "until the creditor has established his title, he has no right to interfere [with the debtor's property], and it would lead to an unnecessary, and perhaps, a fruitless and oppressive interruption of the exercise of the

debtor's rights." *Id.* at 320.  In addition to holding that district courts lacked authority to issue

such injunctions in actions at law, the Court noted that "[e]ven when sitting as a court in equity,

we have no authority to craft a 'nuclear weapon' of the law" restraining a civil defendants'

ability to dispose of its assets pending adjudication of claim.  *Id.* at 332; *see also Contichem LPG

v. Parsons Shipping Co., Ltd.*, 229 F.3d 426, 2000 WL 1505315, at *3 (2d Cir. 2000) ("the

district court is without power pursuant to Federal Rules of Civil Procedure 65 to order

injunctive relief preventing a party from disposing of assets pending adjudication of contract

claims for money damages").

The New York Court of Appeals explained this long-established rule in *Credit Agricole

Indosuez v. Rossiyskiy Kredit Bank*, 94 N.Y.2d 541, 708 N.Y.S.2d 26 (2000):

> In no proper or legal sense can a defendant do or permit any act in violation of the
> plaintiff's rights respecting the subject of the action, in an action on contract for the
> recovery of money only. *The plaintiff in such an action has no rights as against the
> property of the defendant* until he obtains a judgment, and *until then he has no legal right
> to interfere with the defendant in the use and sale of the same.*

*Id.* at 545-46, 708 N.Y.S.2d at 685 (*quoting Campbell v. Ernest*, 19 N.Y.S. 123, 125 (1892))

(emphasis added by *Credit Agricole*).  The Court further explained:

> [P]laintiff's argument overlooks the substantive rule of equity which, as has been shown
> here, has prevailed for over two centuries, from Chancellor Kent through *Campbell v.
> Ernest* to *Grupo Mexicano*, that a general creditor has no legally recognized interest in or
> right to interfere with the use of the unencumbered property of a debtor prior to obtaining
> judgment. Therefore, during the pendency of the action on the debt, even if the
> anticipated judgment might include permanent injunctive relief, the acts of the debtor in
> disposing of assets will not have "produce[d] [cognizable] injury to the plaintiff" and thus
> will not support a temporary injunction.

*Credit Agricole*, 94 N.Y.2d at 549, 708 N.Y.S.2d at 687.

Here, there is no doubt that a claim for money damages is the essence of

Plaintiff's claim.  Plaintiff expressly seeks monetary damages in connection with six of its eight

claims: breach of fiduciary duty, gross negligence, breach of contract, mutual mistake, third

party beneficiary for breach of contract, and promissory estoppel.[4] (*See* Compl. Counts I, II, III, IV, V, VI, VII, VIII, Pr. for Relief (d)).

Plaintiff erroneously argues that it is entitled to a preliminary injunction because its claims for constructive trust and unjust enrichment purport to seek the equitable remedy of a constructive trust. (Plaintiff's Memorandum at 6). Although styled as equitable relief, in reality, Plaintiff's request for a constructive trust merely seeks monetary damages "to recoup Defendants' fees, unjust benefits and other assets for the benefit of the Class." (Compl. Pr. for Relief (b)). Plaintiff cannot end run *Grupo Mexicano* and its progeny by characterizing its claim for monetary relief in the equitable terms of a constructive trust, rather than money damages. *Nanjing Textiles Imp./Exp. Corp. Ltd. v. NCC Sportswear Corp.*, 2006 WL 2337186, at *7 (S.D.N.Y. Aug. 11, 2006)(finding that plaintiff not entitled to injunction on purported equitable claim that was in reality "classic legal action ... seeking monetary relief"); *See also Zarycki v. Mount Sinai/NYU Health*, No. 02 CIV 6236 (LAP) (HBP), 2005 WL 2977568, at *10 (S.D.N.Y. Nov. 4, 2005) (finding that claim seeking recovery of disability benefits involved legal rather than equitable relief because plaintiff sought to enforce a contractual obligation to pay money).

In any event, Plaintiff's claim for a constructive trust is defective because a constructive trust is not a claim, but rather merely a remedy sometimes available in support of a cognizable claim. *Pucci v. Litwin*, 828 F. Supp. 1285, 1300 (N.D. Ill. 1993) ("Constructive trust is an equitable remedy, not a cause of action."). Moreover, a constructive trust is available (as a

---

[4] Plaintiff's claim for promissory estoppel seeks money damages. In any event, Plaintiff has failed to show that it has a reasonable likelihood of prevailing on such claim. In order to establish a claim for promissory estoppel, plaintiff must show (i) a clear and unambiguous promise, (ii) reasonable and foreseeable reliance by the party to whom the promise was made, and (iii) an injury by the party asserting estoppel. *Ripple's of Clearview, Inc. v. Le Haver Assocs.*, 88 A.D.2d 120, 452 N.Y.S.2d 447, 449 (2d Dept 1982). Plaintiff has failed to assert a promise by Defendants.

remedy) only as to an identifiable res, and here Plaintiff has failed to identify any res on which a constructive trust could be imposed. *In re Weis Sec., Inc.*, 605 F.2d 590, 597 (2d Cir. 1978) ("It is elementary. . .that before a constructive trust may arise, there must be a Res a segregated fund or property to which the trust can attach."). *See also Travelers Cas. & Surety Co. of Am., Inc., v. Nw. Mut. Life Ins. Co.*, 480 F.3d 499, 502 (7th Cir. 2007); *United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 416 (2d Cir. 2001); *Newscope Tech., LTC. v. Ameritech Info. Indus. Servs., Inc.*, NO. 99 C 52, 1999 WL 199650, at *9 (N.D. Ill. April 5, 1999)("A constructive trust can only be applied to some specific res to which the party has acquired legal title."); *Bennett Silvershein Assocs. v. Furman*, No. 91 Civ. 3118 (JGK), 1997 WL 531310, at *7 (S.D.N.Y. Aug. 28, 1997)("Before a constructive trust may arise, there must be a res a segregated fund or property to which the trust can attach.").

Plaintiff also is not entitled to a constructive trust because it seeks merely to recover monetary damages. *LaSala v. E*TRADE Secs. LLC*, 457 F. Supp. 2d 188, 191 (S.D.N.Y. 2006) ("[Plaintiff's] new claim of breach of fiduciary duty, requesting "equitable restitution" and a constructive trust, fails primarily because an issuer's damages resulting from an underwriter's breach of fiduciary duty in this context are fully compensable with money damages."). Plaintiff must make an allegation that is not merely "duplicative of the breach of contract claim" but instead must "allege ... distinct harm or actions giving rise to a[] separate claim [for a] constructive trust." *Pena v. Gutierrez Guzman*, 2004 U.S. Dist. LEXIS 1844, 6-8 (S.D.N.Y. Feb. 10, 2004) (quoting *Spanierman Gallery, PSP v. Love,* 2003 U.S. Dist. LEXIS 19511, No. 03 Civ. 3188, 2003 WL 22480055, at *3 (S.D.N.Y. Oct. 31, 2003)). A Court will not impose a constructive trust unless "it is demonstrated that a legal remedy is inadequate," *Pena v. Gutierrez*, 2004 U.S. Dist. LEXIS 1844, 7 (quoting *Bertoni v. Catucci,* 117 A.D.2d 892, 498

N.Y.S.2d 902 (3d Dep't 1986)), and the constructive trust is "essential to prevent unjust

enrichment." *Counihan v. Allstate Ins. Co.,* 194 F.3d 357, 362 (2d Cir. 1999). *See also Strom v.*

*Goldman, Sachs & Co.,* 202 F.3d 138, 144 & n.6 (2d Cir. 1999); *United States v. Ribadeneira,*

105 F.3d 833, 837 (2d Cir. 1997). Where, as here, the available legal remedy, *i.e.,* money

damages, is fully adequate to compensate for the damage Plaintiff allegedly suffered, it is not

entitled to a constructive trust. *Pena v. Gutierrez,* 2004 U.S. Dist. LEXIS 1844, 6-8.

## II.     PLAINTIFF BEARS A HEAVY BURDEN TO OBTAIN A PRELIMINARY INJUNCTION

A preliminary injunction is an extraordinary and drastic remedy which should not

be routinely granted. *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997); *Arias-Zeballos v. Tan,*

2007 U.S. Dist. LEXIS 5069, 6-7 (S.D.N.Y. Jan. 24, 2007), *see also* Wright, Miller & Kane,

FEDERAL PRACTICE AND PROCEDURE, Civil 2d § 2948, at 129 (1995) (stating that "a preliminary

injunction is an extraordinary and drastic remedy"). In order to prevail on a motion for a

preliminary injunction, the movant bears the burden of showing: (1) irreparable harm; and (2)

either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the

merits to make them fair grounds for litigation, and (3) a balance of hardships tilting decidedly

towards the plaintiff. *Jayaraj v. Scappini,* 66 F.3d 36, 38 (2d Cir. 1995); *Local 1814 Int'l*

*Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.,* 965 F.2d 1224, 1227 (2d

Cir. 1992).

Plaintiff must prove each one of these elements, *Bell & Howell: Mamiya Co. v.*

*Masel Supply Co. Corp.,* 719 F.2d 42, 45 (2d Cir. 1983), and must show that its right to relief is

"clear and unequivocal." *SCFC ILC, Inc. v. Visa USA, Inc.,* 936 F.2d 1096, 1098 (10th Cir.

1991) (citing 11 Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 2948,

at 428-29 & nn.19-21 (1973 & Supp. 1991)); *accord Medical Soc. of the State of N.Y. v. Toia*, 560 F.2d 535, 538 (2d Cir. 1977).

## III.   PLAINTIFF HAS FAILED TO ESTABLISH IRREPARABLE HARM BECAUSE THE ESSENCE OF THE COMPLAINT IS A CLAIM FOR MONEY DAMAGES

The law is well-settled that a plaintiff suing to obtain a money judgment cannot establish irreparable harm and so cannot obtain a preliminary injunction enjoining the defendant from transferring assets that might otherwise be available to satisfy a judgment. *Loveridge v. Pendleton Woolen Mills, Inc.,* 788 F.2d 914, 918 (2d Cir. N.Y. 1986) ("[W]here money damages are adequate compensation, a preliminary injunction will not issue"); *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75 at 79 (2d Cir. 1990). "[M]erely alleging an opponent's inability to pay damages does not constitute irreparable harm." *Rosewood Apts. Corp. v. Perpignano*, 200 F. Supp. 2d 269, 278 (S.D.N.Y. 2002); *see General Textile Printing & Processing Corp. v. Expromtorg Int'l Corp.*, 862 F. Supp. 1070, 1075 (S.D.N.Y. 1994) (holding that a party's inability to pay money damages did not support a finding that plaintiff had no adequate remedy at law).

In the Second Circuit, if a plaintiff fails to make a showing of injury that is more than loss of money, the request for an injunction will fail and the court need not consider the other requirements for injunctive relief. *See, e.g., Reuters Ltd. v. United Press Int'l Inc.*, 903 F.2d 904, 907 (2d Cir. 1990) ("Because a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction . . . the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered"). Irreparable harm "means injury for which a monetary award cannot be adequate compensation." *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70,

72 (2d Cir. 1979); *see also Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("[T]emporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury. . . . The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.").

In addition, notwithstanding the widespread public reports and the notice provided by Fairfield Sentry, Plaintiff delayed approximately a full month before filing this action. Consequently, Plaintiff cannot now claim some threat of "immediate and irreparable injury." *Citibank, N.A. v. Cititrust*, 756 F.2d 273, 276 (2d Cir. 1985) (holding that delay in seeking injunctive relief prevented court from finding threat of irreparable harm).

## IV. PLAINTIFF HAS FAILED TO DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiff's motion for a preliminary injunction also should be denied for the independent reason that Plaintiff has failed to establish a likelihood of success on its claims against Defendants. Defendants intend to move to dismiss this action and will address the shortcomings of each claim in further detail at that time. As discussed below, however, it is apparent that the allegations contained in Plaintiff's Complaint are insufficient to meet its burden. The Complaint is devoid of facts and the merits in this case will be hotly contested.

Plaintiff has pled claims of breach of fiduciary duty, breach of contract, mutual mistake, unjust enrichment, and third party beneficiary breach of contract. Notably, Plaintiff has offered the Court no explanation why it believes its claims have any likelihood of success. Given the governing law, this is understandable.

As an initial matter, the Martin Act preempts breach of fiduciary duty, negligence, and unjust enrichment claims arising from the purchase of securities, such as those Plaintiff

alleges here. *See, e.g., Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 190 (2d Cir. 2001)

(holding that claim for breach of fiduciary duty was preempted by Martin Act); *Kassover v. UBS*

*AG*, No. 08 CV 2753 (LMM), 2008 WL 5331812 at *6-*8 (S.D.N.Y. Dec. 19, 2008) (dismissing

breach of fiduciary duty and negligence claims as preempted by Martin Act); *Jana Master Fund*

*v. JPMorgan Chase & Co.*, 19 Misc.3d 1106(A), 859 N.Y.S.2d 903, No. 604005/06,2008 WL

746540, at *5 (Sup. Ct., New York County Mar. 12, 2008) ("Claims for negligent

misrepresentation and breach of fiduciary duty in connection with the purchase and sale of

securities have been found to be barred by the Martin Act.") (citing *Horn v. 440 B.* 57th Co., 151

A.D.2d 112, 547 N.Y.S.2d 1 (1st Dep't 1989)); *Pro Bono Investments, Inc. v. Gerry*, 2005 U.S.

Dist. LEXIS 22348, 2005 WL 2429787, at *16 (S.D.N.Y. 2005) (dismissing counterclaims for

breach of fiduciary duty, unjust enrichment, negligence, gross negligence, negligent

misrepresentation, and for a constructive trust as "common law claims the subject matter of

which is covered by the Martin Act . . . .").

     As to the individual defendants, Plaintiff has failed to show that it had any contact

or relationship that would demonstrate a reasonable likelihood of prevailing on the merits of its

claims for breach of fiduciary duty, unjust enrichment or gross negligence. *See Eurycleia*

*Partners, LP v. Seward & Kissel, LLP*, 849 N.Y.S.2d 510, 512-513 (1st Dep't 2007) (dismissing

complaint against outside counsel and independent auditor of hedge fund where plaintiff

investors failed to allege relationship with defendants required to support claim for gross

negligence or establish existence of fiduciary duty).  Plaintiff's bare allegations, without proof of

any specific misconduct by the individual defendants, are insufficient to demonstrate a

reasonable likelihood of success. *See, e.g., Ivy Mar Co. v. C.R. Seasons Ltd.*, 907 F. Supp.547,

561 (E.D.N.Y. 1995) ("Bare allegations, without more, are insufficient for the issuance of a preliminary injunction").

Moreover, Plaintiff cannot show a likelihood of success on the breach of contract or mutual mistake claims.[5] Even if one accepts the dubious claim that the Private Placement Memorandum ("PPM") "represents a valid and binding contract between Plaintiff and Defendants . . . ." (Compl. ¶ 102),[6] the PPM itself contains an unambiguous warning that there was a risk of "Misappropriation of Assets." (PPM at 21). Assuming *arguendo* that the PPM was a contract, Investors explicitly agreed that the Fund would "not have custody of the assets so invested" and they agreed to assume the risk that "the personnel of any entity with which the Fund invests could misappropriate the securities or funds (or both) of the Fund." *Id.* Thus, any claim for mutual mistake is meritless because the PPM explicitly acknowledged the possibility that Madoff or his firm could misappropriate the assets in the Fund – the very premise Plaintiff claims was mistaken. *Gerard v. Almouli*, 746 F.2d 936, 939 (2d Cir. 1984) (claim of mutual mistake unavailable where parties aware of a risk of the existence of a certain matter and enter into the contract on that assumption); *Leasco Corp. v. Taussig*, 473 F.2d 777, 782 (2d Cir. 1972) (same).

_____

[5] Plaintiff's breach of contract based claims are even less meritorious as against the individual Defendants. Officers, directors and employees of a corporation acting within the scope of their duties are not personally liable for corporate contracts, even if they caused the corporation to breach the contract. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1177 (2d Cir. 1993); *Bon Temps Agency Ltd. v. Mittman*, 260 A.D.2d 191, 192 (1st Dep't 1999).

[6] The courts have found that an offering document such as a prospectus is not the operational document for a breach of contract claim where the prospectus refers to a subsequent controlling document such as a Certificate of Vote. *Doppelt v. Perini Corp.*, 2002 U.S. Dist. LEXIS 4128, 13-14 (S.D.N.Y. Mar. 12, 2002), *aff'd.* 53 Fed. Appx. 174, 2002 U.S. App. LEXIS 26790 (2d Cir. N.Y. 2002). Here, the PPM plainly states that in order to purchase shares in the fund, a potential investor "must complete and sign the Subscription Agreement included in the Subscription Documents" and mail it to the Fund. PPM at 14.

Perhaps most importantly, what is lost in Plaintiff's complaint is that FG was only one of many entities and individuals – including the SEC – that were actively defrauded by Madoff. There is no basis to hold Defendants accountable for failing to uncover Madoff's fraudulent scheme where Madoff went to considerable lengths to conceal the fraud, and did so, against the whole world, for a number of years. In a similar context, courts have been disinclined to find secondary actors liable where they were actively defrauded. For example, in *Public Employee's Retirement Association of Colorado v. Deloitte & Touche LLP*, 2009 WL 19134 (4th Cir. Jan. 5, 2009), the Fourth Circuit recently affirmed the dismissal of an investor's claims against a company's accountant that failed to uncover the fraudulent activities of its client. The plaintiffs in that case argued that Deloitte was complicit in fraud by ignoring several "red flags." However, the court refused to find that defendants were knowingly complicit in fraud by reason of their failure to uncover the fraud. The court reasoned:

> Seeing the forest as well as the trees is essential. With respect to both frauds, plaintiffs point to ways that defendants could have been more careful and perhaps discovered the frauds earlier. But plaintiffs cannot escape the fact that [its clients] went to considerable lengths to conceal the frauds from the [defendants] and that it was the defendants that ultimately uncovered the frauds....It is not an accountant's fault if its client actively conspires with others in order to deprive the accountant of accurate information about the client's finances.

*Id.* at 11.

Plaintiff attempts to rely on the investment management agreements between Defendants and the Fund in order to make a claim for breach of contract as a third party beneficiary (Complaint ¶ 121). This claim is equally meritless. New York law is clear that a third party investor cannot make such a claim based on an agreement between a fund and an investment manager as Plaintiff attempts here. In *Banco Espirito Santo de Investimento, S.A. v. Citibank*, N.A., 2003 U.S. Dist. LEXIS 23062, 30-31 (S.D.N.Y. Dec. 22, 2003), the plaintiff

invested in a structured finance fund created by defendant Citibank. Plaintiff made a third party beneficiary breach of contract claim against Citibank on the basis that, under administrative agreements between Citibank and the fund, Citibank agreed "to perform, in good faith, supervisory duties with respect to the [fund] investment portfolios," which "included periodically reviewing the portfolio manager's performance, monitoring the portfolios, and providing periodic reports and recommendations to the Administrative Committee with respect to the portfolios." *Id.* at * 21. The court held that plaintiff's third party beneficiary claim failed because, *inter alia*, Citibank's due diligence duties under the administrative agreements flowed *from Citibank to the fund*. Plaintiff failed to plead any facts showing an intention on the part of the fund to benefit plaintiff under the administrative agreements. Similarly, here, Defendants' duties under the investment management agreements flow *from Defendants to the Funds*. Plaintiff has not, and cannot, plead any facts showing an intention on the part of the Fund to benefit Plaintiff under those agreements.

Furthermore, Plaintiff's purported causes of action do not even reach the twenty-two individually named Defendants, as Plaintiff has failed to allege facts suggesting that it is in privity or has had any dealing with the individual Defendants whatsoever. *See, e.g., Outrigger Constr. Co. v. Bank Leumi Trust Co.*, 658 N.Y.S.2d 394, 396 (N.Y. App. Div. 1997) ("[P]laintiff may not assert a contractual cause of action against a party with whom it was not in privity"); *Speery v. Crompton*, 810 N.Y.S.2d 498, 499-500 (N.Y. App. Div. 2006) ("Because the plaintiff was not in privity with the defendants, the plaintiff cannot maintain an action against them to recover damages for unjust enrichment."); *IT Corp. v. Environmental Engineering*, P.C., 713 N.Y.S.2d 633, 636 (N.Y. App. Div. 2000) (dismissing claims of negligence for failure to state a

cause of action because plaintiff had not alleged facts showing that it was in a special relationship approximating privity with the defendant).

## V. THE BALANCE OF THE HARDSHIPS STRONGLY WEIGHS AGAINST A PRELIMINARY INJUNCTION

If the Court were to freeze the management companies' assets, they would be unable to maintain staff, pay trade creditors, assist in the recovery of lost assets, provide information to shareholders, regulators, the fund's directors, and the Securities Investor Protection Act Trustee, assist in the ongoing SEC investigation, pay for their legal defense, and continue operations of non-Madoff related funds. If the restraining order continued for any length of time, the companies could be forced into liquidation.

With respect to the individual defendants, a preliminary injunction freezing assets would prevent them from paying their bills for medical services and all of their other family and household expenses, and ultimately force them into personal bankruptcy. It also would make them unable to, *inter alia*, participate in recovery and investigations, provide information to regulators and investors, and pay for defense costs. A freezing order of the type requested by Plaintiff would also preclude the individual defendants from exercising contractual indemnification rights, which has been deemed fundamental to a defendant's ability to protect his interests. *See United States v. Stein*, 435 F. Supp. 2d 330, 382 (S.D.N.Y. 2006) (holding that government's interference with employees' rights to advancement of legal expenses from accounting firm denied the employees their Constitutional rights to a fair trial and effective assistance of counsel).

It is "[a] basic principle of the law of equitable remedies . . . that the relief granted should be no broader than necessary to cure the effects of the harm caused." *Soltex Polymer Corp. v Fortex Indus., Inc.*, 832 F.2d 1325, 1329 (2d Cir. 1987) (*citing Swann v. Charlotte*

*Mecklenburg Bd. Of Educ.*, 402 U.S. 1, 16 (1971)); *see also Waldman Pub. Corp. v. Landoll, Inc.*, 43 F.3d 775, 786 (2d Cir. 1994) ("Injunctive relief should be narrowly tailored to fit specific violations. Accordingly, an injunction should not impose unnecessary burdens on lawful activity."); *McLein v. Halter*, 2001 WL 619177, *1 (S.D.N.Y. 2001) ("In exercising its equitable powers, a court must fashion a remedy narrowly tailored to provide the necessary relief"); *Lon Tai Shing Co., Ltd. v. Koeh & Lowy*, 1991 WL 170734 (S.D.N.Y. 1991) ("[t]he court must — as in all cases in which its equity powers are invoked — ensure that the relief granted is limited to what is necessary to avoid the harm against which protection is sought").

Here, the immediate, palpable and severe harms to Defendants far outweigh any hypothetical, unspecified harm that would befall Plaintiff if a preliminary injunction is denied. Plaintiff's reference to Madoff's reported transfer of jewelry is offensive – Defendants are victims of Madoff's fraud, not perpetrators.

## VI. PLAINTIFF HAS NO RIGHT TO A PRE-JUDGMENT ATTACHMENT UNDER THE GUISE OF A PRELIMINARY INJUNCTION

Plaintiff seeks an order freezing all of the assets "derived from the payment of Fees" from the corporate and individual Defendants. (Order to Show Cause, p. 2). Such an order "function[s] like a pre-judgment attachment." *See, e.g., Securities and Exchange Commission v. Unifund Sal*, 910 F.2d 1028, 1041 (1990) (observing that a freeze order "functions like an attachment"). As the United States Supreme Court has observed, allowing creditors to restrain assets prior to judgment under Rule 65 "could render Fed. R. Civ. P. 64, which authorizes the use of state prejudgment remedies, a virtual irrelevance." *Grupo Mexicano*, 527 U.S. at 330. Thus, a plaintiff is not permitted to evade the standards required to obtain a prejudgment attachment merely by styling his application as a motion for an injunction. *See,*

*e.g., Feit & Drexler, Inc. v. Drexler*, 760 F.2d 406, 415 n.2 (2d Cir. 1985) (holding that remedy providing for seizure of property for the purpose of securing satisfaction of the judgment ultimately to be entered in action should be subject to New York attachment statute); *Nanjing Textiles Imp/Exp Corp., Ltd. v. NCC Sportswear Corp.*, No. 06 Civ. 52 (JGK), 2006 WL 2337186, at *7 (S.D.N.Y. Aug. 11, 2006) (finding that court had no power to grant preliminary injunction freezing defendants' assets where plaintiff's action, despite request for constructive trust and inclusion of equitable claims, was basically a legal action seeking monetary relief); *Green v. Gaskell*, No. 87 Civ. 3861 (CSH) 1988 WL 42323 (S.D.N.Y. 1988) (applying New York attachment statute where preliminary injunction would restrain sale proceeds to secure satisfaction of judgment); *Ashland Oil, Inc. v. Gleave*, 540 F. Supp. 81, 82 (W.D.N.Y. 1982) (concluding that request for preliminary injunction to restrain defendant's assets must satisfy requirements of New York attachment statute).

Pursuant to Rule 64 of the Federal Rules of Civil Procedure, New York law governs a request for an order of attachment. Under New York law, to obtain an order of attachment, the moving party must demonstrate that (1) it has a cause of action for a money judgment, (2) there is a probability of success on the merits, (3) one or more of the enumerated statutory grounds for attachment under NY CPLR § 6201 exists, and (4) the amount demanded exceeds the amount of all counterclaims known to the party seeking the attachment. *See* NY CPLR §§ 6201, 6212(a); *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. and Trade Servs., Inc.*, 306 F. Supp. 2d 482, 485 (S.D.N.Y. 2004); *Bank of Leumi Trust Co. of New York v. Is tim, Inc.*, 892 F. Supp. 478, 481 (S.D.N.Y. 1995). New York law also requires that a movant show by affidavit (1) that there is a cause of action, (2) that there is a probability of success on the merits, (3) that a ground for attachment listed in Section 6201 exists, and (4) that the amount

demanded from defendants exceeds all counterclaims known to plaintiffs. N.Y. C.P.L.R. § 6212(a).

Plaintiff cannot sustain its burden of meeting these requirements. First, as explained above, Plaintiff cannot demonstrate a likelihood of success on the merits. Second, Plaintiff failed to submit a fact affidavit or any other evidence establishing the necessary elements under CPLR 6212(a)). Rather, Plaintiff submitted only an attorney's affidavit, which is not evidence. *See Key Equip. Finance Inc. v. Zip, L.L.C.*, No. 06-CV-944, at *5 (N.D.N.Y. May 29, 2007) (finding that statement of plaintiff's attorney that included hearsay regarding defendant's assets and conclusory assertions about the difficulty of enforcing a judgment were insufficient to support attachment under Section 6212).

Third, Plaintiff cannot satisfy any of the grounds for attachment required by CPLR § 6201. The ground that would apply to this group of Defendants is CPLR § 6201(3) , requiring a demonstration that Defendants have an intent to frustrate the judgment.[7] To establish this intent, a plaintiff must demonstrate either actual disposal or secretion of funds at the time the order is sought, or declarations of intent to defraud by the defendant. 7 Weinstein, Korn, Miller P 6201.12 at 62-32 (1996). Absent one of these two circumstances, attachment should be denied. *See Signal Capital Corporation v. Frank*, 895 F. Supp. 62, 64-65 (S.D.N.Y. 1995) (denying attachment where plaintiff fails to show actual or pending transfers, but asks intent be presumed from past fraudulent transfers that frustrated judgment in related action); *Filmtrucks, Inc. v. Earls*, 635 F. Supp. 1158, 1164 (S.D.N.Y. 1986) ("The statute requires that such actions

---

[7]   § 6201(3) states in relevant part, "An order of attachment may be granted in any action...where the plaintiff has demanded and would be entitled, in whole or in part, or in the alternative, to a money judgment against one or more defendants, when... the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts."

be taken with intent to defraud, which cannot be lightly inferred but must be affirmatively proved.").

Neither showing has been made here. To the contrary, far from exhibiting an intent to frustrate a potential judgment or any intent to defraud, the Fairfield funds have notified shareholders that no money has been paid out by the funds since December 11, 2008 and that directors are taking steps to ensure that no money is paid out without shareholders' consent. Shareholders were also notified that the management company has suspended the payment of its management fee and performance fee until further notice.

## VII. THE PROPOSED INJUNCTION IS OVERBROAD AND LACKS THE REQUIRED SPECIFICITY

### A. *The Amount of Funds That Would Be Frozen Under Plaintiff's Proposed Order Is Grossly Excessive*

No class has been certified in this case. Consequently, Plaintiff overreaches in seeking relief on behalf of parties it does not represent. *See, e.g., National Center for Immigrants Rights, Inc. v. Immigration and Naturalization Service*, 743 F.2d 1365, 1371 (9th Cir. 1984). Even where a freeze is permissible, courts are permitted to freeze only amounts sufficient to cover plaintiff's claim. *See, e.g., Hollon v. Mathis Independent School District*, 491 F.2d 92 (5th Cir. 1974). Plaintiff invested approximately $200,000 in Fairfield Sentry. Given that an injunction should be no broader than necessary to provide relief to Plaintiff, *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979), even if a freeze were permissible here, which it is not, the most that the Court lawfully could freeze is a sum sufficient to secure the "repayment of Fees" directly related to Plaintiff's investment.

B. *The Proposed Injunction Lacks The Required Specificity*

A hallmark feature of an injunction is specificity. Fed. R. Civ. P. 65(d) ("Every order granting an injunction and every restraining order must. . .describe in reasonable detail. . .the act or acts restrained or required."); *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 51 (2d Cir. 1996) ("[U]nder Rule 65(d), an injunction must be more specific than a simple command that the defendant obey the law."); *Zepeda v. United States I.N.S.*, 753 F.2d 719, 728 n.1 (9th Cir. 1985) ("[I]njunctive relief should be narrowly tailored to remedy the specific harms shown by plaintiffs" and "'should be no more burdensome to the defendant than necessary to provide complete relief to plaintiffs.'") (*quoting Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).

Plaintiff seeks an injunction freezing "any property derived from the payment of Fees (as defined herein) within your possession, custody, or control valued in excess of $25,000," and the same for a temporary restraining order, but excluding the $25,000 floor. (Order to Show Cause at 2-3). As addressed above, the proposed injunctive relief cannot be granted because it is not directed to an identifiable res. Moreover, it does not appear presently possible for Defendants to isolate the property in their possession that was derived from Fees paid by Plaintiff or anyone else, which have been included in Defendants' compensation for many years. *See* Thorne Declaration ¶ 4. Accordingly, entry of the requested order effectively would impermissibly freeze all of Defendants' assets.

## VIII. A PRELIMINARY INJUNCTION WOULD REQUIRE POSTING OF SUBSTANTIAL SECURITY

Federal Rule of Civil Procedure 65(c) requires, prior to granting a preliminary injunction, that Plaintiff post an undertaking in an amount determined by the Court to provide security to Defendants for the payment of all "costs and damages as may be incurred or suffered"

by any party who is found have been wrongfully . . . restrained." *See also Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 340-41 (1999). As noted above, Defendants and other Fairfield investors would sustain significant financial harm from the requested relief, including preventing the management companies from seeking to recover the estimated $7.5 billion in losses sustained from Fairfield's Madoff-related investments, and preventing them from administering their non-Madoff investments. Moreover, Defendants could no longer pay administrators or others to provide documents and information requested by securities regulators and the Securities Investor Protection Act trustee, exposing them to significant regulatory penalties. To properly secure Defendants against the potentially catastrophic effects of an order freezing their assets, an undertaking of at least several hundred million dollars would be required.

## IX. PLAINTIFF IS NOT ENTITLED TO AN ACCOUNTING OR EXPEDITED DISCOVERY

Plaintiff requests the Court to order an accounting and expedited discovery schedule to ascertain the monetary reach of its baseless request for a preliminary injunction. Because Plaintiff's request for an asset freeze should be summarily denied, its purported need for an accounting and expedited discovery of Defendants' assets falls away. To the extent that Plaintiff would continue to seek an accounting and expedited discovery where their motion for a preliminary injunction is denied, Plaintiff fails to articulate why the Court should enter such a burdensome order in an ordinary case for money damages days after the filing of the complaint.

Rule 26(d) of the Federal Rules of Civil Procedure provides that, absent a court order, a party may not seek discovery before the parties have conferred as required by Rule 26(f). This Court traditionally has determined whether to order expedited discovery by applying a four-

part test similar to the standard for a preliminary injunction. Plaintiff must demonstrate "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982); *see also Irish Lesbian & Gay Org. v. Giuliani*, 918 F. Supp. 728, 730 (S.D.N.Y. 1996); *Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs. Ltd.*, 1994 WL 719696, at * 3 (S.D.N.Y. Dec. 28, 1994).

Plaintiff cannot meet this burden. Plaintiff has not noted a single harm that it potentially would incur if this litigation followed a normal discovery schedule.

Moreover, Plaintiff's discovery requests are completely unreasonable. Plaintiff's document requests essentially seek every financial document that the Fairfield management companies have ever created, clearly attempting to use this motion for a preliminary injunction to obtain massive amounts of discovery on the merits and damages just days after filing the complaint. Discovery of the type requested would require the management companies to commit an immense amount of time, money, and resources, all of which is contrary to the Federal rules at the present stage of the litigation. Recognizing the financial burden involved, courts frequently have deferred merits-based discovery until after class certification is decided—let alone mere days after the filing of the complaint. *See* Joseph M. McLaughlin, McLaughlin on Class Actions § 3:9 (3d ed. 2008); *Karan v. Nabisco, Inc.*, 78 F.R.D. 388, 396 (W.D. Pa. 1978) ("Certainly, class determination is preferable before substantial discovery on the merits has been conducted. . . . Neither party would benefit from such extensive expenditures when it could have been determined in the early stages of that a class action was not appropriate or that the class

must be more limited in scope than originally alleged by plaintiffs."); *Grigsby v. N. Miss. Med. Ctr., Inc.*, v. 586 F.2d 457, 460 (5th Cir. 1982) (holding that the district court "acted well within its discretion in circumscribing plaintiffs' request [to class certification matters] to prevent an undue burden on defendants").

With respect to Plaintiff's request for an accounting of Fund assets, it should be noted that the Fund is not a defendant and therefore it is inappropriate to enter any relief whatsoever as against the Fund.

With respect to Plaintiff's request for a document preservation order, Defendants are aware of their document preservation obligations and, as victims of Madoff's fraud, have further incentive to retain their financial records as evidence of their own losses in Madoff investments. In this regard, paragraph 6 of the Plaintiff-drafted Order to Show Cause Re Preliminary Injunction and Order and Order for Limited Expedited Discovery (the "January 9 Order") signed by the Court on January 9, 2009, is unnecessary (as well as vague and overbroad), and this paragraph of the January 9 Order should be rescinded. As Judge Sullivan observed in the *Merkin* action, there is no need for a court order to direct what the law already requires. Merkin Tr. at 23.

## **CONCLUSION**

For the reasons stated above, Plaintiff's motion for a preliminary injunction, an accounting, a document preservation order and expedited discovery should be denied, and paragraph 6 of the January 9 Order should be rescinded .

Dated: New York, New York
January 13, 2009

SIMPSON THACHER & BARTLETT LLP

By _____

Mark G. Cunha
mcunha@stblaw.com
Michael J. Chepiga
mchepiga@stblaw.com
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for Defendants Fairfield Greenwich
Advisors LLC, Matthew Brown, Jacqueline
Harary, Julia Luongo, Mark McKeefrey,
Andrew Smith, and Philip Toub*

Dated: New York, New York
      January 13, 2009

DEBEVOISE & PLIMPTON LLP

By _____

Helen V. Cantwell
*hvcantwell@debevoise.com*
Mark P. Goodman
*mpgoodman@debevoise.com*
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Telephone: (212) 909-6312
Facsimile: (212) 909-6836

*Attorneys for Defendant Amit Vijayvergiya*

WHITE & CASE LLP

By _Glenn Kurtz /s_____

Glenn M. Kurtz (GMK- 2166)
Andrew W. Hammond (AWH -0415)
WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036
Telephone: (212) 819-8200
Facsimile: (212) 354-8113

*Attorneys for Defendant Walter Noel*

Dated: New York, New York
January 13, 2009

KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP

By: _____

      Marc E. Kasowitz
      Daniel R. Benson
      Daniel J. Fetterman
      Adam K. Grant

1633 Broadway
New York, New York 10019
(212) 506-1700

Attorneys for Defendant Jeffrey
Tucker