Pacific West Health Medical Center Inc. Employees Retirement Trust et al ...ld Greenwich Group et al    Doc. 89 Att. 3

# Exhibit 5

Dockets.Justia.com

# INVESTMENT MANAGEMENT AGREEMENT

Agreement dated as of October 1, 2004, between Fairfield Sentry Limited, a British Virgin Islands international business company (the "Fund"), having its registered office at Romasco Place, Wickhams Cay 1, P.O. Box 3140, Road Town, Tortola, British Virgin Islands, and Fairfield Greenwich (Bermuda) Limited, a company organized under the laws of the Bermuda (the "Investment Manager"), having an office at 14 Par La Ville Road, 3rd Floor, Hamilton Bermuda..

WHEREAS, the Fund wishes to obtain the investment management services of the Investment Manager, and

WHEREAS, the Investment Manager is willing to provide such advice and services on the terms and conditions set forth below,

NOW, THEREFORE, in consideration of the premises and of the mutual covenants and agreements hereinafter set forth, the parties hereby agree as follows:

1. The Fund hereby retains the Investment Manager to manage the investment of its assets as contemplated by and described in the Confidential Private Placement Memorandum of the Fund, dated October 1, 2004, and as such Confidential Private Placement Memorandum may be further amended (the "Memorandum"). All capitalized terms not defined herein shall be defined as set forth in the Memorandum. Such management will include, but shall not be limited to the utilization of a nontraditional options trading strategy described as "split strike conversion" (the "SSC Investments"). The Investment Manager may, in its sole and exclusive

discretion, allocate a portion of the Fund's assets to alternative investment opportunities other than the SSC Investments (the "Non-SSC Investments"); provided, however, that the amount so allocated to the Non-SSC Investments in the aggregate shall not exceed an amount equal to 5% of the Net Asset Value of the Fund (measured at the time of investment in each Non-SSC Investment vehicle) and no single allocation shall exceed $50 million at the time it is made. The identification of, and terms of the Fund's investment in, the Non-SSC Investments shall be in the sole and exclusive discretion of the Investment Manager. The Investment Manager is authorized to negotiate, among other things, risk control and performance guidelines, lock-up periods and fees incident to the Non-SSC Investments; provided that the fees paid in connection with the Non-SSC Investments shall not cause an increase in the amount of the fees to be paid by the Fund pursuant to this Agreement.

2.  The activities engaged in by the Investment Manager on behalf of the Fund shall be subject to the policies and control of the Fund's Directors. Subject to such direction and the investment policies set forth in the Memorandum, the Investment Manager shall use its best efforts to (a) seek suitable investment opportunities and manage the investment portfolio of the Fund; (b) perform or oversee the day-to-day investment operations of the Fund; (c) act as investment adviser for the Fund in connection with investment decisions; (d) provide information in connection with the preparation of all reports to the Fund's shareholders described in the Memorandum; and (e) arrange for and oversee the services of the Fund's administrator, custodian(s), auditors and counsel to act on behalf of the Fund; provided, however, that the Investment Manager is not authorized to enter into agreements in the name of the Fund with such providers of services.

3. Within 5 days after the end of each of the first three weeks of each month and within 10 days after the end of each month or fiscal quarter of the Fund, as the case may be, the Investment Manager shall send to the Fund weekly and monthly valuations of the SSC Investments and the Non-SSC Investments. The Investment Manager shall cause any and all documentation respecting such investments to be sent to the Fund. The Investment Manager shall be available at all times, upon reasonable notice, for consultation with the Directors of the Fund in connection with the investments of the Fund.

4. The Investment Manager shall for all purposes be an independent contractor and not an agent or employee of the Fund, and the Investment Manager shall have no authority to act for, represent, bind or obligate the Fund except as specifically provided herein.

5. The Investment Manager may delegate its duties hereunder or assign this Agreement in its entirety to a wholly-owned subsidiary or an affiliate without the further consent of the Fund.

6. All investments of the Fund shall at all times conform to and be in accordance with the requirements imposed by:

    (a)    any provisions of applicable law; and

    (b)    provisions of the Certificate of Incorporation, Memorandum of Association, and Articles of Association of the Fund, as amended from time to time.

The Fund shall furnish the Investment Manager with a copy of the Certificate of Incorporation, Memorandum of Association and Articles of Association, of the Fund as in effect at the commencement of this Agreement and, thereafter, shall promptly furnish the Investment Manager with copies of such documents as they may be amended from time to time.

7. The Fund shall bear, for each year, all expenses in maintaining the Fund's offices and all other expenses incurred in the operation of the Fund, including the ordinary and necessary expenses related to the Fund's investment and trading activities (including transactional costs, escrow and custodial fees), all insurance expenses, all legal and auditing fees, and fees and expenses relating to any extraordinary circumstances, such as tax examinations and litigation involving the Fund.

8. The Fund shall pay the Investment Manager, as full compensation for the services performed by the Investment Manager and the facilities furnished by the Investment Manager, a fixed monthly management fee in an amount equal to one-twelfth of one percent (0.0833%) of the Net Asset Value (as defined in the Memorandum) of the Fund as of the first day of each monthly period, after giving effect to any subscriptions for the Fund's shares accepted as of the first day of such month (the "Management Fee"), which shall be paid monthly in arrears, and a quarterly performance fee payable after the last day of each calendar quarter, in an amount equal to 20% of the amount of any New High Net Profits (as defined in the Memorandum) of the Fund (the "Performance Fee"). Shares of the Fund shall be subject to the payment of the Performance Fee for the portion of each calendar quarter that they are issued and outstanding. For the purposes hereof, the value of the net assets of the Fund and its Net Asset Value per Share (as defined in the Memorandum) shall be computed in the manner specified in the Memorandum for

the computation of the value of such net assets in connection with the determination of the redemption price of its shares. Payment of the Performance Fee shall be made to the Investment Manager on or after the last day of each calendar quarter of each year; payment of the Management Fee shall be made within ten (10) days after the month for which such Management Fee has accrued. Each payment for services to the Investment Manager shall be accompanied by a report of the Fund, prepared either by the Fund or by an established firm of independent public accountants, which shall show the amount properly payable to the Investment Manager under this Agreement, and the manner of computation thereof. Notwithstanding the foregoing, in the event that, as of the end of any calendar year, the aggregate amount of original investments in Non-SSC Investment vehicles exceeds the aggregate Net Asset Value of the Non-SSC Investment vehicles (before deduction of the Fund's share of fees payable to the Non-SSC Investment vehicles) (such excess being collectively referred to as the "Non-SSC Investment Loss"), the Investment Manager will reduce the amount of its Performance Fee payable at subsequent quarter end by an amount equal to the Non-SSC Investment Loss. The portion of the Performance Fee that is reduced will be carried forward. In the event that the SSC Investment Loss is, in whole or in part, subsequently recouped by Non-SSC Investment vehicles, the Fund shall pay the Investment Manager such portion of the Performance Fee that was previously reduced to cover Non-SSC Investment Losses in addition to the Performance Fee otherwise payable for any quarter.

The Investment Manager and the Fund may supplement this Agreement at any time to provide for the deferred payment of all or any portion of the fees to be paid to the Investment Manager pursuant to this Agreement.

9. The Investment Manager will render the services set forth in this Agreement at its own expense, including without limitation, the salaries of employees necessary for such services, the rent and utilities for the facilities provided, and other advisory and operating expenses, except as assumed by the Fund in paragraph 7. The Investment Manager shall pay Fairfield Greenwich Advisors LLC an expense reimbursement in an amount equal to 15% of the Management Fee for bearing certain of the Fund's internal accounting and operational expenses. Payment of this amount shall be made within 10 business days after the last day of each calendar quarter, is contingent on the Investment Manager's receipt of the full amount of the Management Fee during such calendar quarter and shall be proportionately reduced to the extent the Management Fee is not paid to the Investment Manager in any such calendar quarter.

10. (a) The Investment Manager shall not be liable for any error of judgment or for any loss suffered by the Fund in connection with the subject matter of this Agreement, except loss resulting from willful misfeasance, bad faith or gross negligence in the performance of the Investment Manager's obligations and duties, or by reason of the Investment Manager's reckless disregard of their obligations and duties hereunder.

(b) The Investment Manager, its directors, officers and employees, agents and counsel (each, an "Investment Manager Indemnitee"), shall not be subject to, and the Fund shall indemnify to the fullest extent permitted by law and hold each Investment Manager Indemnitee free and harmless from and against, any and all claims, demands, liability or expenses for any loss suffered by the Fund arising out or any act or omission of an Investment Manager Indemnitee relating to the Fund, except to the extent such act or omission constitutes willful

6

misconduct, or reckless disregard of the duties of the Investment Manager or on the part of the Investment Manager Indemnitee.

11. The Investment Manager and each of its respective shareholders, directors, employees and officers, may engage simultaneously with their investment management activities on behalf of the Fund in other businesses, and may render services similar to those described in this Agreement for other individuals, companies, trusts or persons, and shall not by reason of engaging in such other businesses or rendering of services for others be deemed to be acting in conflict with the interests of the Fund.

12. This Agreement shall be in full force and effect on the date of this Agreement and shall continue until the termination by either party on written notice ten days prior to the end of any calendar quarter. During the period between the date when notice of termination is deemed given hereunder and the effective date of termination, the rights, powers and duties of the Investment Manager shall remain in full force and effect but shall be subject to the right of the Fund to direct the liquidation of any investment, which direction shall be given in writing or by telex.

13. Any notice required to be given hereunder shall be in writing and shall be sent by registered or certified air mail, postage prepaid, with return receipt requested, or by means of telecopy or other wire transmission (with request for assurance of receipt in a manner typical with respect to communications of that type), to the Fund and Investment Manager at the respective addresses indicated in the Offering Memorandum, or to such other addresses as the parties may hereafter direct in writing. The effective date of any notice given by mail shall be ten days after the date of mailing thereof; any notice to any party having a telecopy or telex

number for the receipt at its address for notice hereunder of messages by transmission by telecopy or telex shall be deemed given when transmitted by telecopy or telex addressed to such party at such telecopy or telex number.

14. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, and shall not be modified, except in writing, nor assigned by either party without the consent of the other party.

(Remainder of page intentionally left blank)

15. This Agreement shall be construed and governed in accordance with the laws of Bermuda, without regard to the principles of conflicts of laws thereof.

IN WITNESS WHEREOF the parties hereto have caused this Agreement to be executed as of the day first above written.

FAIRFIELD SENTRY LIMITED

By: *[signature]*
Name: Walter M. Noel, Jr.
Title: Director

FAIRFIELD GREENWICH (BERMUDA) LTD.

By: _____
Name: Andres Piedrahita
Title: Director

Agreed to an accepted for purposes
of Paragraph 9 only:
FAIRFIELD GREENWICH ADVISORS LLC

By: *[signature]*
Name: Jeffrey H. Tucker
Title: President

9

15. This Agreement shall be construed and governed in accordance with the laws of Bermuda, without regard to the principles of conflicts of laws thereof.

IN WITNESS WHEREOF the parties hereto have caused this Agreement to be executed as of the day first above written.

FAIRFIELD SENTRY LIMITED

By: _____
Name: Walter M. Noel, Jr.
Title: Director

FAIRFIELD GREENWICH (BERMUDA) LTD.

By: _____
Name: Andres Piedrahita
Title: Director

Agreed to an accepted for purposes
of Paragraph 9 only:
FAIRFIELD GREENWICH ADVISORS LLC

By: _____
Name: Jeffrey H. Tucker
Title: President

9



# Exhibit 6

# INVESTMENT MANAGEMENT AGREEMENT

Agreement dated as of October 1, 2004, between Fairfield Sigma Limited, a British Virgin Islands international business company (the "Fund"), having its registered office at Romasco Place, Wickhams Cay 1, P.O. Box 3140, Road Town, Tortola, British Virgin Islands, and Fairfield Greenwich (Bermuda) Ltd., a company organized under the laws of the Bermuda (the "Investment Manager"), having an office at 14 Par La Ville Road, 3rd Floor, Hamilton, Bermuda.

WHEREAS, the Fund wishes to obtain the investment management services of the Investment Manager with respect to the assets underlying the Fund's shares; and

WHEREAS, the Investment Manager is willing to provide such advice and services on the terms and conditions set forth below,

NOW, THEREFORE, in consideration of the premises and of the mutual covenants and agreements hereinafter set forth, the parties hereby agree as follows:

1. The Fund hereby retains the Investment Manager to manage the investment of its assets as contemplated by and described in the Confidential Private Placement Memorandum of the Fund dated October 1, 2004, as such Confidential Private Placement Memorandum may be amended (the "Memorandum"). All capitalized terms not defined herein shall be defined as set forth in the Memorandum. Such management will include, but shall not be limited to, purchasing shares in Fairfield Sentry Limited, a British Virgin Islands international business company ("FSL"), whose investment manager is the Investment Manager, which invests the

predominant portion of its assets utilizing a nontraditional options trading strategy described as "split strike conversion" (the "SSC Investments"). A portion of FSL's assets may, in the discretion of the Investment Manager, be allocated to alternative investment opportunities other than the SSC Investments under certain conditions and limitations, as described in the Confidential Private Placement Memorandum of FSL, dated October 1, 2004 as such Confidential Private Placement Memorandum may be amended (the FSL Memorandum"). The Fund shall utilize the predominant portion of the assets underlying the shares of the Fund to purchase shares of FSL. The Investment Manager shall also establish an account in the name of the Fund at a nonaffiliated bank to hedge the currency exposure of the Fund's Euro denominated shareholders resulting from the Fund holding assets denominated in U.S. dollars.

2. The activities engaged in by the Investment Manager on behalf of the Fund shall be subject to the policies and control of the Fund's Directors. Subject to such direction and the investment policies set forth in the Memorandum, the Investment Manager shall use its best efforts to (a) oversee and monitor the Fund's investment in FSL; (b) provide information in connection with the preparation of all reports to the Fund's shareholders described in the Memorandum; and (c) arrange for and oversee the services of the Fund's administrator, custodian, auditors and counsel to act on behalf of the Fund; provided, however, that the Investment Manager is not authorized to enter into agreements in the name of the Fund with such providers of services.

3. Within 5 days after the end of each of the first three weeks of each month and within 10 days after the end of each month or fiscal quarter of the Fund, as the case may be, the Investment Manager shall send to the Fund weekly and monthly valuations of the Fund's

investment in FSL and its currency hedging account. The Investment Manager shall cause any and all documentation respecting such investments to be sent to the Fund. The Investment Manager shall be available at all times, upon reasonable notice, for consultation with the Directors of the Fund in connection with the investments of the Fund.

4. The Investment Manager shall for all purposes be an independent contractor and not an agent or employee of the Fund, and the Investment Manager shall have no authority to act for, represent, bind or obligate the Fund except as specifically provided herein.

5. The Investment Manage may delegate its duties hereunder or assign this Agreement in its entirety to a wholly-owned subsidiary or an affiliate without the further consent of the Fund.

6. All investments of the Fund shall at all times conform to and be in accordance with the requirements imposed by:

(a) any provisions of applicable law; and

(b) provisions of the Certificate of Incorporation, Memorandum of Association, and Articles of Association of the Fund, as amended from time to time.

The Fund shall furnish the Investment Manager with a copy of the Certificate of Incorporation, Memorandum of Association and Articles of Association, of the Fund as in effect at the commencement of this Agreement and, thereafter, shall promptly furnish the Investment Manager with copies of such documents as they may be amended from time to time.

7. The Fund shall bear, for each year, all expenses in maintaining the Fund's offices and all other expenses incurred in the operation of the Fund, including all continuing offering costs (including legal fees), the ordinary and necessary expenses related to the Fund's investment and trading activities (including transactional costs, escrow and custodial fees), all legal and auditing fees, and fees and expenses relating to any extraordinary circumstances, such as tax examinations and litigation involving the Fund.

8. The Fund shall not pay the Investment Manager either a management fee or performance fee. Any fees incident to the Fund's investment in FSL shall be paid to the Investment Manager by FSL.

9. The Investment Manager will render the services set forth in this Agreement at its own expense, including without limitation, the salaries of employees necessary for such services, the rent and utilities for the facilities provided, and other advisory and operating expenses, except as assumed by the Fund in paragraph 7. The Fund shall pay Fairfield Greenwich Advisors LLC, an affiliate of the Investment Manager, an annual expense reimbursement charge of 0.15% of the Fund's Net Asset Value, payable quarterly in an amount equal to 0.0375% of the Fund's Net Asset Value as of the last day of each calendar quarter, for providing certain administrative services and back office support to the Fund. This charge shall be paid within 10 business days after the end of each calendar quarter.

10. (a) The Investment Manager shall not be liable for any error of judgment or for any loss suffered by the Fund in connection with the subject matter of this Agreement, except loss resulting from willful misfeasance, bad faith or gross negligence in the performance of the

Investment Manager's obligations and duties, or by reason of the Investment Manager's reckless disregard of their obligations and duties hereunder.

(b) The Investment Manager, its directors, officers and employees, agents and counsel (each, an "Investment Manager Indemnitee"), shall not be subject to, and the Fund shall indemnify to the fullest extent permitted by law and hold each Investment Manager Indemnitee free and harmless from and against, any and all claims, demands, liability or expenses for any loss suffered by the Fund arising out or any act or omission of an Investment Manager Indemnitee relating to the Fund, except to the extent such act or omission constitutes willful misconduct, or reckless disregard of the duties of the Investment Manager or on the part of the Investment Manager Indemnitee.

11. The Investment Manager and each of its respective shareholders, directors, employees and officers, may engage simultaneously with their investment management activities on behalf of the Fund in other businesses, and may render services similar to those described in this Agreement for other individuals, companies, trusts or persons, and shall not by reason of engaging in such other businesses or rendering of services for others be deemed to be acting in conflict with the interests of the Fund.

12. This Agreement shall be in full force and effect on the date of this Agreement and shall continue until the termination by either party on written notice ten days prior to the end of any calendar quarter. During the period between the date when notice of termination is deemed given hereunder and the effective date of termination, the rights, powers and duties of the Investment Manager shall remain in full force and effect but shall be subject to the right of the

Fund to direct the liquidation of any investment, which direction shall be given in writing or by telex.

13. Any notice required to be given hereunder shall be in writing and shall be sent by registered or certified air mail, postage prepaid, with return receipt requested, or by means of telecopy or other wire transmission (with request for assurance of receipt in a manner typical with respect to communications of that type), to the Fund and Investment Manager at the respective addresses indicated in the Memorandum, or to such other addresses as the parties may hereafter direct in writing. The effective date of any notice given by mail shall be ten days after the date of mailing thereof; any notice to any party having a telecopy or telex number for the receipt at its address for notice hereunder of messages by transmission by telecopy or telex shall be deemed given when transmitted by telecopy or telex addressed to such party at such telecopy or telex number.

14. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, and shall not be modified, except in writing, nor assigned by either party without the consent of the other party.

(Remainder of page intentionally left blank)

15. This Agreement shall be governed by and construed in accordance with the laws of Bermuda without regard to the principles of conflicts of laws thereof.

IN WITNESS WHEREOF the parties hereto have caused this Agreement to be executed as of the day first above written.

FAIRFIELD SIGMA LIMITED

By: *[signature]*
Name: Walter M. Noel, Jr.
Title: Director

FAIRFIELD GREENWICH (BERMUDA) LTD.

By: *[signature]*
Name: Andres Pirdrahita
Title: Director

Agreed to an accepted for purposes
of Paragraph 9 only:
FAIRFIELD GREENWICH ADVISORS LLC

By: *[signature]*
Name: Jeffrey H. Tucker
Title: President