# Exhibit 8

Dockets.Justia.com

GREENWICH SENTRY PARTNERS, L.P.

LIMITED PARTNERSHIP AGREEMENT

Dated as of April 30, 2006

GREENWICH SENTRY PARTNERS, L.P.
LIMITED PARTNERSHIP AGREEMENT
INDEX

**Page**

| | | |
|---|---|---|
| ARTICLE I | GENERAL PROVISIONS | 1 |
| Sec. 1.01. | Partnership Name | 1 |
| Sec. 1.02. | Fiscal Year | 1 |
| Sec. 1.03. | Liability of Partners | 1 |
| Sec. 1.04. | Purposes of Partnership | 3 |
| Sec. 1.05. | Assignability of Interest | 4 |
| | | |
| ARTICLE II | MANAGEMENT OF PARTNERSHIP | 4 |
| Sec. 2.01. | Management Generally | 4 |
| Sec. 2.02. | Authority of the General Partner | 4 |
| Sec. 2.03. | Reliance by Third Parties | 6 |
| Sec. 2.04. | Activity of the General Partner | 6 |
| Sec. 2.05. | Exculpation | 6 |
| Sec. 2.06. | Indemnification of General Partner | 7 |
| Sec. 2.07. | Payment of Costs and Expenses | 7 |
| | | |
| ARTICLE III | CAPITAL ACCOUNTS OF PARTNERS AND OPERATIONS THEREOF | 8 |
| Sec. 3.01. | Definitions | 8 |
| Sec. 3.02. | Capital Contributions | 8 |
| Sec. 3.03. | Capital Accounts | 9 |
| Sec. 3.04. | Partnership Percentages | 9 |
| Sec. 3.05. | Allocation of Net Capital Appreciation or Net Capital Depreciation | 9 |
| Sec. 3.06. | Loss Recovery Account | 10 |
| Sec. 3.07. | Valuation of Assets | 10 |
| Sec. 3.08. | Liabilities | 11 |
| Sec. 3.09. | Allocation for Tax Purposes | 11 |
| Sec. 3.10. | Determination by General Partner of Certain Matters | 12 |
| Sec. 3.11. | Adjustments to Take Account of Interim Accounting Period Events | 12 |
| | | |
| ARTICLE IV | WITHDRAWALS AND DISTRIBUTIONS OF CAPITAL | 12 |
| Sec. 4.01. | Withdrawals and Distributions in General | 12 |
| Sec. 4.02. | Withdrawals | 12 |
| Sec. 4.03. | Limitation on Withdrawals | 13 |
| Sec. 4.04. | Salaries or Other Payments or Allocations to the General Partner | 13 |

i

ARTICLE V        ADMISSION OF NEW PARTNERS...............................................................13
    Sec. 5.01.    New Partners ..............................................................................................13

ARTICLE VI       WITHDRAWAL, DEATH OR INSANITY OF PARTNERS .......................14
    Sec. 6.01.    Withdrawal, Death, etc ................................................................................14
    Sec. 6.02.    Withdrawal, Death, etc ................................................................................15
    Sec. 6.03.    Required Withdrawals .................................................................................15
    Sec. 6.04.    Effective Date of Withdrawal .....................................................................16
    Sec. 6.05.    Limitations on Withdrawal of Capital Account............................................16

ARTICLE VII      DURATION AND TERMINATION OF PARTNERSHIP ...........................16
    Sec. 7.01.    Duration ......................................................................................................16
    Sec. 7.02.    Termination..................................................................................................16
    Sec. 7.03.    Method of Distribution ...............................................................................17

ARTICLE VIII     REPORTS TO PARTNERS ....................................................................17
    Sec. 8.01.    Independent Auditors...................................................................................17
    Sec. 8.02.    Filing of Tax Returns...................................................................................17
    Sec. 8.03.    Reports to Partners......................................................................................17
    Sec. 8.04.    Reports to Partners and Former Partners ....................................................18
    Sec. 8.05.    Tax Matters Partner.....................................................................................18

ARTICLE IX       MISCELLANEOUS ...............................................................................18
    Sec. 9.01.    General.........................................................................................................18
    Sec. 9.02.    Power of Attorney........................................................................................19
    Sec. 9.03.    Amendments to Partnership Agreement ......................................................19
    Sec. 9.04.    Adjustment of Basis of Partnership Property...............................................20
    Sec. 9.05.    Choice of Law..............................................................................................20
    Sec. 9.06.    Inspection of Books and Records ................................................................20
    Sec. 9.07.    Notices ........................................................................................................20
    Sec. 9.08.    Goodwill ......................................................................................................20
    Sec. 9.09.    Headings ......................................................................................................21

303006.1

GREENWICH SENTRY PARTNERS, L.P.

---

LIMITED PARTNERSHIP AGREEMENT
Dated as of April 30, 2006

---

This AGREEMENT OF LIMITED PARTNERSHIP dated as of April 30, 2006 (herein called the "Agreement") among the undersigned (herein called the "Partners", which term shall include any persons hereafter admitted to the Partnership pursuant to Article V of this Agreement and shall exclude any persons who cease to be Partners pursuant to Article VI of this Agreement) pursuant to the provisions of the Delaware Revised Uniform Limited Partnership Act (6 Del. C. Sec. 17101, et seq.) (the "Act").

## ARTICLE I

## GENERAL PROVISIONS

Sec. 1.01. <u>Partnership Name</u>. The Partnership shall do business under the name of Greenwich Sentry Partners, L.P. (herein called the "Partnership").

Sec. 1.02. <u>Fiscal Year</u>. The fiscal year of the Partnership (herein called the "fiscal year") shall end on December 31 of each year or on such other date as the General Partner of the Partnership shall from time to time determine.

Sec. 1.03. <u>Liability of Partners</u>. The names and addresses of all of the Partners and the amounts of their respective contributions to the Partnership (herein called "Capital Contributions") are set forth in a schedule entitled "Schedule of Capital Contributions" (herein called the "Schedule") which shall be filed with the books and records of the Partnership and is hereby incorporated by reference and made a part of this Agreement.

Those Partners who are designated in Part I of the Schedule as General Partner (herein called the "General Partner" or "General Partners") and former General Partners shall have unlimited liability for the repayment and discharge of all debts and obligations of the Partnership attributable to any fiscal year during which they are or were General Partners of the Partnership.

Those Partners who are designated in Part II of the Schedule as Limited Partners and, former Limited Partners shall be liable for the repayment and discharge of all debts and obligations of the Partnership attributable to any fiscal year (or relevant portion thereof) during which they are or were Limited Partners of the Partnership to the extent of their respective

interests in the Partnership in the fiscal year (or relevant portion thereof) to which any such debts and obligations are attributable.

The Partners and all former Partners shall share all losses, liabilities or expenses suffered or incurred by virtue of the operation of the preceding paragraphs of this Sec. 1.03 in the proportions of their respective Partnership Percentages (determined as provided in Sec. 3.04 hereof, as adjusted pursuant to Sec. 3.11, if appropriate) for the fiscal year (or relevant portion thereof) to which any debts or obligations of the Partnership are attributable. A Limited Partner's or former Limited Partner's share of all losses, liabilities or expenses shall not be greater than its respective interests in the Partnership for such fiscal year (or relevant portion thereof). The General Partner and all former General Partners shall share all losses, liabilities or expenses suffered or incurred by virtue of the operation of the second paragraph of this Sec. 1.03 in excess of their respective interests in the Partnership in the fiscal year (or relevant portion thereof) to which any debts or obligations are attributable either in the proportions of their respective Partnership Percentages for such fiscal year (or relevant portion thereof) or in such proportions as have been agreed to by such General Partners.

As used in this Sec. 1.03, the terms "interests in the Partnership" and "interest in the Partnership" shall mean with respect to any fiscal year (or relevant portion thereof) and with respect to each Partner (or former Partner) the amount in the Capital Account of such Partner on the last day of such fiscal year (or relevant portion thereof) as determined under Article III hereof; provided, however, that if such Partner (or former Partner) shall have ceased to be a Partner of the Partnership pursuant to Article VI hereof as of the end of or during such fiscal year, the terms "interests in the Partnership" and "interest in the Partnership" shall mean the Capital Account of such Partner (or former Partner), prior to any adjustments to the Capital Account of such Partner for such fiscal year (or relevant portion thereof) pursuant to Article III hereof.

Notwithstanding any other provision in this Agreement, in no event shall any Limited Partner or former Limited Partner be obligated to make any additional contribution or payment, respectively, whatsoever to the Partnership, or have any liability for the repayment and discharge of the debts and obligations of the Partnership (apart from his or its interest in the Partnership), except that a Limited Partner (or former Limited Partner) may be required, for purposes of meeting his obligations under this Sec. 1.03, to make additional contributions or payments, respectively, up to, but in no event in excess of, the aggregate amount of returns of capital and other amounts actually received by him from the Partnership during or after the fiscal year to which any debt or obligation is attributable.

As used in this Agreement, the terms "former General Partners," "former Limited Partners," and "former Partners" refer to such persons or entities as hereafter from time to time cease to be General Partners, Limited Partners and Partners respectively pursuant to the terms and provisions of this Agreement.

303006.1

Sec. 1.04. <u>Purposes of Partnership</u>. The Partnership is organized for the purposes of realizing capital appreciation by allocating its assets to securities trading accounts and engaging in all activities and transactions the General Partner may deem necessary or advisable in connection therewith, including, without limitation:

(a)     to invest and trade in capital stock of U.S. or foreign corporations, preorganization certificates and subscriptions, warrants, bonds, notes, debentures (whether subordinated, convertible or otherwise), rights, options, money market funds, commercial paper, certificates of deposit, bankers' acceptances, trust receipts, obligations of the United States, or any State thereof, and instrumentalities of any of them, and any other obligations and instruments or evidences of indebtedness commonly referred to as securities of whatever kind or nature of any person, corporation, government or entity whatsoever, whether readily marketable or not, in rights and options relating thereto including forward and futures contracts (and options thereon) relating to stock indices or other indices, financial instruments and commodities and commodity contracts, and put and call options written by the Partnership or by others (all such items being called herein a "Security" or "Securities"), to sell Securities short and cover such sales, and to lend funds or properties of the Partnership, either with or without security; and

(b)     to enter into, make and perform, all contracts and other undertakings, and engage in all activities and transactions, as the General Partner may deem necessary or advisable to the carrying out of the foregoing objects and purposes, including without limitation:

   (i)     to purchase, hold, sell, exchange, transfer, mortgage, pledge and otherwise acquire and dispose of and exercise all rights, powers, privileges and other incidents of ownership or possession with respect to Securities owned by the Partnership;

   (ii)    to borrow or raise moneys, and, from time to time without limit as to amount or manner and time of repayment, to issue, accept, endorse and execute promissory notes, drafts, bills of exchange, warrants, bonds, debentures and other negotiable or non-negotiable instruments and evidences of indebtedness, and to secure the payment of any thereof (and of the interest thereon) by mortgage upon, or pledge, conveyance or assignment in trust of, the whole or any part of the property or funds of the Partnership, whether at the time owned or thereafter acquired and to sell, pledge or otherwise dispose of promissory notes, drafts, bills of exchange, warrants, bonds, debentures and other instruments or evidences of indebtedness of the Partnership;

3

(iii)    to lend any of its Securities, provided that collateral at least equal in value to the market value of such Securities is deposited by the borrower thereof with the Partnership or its Agent;

(iv)    to maintain for the conduct of Partnership affairs one or more offices and in connection therewith rent or acquire office space, engage personnel, whether part-time or full-time, and do such other acts as the General Partner may deem necessary or advisable in with the maintenance and administration of such office or offices; and

(v)    to engage attorneys, independent accountants, other investment advisers, management companies or such other persons as the General Partner may deem necessary or advisable.

Sec. 1.05. <u>Assignability of Interest</u>. Without the prior written consent of the General Partner, a Partner may not (i) pledge or assign its interest in whole or in part to any person except by operation of law, or (ii) substitute for itself as a Partner any other person. Any attempted pledge, assignment or substitution not made in accordance with the preceding sentence shall be void.

## ARTICLE II

## MANAGEMENT OF PARTNERSHIP

Sec. 2.01. <u>Management Generally</u>. The power to make all decisions with regard to the management of the Partnership, unless otherwise specified, shall be vested exclusively in the General Partner. The Limited Partners shall have no part in the management of the Partnership, and shall have no authority or right to act on behalf of the Partnership in connection with any matter.

Sec. 2.02. <u>Authority of the General Partner</u>. Except as otherwise expressly provided in this Agreement, the General Partner shall have full, exclusive and complete discretion in the management of the Partnership and the power on behalf and in the name of the Partnership to take any action on behalf of the Partnership hereunder, to carry out any and all of the purposes of the Partnership set forth in Sec. 1.04, and to perform all acts and enter into and perform all contracts and other undertakings which it may deem necessary or advisable or incidental thereto, including, without limitation, the power to:

(a)    effect transactions in Securities utilizing such investment strategies and techniques as shall be determined by the General Partner; provided however, that such strategies and techniques shall be consistent with those described in any documents utilized in connection with the offer and sale of interests in the Partnership;

4

(b)     open, conduct and close accounts, including margin accounts, with brokers, members of various options exchanges and money managers for the purpose of investing in Securities; which powers shall include, without limitation, the authority to pay, or authorize the payment of, brokerage commissions, management and incentive and/or performance fees (which may be in excess of the lowest commission rates or fee schedules available) and a portion of the Partnership's trading profits to, respectively (i) brokers which execute transactions for the account of the Partnership are, (ii) money managers receiving allocations of the Partnership's assets;

(c)     open, maintain and close bank accounts and draw checks or other orders for the payment of moneys;

(d)     lend, with or without security, any of the funds or properties of the Partnership and, from time to time without limit as to amount, borrow or raise funds and secure the payment of obligations of the Partnership by mortgage upon, or pledge or hypothecation of, all or any part of the property of the Partnership;

(e)     do any and all acts on behalf of the Partnership, and exercise all rights of the Partnership, with respect to its interest in any person, firm, corporation or other entity, including without limitation the voting of Securities, participation in arrangements with creditors, the institution and settlement or compromise of suits and administrative proceedings and other like or similar matters;

(f)     organize one or more corporations to hold record title, as nominee for the Partnership, to Securities or funds of the Partnership;

(g)     act for and on behalf of the Partnership, and authorize any General Partner, employee or other agent of the Partnership to act in all matters incidental to the foregoing;

(h)     act as investment adviser to the Partnership and provide research and analysis and direct the formulation of investment policies and strategies for the Partnership;

(i)     to represent the Partnership and to make decisions affecting tax treatment of the Partnership, and Fairfield Greenwich (Bermuda) Ltd., the General Partner, is hereby designated as the Tax Matters Partner; and

(j)     to exercise its discretion to waive for any Limited Partner any provision of this Partnership Agreement which imposes a requirement on a Limited Partner, whether it be for making an investment, withdrawing capital or

303006.1

otherwise, if and so long as such waiver does not adversely affect the rights of any other Limited Partner.

Sec. 2.03. <u>Reliance by Third Parties</u>. Persons dealing with the Partnership are entitled to rely conclusively upon the certificate or representation of the General Partner to the effect that they are then acting as General Partner and upon the power and authority of the General Partner as herein set forth.

Sec. 2.04. <u>Activity of the General Partner</u>. The General Partner shall devote so much of its time to the affairs of the Partnership as in the judgment of the General Partner the conduct of the Partnership's business shall reasonably require, and the General Partner shall not be obligated to do or perform any act or thing in connection with the business of the Partnership not expressly set forth herein. Nothing herein contained shall be deemed to preclude the General Partner, or its affiliates, from engaging directly or indirectly, in any other business, irrespective of whether any such business is similar to the business of the Partnership or shall otherwise involve purchasing, selling or holding securities or allocating assets to money managers; and nothing herein contained shall be deemed to preclude the General Partner or its affiliates from directly or indirectly purchasing, selling and holding securities or investing with money managers for the account of any such other business, or for its or their own accounts irrespective of whether any securities or interests in money managers are purchased, sold or held for the account of the Partnership, either directly or through an investment in a money manager. No Limited Partner shall by reason of being a Partner in the Partnership have any right to participate in any manner in any profits or income earned or derived by or accruing to any General Partner from the conduct of any business other than the business of the Partnership, from any transaction in Securities or any interest purchased in a money manager effected by any General Partner or an affiliate thereof for any account other than that of the Partnership.

Sec. 2.05. <u>Exculpation</u>. No General Partner or any officer, director, employee or other agent of any of them ("Affiliates of the General Partner") shall be liable to any Partner or the Partnership for mistakes of judgment or for action or inaction which said person reasonably believed to be in the best interests of the Partnership, or for losses due to such mistakes, action or inaction or to the negligence, dishonesty or bad faith of any employee, broker, money manager or other agent of the Partnership, provided that such employee, broker, money manager or agent was selected, engaged or retained by the Partnership with reasonable care. The General Partner and the Affiliates of the General Partner may consult with counsel, advisers (investment and otherwise), and accountants in respect of Partnership affairs and shall be fully protected and justified in any action or inaction which is taken in accordance with the advice or opinion of such counsel, advisers or accountants, provided that they shall have been selected with reasonable care. Notwithstanding any of the foregoing to the contrary, the provisions of this Sec. 2.05 shall not be construed so as to relieve (or attempt to relieve) any General Partner or any Affiliates of the General Partner of any liability, to the extent (but only to the extent) that such liability may not be waived, modified or limited under applicable law, but shall be construed so as to effectuate the provisions of this Sec. 2.05 to the fullest extent permitted by law.

6

Sec. 2.06. Indemnification of General Partner. To the fullest extent permitted by law, the Partnership shall indemnify and hold harmless each General Partner and former General Partner, Affiliates of the General Partner and/or the legal representatives, of any of them from and against any loss or expense suffered or sustained by him, by reason of the fact that he is or was a General Partner of the Partnership or an Affiliate of the General Partner, including without limitation any judgment, settlement, reasonable attorneys' fees and other costs or expenses incurred in connection with the defense of any actual or threatened action or proceeding provided, such loss or expense resulted from a mistake of judgment on the part of such person, or from action or inaction taken in good faith for a purpose which said person reasonably believed to be in the best interests of the Partnership. The Partnership shall, in the sole discretion of the General Partner, advance to any General Partner and to any of the Affiliates of the General Partner, and/or the legal representatives of any of them, reasonable attorney's fees and other costs and expenses incurred in connection with the defense of any action or proceeding which arises out of such conduct. The General Partner and the Affiliates of the General Partner, and the legal representative of any of them, shall agree, that in the event that he or it receives any such advance, such person shall reimburse the Partnership for such fees, costs and expenses to the extent it shall be determined that he or it was not entitled to indemnification under this section.

*[handwritten margin note: "Can advance fees"]*

Sec. 2.07. Payment of Costs and Expenses. The Partnership shall be responsible for all legal, accounting and other organizational fees and expenses incurred in connection with the formation of the Partnership and the offering and sale of the limited partnership interests. Such expenses may, for net asset value purposes, be amortized over a period of up to 60 months from the date the Partnership commences operations; provided that offering expenses in excess of $25,000 will be borne by the General Partner.

The General Partner shall bear all continuing offering costs and all expenses in maintaining the Partnership's offices and administration fees (collectively, the "Offering and Office Expenses"). The Partnership shall bear, for each Accounting Period, all other expenses incurred in the operation of the Partnership, if any, including, the Management Fee, taxes, the ordinary and necessary expenses directly related to the Partnership's investment and trading activities, including transactional costs (e.g., brokerage commissions and interest expense), escrow and custodial fees, registrar, transfer agent and administration fees, all legal, accounting and auditing fees, including any legal and auditing fees that relate to extraordinary circumstances, such as tax examinations or litigation involving the Partnership; but excluding any legal fees incurred in the continuation of the offering of interests in the Partnership. The Partnership will pay the General Partner or its designee, an amount equal to one-fortieth of one percent (0.025%) of the Beginning Value allocable to the Capital Accounts of the Limited Partners to reimburse the General Partner for providing administrative services and back-office support to the Partnership (the "Expense Reimbursement"). To the extent a Limited Partner is charged the Management Fee, such Limited Partner will not be charged his pro-rata share of the Expense Reimbursement.

303006.1

The General Partner may elect to have the Partnership pay any operating expenses required to be borne by the General Partner and to charge the amount paid to the General Partner's Capital Account (as defined in Sec. 3.03).

Sec. 2.08. The General Partner will receive a monthly management fee calculated at the annual rate of approximately 1% (.0833% per month) of each Limited Partner's capital account (the "Management Fee"). The Management Fee will be paid monthly in arrears based on the value of each Limited Partner's capital account as of the last day of each calendar month (adjusted for contributions made during the quarter). The General Partner, in its sole discretion, may waive or modify the Management Fee for Limited Partners that are members, employees or affiliates of the General Partner, relatives of such persons, and for certain large or strategic investors.

## ARTICLE III

## CAPITAL ACCOUNTS OF PARTNERS AND OPERATIONS THEREOF

Sec. 3.01. Definitions. For the purposes of this Agreement, unless the context otherwise requires:

(a)    The term "Accounting Period" shall mean a fiscal quarter of the Partnership.

(b)    The term "Beginning Value" shall, with respect to any Accounting Period or month, mean the value of the Partnership's Net Assets at the beginning of such Accounting Period or month.

(c)    The term "Ending Value" shall, with respect to any Accounting Period or month, mean the value of the Partnership's Net Assets at the end of such Accounting Period or month (before giving effect to withdrawals).

(d)    The term "Net Assets" shall mean the excess of the Partnership's assets over its liabilities.

(e)    The term "Net Capital Appreciation" shall, with respect to any Accounting Period, mean the excess, if any, of the Ending Value over the Beginning Value;

(f)    The term "Net Capital Depreciation" shall, with respect to any Accounting Period, mean the excess, if any, of the Beginning Value over the Ending Value.

Sec. 3.02. Capital Contributions.    Each Partner has made an initial cash contribution to the Partnership in the amount set forth opposite such Partner's name in Parts I or II of the Schedule (the "Initial Capital Contribution"). The General Partner has made Initial

8

Capital Contributions and may make such additional Capital Contributions in the future and each Limited Partner's Initial Capital Contribution has been in an amount not less than $1,000,000, subject to authority of the General Partner, in its sole discretion, to accept Initial Capital Contributions of less than $1,000,000. Additional capital contributions may be made by Partners only in accordance with provisions of Sec. 3.03. Capital Contributions to the Partnership shall not bear interest.

Sec. 3.03. <u>Capital Accounts</u>. A capital account (herein called the "Capital Account") shall be established on the books of the Partnership for each Partner. The Capital Account of each Partner shall be in an amount equal to such Partner's Initial Capital Contribution, adjusted as hereinafter provided. At the beginning of each Accounting Period, the Capital Account of each Partner shall be increased or decreased by the amount of any capital contribution to, or withdrawal from, the Partnership made by such Partner as of the first day of such Accounting Period. At the end of each Accounting Period, the Capital Account of each Partner shall be increased or decreased by the amount credited or debited to the Capital Account of such Partner pursuant to Sec. 3.05. In the event a Partner has either contributed or withdrawn capital during an Accounting Period, the adjustments and allocations set forth in Secs. 3.03 and 3.05 shall be made in accordance with Sec. 3.11.

Additional contributions to the Partnership may be made by Partners as of the first day of any calendar month, by notifying the General Partner of his or its desire to do so. The General Partner shall have the right to accept or decline any such additional contributions.

Sec. 3.04. <u>Partnership Percentages</u>. A partnership percentage (herein called the "Partnership Percentage") shall be determined for each Partner for each Accounting Period by dividing the amount of each Partner's Capital Account at the beginning of such Accounting Period by the sum of the aggregate Capital Accounts of all Partners at the beginning of such Accounting Period. The sum of the Partnership Percentages shall equal 100 percent. The Partnership Percentages shall be set forth in the Schedule.

Sec. 3.05. Allocation of Net Capital Appreciation or Net Capital Depreciation.

(a) At the end of each Accounting Period, the Capital Account of each Partner (including the General Partner) for such Accounting Period shall be adjusted by crediting (in the case of Net Capital Appreciation) or debiting (in the case of Net Capital Depreciation) all Net Capital Appreciation or all Net Capital Depreciation (including the General Partner) in proportion to their respective Partnership Percentages. Such allocations shall be tentative and subject to readjustment as provided in Sec. 3.05(b).

(b) At the end of each Accounting Period, (i) 20% of the Net Capital Appreciation allocated to a Limited Partner's Capital Account for such Accounting Period pursuant to Sec. 3.05(a) shall be reallocated to the Capital Account of the General Partner (the "Incentive Allocation"); provided, however, that such reallocations shall only be made to the extent

9

that aggregate Net Capital Appreciation for the Accounting Period exceeds the unrecovered balance remaining in the Loss Recovery Account (defined below) maintained on the books and records of the Partnership for such Limited Partner.

Sec. 3.06. <u>Loss Recovery Account</u>. There shall be established on the books of the Partnership for each Limited Partner a memorandum account (herein called the "Loss Recovery Account"), the opening balance of which shall be zero. At the end of each Accounting Period, the balance in each Limited Partner's Loss Recovery Account shall be adjusted as follows: (i) if there is Net Capital Depreciation for such Accounting Period, an amount equal to the Net Capital Depreciation allocated to such Limited Partner's Capital Account shall be charged to and increase such Limited Partner's Loss Recovery Account; or (ii) if there is Net Capital Appreciation for such Accounting Period, an amount equal to the Net Capital Appreciation before any Incentive Allocation to the General Partner, allocated to such Limited Partner's Capital account shall be credited to and reduce any unrecovered balance in such Limited Partner's Loss Recovery Account, but not below zero.

In the event that a Limited Partner with an unrecovered balance in his or its Loss Recovery Account withdraws all or a portion of his or its capital in the Partnership, the unrecovered balance in such Limited Partner's Loss Recovery Account shall be reduced as of the beginning of the next Accounting Period by an amount equal to the product obtained by multiplying the balance in such Limited Partner's Loss Recovery Account by a fraction, the numerator of which is the amount of the withdrawal made by such Limited Partner as of the last day of the prior Accounting Period and the denominator of which is the balance in such Limited Partner's Capital Account on the last day of the prior Accounting Period (prior to the withdrawal made by the Limited Partner as of the last day of the Accounting Period). Additional capital contributions shall not affect any Limited Partner's Loss Recovery Account.

Sec. 3.07. <u>Valuation of Assets</u>.

(a)     Securities which are listed on a national securities exchange shall be valued at their last sales prices on the date of determination on the largest national securities exchange on which such securities shall have traded on such date, or if trading in such Securities on the largest national securities exchange on which such Securities shall have traded on such date was reported on the consolidated tape, their last sales prices on the consolidated tape (or, in the event that the date of determination is not a date upon which a national securities exchange was open for trading, on the last prior date on which such securities was open not more than 10 days prior to the date of determination). If no such sales of Securities occurred on either of the foregoing dates, such Securities shall be valued at the "bid" price for long positions and "asked" price for short positions on the largest national securities exchange on which such securities are traded, on the date of determination, or, if "bid" prices for long positions

10

and "asked" prices for short positions in such Securities on the largest national securities exchange on which such Securities shall have traded on such date were reported on the consolidated tape, the "bid" price for long positions and "asked" price for short positions on the consolidated tape (or, if the date of determination is not a date upon which such securities exchange was open for trading, on the last prior date on which such a national securities exchange was so open not more than 10 days prior to the date of determination). Securities which are not listed shall be valued at representative "bid" quotations if held long by the Partnership and representative "asked" quotations if held short by the Partnership, unless included in the NASDAQ National Market System, in which case they shall be valued based upon their last sales prices (if such prices are available). Securities for which no such market prices are available shall be valued at such value as the General Partner may reasonably determine.

(b)     All other assets of the Partnership including any investments in Securities not capable of valuation pursuant to subparagraph (a) of this Sec. 3.07 (except good will, which shall not be taken into account), shall be assigned such value as the General Partner may reasonably determine.

(c)     If the General Partner determines that the valuation of any Securities or other property pursuant to Sec. 3.07 (a) does not fairly represent market value, the General Partner shall value such Securities or other property as they reasonably determine and shall set forth the basis of such valuation in writing in the Partnership's records.

(d)     All values assigned to Securities and other assets by the General Partner pursuant to this Article III shall be final and conclusive as to all of the Partners.

Sec. 3.08. <u>Liabilities</u>.     Liabilities shall be determined in accordance with generally accepted accounting principles, applied on a consistent basis, provided, however, that the General Partner in its discretion may provide reserves for contingencies.

Sec. 3.09. <u>Allocation for Tax Purposes</u>.  For each fiscal year, items of income, deduction, gain, loss or credit shall be allocated for income tax purposes among the Partners in such manner as to reflect equitably amounts credited or debited to each Partner's Capital Account pursuant to Sec. 3.05 for the current and prior fiscal years. Such allocations shall be made pursuant to the principles of Section 704(c) of the Internal Revenue Code of 1986, as amended (the "Code"), and in conformity with Regulations Secs. 1.704-1(b)(2)(iv)(f) and 1.704-1(b)(4)(i) promulgated thereunder, or the successor provisions to such Section and Regulations. Notwithstanding anything to the contrary in this Agreement, there shall be allocated to the Partners such gain or income as shall be necessary to satisfy the "qualified income offset" requirements of Regulation Sec. 1.704-1(b)(2)(ii)(d).

11

Sec. 3.10. <u>Determination by General Partner of Certain Matters</u>. All matters concerning the valuation of Securities and other assets of the Partnership, the allocation of profits, gains and losses among the Partners including taxes thereon, and accounting procedures not expressly provided for by the terms of this Agreement shall be determined by the General Partner, whose determination shall be final and conclusive as to all of the Partners.

Sec. 3.11. <u>Adjustments to Take Account of Interim Accounting Period Events</u>. If a Partner shall make additional capital contributions to the Partnership, withdraw from the Partnership or make a withdrawal from his or its Capital Account as of a date other than the last day of an Accounting Period, the General Partner shall make such adjustments in the determination and allocation among the Partners of Net Capital Appreciation, Net Capital Depreciation, Capital Accounts, Partnership Percentages, items of income, deduction, gain, loss or credit for tax purposes and accounting procedures as shall equitably take into account such interim Accounting Period event and applicable provisions of law, and the determination thereof by the General Partner shall be final and conclusive as of all of the Partners.

## ARTICLE IV

### WITHDRAWALS AND DISTRIBUTIONS OF CAPITAL

Sec. 4.01. <u>Withdrawals and Distributions in General</u>. No Partner shall be entitled (i) to receive distributions from the Partnership, except as provided in Sec. 7.02; or (ii) to withdraw any amount from his or its Capital Account other than upon his or its withdrawal from the Partnership, except as provided in Sec. 4.02.

Sec. 4.02. Withdrawals.

(a) Subject to Secs. 4.02(b) and 4.03, at the end of each calendar month, a Partner will have the right, upon fifteen (15) calendar days' prior written notice to the General Partner and the Partnership's administrator, if any, to withdraw all or any portion of his or its Capital Account. The Capital Account of a withdrawing Limited Partner shall be determined as of the effective date of his or its withdrawal, including deductions for accrued expenses, accrued Management Fee and any accrued Incentive Allocation. Payment of any amount withdrawn at the end of any accounting period pursuant to this Sec. 4.02 shall be made within 20 business days after the end of the calendar month in which such withdrawal is made.

(b) With respect to the Capital Account of any foreign Partner, and notwithstanding any provision of this Agreement to the contrary, the General Partner shall withhold and pay over to the Internal Revenue Service, pursuant to Section 1441 of the Code, or any successor provision, at such times as required by such Section, such amounts as the Partnership

12

is required to withhold under such Section 1441, as from time to time in effect, on account of such foreign Partner's distributive share of the Partnership's items of gross income which are subject to withholding tax pursuant to such Section. To the extent that a foreign claims to be entitled to a reduced rate of, or exemption from, U.S. withholding tax pursuant to an applicable income tax treaty, or otherwise, the foreign Partner shall furnish the General Partner with such information and forms as it may require and are necessary to comply with the regulations governing the obligations of withholding tax agents. Each foreign Partner represents and warrants that any such information and forms furnished by it shall be true and accurate and agrees to indemnify the Partnership and each of the Partners from any and all damages, costs and expenses resulting from the filing of inaccurate or incomplete information or forms relating to such withholding taxes.

Any amount of withholding taxes withheld and paid over by the General Partner with respect to a foreign Partner's distributive share of the Partnership's gross income shall be treated as a distribution to such foreign Partner and shall be charged against the Capital Account of such foreign Partner.

Sec. 4.03. <u>Limitation on Withdrawals</u>. The right of any Partner to withdraw any amount from his or its Capital Account pursuant to the provisions of Sec. 4.02 is subject to the provision by the General Partner for (i) Partnership liabilities in accordance with generally accepted accounting principles, and (ii) reserves for contingencies, all in accordance with Sec. 3.08. The unused portion of any reserve shall be distributed, with interest at the prevailing savings bank rate for unrestricted deposits from time to time in effect in New York, New York, as determined by the General Partner, after the General Partner has determined that the need therefor shall have ceased.

Sec. 4.04. <u>Salaries or Other Payments or Allocations to the General Partner</u>. Except for the Incentive Allocation, the Management Fee and the Expense Reimbursement, the Partnership shall not make any payments or allocations to the General Partner other than the allocation of Net Capital Appreciation (if any) to the General Partner in respect of its Partnership Percentage pursuant to Sec. 3.05(a), and reimbursement for certain allocable expenses.

ARTICLE V

ADMISSION OF NEW PARTNERS

Sec. 5.01. <u>New Partners</u>. Partners may, with the consent of the General Partner, be admitted to the Partnership as of the beginning of each calendar month or at such other times as permitted by the General Partner in its sole discretion. Each new partner will be required to execute an agreement pursuant to which he or it becomes bound by the terms of this Agreement. Admission of a new Partner shall not be cause for dissolution of the Partnership.

# ARTICLE VI

## WITHDRAWAL, DEATH OR INSANITY OF PARTNERS

Sec. 6.01. <u>Withdrawal, Death, etc. of a General Partner</u>. A General Partner may, upon 15 calendar days' prior written notice to the Partnership and the Partnership's administrator, if any, withdraw from the Partnership at the end of any calendar month with the consent of each of the other General Partners, if any. Upon the withdrawal, death, disability, adjudication of incompetency, bankruptcy or insolvency of any General Partner, the Partnership shall dissolve unless there are one or more remaining General Partners who agree to continue the Partnership. In the event that the remaining General Partners determine not to continue the Partnership, the remaining General Partners, or if there is no remaining General Partner, one or more persons selected by a majority in interest of the Limited Partners, shall terminate and wind up the affairs of the Partnership in accordance with Sec. 7.02.

In the event of the death, disability, adjudication of incompetency, bankruptcy or insolvency of a General Partner or the giving of notice of withdrawal by a General Partner, the interest of such General Partner shall continue at the risk of the Partnership business until (i) the last day of the fiscal year in which such event takes place (or such earlier date as shall be determined by the General Partners) (herein called the "determination date") or, (ii) the earlier termination of the Partnership. If the Partnership is continued after the expiration of the determination date, such General Partner or his legal representatives shall be entitled to receive within 90 days of the determination date, in accordance with Sec. 6.02, the Capital Account of such General Partner as of the effective date of such General Partner's withdrawal as determined pursuant to Sec. 6.04 hereof. The General Partners may withhold from such balance an amount equal to the legal, accounting and administrative costs associated with the General Partner's withdrawal, if it determines that such costs should not be borne by the Partnership. A General Partner who serves notice of withdrawal, dies, or becomes disabled, incompetent, bankrupt, or insolvent or a General Partner's legal representative who serves such notice, shall have no right to take part in the management of the business of the Partnership and the interest or Partnership Percentage of such General Partner shall not be included in calculating the interests of the Partners or General Partners, respectively, required to take action under any provision of this Agreement.

If a General Partner shall become disabled, and such disability shall continue for a period of six consecutive months, the General Partners (or if the disabled General Partner is the sole remaining General Partner, one or more persons selected by a majority in interest of the Limited Partners) may require such General Partner to withdraw from the Partnership as of the last day of the fiscal year in which the six month period shall expire in which case the Partnership shall be terminated and its affairs wound up in accordance with Sec. 7.02. A General Partner required to withdraw pursuant to this paragraph of Sec. 6.01 shall be treated for all purposes and in all respects as a General Partner who withdraws involuntarily due to death or insanity.

303006.1

A General Partner shall be deemed to be "disabled" if, by reason of physical or mental disease, illness or injury, he is rendered unable to perform, or to supervise the performance of, his functions as a General Partner hereunder for a period of not less than 45 consecutive days.

Sec. 6.02. <u>Withdrawal, Death, etc. of Limited Partner</u>. A Limited Partner may, upon fifteen (15) calendar days' prior notice, withdraw from the Partnership at the end of any calendar month of the Partnership. The withdrawal, death, disability, incompetency, bankruptcy, insolvency, termination or dissolution of a Limited Partner shall not dissolve the Partnership.

In the event of the death, disability, incompetency, bankruptcy, insolvency, termination or dissolution of a Limited Partner or the giving of notice of withdrawal by a Limited Partner, the interest of such Limited Partner shall continue at the risk of the Partnership business until (i) the last day of the calendar month in which such event takes place (or such earlier date as shall be determined by the General Partner) (herein called the "month of determination") or (ii) the earlier termination of the Partnership. If the Partnership is continued after the expiration of the month of determination, such Limited Partner or his legal representatives shall be entitled to receive within 90 days of the end of such calendar month (or earlier withdrawal date), the amount of the Capital Account of such Limited Partner as of the effective date of withdrawal as determined under Sec. 6.04. The interest of a Limited Partner who serves notice of withdrawal, dies or becomes disabled, incompetent, bankrupt, insolvent or is terminated or dissolved, or a Limited Partner's legal representative who serves such notice shall have no right to be included in calculating the Partnership Percentages of the Limited Partners required to take any action under this Agreement.

A Limited Partner who withdraws from the Partnership shall be paid at least 97% of his estimated Capital Account within 20 business days after the last day of the month of determination. The balance of such Limited Partner's Capital Account shall be paid (subject to audit adjustments and with interest) within 30 days after completion of the audit of the Partnership's books for the fiscal year of the quarter of determination pursuant to Sec. 8.01. The interest of a Limited Partner withdrawing pursuant to this paragraph shall not be included in calculating Partnership Percentages of the Limited partners required to take any action under this Agreement.

Sec. 6.03. <u>Required Withdrawals</u>. The General Partner may (i) terminate the interest of any Limited Partner in the Partnership at the end of any calendar month, upon at least 10 days' prior written notice and (ii) terminate the interest of any Limited Partner at any time upon at least five days' prior written notice, if, among other reasons, the General Partner determines that the continued participation of such Limited Partner in the Partnership might cause the Partnership or any Partner to violate any law, or if any litigation is commenced or threatened against the Partnership or any Partner arising out of, or relating to, the participation of such Limited Partner in the Partnership. A notice of termination pursuant to this Sec. 6.03 shall have the same effect as a notice of withdrawal by such Limited Partner pursuant to Sec. 6.02 and

15

the Limited Partner receiving such notice shall be treated for all purposes and in all respects as a Limited Partner who has given notice of withdrawal.

Sec. 6.04. <u>Effective Date of Withdrawal</u>. The Capital Account of a withdrawing Limited Partner shall be determined as of the effective date of his or its withdrawal, including deductions for accrued expenses (including the Expense Reimbursement), accrued Management Fee and any accrued Incentive Allocation. For purposes of this Sec. 6.04, the effective date of a Limited Partner's withdrawal shall mean (as the case may be): (i) the last day of the calendar month in which such Partner shall cease to be a Partner pursuant to Sec. 6.02 or clause (i) of Sec. 6.03; or (ii) the date specified in the written notice referred to in clause (ii) of Sec. 6.03 if such Partner shall be required to withdraw from the Partnership pursuant to such clause. In the event the effective date of a Limited Partner's withdrawal shall be a date other than the last day of a calendar month of the Partnership, the effective date of such Limited Partner's withdrawal shall be deemed to be the last day of a calendar month for purposes of adjusting the Capital Account of the withdrawing Limited Partner pursuant to Sec. 3.05.

Sec. 6.05. <u>Limitations on Withdrawal of Capital Account</u>. The right of any withdrawn, deceased, disabled, incompetent, bankrupt, insolvent, terminated or dissolved partner or his legal representative to have distributed the Capital Account of such Partner pursuant to this Article VI is subject to the provision by the General Partner for all Partnership liabilities and for reserves for contingencies. The unused portion of any reserve shall be distributed, with interest at the prevailing savings bank rate for unrestricted deposits from time to time in effect in New York City, as determined by the General Partner, after the General Partner shall have determined that the need therefor shall have ceased.

ARTICLE VII

DURATION AND TERMINATION OF PARTNERSHIP

Sec. 7.01. <u>Duration</u>. The Partnership shall continue until December 31, 2112, unless sooner terminated pursuant to Sec. 6.01 or at any time, by decision of the General Partner.

Sec. 7.02. <u>Termination</u>. On termination of the business of the Partnership, the General Partner, or in the event of a termination pursuant to Sec. 6.01, the persons representing the Limited Partners shall, promptly after completion of a final audit of the Partnership's books and records (which shall be performed within 90 days of such termination) make distributions out of the Partnership assets, in the following manner and order:

      (a)    to payment and discharge of the claims of all creditors of the Partnership who are not Partners;

      (b)    to payment and discharge pro rata of the claims of all creditors of the Partnership who are Partners; and

16

(c)    to the Partners in the relative proportions that their respective Liquidating Shares bear to each other.

In the event that the Partnership is terminated on a date other than the last day of a fiscal year, the date of such termination shall be deemed to be the last day of an Accounting Period for purposes of adjusting the Capital Accounts of the Partners pursuant to Sec. 3.05. For purposes of distributing the assets of the Partnership upon termination, the General Partner shall be entitled to a return, on a pari passu basis with the Limited Partners, of the amounts standing to their credit in their respective Capital Accounts, and, with respect to their share of profits, based upon their Partnership Percentages.

Sec. 7.03. <u>Method of Distribution</u>. Distributions made pursuant to subparagraphs (a) and (b) of Sec. 7.02 shall be made solely in cash.

## ARTICLE VIII

## REPORTS TO PARTNERS

Sec. 8.01. <u>Independent Auditors</u>. The Partnership shall maintain true and complete books of account and records which shall be audited as of the end of each fiscal year by independent certified public accountants selected by the General Partner.

Sec. 8.02. <u>Filing of Tax Returns</u>. The General Partner shall prepare and file, or cause the accountants of the Partnership to prepare and file, a federal information tax return in compliance with Section 6031 of the Code and any required state and local income tax and information returns for each tax year of the Partnership.

Sec. 8.03. <u>Reports to Partners</u>. Within 90 days after the end of each fiscal year, the Partnership shall prepare, or cause to be prepared, and mail to each Partner, together with the report thereon of the independent certified public accountants selected by the General Partner, a financial report setting forth as of the end of each fiscal year:

(a)    a profit and loss statement showing the results of operations of the Partnership together with the Net Capital Appreciation or Net Capital Depreciation of the Partnership;

(b)    such Partner's Capital Account and the manner of its calculation; and

(c)    such Partner's Partnership Percentage as of the end of such fiscal year.

Within 30 days following the end of each of the first Accounting Periods in each fiscal year, or at more frequent intervals as determined in the sole and exclusive discretion of the General Partner, the Partnership shall prepare and mail to each Partner a report setting forth, as of the end of such Accounting Period, the information described in sub-paragraphs (a) and (b) above for such Accounting Period.

17

Sec. 8.04. <u>Reports to Partners and Former Partners</u>. In addition, the independent certified public accountants selected by the General Partner shall prepare and mail (i) to each Partner and (ii) to each former Partner (or his legal representatives) to the extent necessary a report setting forth in sufficient detail such transactions effected by the Partnership during such fiscal year as shall enable such Partner or former Partner (or his legal representatives) to prepare their respective federal income tax returns in accordance with the laws, rule and regulations then prevailing. The Partners (and each employee, representative or other agent of a Partner) may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of Partnership transactions and all materials of any kind (including opinions and tax analyses) that are provided to any such Partner relating to such tax treatment and tax structure.

Sec. 8.05. <u>Tax Matters Partner</u>. The General Partner shall at all times constitute, and have full powers and responsibilities as, the Tax Matters Partner of the Partnership with respect to such return for purposes of Section 6231(a)(7) of the Code. Each person (herein called a "Pass-Thru Partner") that holds or controls an interest as a Limited Partner on behalf of, or for the benefit of another person or persons, or which Pass-Thru Partner is beneficially owned (directly or indirectly) by another person or persons shall, within 30 days following receipt from the Tax Matters Partner of any notice, demand, request for information or similar document, convey such notice or other document in writing to all holders of beneficial interests in the partnership holding such interests through such Pass-Thru Partner. In the event the Partnership shall be the subject of an income tax audit by any federal, state or local authority, to the extent the Partnership is treated as an entity for purposes of such audit, including administrative settlement and judicial review, the Tax Matters Partner shall be authorized to act for, and his decision shall be final and binding upon, the Partnership and each Partner thereof. All expenses incurred in connection with any such audit, investigation, settlement or review shall be borne by the Partnership.

## ARTICLE IX

## MISCELLANEOUS

Sec. 9.01. <u>General</u>. This Agreement: (i) shall be binding on the executors, administrators, estates, heirs, and legal successors and representatives of the Partners; (ii) shall be governed by, and construed in accordance with, the laws of the State of Delaware; and (iii) may be executed in several counterparts with the same effect as if the parties executing the several counterparts had all executed one counterpart as of the day and year first above written, provided, however, that each separate counterpart shall have been executed by at least one of the General Partners, if there is more than one General Partner, and that the several counterparts, in the aggregate, shall have been signed by all the Partners. Except as otherwise provided herein, whenever any action is to be taken by the General Partners, it shall be authorized by a majority of the General Partners.

Sec. 9.02. <u>Power of Attorney</u>. Each of the undersigned does hereby constitute and appoint the General Partner, acting individually, as his true and lawful representative and attorney-in-fact, in his name, place and stead to make, execute, sign and file:

    (a)    a Certificate of Limited Partnership of the Partnership and all amendments thereto as may be required under the Act or otherwise including, without limitation, any such filing for the purpose of admitting the undersigned and others as Limited Partners and describing their initial or any increased Capital Contributions;

    (b)    all amendments or modifications to the Partnership Agreement to the extent provided in the last paragraph of this Sec. 9.02;

    (c)    any and all instruments, certificates, and other documents which may be deemed necessary or desirable to effect the winding-up and termination of the Partnership (including, but not limited to, a Certificate of Cancellation of the Certificate of Limited Partnership); and

    (d)    any business certificate, fictitious name certificate, amendment thereto, or other instrument or document of any kind necessary or desirable to accomplish the business, purpose and objectives of the Partnership, or required by any applicable federal, state or local law.

The power of attorney hereby granted by each of the Partners is coupled with an interest, is irrevocable, and shall survive, and shall not be affected by, the subsequent death, disability, incapacity, incompetency, termination, bankruptcy, insolvency or dissolution of such Limited Partner.

Such representative and attorney-in-fact shall not have any right, power or authority to amend or modify this Agreement when acting in such capacity, except in the case of an amendment or modification permitted without the approval of the Partners pursuant to Sec. 9.03 or approved by the requisite Partnership Percentages of the Partners.

Sec. 9.03. <u>Amendments to Partnership Agreement</u>. The terms and provisions of this Agreement may be modified or amended at any time and from time to time with the written consent of Partners having in excess of 50% of the Partnership Percentages of the Partners and the written consent of the General Partner insofar as is consistent with the laws governing this Agreement, provided, however, that, without the specific consent of each Partner affected thereby, no such modification or amendment shall (i) reduce the Capital of any Partner or his rights of contribution or withdrawal with respect thereto; (ii) amend Sec. 3.05; or (iii) amend this Sec. 9.03, and provided, further, that without the consent of the Partners the General Partner may (i) amend the Agreement or Schedule hereto to reflect changes validly made in the membership of the Partnership and the Capital Contributions and Partnership Percentages of the partners; (ii) reflect a change in the name of the Partnership or the effective date of the Partnership; (iii) make a change that is necessary or, in the opinion of the General Partner, qualify the Partnership as a

19

limited partnership or a partnership in which the Limited Partners have limited liability under the laws of any state, or ensure that the Partnership will not be treated as an association taxable as a corporation for federal income tax purposes; (iv) make a change that does not adversely affect the Partners in any material respect, or that is necessary or desirable to cure any ambiguity, to correct or supplement any provision in this Agreement that would be inconsistent with any other provision in this Agreement, or to make any other provision with respect to matters or questions arising under this Agreement that will not be inconsistent with any other provisions of this Agreement, in each case so long as such change does not adversely affect the Partners; (v) make a change that is necessary or desirable to satisfy any requirements, conditions or guidelines contained in any opinion, directive, order, ruling or regulation of any Federal or state statute, so long as such change is made in a manner which minimizes any adverse effect on the Partners, or that is required or contemplated by this Agreement; (vi) make a change in any provision of this Agreement that requires any action to be taken by or on behalf of the General Partner or the Partnership pursuant to the requirements of applicable Delaware law if the provisions of applicable Delaware law are amended, modified or revoked so that the taking of such action is no longer required; or (vii) make any other amendments similar to the foregoing.

Sec. 9.04. <u>Adjustment of Basis of Partnership Property</u>. In the event of a distribution of Partnership property to a Partner or an assignment or other transfer (including by reason of death) of all or part of the interest of a Limited Partner in the Partnership, the General Partner, in their discretion, may cause the Partnership to elect, pursuant to Section 754 of the Code, or the corresponding provision of subsequent law, to adjust the basis of the Partnership property as provided by Sections 734 and 743 of the Code.

Sec. 9.05. <u>Choice of Law</u>. Notwithstanding the place where the Agreement may be executed by any of the parties thereto, the parties expressly agree that all the terms and provisions hereof shall be construed under the laws of the State of Delaware and, without limitation thereof, that the Act as now adopted or as may be hereafter mended shall govern the partnership aspects of this Agreement.

Sec. 9.06. <u>Inspection of Books and Records</u>. The Partnership's books of account and records shall be available for inspection by any Partner during reasonable business hours at the office of the Partnership.

Sec. 9.07. <u>Notices</u>. Each notice relating to this Agreement shall be in writing and delivered in person or by registered or certified mail. All notices to the Partnership shall be addressed to its principal office and place of business. All notices addressed to a Partner shall be addressed to such Partner at the address set forth in the Schedule. Any Partner may designate a new address by notice to that effect given to the Partnership. Unless otherwise specifically provided in this Agreement, a notice shall be deemed to have been effectively given when mailed by registered or certified mail to the proper address or delivered in person.

Sec. 9.08. <u>Goodwill</u>. No value shall be placed on the name or goodwill of the Partnership, which shall belong exclusively to the General Partner.

303006.1

Sec. 9.09. Headings. The titles of the Articles and the headings of the Sections of this Agreement are for convenience of reference only and are not to be considered in construing terms and provisions of this Agreement.

IN WITNESS WHEREOF, the undersigned have hereto set their hands and seals as of the day and year first above written.

GENERAL PARTNER:                    LIMITED PARTNERS:
FAIRFIELD GREENWICH (BERMUDA)
LTD.
    A Bermuda Corporation

By: _____       _____
    Director                        Fairfield Greenwich (Bermuda) Ltd., by Amit
                                     Vijayvergiya, Vice President,
                                     Attorney-in-Fact, pursuant to Power of
                                     Attorney in Sec. 9.02 of the Limited
                                     Partnership Agreement

21

GREENWICH SENTRY PARTNERS, L.P.

SCHEDULE OF CAPITAL CONTRIBUTIONS



**Exhibit 9**

## AMENDED AND RESTATED INVESTMENT MANAGEMENT AGREEMENT

This Amended and Restated Investment Management Agreement (the Agreement"), dated as of October 1, 2002, which amends and restates the Investment Management Agreement dated as of December 31, 2001 (the "Original Investment Management Agreement"), between Fairfield Sentry Limited, a British Virgin Islands corporation (the "Fund"), having its registered office at Citco B.V.I. Limited, P.O. Box 662, Road Town, Tortola, British Virgin Islands, and Fairfield Greenwich Limited, a corporation organized under the laws of the Cayman Islands (the "Investment Manager"), having an office at c/o Charles, Adams, Ritchie & Duckworth, Second Floor, Zephyr House, P.O. 709, George Town, Grand Cayman, Cayman Islands, British West Indies.

WHEREAS, the Fund and the Investment Manager are parties to the Original Investment Management Agreement; and

WHEREAS, the Fund and the Investment Manager desire to amend and restate the Original Investment Management Agreement in its entirety on the terms and conditions set forth below,

NOW, THEREFORE, in consideration of the premises and of the mutual covenants and agreements hereinafter set forth, the parties hereby agree as follows:

1. The Fund hereby retains the Investment Manager to manage the investment of its assets as contemplated by and described in the Confidential Private Placement Memorandum of the Fund, as amended October 1, 2002, and as such Confidential Private Placement Memorandum may be further amended (the "Memorandum"). Such management will include, but shall not be limited to maintaining the account established in the name of the Fund at Bernard L. Madoff Investment Securities, Inc., a broker dealer registered with the Securities and

9303111.4

Exchange Commission, in New York, New York ("BLM"), for the purpose of trading in equity securities and options on securities, and to investing assets of the Fund in Non-BLM investment vehicles ("Non-BLM Investments").

2. The activities engaged in by the Investment Manager on behalf of the Fund shall be subject to the policies and control of the Fund's Directors. The Investment Manager shall use its best efforts to monitor the activities and performance of BLM and any Non-BLM Investments.

3. Within 5 days after the end of each week, month or fiscal quarter of the Fund, as the case may be, the Investment Manager shall send to the Fund weekly, monthly and quarterly valuations of the account with BLM maintained by the Fund and weekly, monthly and quarterly valuations of any Non-BLM Investments. The Investment Manager shall cause any and all documentation respecting such account to be sent to the Fund. The Investment Manager shall be available at all times, upon reasonable notice, for consultation with the Directors of the Fund in connection with the investments of the Fund.

4. The Investment Manager shall for all purposes be an independent contractor and not an agent or employee of the Fund, and the Investment Manager shall have no authority to act for, represent, bind or obligate the Fund except as specifically provided herein.

5. All investments of the Fund shall at all times conform to and be in accordance with the requirements imposed by:

      (a)    any provisions of applicable law; and

      (b)    provisions of the Certificate of Incorporation, Memorandum of Association, and Articles of Association of the Fund, as amended from time to time.

The Fund shall furnish the Investment Manager with a copy of the Certificate of Incorporation, Memorandum of Association and Articles of Association, of the Fund as in effect at the commencement of this Agreement and, thereafter, shall promptly furnish the Investment Manager with copies of such documents as they may be amended from time to time.

6. The Fund shall bear, for each year, all expenses in maintaining the Fund's offices and all other expenses incurred in the operation of the Fund, including the ordinary and necessary expenses related to the Fund's investment and trading activities (including transactional costs, escrow and custodial fees), all legal and auditing fees, and fees and expenses relating to any extraordinary circumstances, such as tax examinations and litigation involving the Fund; but excluding any legal fees that relate to the continuance of the offering of the Fund's shares.

7. (a) The Fund shall pay the Investment Manager, as full compensation for the services performed by the Investment Manager and the facilities furnished by the Investment Manager a quarterly performance fee (the "Performance Fee"), in an amount equal to 20% of the amount of any New High Net Profits as defined in the Memorandum. Shares of the Fund shall be subject to the payment of the Performance Fee for the portion of each calendar quarter that they are issued and outstanding. For the purposes hereof, the value of the net assets of the Fund and its Net Asset Value per Share (as defined in the Memorandum) shall be computed in the manner specified in the Memorandum for the computation of the value of such net assets in connection with the determination of the redemption price of its shares. Payment of the Performance Fee shall be made to the Investment Manager on or after the last day of each calendar quarter of each year. Each payment to the Investment Manager for services shall be accompanied by a report of the Fund, prepared either by the Fund or by an established firm of

independent public accountants, which shall show the amount properly payable to the Investment Manager under this Agreement, and the manner of computation thereof. The Investment Manager and the Fund may supplement this Agreement at any time to provide for the deferred payment of all or any portion of the fees to be paid to the Investment Manager pursuant to this Agreement.

(b) Notwithstanding the foregoing, in the event that, as at the end of any calendar year, the aggregate amount invested by the Fund in Non-BLM Investments held by the Fund at any time during such year exceeds the aggregate net asset value of the Fund's interests in such Non-BLM Investments at year end and the net amounts realized during the year of such Non-BLM Investments (before reducing the aggregate net asset value of the Fund's interests at year end in such Non-BLM Investments by the Fund's share of fees payable to the portfolio managers of such Non-BLM Investment) (such excess being the "Non-BLM Investment Loss"), the Investment Manager will offset and reduce its Performance Fee payable at such year end and any subsequent quarter end by an amount equal to such Non-BLM Investment Loss. The portion of the Performance Fee that is offset and reduced by the Non-BLM Investment Loss nonetheless will be paid to the Investment Manager by the Fund in the event that the Non-BLM Investment Loss is, in part or in whole, subsequently recouped by the same or other through the performance of Non-BLM Investments.

8. The Investment Manager will render the services set forth in this Agreement at its own expense, including without limitation, the salaries of employees necessary for such services, the rent and utilities for the facilities provided, and other advisory and operating expenses, except as assumed by the Fund in paragraph 6, above; provided, however, that the Fund shall pay the Investment Manager an amount equal to one-fortieth of one percent (0.025%)

of the net asset value of the Fund as of the last day of each calendar quarter in order to reimburse the Investment Manager for bearing certain of the Fund's internal accounting and operational expenses. Payment of this amount shall be made with each payment of the Performance Fee.

9. (a) The Investment Manager, its directors, officers and employees, agents and counsel (each, an "Investment Manager Indemnitee"), shall not be liable to the Fund for any error of judgment or for any loss suffered by the Fund in connection with the subject matter of this Agreement, except loss resulting from willful misfeasance, bad faith or gross negligence in the performance of the Investment Manager's obligations and duties, or by reason of the Investment Manager's reckless disregard of their obligations and duties hereunder.

(b) Each Investment Manager Indemnitee shall not be subject to, and the Fund shall indemnify to the fullest extent permitted by law and hold each Investment Manager Indemnitee free and harmless from and against, any and all claims, demands; liability or expenses for any loss suffered by the Fund arising out or any act or omission of an Investment Manager Indemnitee relating to the Fund, except to the extent such act or omission constitutes willful misconduct, or reckless disregard of the duties of the Investment Manager or on the part of the Investment Manager Indemnitee.

10. The Investment Manager and each of its respective shareholders, directors, employees and officers, may engage simultaneously with their investment management activities on behalf of the Fund in other businesses, and may render services similar to those described in this Agreement for other individuals, companies, trusts or persons, and shall not by reason of

engaging in such other businesses or rendering of services for others be deemed to be acting in conflict with the interests of the Fund.

11. This Agreement shall be in full force and effect on the date of this Agreement and shall continue until the termination by either party on written notice ten days prior to the end of any calendar quarter. During the period between the date when notice of termination is deemed given hereunder and the effective date of termination, the rights, powers and duties of the Investment Manager shall remain in full force and effect but shall be subject to the right of the Fund to direct the liquidation of any investment, which direction shall be given in writing or by facsimile. The Fund represents, covenants and agrees that its decision to terminate this Agreement shall require a unanimous affirmative vote of directors for so long as the Fund has three or less directors and a vote of 75% of the directors casting votes at such time as the Fund has more than three directors.

12. Any notice required to be given hereunder shall be in writing and shall be sent by registered or certified air mail, postage prepaid, with return receipt requested, or by means of facsimile or other wire transmission (with request for assurance of receipt in a manner typical with respect to communications of that type), to the Fund and Investment Manager at the respective addresses indicated in the Memorandum, or to such other addresses as the parties may hereafter direct in writing. The effective date of any notice given by mail shall be ten days after the date of mailing thereof; any notice to any party having a facsimile number for the receipt at its address for notice hereunder of messages by transmission by facsimile shall be deemed given when transmitted by facsimile addressed to such party at such facsimile number.

13. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, and shall not be modified, except in writing, nor assigned by either party without the consent of the other party.

14. This Agreement shall be construed and governed in accordance with the laws of the State of New York, without regard to the principles of conflicts of laws thereof.

IN WITNESS WHEREOF the parties hereto have caused this Agreement to be executed as of the day first above written.

FAIRFIELD SENTRY LIMITED

By:_____
    Name:
    Title:   Director

FAIRFIELD GREENWICH LIMITED

By:_____
    Name: _Rob Blum_
    Title: _Vice President_