**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
::
ANWAR, *et al.,*                                                 ::
::
              Plaintiffs,                                  ::
::
      v.                                                        ::
::
FAIRFIELD GREENWICH LIMITED, *et al.,*          :: MASTER FILE NO. 09-CV-0118 (VM)
::
              Defendants.                                ::
::
This Document Relates To:  All Actions                           ::
::
-----------------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE SECOND
CONSOLIDATED AMENDED COMPLAINT ON BEHALF OF DANIEL LIPTON,
MARK MCKEEFRY, WALTER NOEL, ANDRÉS PIEDRAHITA, JEFFREY TUCKER,
AMIT VIJAYVERGIYA, FAIRFIELD GREENWICH LIMITED, FAIRFIELD
GREENWICH (BERMUDA) LTD., FAIRFIELD GREENWICH ADVISORS LLC,
FAIRFIELD RISK SERVICES LTD., AND FAIRFIELD HEATHCLIFF CAPITAL LLC
(THE "FG DEFENDANTS")**

Dockets.Justia.com

## Table of Contents

**Page**

Preliminary Statement ............................................................................................ 1

Factual Background ............................................................................................... 4

    A.    Plaintiffs' Complaint ............................................................................ 4

    B.    The FG Defendants ............................................................................. 6

    C.    The Investments ................................................................................. 7

Argument ............................................................................................................ 10

I.      Plaintiffs Lack Standing to Bring Their State Law Claims ............................ 11

    A.    Plaintiffs' Alleged Injury Is Based on Losses Sustained by the Funds ............... 11

    B.    Plaintiffs Lack Standing to Bring a Shareholder Action Under Applicable Law ......................................................................................................... 12

    C.    The Types of Claims Asserted by Plaintiffs Are Not Shareholder Claims .......... 15

II.    Plaintiffs' Claims Are Preempted by State and Federal Statutes ................... 18

    A.    The Martin Act Preempts All of Plaintiffs' Claims Except for Fraud ................ 18

    B.    SLUSA Preempts All of Plaintiffs' Claims Except for Securities Fraud ............. 20

III.   The Sentry and Sigma Plaintiffs' Claims Are Barred By The Exculpation Provisions In The Sentry and Sigma Investment Management Agreements ................... 24

IV.   Plaintiffs Fail to Allege a De Facto Partnership or Partnership by Estoppel ................... 26

V.    Plaintiffs Fail to State A Claim Under Section 10(B) and Section 20(A) of the Exchange Act ........................................................................................... 30

    A.    Plaintiffs Do Not Plead the Elements of a Claim Under Section 10(b) and Rule 10b-5 Violation ........................................................................... 30

           1.    Plaintiffs Do Not Allege that Any FG Defendant Intended to Defraud Any Plaintiff ........................................................... 31

           2.    Plaintiffs Do Not Allege Justifiable Reliance ......................... 44

       3.       Plaintiffs' Alleged Losses Were Caused by Madoff, Not Any of the FG Defendants ........................................................................................ 48

    B.     Plaintiffs Do Not Plead the Elements of a Section 20(a) Violation ..................... 49

VI.    Plaintiffs Fail to Plead the Elements of Their Tort Claims ............................................. 49

    A.     Plaintiffs Do Not and Cannot Allege Proximate Causation ............................... 49

    B.     Plaintiffs' Common Law Fraud Claims Fail ....................................................... 50

          1.       Plaintiffs' Common Law Fraud Claims Suffer From the Same Deficiencies as Their Rule 10b-5 Claim .................................................. 51

          2.       The "Purchaser" Fraud Claims Fail Because They are Based on Prospective Statements ........................................................................... 52

    C.     Plaintiffs Fail to State a Claim for Negligent Misrepresentation ........................ 53

          1.       Plaintiffs Do Not Allege a Special Relationship ..................................... 54

          2.       The Purchaser Claims Are Not Actionable Because They Improperly Are Based on Prospective Statements ................................... 57

          3.       Plaintiffs Do Not Allege that Each FG Defendant Was Negligent .......... 57

          4.       The Economic Loss Doctrine Bars the Negligent Misrepresentation Claim ........................................................................ 58

    D.     Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty ............................ 59

          1.       Plaintiffs' Breach Of Fiduciary Duty Claims Fail Under BVI Law Because No FG Defendant Stood In A Fiduciary Relationship With Any Plaintiff ........................................................................... 60

          2.       Plaintiffs' Breach Of Fiduciary Duty Claims Fail Under Delaware Law Because The Limited Partnership Agreements Modify Or Eliminate Any Fiduciary Duties ............................................................. 60

    E.     Plaintiffs Fail to State a Claim for Gross Negligence ........................................ 66

VII.   Plaintiffs' Contract Related Claims Must be Dismissed ................................................ 67

    A.     Plaintiffs Fail to State a Claim for Unjust Enrichment ....................................... 67

    B.     Plaintiffs Are Not Entitled to a Constructive Trust ............................................ 69

    C.     Plaintiffs Do Not Allege Mutual Mistake .......................................................... 70

D.      Plaintiffs Fail to State a Claim for Third-Party Beneficiary Breach of Contract .......................................................................................................... 72

        1.      Plaintiffs Are Not Third-Party Beneficiaries Under the IMAs ................ 72

        2.      Plaintiffs Are Not Third-Party Beneficiaries to Any General Partnership Agreements .......................................................................... 74

VIII.   Plaintiffs are not Entitled to Punitive Damages or to Further Amend Their Complaint ................................................................................................................ 74

Conclusion ....................................................................................................................... 76

# Table of Authorities

**Page(s)**

## Cases

*Abbey v. 3F Therapeutics, Inc.*, No. 06 CV 409 (KMW), 2009 WL
4333819 (S.D.N.Y. Dec. 2, 2009) ............................................................. 19,20

*ABF Capital Mgmt. v. Askin Capital Mgmt.*, 957 F. Supp. 1308 (S.D.N.Y.
1997) ........................................................................................................ 17

*Aboushanab v. Janay*, No. 06 Civ. 13472 (AKH), 2007 WL 2789511
(S.D.N.Y. Sept. 26, 2007) ......................................................................... 18

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, No. 08 civ.
7508 (SAS), 2009 WL 2828018 (S.D.N.Y. Sept. 2, 2002) ........................ 76

*Accusystems, Inc. v. Honeywell Info. Sys., Inc.*, 580 F. Supp. 474
(S.D.N.Y. 1984) ......................................................................................... 57

*Adamski v. Lama*, 869 N.Y.S.2d 256 (N.Y. App. Div. 2008) ...................... 51

*Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d
185 (S.D.N.Y. 2009) .................................................................................. 76

*Albert v. Alex. Brown Mgmt. Servs., Inc.*, Nos. Civ.A. 762-N, 763-N, 2005
WL 2130607 (Del. Ch. Aug. 26, 2005) ..................................................... 17

*Albert v. Alex. Brown Mgmt. Servs., Inc.*, Nos. C.A. 04C-05-250 PLA,
C.A. 04C-05-251 PLA, 2004 WL 2050527 (Del. Ch. Sept. 15,
2004) ......................................................................................................... 17

*Am. Protein Corp. v. AB Volvo*, 844 F.2d 56 (2d Cir. 1988) ...................... 57

*Anadarko Petroleum Corp. v. Panhandle E. Corp.*, 545 A.2d 1171 (Del.
1988) ......................................................................................................... 67

*Anderson v. Wachovia Mortgage Corp.*, 609 F. Supp. 2d 360 (D. Del.
2009) ......................................................................................................... 77

*Anglo Am. Sec. Fund, L.P. v. S.R. Global Int'l Fund*, No. Civ. A 20066-N,
2006 WL 1494360 (Del. Ch. May 24, 2006) ......................................... 65, 67

*Araujo v. John Hancock Life Ins. Co.*, 206 F. Supp. 2d 377 (E.D.N.Y.
2002) ......................................................................................................... 21

*Arnold Chevrolet LLC v. Tribune Co.*, No. 04-CV-3097 (DRH)(WDW),
2007 WL 2743490 (S.D.N.Y. Sept. 17, 2007) .......................................... 55

*Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S. Ct. 1937 (2009) .................................................. 10, 11

*AT&T v. City of New York,* 83 F.3d 549 (2d Cir. 1996) ........................................................ 69, 70

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007)......................4, 46, 51, 55

*B.T. Produce Co. v. Robert A. Johnson Sales, Inc.,* 354 F. Supp. 2d 284
    (S.D.N.Y. 2004) .................................................................................................................. 4

*Backus v. MacLaury*, 106 N.Y.S.2d 401 (N.Y. App. Div. 1951) ............................................. 75

*Baker v. Andover Assocs. Mgmt. Corp.*, Index No. 6179/09 (N.Y. Sup. Ct.
    Nov. 30, 2009) ........................................................................................................... 69, 71

*Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, No. 03 Civ.
    1537 (MBM), 2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003) ................................. 70, 76

*Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano*, No. 03 Civ.
    0015 (RWS), 2006 WL 1997628 (S.D.N.Y. July 18, 2006) .......................................... 57

*Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*,
    57 F.3d 146 (2d Cir. 1995) ........................................................................................... 53

*Belin v. Weissler*, No. 97 Civ 8787, 1998 WL 391114 (S.D.N.Y. July 14,
    1998) ...................................................................................................................... 31, 49

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ..................................................................... 10

*Bennett Silvershein Assocs. v. Furman*, No. 91 Civ. 3118 (JGK), 1997 WL
    531310 (S.D.N.Y. Aug. 28, 1997) ............................................................................... 72

*Bertoni v. Catucci*, 498 N.Y.S.2d 902 (N.Y. App. Div. 1986) .................................................. 72

*Bogulavsky v. Kaplan,* 159 F.3d 715 (2d Cir. 1998) ................................................................ 51

*Bokat v. Getty Oil Co.*, 262 A.2d 246 (Del. 1970) .................................................................... 17

*Bon Temps Agency Ltd.v. Mittman*, 688 N.Y.S.2d 43 (N.Y. App. Div.
    1999) .......................................................................................................................... 76

*Brickell Partners v. Wise*, 794 A.2d 1 (Del. Ch. 2001) ............................................................ 64

*Bridgeport Holdings, Inc. v. Boyer*, 388 B.R. 548 (Bankr. D. Del. 2008) ................................. 67

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13 (2d
    Cir. 1996) .................................................................................................................... 53

*Brodsky v. Stadlen*, 526 N.Y.S.2d 478 (N.Y. App. Div. 1988) ................................................. 30

*Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122 (2d Cir. 2008)........................................ 79

*Caraballo v. United States*, 830 F.2d 19 (2d Cir. 1987)............................................................ 52

*Carfagno ex rel. Centerline Holding Co. v. Schnitzer*, 591 F. Supp. 2d 630 (S.D.N.Y. 2008)................................................................................................... 17

*Champion Home Builders Co. v. ADT Sec. Servs., Inc.*, 179 F. Supp. 2d 16 (N.D.N.Y. 2001) ................................................................................................... 60

*Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605 (S.D.N.Y. 2009)....................................... 61, 70

*Chill v. Gen. Elec. Co.*, 101 F.3d 263 (2d Cir. 1996).......................................................... 36, 39

*Cinicolo v. Morgan Stanley Dean Witter & Co.*, No. 01 Civ. 6940 (GBD), 2004 WL 2848542 (S.D.N.Y. Dec. 9, 2004)........................................................... 21, 23

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382 (1987) ..................................... 70

*Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.*, 81 N.Y.2d 821 (1993)............................. 69

*Confin Int'l Invs. v. AT&T Corp.*, No. 19997, 2004 WL 485464 (Del. Ch. Mar. 12, 2004) ................................................................................................. 15

*Continuing Creditors' Comm. of Star Telecomm. Inc. v. Edgecomb*, 385 F. Supp. 2d 449 (D. Del. 2004)................................................................................ 67

*Counihan v. Allstate Ins. Co.*, 194 F.3d 357 (2d Cir. 1999) ...................................................... 73

*County of Suffolk v. Long Island Lighting Co.*, 728 F.2d 52 (2d Cir. 1984) .............................. 70

*Cowin v. Bresler*, 741 F.2d 410 (D.C. Cir. 1984) ....................................................................... 14

*Creditsights, Inc. v. Ciasullo,* No. 05 Civ. 9345 (DAB), 2008 WL 4185737 (S.D.N.Y. Sept. 5, 2008) ...................................................................................... 46

*Crigger v. Fahnestock and Co.,* 443 F.3d 230 (2d Cir. 2006) ..................................................... 47

*Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452 (S.D.N.Y. 2001)............................................ 29

*Crossen v. Bernstein*, No. 91 Civ. 3501 (PKL), 1994 WL 281881 (S.D.N.Y. June 23, 1994) ....................................................................................... 14

*Davimos v. Halle*, No. 03 Civ. 9199 (JGK), 2006 WL 859368 (S.D.N.Y. Mar. 31, 2006) ................................................................................................. 62

*DeBlasio v. Merrill Lynch & Co., Inc.*, No. 07 Civ 318(RJS), 2009 WL 2242605 (S.D.N.Y. July 27, 2009) ...................................................................... 56, 59

*Dessert Beauty, Inc. v. Platinum Funding Corp.*, No. 06 CIV. 2279 (SAS),
2006 WL 3780902 (S.D.N.Y. Dec. 26, 2006) ........................................ 27, 75

*Dietrich v. Harder*, 857 A.2d 1017 (Del. Ch. 2004) ................................ 15

*Disher v. Citigroup Global Mkts., Inc.*, 487 F. Supp. 2d 1009 (S.D. Ill.
2007) ........................................................................................ 23

*Dommert v. Raymond James Fin. Servs., Inc.*, No. Civ. A. 1:06-CV-102,
2007 WL 1018234 (E.D. Tex. Mar. 29, 2007) ..................................21, 23, 25

*Dover Ltd. v. A.B. Watley, Inc.*, 423 F. Supp. 2d 303 (S.D.N.Y. 2006) ............... 20, 54

*Druck Corp. v. Macro Fund (U.S.) Ltd.*, No. 02 Civ. 6164 (RO), 2007 WL
258177 (S.D.N.Y. Jan. 29, 2007) .................................................... 61

*Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005) ................................. 50

*ECA v. JP Morgan Chase Co.*, 553 F.3d 187 (2d Cir. 2009) .........................31, 34, 39

*Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*, 551 F. Supp. 2d 210
(S.D.N.Y. 2008) .......................................................................... 33, 53

*EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265
(S.D.N.Y. 2004) .......................................................................... 58

*Ellington Mgmt. Group, LLC v. Ameriquest Mortgage Co.*, No. 09 Civ.
0416 (JSR), 2009 WL 3170102 (S.D.N.Y. Sept. 29, 2009) ......................... 35

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189
(2d Cir. 2003) .......................................................................... 30

*Eshelman v. OrthoClear Holdings, Inc.*, No. C 07-1429 (JSW), 2008 WL
171059 (N.D. Cal. Jan. 18, 2008) .................................................... 15

*Estate of Detwiler v. Offenbecher*, 728 F. Supp. 103 (S.D.N.Y. 1989) ............... 47

*Fairfield Sentry Ltd. v. Fairfield Greenwich Group, et al.*, No. 09 Civ.
5650 (S.D.N.Y. filed June, 19 2009) ................................................ 13, 76

*Falkowski v. Imation Corp.*, 309 F.3d 1123 (9th Cir. 2002) ......................... 24

*Ferber et al. v. Fairfield Greenwich Group et al.*, No. 09 Civ. 2366
(S.D.N.Y. filed Mar. 13, 2009) ....................................................... 13

*First Am. Corp. v. Price Waterhouse LLP*, 988 F. Supp. 353 (S.D.N.Y.
1997) ..................................................................................... 29

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
462 U.S. 611 (1983) ................................................. 12

*Fisher v. Kanas*, 487 F. Supp. 2d 270 (E.D.N.Y. 2007).................... 25

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co. Inc.*, 66 N.Y.2d
38 (N.Y. 1985)................................................... 75

*Friedman v. Anderson*, 803 N.Y.S.2d 514 (N.Y. App. Div. 2005)........... 51

*FS Parallel Fund v. Ergen*, Civ. No. 19853, 2004 WL 3048751 (Del. Ch.
Nov. 3, 2004) ............................................... 15, 17

*FSP, Inc. v. Societe Generale*, No. 02CV4786GBD, 2005 WL 475986
(S.D.N.Y. Feb. 28, 2005) ........................................ 57

*Gaidon v. Guardian Life Ins. Co. of Am.*, 679 N.Y.S.2d 611 (N.Y. App.
Div. 1998)...................................................... 58

*Gelfman v. Weeden Investors, L.P.*, 792 A.2d 977 (Del. Ch. 2001) ........ 65

*Globis Partners, L.P. v. Plumtree Software, Inc.*, No. 1577, 2007 WL
4292024 (Del. Ch. Nov. 30, 2007) ................................ 69

*GMA Accessories, Inc. v. ePartners Inc.*, No. 07 Civ. 8414 (LAK), 2008
WL 781188 (S.D.N.Y. Mar. 19, 2008) ............................ 62

*Goldman v. McMahan, Brafman, Morgan & Co.*, 706 F. Supp. 256
(S.D.N.Y. 1989).................................................. 35

*Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561 (2005).................... 70

*Goplen v. 51job, Inc.*, 453 F. Supp. 2d 759 (S.D.N.Y. 2006).............. 38

*Gordon Partners v. Blumenthal*, 293 F. App'x 815 (2d Cir. 2008).......... 54

*Gostin v. Nelson*, 213 F. Supp. 164 (D. Del. 1962)...................... 16

*Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, No. Civ. A.
15754, 2000 WL 1476663 (Del. Ch. Oct. 20, 2000) ...............63, 65, 66

*Granite Partners, L.P. v. Bear, Stearns & Co. Inc.,* 17 F. Supp. 2d 275
(S.D.N.Y. 1998).................................................. 19

*Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204 (2002)...... 72

*Greenberg v. Chrust*, 198 F. Supp. 2d 578 (S.D.N.Y. 2002) .............. 57

*Greene v. Hanover Direct, Inc.*, No. 06 Civ. 13308 (NRB), 2007 WL 4224372 (S.D.N.Y. Nov. 19, 2007) ............................................... 20

*Griffin v. McNiff*, 744 F. Supp. 1237 (S.D.N.Y. 1990) ............................... 35

*Gurary v. Winehouse*, 235 F.3d 792 (2d Cir. 2000) .................................... 55

*Gurfein v. Ameritrade, Inc.*, 411 F. Supp. 2d 416 (S.D.N.Y. 2006) ............ 11

*Gusmao v. GMT Group, Inc.*, No. 06 Civ. 5113 (GEL), 2008 WL 2980039 (S.D.N.Y. Aug. 1, 2008) ............................................................ 58

*Halperin v. eBankerUSA.com, Inc.*, 295 F.3d 352 (2d Cir. 2002) .............. 49

*Hart v. Internet Wire, Inc.*, 145 F. Supp. 2d 360 (S.D.N.Y. 2001) ...................................... *passim*

*Hartford Accident & Indemnity Co. v. Oles*, 274 N.Y.S. 349 (N.Y. Sup. Ct. 1934) ................................................................................... 29, 30

*Hausman v. Buckley*, 299 F.2d 696 (2d Cir. 1962) ..................................... 12

*Healthcare Fin. Group, Inc. v. Bank Leumi USA*, No. 08 Civ. 11260(VM), 2009 WL 3631036 (S.D.N.Y. Oct. 26, 2009) ..................................... 10

*Henneberry v. Sumitomo Corp. of Am.*, 532 F. Supp. 2d 523 (S.D.N.Y. 2007) .................................................................................................. 57

*Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8 (2d Cir. 2000) ................. 55

*In re Advanta Corp. Sec. Litig.*, 180 F.3d 525 (3d Cir. 1999) .................... 38

*In re Aegis Mortgage Corp.* 385 B.R. 102 (Bankr. D. Del. 2008) ............... 76

*In re Alstom*, 406 F. Supp. 2d 433 (S.D.N.Y. 2005) ............................. 34, 38

*In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405 (S.D.N.Y. 2007) ............................... *passim*

*In re Bisys Sec. Litig.*, 397 F. Supp. 2d 430 (S.D.N.Y. 2005) ............... 36, 37

*In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959 (Del. Ch.1996) ................................. 68

*In re Cencom Cable Income Partners, L.P. Litig.*, C.A. No. 14634, 1996 WL 74726 (Del. Ch. Feb. 15, 1996) ........................................ 63, 64

*In re Cencom Cable Income Partners*, No. 14634, 1997 WL 666970 (Del. Ch. Oct. 15, 1997) ................................................................................ 68

*In re Citigroup Auction Rate Sec. Litig.*, Nos. No. 08 Civ. 3095 (LTS)
(FM), No. 09 md 2043 (LTS), 2009 WL 2914370 (S.D.N.Y. Sept.
11, 2009) ................................................................................................. 46

*In re Citigroup S'holder Derivative Litig.*, 964 A.2d 106 (Del. Ch. 2009) ................................. 68

*In re Currency Conversion Fee Antitrust Litig.*, 230 F.R.D. 303 (S.D.N.Y.
2004) ...................................................................................................... 53

*In re Drexel Burnham Lambert Group, Inc.*, 142 B.R. 633 (S.D.N.Y.
1992) ...................................................................................................... 72

*In re First Cent. Fin. Corp.*, 377 F.3d 209 (2d Cir. 2004) ......................................................... 71

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29 (2d Cir. 2009) ................................. 50

*In re Goldman Sachs Mutual Funds*, No. 04 Civ. 2567 (NRB), 2006 WL
126772 (S.D.N.Y. Jan. 17, 2006) ......................................................... 18

*In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371 (S.D.N.Y.
2001) ................................................................................................ 21, 22

*In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d 845 (D. Md. 2005) ............................................. 23

*In re Parmalat Sec. Litig.*, 479 F. Supp. 2d 332 (S.D.N.Y. 2007) ............................................. 55

*In re PetsMart, Inc. Sec. Litig.*, 61 F. Supp. 2d 982 (D. Ariz. 1999) ......................................... 31

*In re PXRE Group, Ltd. Sec. Litig.*, 600 F. Supp. 2d 510 (S.D.N.Y. 2009) ........................ *passim*

*In re Sierra Wireless, Inc. Sec. Litig.*, 482 F. Supp. 2d 365 (S.D.N.Y.
2007) ...................................................................................................... 41

*In re Smith Barney Fund Transfer Agent Litig.*, 05 Civ. 7583 (WHP),
2007 WL 2809600 (S.D.N.Y. Sept. 26, 2007) ....................................... 12

*In re Sterling Foster & Co., Inc. Sec. Litig.*, 222 F. Supp. 2d 216
(E.D.N.Y. 2002) ...................................................................................... 58

*In re Syncor Int'l Corp. S'holders Litig.*, 857 A.2d 994 (Del. Ch. 2004) ............................ 12, 14

*In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27 (Del. 2006) ........................................ 67, 68

*In re WorldCom, Inc. ERISA Litig.*, 263 F. Supp. 2d 745 (S.D.N.Y. 2003) ............................... 21

*In re WRT Energy Sec. Litig.*, No. 96 Civ. 3610, 3611 (JFK), 1997 WL
576023 (S.D.N.Y. Sept. 15, 1997) ......................................................... 35

*Ind. Elec. Workers Pension Trust Fund v. Millard*, No. 07 Civ. 172, 2007 WL 2141697 (S.D.N.Y. July 25, 2007) .......................................................... 24

*Instituto de Prevision Militar v. Merrill Lynch*, 546 F.3d 1340 (11th Cir. 2008) ................................................................................................................... 24

*IT Litig. Trust v. D'Aniello*, No. 02-10118, Civ. A. 04-1268-KAJ, 2005 WL 3050611 (D. Del. Nov. 15, 2005) ............................................................ 67

*JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393 (S.D.N.Y. 2004) .............................. 58

*Kahn v. Icahn*, No. CIV. A. 15916, 1998 WL 832629 (Del. Ch. Nov. 12, 1998) ................................................................................................................... 63

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001) .......................................................... 34

*Kassover v. UBS AG*, 619 F. Supp. 2d 28 (S.D.N.Y. 2008) ................................................ 19, 20

*Kidz Cloz, Inc. v. Officially For Kids, Inc.*, 320 F. Supp. 2d 164 (S.D.N.Y. 2004) ................................................................................................................... 28

*Kinsey v. Cendant Corp.*, No. 04 Civ. 0582, 2005 WL 1907678 (S.D.N.Y. Aug. 10, 2005) ....................................................................................................... 38

*Kopec v. Hempstead Gardens, Inc.*, 696 N.Y.S.2d 53 (N.Y. App. Div. 1999) ................................................................................................................... 77

*Kosower v. Gutowitz*, No. 00 Civ. 9011 (JGK), 2001 WL 1488440 (S.D.N.Y. Nov. 21, 2001) ..................................................................................... 29, 30

*Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447 (S.D.N.Y. 2009) ................................... 58, 59

*Kramer v. Time Warner Inc.*, 937 F.2d 767 (2d Cir. 1991) ............................................... 4

*Kramer v. W. Pac. Indus., Inc.*, 546 A.2d 348 (Del. 1988) ............................................... 16

*Landy v. Mitchell Petroleum Tech. Corp.*, 734 F. Supp. 608 (S.D.N.Y. 1990) ................................................................................................................... 60

*LaSala v. Bank of Cyprus Pub. Co. Ltd.*, 510 F. Supp. 2d 246 (S.D.N.Y. 2007) ................................................................................................................... 75

*Laub v. Faessel*, 745 N.Y.S.2d 534 (N.Y. App. Div. 2002) ............................................... 52

*Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531 (2d Cir. 1997) ................................................................................................................... 30, 49

*Leasco Corp. v. Taussig*, 473 F.2d 777 (2d Cir. 1972) ..................................................... 74

*Lentell v. Merrill Lynch & Co.,* 396 F.3d 161 (2d Cir. 2005)................................. 46, 50

*Lerner v. Fleet Bank, N.A.,* 459 F.3d 273 (2d Cir. 2006) ............................................ 11

*Levien v. Sinclair Oil Corp.,* 314 A.2d 216 (Del. Ch. 1973) ....................................... 16

*Lilly v. Ford Motor Co.,* No. 00 C 7372, 2002 WL 507126 (N.D.Ill. Apr. 03, 2002)................................................................................................................ 53

*Litman v. Prudential-Bache Props., Inc.,* 611 A.2d 12 (Del. Ch. 1992). .................... 14

*Litman v. Prudential-Bache Props., Inc.,* C.A. No. 12137, 1993 WL 5922 (Del. Ch. Jan. 4, 1993) ...................................................................................... 63

*Madison Capital Co., LLC v. Alasia, LLC,* 615 F. Supp. 2d 233 (S.D.N.Y. 2009) ............................................................................................................... 58

*Maldonado v. Dominguez,* 137 F.3d 1 (1st Cir. 1998) ............................................... 38

*Manzo v. Rite Aid Corp.,* No. Civ.A. 18451-NC, 2002 WL 31926606 (Del. Ch. Dec. 19, 2002) ...................................................................................... 18

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,* 547 U.S. 71 (2006) ........................... 23, 24

*Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.,* 854 A.2d 121 (Del. Ch. 2004) ............................................................................. 17

*Metro. Elec. Mfg. Co. v. Herbert Constr. Co.,* 583 N.Y.S.2d 497 (N.Y. App. Div. 1992) ............................................................................................. 70

*Milano v. Freed,* 64 F.3d 91 (2d Cir. 1995)............................................................... 29

*Miller v. Am. Real Estate Partners, L.P.,* No. C.A. 16788, 2001 WL 1045643 (Del. Ch. Sept. 6, 2001) ................................................................. 65

*Mills v. Polar Molecular Corp.,* 12 F.3d 1170 (2d Cir.1993)........................11, 55, 76

*Momentive Performance Materials USA, Inc. v. Astrocosmos Metallurgical, Inc.,* No. 1:07CV567 (FJS/DRH), 2009 WL 3111717 (N.D.N.Y. Sept. 23, 2009) ............................................................... 58

*Moran v. Household Int'l, Inc.,* 490 A.2d 1059 (Del. Ch. 1985)................................. 11

*Morning Mist Holdings Ltd. et al. v. Fairfield Greenwich Group et al.,* No. 09 CIV. 5012 (S.D.N.Y. filed May 28, 2009) ............................................... 13

*Muller-Paisnar v. TIAA,* 289 Fed. App'x 461 (2d Cir. 2008) .................................... 54

*Munoz v. Puretz,* 753 N.Y.S.2d 463 (N.Y. App. Div. 2003) ...................................... 78

*Murray v. Xerox Corp.*, 811 F.2d 118 (2d Cir. 1987) ................................................ 60

*N. Am. Knitting Mills, Inc. v. Int'l Women's Apparel, Inc.*, No. 99 Civ.
    4643 (LAP), 2000 WL 1290608 (S.D.N.Y. Sept. 12, 2000) ......................... 28

*New York v. J. Ezra Merkin*, Index No. 450879/2009 (N.Y. Sup. Ct. filed
    Apr. 7, 2009) ......................................................................................... 21

*Ossining Union Free Sch. Dist. v. Anderson,* 73 N.Y.2d 417 (1989) ........................ 57

*Outside Connection, Inc. v. DiGennaro*, 795 N.Y.S.2d 669 (N.Y. App.
    Div. 2005) .............................................................................................. 78

*Owens v. Gaffken & Barriger Fund, LLC*, No. 08 CIV. 8414 (PKC), 2009
    WL 3073338 (S.D.N.Y. Sept. 21, 2009) ................................................... 20

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am.
    Sec., LLC*, 446 F. Supp. 2d 163 (S.D.N.Y. 2006) ....................................... 62

*Pierce et al. v. Fairfield Greenwich Group et al.*, No. 09 Civ. 2588
    (S.D.N.Y. filed Mar. 20, 2009) ................................................................ 13

*Port Auth. of N.Y. & N.J. v. Arcadian Corp.*, 189 F.3d 305 (3d Cir. 1999) ............... 52

*Potter v. Janus Inv. Fund*, 483 F. Supp. 2d 692 (S.D. Ill. 2007) .............................. 25

*PPI Enters. (U.S.), Inc. v. Del Monte Foods Co.*, No. 99 Civ. 3794(BSJ),
    2003 WL 22118977 (S.D.N.Y. Sept. 11, 2003) ......................................... 61

*Primavera Familienstiftung v. Askin*, No. 95 Civ. 8905 (RWS), 1996 WL
    494904 (S.D.N.Y. Aug. 30, 1996) ............................................................ 17

*Pro Bono Invs., Inc. v. Gerry*, No. 03-cv-4347, 2005 WL 2429787
    (S.D.N.Y. Sept. 30, 2005) ....................................................................... 20

*Prod. Res. Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772 (Del. Ch.
    2004) ..................................................................................................... 68

*Robin Bay Assocs., LLC v. Merrill Lynch & Co.*, No. 07 Civ. 376, 2008
    WL 2275902 (S.D.N.Y. June 3, 2008) ...................................................... 61

*Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989) .................................................. 61

*Roussin v. AARP, Inc.,* No. 09 Civ. 0586, 2009 WL 3397402 (S.D.N.Y.
    Oct. 15, 2009) ......................................................................................... 4

*S. Cherry St., LLC v. Hennessee Group LLC*, 573 F.3d 98 (2d Cir. 2009) ......... 33, 34

*Schnorr v. Schubert*, No. 05-303, 2005 WL 2019878 (W.D. Okla. Aug. 18, 2005) ............................................................................................... 21, 24

*SEC v. Pirate Investor LLC*, 580 F.3d 233 (4th Cir. 2009) ........................................ 25

*SEC v. Zandford*, 535 U.S. 813 (2002) ..................................................................... 24

*Sedona Corp. v. Ladenburg Thalmann & Co.*, No. 03 Civ. 3120 (LTS) (THK), 2005 WL 1902780 (S.D.N.Y. Aug. 9, 2005) ............................... 19, 20

*Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305 (6th Cir. 2009) .................................... 21

*Sforza v. Health Ins. Plan of Greater N.Y., Inc.*, 619 N.Y.S.2d 734 (N.Y. App. Div. 1994) .................................................................................................. 78

*Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124 (2d Cir. 1994) ............................ 32, 34, 39

*Simon v. Castello*, 172 F.R.D. 103 (S.D.N.Y. 1997) ................................................... 60

*Sitchenko v. DiResta*, 512 F. Supp. 758 (E.D.N.Y. 1981) ........................................... 29

*Smith v. Waste Mgmt., Inc.*, 407 F.3d 381 (5th Cir. 2005) ......................................... 14

*Sofonia v. Principal Life Ins. Co.,* 465 F.3d 873 (8th Cir. 2006) ................................. 24

*Sonet v. Timber Co., L.P.*, 722 A.2d 319 (Del. Ch. 1998) ...................................... 64, 65

*Stair v. Calhoun*, No. 07-CV-03906 (JFB)(ETB), 2009 WL 792189 (E.D.N.Y. Mar. 23, 2009) ................................................................................. 37

*Staples, Inc. v. W.J.R. Assocs.*, No. 04 CV 904 (SJ) (KAM), 2007 WL 3046352 (E.D.N.Y. Sept. 28, 2007) ................................................................. 29

*Strougo v. Bassini*, 282 F.3d 162 (2d Cir. 2002) ....................................................... 12

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank,* 250 F.3d 87 (2d Cir. 2001) ...................................................................................................... 58

*Sykes v. RFD Third Ave. 1 Assocs. LLC et al.*, 884 N.Y.S. 2d 745 (N.Y. App. Div. 2009) .................................................................................................. 57

*Taormina v. Taormina Corp.*, 78 A.2d 473 (Del. Ch. 1951) ....................................... 16

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*, 531 F.3d 190 (2d Cir. 2008) .......................................................................... 46

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ............................ 32

*The Limited, Inc. v. McCrory Corp.*, 683 F. Supp. 387 (S.D.N.Y. 1988) .................... 35

*Thorpe ex rel. Castleman v. CERBCO, Inc.*, 676 A.2d 436 (Del. 1996)......................................52

*Tooley v. Donaldson, Lufkin, Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004)........................11, 14, 17

*U.S. W. Fin. Servs., Inc. v. Tollman*, 786 F. Supp. 333 (S.D.N.Y.1992).....................................60

*United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438 (3d Cir. 2005) .....................................18

*United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411 (2d Cir. 2001) .............................72

*United States v. Ribadeneira*, 105 F.3d 833 (2d Cir. 1997) .......................................................73

*Ventricelli v. Kinney Sys. Rent a Car, Inc.*, 411 N.Y.S.2d 555 (N.Y. App.
Div. 1978)....................................................................................................................52

*Verona Partners, LLC v. Tenet Capital Partners Convertible
Opportunities Fund L.P.*, No. 05 Civ. 5369 PJH, 2006 WL
2669035 (N.D. Cal. Sept. 18, 2006) ...........................................................................50

*Walton v. Morgan Stanley & Co.*, 623 F.2d 796 (2d Cir. 1980).........................................12, 62

*Weis Sec., Inc. v. Redington*, 605 F.2d 590 (2d Cir. 1978)........................................................72

*Whitehall Tenants Corp. v. Estate of Olnick*, 623 N.Y.S.2d 585 (N.Y. App.
Div.  1995)....................................................................................................................19

*Winne v. Equitable Life Assurance Soc'y*, 315 F. Supp. 2d 404 (S.D.N.Y.
2003) .............................................................................................................................21

*Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354 (S.D.N.Y. 2001) ...........................................77

*Zoren v. Genesis Energy, L.P.*, 836 A.2d 521 (Del. Ch. 2003) ..................................................67

## Statutes

15 U.S.C. § 77p (1998)...........................................................................................21, 22, 23

15 U.S.C. § 77r(b) (1998) ..................................................................................................23

15 U.S.C. § 78bb(f) (2000) .....................................................................................21, 22, 23

15 U.S.C. § 78u-4(b)(2) ......................................................................................................11

Del. Code Ann. tit. 6, § 17-1101(d) (2009) ........................................................................63

Del. Code Ann. tit. 6, § 17-1101(f) (2009) .........................................................................65

Del. Code Ann. tit. 6, § 17-407(c) (2009)......................................................................66, 67

Fed. R. Civ. P. 9(b)..................................................................................................3, 11, 54

N.Y. Gen. Bus. Law §352 *et seq* (McKinney 1996) ................................................. 18

N.Y. Gen. Bus. Law §352(1) (McKinney 2007)......................................................... 19

N.Y. P'ship Law § 27(1) (McKinney 2005) ............................................................... 28

**Other Authorities**

Lubaroff & Altman on Delaware Limited Partnerships § 11.2.6 at 11-26.7 .............................. 65

Restatement of Contracts § 502-f (1934)................................................................. 75

Restatement of Restitution § 215 cmt. a (1936)........................................................ 72

# ABBREVIATIONS

| ABBREVIATION | DESCRIPTION | EXHIBIT |
|---|---|---|
| **Private Placement Memoranda** | | |
| 7/1/03 Sentry PPM | Fairfield Sentry, Confidential Private Placement Memorandum, dated July 1, 2003 | 12 |
| 10/1/04 Sentry PPM | Fairfield Sentry, Confidential Private Placement Memorandum, dated October 1, 2004 | 13 |
| 8/14/06 Sentry PPM | Fairfield Sentry Private Placement Memorandum, dated August 14, 2006 | 1 |
| 12/1/08 Sigma PPM | Fairfield Sigma Private Placement Memorandum, dated December 1, 2008 | 2 |
| **Confidential Offering Memoranda** | | |
| 7/1/98 COM | Greenwich Sentry, Confidential Offering Memorandum, dated July 30, 1994, as amended February 15, 1995, February 15, 1996, March 31, 1997, and July 1, 1998. | 10 |
| 5/2006 GS COM | Greenwich Sentry Confidential Offering Memorandum, dated May 2006 | 11 |
| 8/2006 GS COM | Greenwich Sentry Confidential Offering Memorandum, dated August 2006 | 3 |
| 8/2006 GSP COM | Greenwich Sentry Partners Confidential Offering Memorandum, dated August 2006 | 4 |
| **Limited Partnership Agreements** | | |
| GS LPA | Greenwich Sentry Limited Partnership Agreement, dated December 24, 2004 | 7 |
| GSP LPA | Greenwich Sentry Partners Limited Partnership Agreement, dated April 30, 2006 | 8 |
| **Investment Management Agreements** | | |
| 2002 Sentry IMA | Investment Management Agreement between Fairfield Greenwich Limited and Fairfield Sentry, dated October 1, 2002 | 9 |

| Sentry IMA | Investment Management Agreement between Fairfield Greenwich (Bermuda) Ltd. and Fairfield Sentry, dated October 1, 2004 | 5 |
| Sigma IMA | Investment Management Agreement between Fairfield Greenwich (Bermuda) Ltd. and Fairfield Sigma, dated October 1, 2004 | 6 |

On December 11, 2008, the FG Defendants learned, at the same time as the rest of the world, that Bernard L. Madoff Investment Securities LLC ("BMIS") had been operating what is now recognized as perhaps the most well-disguised Ponzi scheme in history. This action arises out of losses suffered by Plaintiffs when the value of their investments in four funds (the "Funds") invested in BMIS plummeted as a result of the revelation of Madoff's massive fraud. The FG Defendants are Fairfield Greenwich entities that were involved in the management of the Funds and certain associated individuals. By this action, Plaintiffs seek to hold these entities and individuals, as well as other Fairfield Greenwich affiliated individuals and others, responsible for their Madoff-generated losses.[1]

Among the victims of Madoff's fraud were the FG Defendants themselves, who lost tens of millions of dollars of their own and family members' money invested with BMIS.[2] It is understandable that investors are exploring all possible avenues to recover their losses. But this defectively framed and pled action, which seeks to hold the FG Defendants responsible for losses caused by a fraud they neither participated in nor had knowledge of – and that thousands of

---

[1] The Fairfield Greenwich affiliated defendants are divided into three groups, each filing a separate memorandum in support of their motion to dismiss, based on Plaintiffs' division of those defendants into three separate groups against which different sets of claims are made in the Complaint. The FG Defendants are the group defined in Plaintiffs' Complaint as the "Fairfield Fraud Claim Defendants," with two exceptions. Fairfield Greenwich Group ("FGG") is not included among the FG Defendants because it is not a legal entity but rather a marketing name for a group of Fairfield Greenwich entities. *See* Inter-American Trust Compl. at ¶¶ 6, 8; *see also* accompanying Declaration of Michael Thorne in Support of the FG Defendants' Motion to Dismiss the Second Consolidated Amended Complaint (the "Thorne Decl.") at ¶ 2. Fairfield Heathcliff Capital is not included among the Fairfield Fraud Claim Defendants but is included as an FG Defendant because the constellation of claims against it make it more appropriate to include it here.

[2] *See* Thorne Decl. at ¶ 6.

others, including investors, intermediaries, advisors, banks, auditors, and regulators failed to uncover – is not the proper means to achieve that goal.

The crux of Plaintiffs' Second Consolidated Amended Complaint (the "SCAC" or the "Complaint") is that the FG Defendants failed to conduct adequate due diligence and missed so-called 'red flags' that purportedly should have alerted them to Madoff's fraud – despite the fact that for years it escaped detection by the SEC and other government regulators whose very mission was to uncover it. Plaintiffs allege violations of Section 10(b), Rule 10b-5, and Section 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), as well as claims for common law fraud, negligent misrepresentation, gross negligence, breach of fiduciary duty, third-party beneficiary breach of contract, constructive trust, and mutual mistake. Each of Plaintiffs' claims fails.

*First*, Plaintiffs' claims fail because they lack standing to bring a shareholder action. The claims Plaintiffs seek to assert belong to the Funds, not the shareholders of the Funds, because their injury – loss in value of their shares -- is derivative of injury sustained by the Funds.

*Second*, Plaintiffs' claims are preempted by state and federal statutes – New York's Martin Act and the Securities Litigation Uniform Standards Act of 1998 ("SLUSA").

*Third*, the FG Defendants are shielded from liability under the exculpatory provisions in the investment management agreements ("IMAs") signed by the Fairfield Sentry and Fairfield Sigma Funds (the "Offshore Funds"), and which were incorporated directly into the Offshore Funds' Private Placement Memoranda ("PPMs") pursuant to which Plaintiffs invested.

*Fourth*, Plaintiffs' attempt to use the concepts of de facto partnership and partnership by estoppel to impute liability to the FG Defendants fails. The PPMs and Confidential Offering Memoranda ("COMs") pursuant to which Plaintiffs invested clearly set forth the distinct

corporate status of the FG entities. Further, Plaintiffs do not plead facts establishing the requisite element of reliance. To the contrary, when making their investments, Plaintiffs explicitly disclaimed reliance on the documents they now rely on to assert a partnership existed.

*Fifth*, Plaintiffs' claims under the Exchange Act fail because Plaintiffs do not satisfy the rigorous requirements for pleading securities fraud set forth in Rule 9(b) of the Federal Rules of Civil Procedure and in the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). Critically, the SCAC does not allege facts to create a strong inference that each separate FG Defendant acted with the required state of mind to state a claim. Indeed, it defies common sense to suggest that the individual FG Defendants, who themselves were major investors in the relevant Funds, knew that Madoff was a fraud and intended to defraud his investors. Nor do Plaintiffs plead justifiable reliance. Again, when making their investments, Plaintiffs signed agreements in which they represented that they were not relying on the documents that are at the core of their claims in the SCAC. Moreover, the losses incurred by the Funds in which Plaintiffs invested were a direct result of Madoff's fraud, not the acts of the FG Defendants.

*Sixth*, Plaintiffs have not pled the requisite elements of their common law fraud, negligent misrepresentation, breach of fiduciary duty, and gross negligence claims.

*Seventh*, Plaintiffs' contract-related claims must be dismissed. Plaintiffs do not state a claim for unjust enrichment, nor have they alleged that they are entitled to a constructive trust, which in any event is not a cause of action but rather an equitable remedy. Plaintiffs do not allege a claim for mutual mistake because the documents containing the alleged mistakes are not contracts subject to rescission, and Plaintiffs were explicitly warned by the FG Defendants of the risk that their assets could be misappropriated. Finally, the claims for third party breach of contract fail because Plaintiffs are not third-party beneficiaries under the relevant contracts.

Plaintiffs' request for punitive damages is without merit because the Complaint does not allege the high degree of moral culpability required for punitive damages. Certainly there is moral culpability here, but it is that of Bernard Madoff.

Finally, there is no basis to grant leave to amend the Complaint. Plaintiffs as a group have already filed numerous complaints over many months. No further attempt is warranted or likely to cure the deficiencies briefed here.

## FACTUAL BACKGROUND[3]

### A. Plaintiffs' Complaint

Plaintiffs assert claims on behalf of themselves and a putative class of investors in four funds – Fairfield Sentry Limited ("Sentry"), Fairfield Sigma Limited ("Sigma"), Greenwich Sentry, L.P. ("GS"), and Greenwich Sentry Partners, L.P. ("GSP") (previously defined herein collectively as the "Funds"). The Funds were managed by certain FG Defendants and invested in BMIS. Sentry and Sigma (collectively, the "Offshore Funds") are private investment companies organized under the laws of the British Virgin Islands.[4] GS and GSP (collectively,

---

[3]    Solely for purposes of this motion to dismiss, the FG Defendants accept as true those allegations in the Complaint that are well-pled. *ATSI Commc'ns, Inc. v. Shaar Fund*, 493 F.3d 87, 98 (2d Cir. 2007) The FG Defendants also refer here to the content of certain documents which the Court properly may consider on this motion to dismiss, including "statements or documents incorporated into the complaint by reference…and documents possessed or known to the plaintiff and upon which it relied in bringing the suit." *Id.* (citation omitted). The Court may also take "judicial notice of filings with government agencies that are a matter of public record." *Roussin v. AARP, Inc.,* No. 09 Civ. 0586, 2009 WL 3397402, at *2 (S.D.N.Y. Oct. 15, 2009) (Marrero, J.) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)); *see also B.T. Produce Co. v. Robert A. Johnson Sales, Inc.,* 354 F. Supp. 2d 284, 285 n.2 (S.D.N.Y. 2004) (Marrero, J.). These documents are annexed as Exhibits 1-15 to the Thorne Declaration.

[4]    *See* SCAC ¶¶ 170-171; *see also* 8/14/06 Sentry PPM (Ex. 1) at 6; 12/1/08 Sigma PPM (Ex. 2) at 5. All references to ¶ herein are to the SCAC unless otherwise noted. All exhibit references herein are to exhibits accompanying the Thorne Declaration.

the "Onshore Funds") are hedge funds organized under Delaware law as limited partnerships.[5] Plaintiffs purport to assert direct claims on behalf of a putative class of all "shareholders" in the Funds as of December 10, 2008 who suffered a net loss of principal invested in the Funds based on the Funds' losses from investments in BMIS. ¶ 351.

Plaintiffs claim that the FG Defendants' failure to detect Madoff's fraud demonstrates that they did not conduct adequate due diligence on Madoff or adequately monitor the Funds' investments. ¶¶ 181-183. Plaintiffs allege that the FG Defendants overlooked so-called red flags that purportedly should have alerted them to Madoff's fraud, and misrepresented that Fund assets were being invested using Madoff's split-strike conversion ("SSC") strategy and that they had transparency regarding Madoff's operations. ¶¶ 184-185, 193, 199-201.

Significantly, while the Complaint spans over 200 pages, notably absent is any specific allegation that any of the FG Defendants made any intentional misstatements or were aware of, much less participated in, Madoff's fraud. Plaintiffs do not and cannot explain how the FG Defendants could have uncovered a fraud that evaded detection from regulators, auditors and thousands of other sophisticated investors for almost two decades. Indeed, the SEC, which of course has subpoena power, failed to uncover Madoff's fraud despite having conducted two investigations and three examinations relating to his operations. *See* SEC Office of Investigations, "Investigation of Failure of the SEC to Uncover Bernard Madoff's Ponzi Scheme – Public Version," Aug. 31, 2009, Report No. OIG-509 (Ex. 14).

The FG Defendants were aware of the fact that Madoff repeatedly received a clean bill of health from the SEC. During the course of the SEC's 2006 investigation, the FG Defendants

---

[5]    ¶¶ 172-173; *see also* 8/1/06 GS COM (Ex. 3) at iv; 8/1/06 GSP COM (Ex. 4) at iv.

provided the SEC with detailed account records and other material. In addition, two of the FG Defendants spoke with the SEC to assist in the investigation. OIG Report at 266-298.

### B.    The FG Defendants

Defendant Fairfield Greenwich (Bermuda) Ltd. ("FGBL") is a corporation organized under the laws of Bermuda. It served as the investment manager of the Offshore Funds until 2009. Pursuant to IMAs with the Offshore Funds, FGBL was entitled to monthly management fees and quarterly performance fees for services in that capacity.[6] FGBL is also the General Partner of the Onshore Funds. ¶ 119. FGBL manages the Onshore Funds pursuant to limited partnership agreements ("LPAs") that give FGBL exclusive authority to make investment decisions for the Onshore Funds and to engage other investment advisors as it deems necessary.[7] The Onshore Funds compensated FGBL for its services through the payment of monthly management fees and quarterly incentive allocations as authorized by the LPAs.[8]

Defendant Fairfield Greenwich Limited ("FGL") is an entity organized under the laws of the Cayman Islands. FGL served as the investment manager of Sentry until 2003, and as the placement agent for Sentry and Sigma. ¶ 118. FGL also served as the General Partner of GS before FGBL assumed that role. ¶ 118. Like FGBL, FGL had exclusive investment discretion with respect to investment decisions for the Offshore Funds and GS.[9] Defendant Fairfield

---

[6]    Sentry IMA (Ex. 5) at §8; Sigma IMA (Ex. 6) at §8.

[7]    ¶ 119; GS LPA (Ex. 7) at §§ 2.01, 1.04(b)(v); GSP LPA (Ex. 8) at §§ 2.01, 1.04(b)(v).

[8]    *See* GS LPA (Ex. 7) at §§ 2.07; 3.05; GSP LPA (Ex. 8) at §§ 2.07; 3.05.

[9]    10/1/02 IMA between FGL and Sentry (Ex. 9) at §7(a).

Heathcliff Capital LLC ("FHC"), a subsidiary of FGL, is a Delaware company and registered broker dealer that served as the placement agent for the Funds. ¶ 122.[10]

Defendant Fairfield Greenwich Advisors LLC ("FGA") is a Delaware limited liability company that provided the Offshore Funds and the Onshore Funds with administrative and back-office support. ¶ 120.

Defendants Walter Noel, Jeffrey Tucker, and Andrés Piedrahita are collectively the three largest shareholders of FGL and FGBL.[11] ¶¶ 124-126. Defendant Amit Vijayvergiya is the Chief Risk Officer and President of FGBL. ¶ 127. Defendant Daniel Lipton is the Chief Financial Officer of FGL and FGA. ¶ 128. Defendant Mark McKeefry is Chief Operating Officer of FGL and General Counsel of FGA. ¶ 129. *See* Thorne Decl. at ¶ 2.

Five of the six individual FG Defendants – Messrs. Noel, Tucker, Vijayvergiya, Piedrahita and McKeefry – invested in the Funds directly or through a family member, and lost substantial amounts of their own money in the Madoff fraud. ¶ 235; Thorne Decl. at ¶ 6.

C.     **The Investments**

The Confidential Offering Memoranda and Private Placement Memoranda

Because of the significant risks associated with the Funds, investors were required to meet stringent standards of sophistication established by the SEC before FG Defendants could

---

[10]   Unlike the other FG Defendants, the Complaint does not assert fraud claims and control person claims (Counts 1-4) against FHC. The only factual allegations pertaining to FHC are contained in paragraph 122 of the Complaint.

[11]   Defendants Noel, Tucker, and Piedrahita as well as other individual Fairfield Defendants and individuals categorized in the Complaint as Fairfield Fee Claim Defendants are shareholders of FGL and FGBL. Although Plaintiffs' chart at paragraph 148 of the Complaint erroneously references "Partner Compensation," these individuals own *shares* of FGL and FGBL. *See* Thorne Decl. at ¶ 3; SCAC ¶ 148.

accept their subscriptions for shares or limited partnership interests.[12]  Accordingly, all of the

putative Plaintiffs here are sophisticated investors.  Indeed, a majority are institutional investors.

*See* ¶¶ 1-116; *see also* 8/14/06 FS PPM at 11 ("Shares may be offered only to experienced and

sophisticated investors who are neither citizens nor residents of the United States ('Non-U.S.

Investors') and to a limited number of United States investors that are tax-exempt entities ('U.S.

Tax-Exempt Investors').").

The Offshore Funds sold shares of stock to qualified investors pursuant to Private

Placement Memoranda (previously defined herein as "PPMs").  The Onshore Funds sold limited

partnership interests pursuant to Confidential Offering Memoranda (previously defined herein as

"COMs").  Through the PPMs and COMs, potential investors were clearly informed that the

assets of the Funds would be invested almost entirely with BMIS.  8/14/06 Sentry PPM (Ex. 1) at

9-10, 16; 12/1/08 Sigma PPM (Ex. 2) at 9, 16; 5/2006 GS COM (Ex. 11) at 2, 8-9; 8/2006 GS

COM (Ex. 3) at 2, 8-9; 8/2006 GS COM (Ex. 4) at 2, 8.  Indeed, it is abundantly clear that

Plaintiffs invested in the Funds precisely because they wanted access to Madoff and his

investment strategy.

The PPMs and COMs disclosed the material terms and risks of an investment with the

Funds.  For example, the PPMs disclosed that all or substantially all of the Funds' assets would

be in the custody of BMIS as the exclusive execution agent of the Split-Strike Conversion

---

[12]  *See, e.g.*, 10/1/04 Sentry PPM (Ex. 13) at iv ("[T]he Shares may be held only by persons
who are 'professional investors' [and]…an investor will have to represent that he has
knowledge and expertise in financial matters sufficient to evaluate the risks involved in an
investment in the Fund"); 7/1/98 GS COM (Ex. 10) at ii ("The interests are suitable only for
sophisticated investors…who fully understand and are willing to assume the risks involved
in the partnership's specialized investment program."); *see also* 7/1/03 Sentry PPM (Ex. 12)
at iv, 1, 11; 10/1/04 Sentry PPM (Ex. 13) at 1, 10; 8/14/06 Sentry PPM (Ex. 1) at iv, 1, 11;
12/1/08 Sigma PPM (Ex. 2) at iv, 6; 7/1/98 GS COM (Ex. 10) at 13, 38; 5/2006 GS COM
(Ex. 11) at 17-18, 37; 8/2006 GS COM (Ex. 3) at 18, 38; 8/2006 GSP COM (Ex. 4) at 18,
37.

("SSC") strategy.  8/14/06 Sentry PPM (Ex. 1) at 9, 16; 12/1/08 Sigma PPM (Ex. 2) at 9, 16.  *See*

*also* 7/1/98 GS COM (Ex. 10) at ii, viii, 6; 5/2006 GS COM (Ex. 11) at 2, 8-9; 8/2006 GS COM

(Ex. 3) at 2, 8-9; 8/2006 GSP COM (Ex. 4) at 2, 8.[13]   The SSC strategy involved the purported

purchase and sale of stocks in the S&P 100 Index as well as options on that index.  ¶ 184.  The

PPMs contained specific warnings to investors about the possibility of misappropriation of

assets:

> When the Fund invests utilizing the 'split strike conversion' strategy or in a Non-
> SSC Investment vehicle, it will not have custody of the assets so invested.
> Therefore, **there is always the risk that the personnel of any entity with which
> the Fund invests could misappropriate the securities or funds** (or both) of the
> Fund." (emphasis added).

*See* 7/1/03 Sentry PPM (Ex. 12) at 25; 10/1/04 Sentry PPM (Ex. 13) at 19; 8/14/06 Sentry PPM
(Ex. 1) at 21; 12/1/08 Sigma PPM (Ex. 2) at 23.

Investors also were warned that the Funds were suitable only for those willing "to bear

the potential loss of their entire investment." *See, e.g.*, 10/1/04 Sentry PPM (Ex. 13) at iv;

8/14/06 Sentry PPM (Ex. 1) at iv; *see also* 5/2006 GS COM (Ex. 11) at 37 ("The interests are

suitable only for sophisticated investors… [who] are willing to assume the risks involved . . . and

to bear the potential loss of their entire investment…."); 7/1/98 GS COM (Ex. 10) at 38; 8/2006

GS COM (Ex. 3) at 38; 8/2006 GSP COM (Ex. 4) at 37.

All investors in the Funds also explicitly agreed to exculpate the FG Defendants from

liability to the Funds or to any of their shareholders or limited partners (including all putative

Plaintiffs here) for mistakes of judgment or losses incurred by the Funds.  *See, e.g.*, 7/1/03 Sentry

PPM (Ex. 12) at 7 ("The Investment Manager, its directors, officers, and employees, agents and

counsel…shall not be subject to…liability or expenses for any loss suffered by the fund…except

---

[13]   Starting in October 2002, up to 5% of the assets in Sentry and Sigma were invested in
alternative investment opportunities other than its "split strike conversion" investments (the
"Non-SSC Investments").  *See, e.g.*, 8/14/06 Sentry PPM (Ex. 1) at 10.

to the extent an act or omission constitutes willful misconduct, or reckless disregard….");

10/1/04 Sentry PPM (Ex. 13) at 6; 8/14/06 Sentry PPM (Ex. 1) at 7; 12/1/08 Sigma PPM (Ex. 2) at 8-9; *see also* 5/2006 GS COM (Ex. 11) at 37 ("[N]either the General Partner or any officer, director, employee or other agent of any of them...will be liable to any Partner or the Partnership for mistakes of judgment or for action or inaction which said person reasonably believed to be in the best interests of the Partnership, or for losses due to such mistakes, action or inaction or to the negligence, dishonesty or bad faith of any employee, broker, money manager or other agent of the Partnership…"); 7/1/98 GS COM (Ex. 10) at 37; 8/2006 GS COM (Ex. 3) at 37; 8/2006 GSP COM (Ex. 4) at 35-36.

## ARGUMENT

To survive a motion to dismiss, "a complaint must contain sufficient factual matter… to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 545 (internal quotations, citations, and alterations omitted); *see also Healthcare Fin. Group, Inc. v. Bank Leumi USA*, No. 08 Civ. 11260 (VM), 2009 WL 3631036, at *3 (S.D.N.Y. Oct. 26, 2009) (Marrero, J.) ("[A]llegations that are no more than legal conclusions 'are not entitled to the assumption of truth.'") (citing *Iqbal,* 129 S. Ct. at 1950.).

Claims sounding in fraud also must meet the heightened pleading standard set forth in Rule 9(b) of the Federal Rules of Civil Procedure. To comply with Rule 9(b), a complainant "must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir.1993)) (internal quotations omitted). While any fraud must be pled with particularity under Rule 9(b), that rule is applied "assiduously to securities fraud." *Gurfein v. Ameritrade, Inc.*, 411 F. Supp. 2d 416, 426 (S.D.N.Y. 2006).

The PSLRA "has expanded on Rule 9(b)'s pleading requirements." *In re Refco, Inc. Sec. Litig.*, 609 F. Supp. 2d 304, 311 (S.D.N.Y. 2009). The PSLRA mandates the dismissal of any securities fraud claim that does not "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

## I.     PLAINTIFFS LACK STANDING TO BRING THEIR STATE LAW CLAIMS

### A.     Plaintiffs' Alleged Injury Is Based on Losses Sustained by the Funds

Under the law of every jurisdiction applicable here, Plaintiffs lack standing to bring their state law claims because their alleged injury is entirely derivative of injury to the Funds in which they invested. Plaintiffs sue to recover their portion of the losses sustained by the Funds from the Funds' investments in BMIS. *See* ¶¶ 1-2. This theory of recovery is classically derivative.[14]

Whether a shareholder has standing to assert claims directly or whether those claims belong to the corporation is determined by the law of the state or country in which the

---

[14]     That Plaintiffs' claims are styled as direct claims is irrelevant. "In determining whether a complaint states an individual or a derivative cause of action," courts are "not bound by the designation" given by the plaintiff. *Moran v. Household Int'l, Inc.*, 490 A.2d 1059, 1069 (Del. Ch. 1985), *abrogated on other grounds by Tooley v. Donaldson, Lufkin, Jenrette, Inc.*, 845 A.2d 1031, 1035-39 (Del. 2004); *see also In re Syncor Int'l Corp. S'holders Litig.*, 857 A.2d 994, 998 (Del. Ch. 2004).

company is incorporated. *See, e.g.*, *In re Smith Barney Fund Transfer Agent Litig.*, 05 Civ. 7583 (WHP), 2007 WL 2809600, at *4 (S.D.N.Y. Sept. 26, 2007). Under the internal affairs doctrine, the legal relationship between a corporation and its shareholders (including how and by whom the internal affairs of the corporation are managed) is governed by the law of the place of incorporation. *See First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983).[15]

**B. Plaintiffs Lack Standing to Bring a Shareholder Action Under Applicable Law**

Because Sentry and Sigma are British Virgin Islands ("BVI") corporations, and GS and GSP are Delaware limited partnerships, BVI and Delaware law, respectively, apply to these Funds' internal affairs. *See* ¶¶ 170-173. Under both BVI law and Delaware law, each of Plaintiffs' state law claims are by their nature claims that must be brought by the Funds themselves or derivatively on behalf of the Funds, and cannot be brought as shareholder actions. Accordingly, Plaintiffs here lack standing to bring state law claims and those claims must be dismissed.[16]

1. <u>Plaintiffs Lack Standing Under BVI Law</u>. Under BVI law, claims for injuries to a shareholder derived from injuries to the corporation belong to the corporation. *See*

---

[15] *See also Strougo v. Bassini*, 282 F.3d 162, 167-69 (2d Cir. 2002); *Walton v. Morgan Stanley & Co.*, 623 F.2d 796, 798 n.3 (2d Cir. 1980); *Hausman v. Buckley*, 299 F.2d 696, 702 (2d Cir. 1962).

[16] Dismissal of these claims will not deprive Plaintiffs of a vehicle to seek recovery. Action have been brought against FG Defendants directly by the Sentry Fund and derivatively on behalf of the Sentry, GS, and GSP Funds. *See Fairfield Sentry Ltd. v. Fairfield Greenwich Group*, No. 09 Civ. 5650 (S.D.N.Y. filed June 19, 2009) (direct Sentry action); *Ferber v. Fairfield Greenwich Group*, No. 09 Civ. 2366 (S.D.N.Y. filed Mar. 13, 2009) (derivative GS action); *Pierce v. Fairfield Greenwich Group*, No. 09 Civ. 2588 (S.D.N.Y. filed Mar. 20, 2009) (derivative GSP action); *Morning Mist Holdings Ltd. v. Fairfield Greenwich Group*, No. 09 CIV. 5012 (S.D.N.Y. filed May 28, 2009) (derivative Sentry action). Sigma is in liquidation and could bring a direct action as well.

accompanying Affidavit of Gerard Farara setting forth BVI law ("Farara Aff.") ¶ 15 ("[T]he proper plaintiff in an action to redress a wrong done to a company is prima facie the company itself."). BVI law applies the Reflective Loss Principle, which establishes that a shareholder lacks standing to sue for alleged injuries that "reflect" losses suffered by the corporation. Farara Aff. ¶¶ 41-46. Under the Reflective Loss Principle and the rule in *Foss v. Harbottle*,[17] Plaintiffs cannot assert shareholder claims against the FG Defendants.

      2.   <u>Plaintiffs Lack Standing Under Delaware Law</u>. Equity holders such as Plaintiffs also lack standing to pursue direct claims for injuries sustained by a limited partnership under Delaware law.[18] The Delaware Supreme Court has held that whether a claim is derivative or direct depends on the answer to two questions: "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)." *Tooley v. Donaldson, Lufkin, Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004). *See also In re Syncor Int'l Corp. S'holders Litig.*, 857 A.2d 994, 997 (Del. Ch. 2004).

      To plead a direct claim the plaintiff must demonstrate that he or she can prevail without showing an injury to the corporation. *Tooley*, 845 A.2d at 1039. Here, it is plain that injury to the Funds is a necessary predicate to all of Plaintiffs' state law claims. Indeed, as noted above, the only injury Plaintiffs assert is the loss in the value of their investments in the Funds. Plaintiffs cannot plead a direct claim to recover for such injury. *See, e.g., Litman v. Prudential-*

---

[17]    Plaintiffs' state law claims do not fall under any of the exceptions to the rule in *Foss v. Harbottle*. Farara Aff. ¶ 25-40.

[18]    The determination of whether an injury is derivative or direct in nature is substantially the same regardless of whether the case involves a corporation or a limited partnership. *See Litman v. Prudential Bache Props., Inc.*, 611 A.2d 12, 15 (Del. Ch.), *amended by* Civ. A. No. 12137, 1992 WL 94369 (Del. Ch. 1992).

*Bache Props., Inc.*, 611 A.2d 12, 15-17 (Del. Ch.), *amended by* Civ. A. No. 12137, 1992 WL 94369 (Del. Ch. 1992); *Crossen v. Bernstein*, No. 91 Civ. 3501 (PKL), 1994 WL 281881, at *3 (S.D.N.Y. June 23, 1994).

*Tooley* also requires Plaintiffs to show that they should receive the benefit of the recovery sought. Plaintiffs' proposed class includes certain limited partners but excludes others. *See* ¶ 351 (limiting class to investors "who suffered a net loss of principal invested in the Funds," with certain exclusions). Allowing Plaintiffs to recover directly would deprive GS and GSP creditors and other limited partners outside the defined class from their rightful portion of recovery. *See Smith v. Waste Mgmt., Inc.*, 407 F.3d 381, 384-85 (5th Cir. 2005) (applying Delaware law); *Cowin v. Bresler*, 741 F.2d 410, 414 & n.4 (D.C. Cir. 1984) (applying Delaware law). Any monetary recovery properly belongs to GS and GSP and should be paid to those Funds for ultimate distribution first to creditors and then limited partners, pursuant to the relevant Fund's founding documents which set out the methods of calculating each stakeholder's share of the Fund's assets. Plaintiffs' attempt to bring these claims as shareholder claims is an effort to improperly obtain priority status over other claim-holders.

**C.      The Types of Claims Asserted by Plaintiffs Are Not Shareholder Claims**

1.      Breach of Fiduciary Duty. Under BVI law, claims for breach of fiduciary duty belong to the corporation and must be brought by the corporation or derivatively. *See* Farara Aff. ¶¶ 15-17, 24; *see also Eshelman v. OrthoClear Holdings, Inc.*, No. C 07-1429 (JSW), 2008 WL 171059, at *9-10 (N.D. Cal. Jan. 18, 2008), *aff'd*, No. C 07-1429, 2009 WL 506864 (N.D. Cal. Feb. 27, 2009) (applying BVI law).

Similarly, under Delaware law, a breach of fiduciary duty claim against directors belongs to the corporation, not the shareholders. Such a claim runs "to the corporation and not separately or independently to the stockholders." *Dietrich v. Harder*, 857 A.2d 1017, 1027 (Del. Ch. 2004);

*FS Parallel Fund v. Ergen*, Civ. No. 19853, 2004 WL 3048751, at *3 (Del. Ch. Nov. 3, 2004);

*Confin Int'l Invs. v. AT&T Corp.*, No. 19997, 2004 WL 485464, at *2 (Del. Ch. Mar. 12, 2004).

2.    <u>Contract-Related Claims</u>.  Plaintiffs seek to recover fees paid to all "Fairfield

Defendants"[19] through their contract-related claims – unjust enrichment, constructive trust, third-

party beneficiary breach of contract, and mutual mistake.  For each of these, Plaintiffs seek to

recover fees paid by the Funds themselves.[20]  However, as shareholders, Plaintiffs do not have

rights under the IMAs to bring a claim on behalf of the Funds and thus, if it is established that

the Funds improperly paid management fees as a result of the alleged fraud, the right to recover

those fees belongs to the Funds, not Plaintiffs.

It has long been recognized that a suit to enforce a corporation's rights under a contract to

which the corporation is a party can be maintained only by the corporation itself, not by a

shareholder individually as a third-party beneficiary.  *See* Farara Aff. ¶ 24; *Gostin v. Nelson*,

213 F. Supp. 164, 166 (D. Del. 1962); *Levien v. Sinclair Oil Corp.*, 314 A.2d 216, 221 (Del.

Ch.), *aff'd*, 332 A.2d 139 (Del. 1973); *Taormina v. Taormina Corp.*, 78 A.2d 473, 476-77 (Del.

Ch. 1951).  A shareholder may not bring a direct suit based on breach of a corporate contract or

seek to collect his proportionate share of money due to the corporation.  *See* Farara Aff. ¶ 24;

*Primavera Familienstiftung v. Askin*, No. 95 Civ. 8905 (RWS), 1996 WL 494904, at *11, *17

(S.D.N.Y. Aug. 30, 1996).

Moreover, to the extent that Plaintiffs' contract and quasi-contract claims are based on

allegations that the Fairfield Defendants failed to fulfill managerial and fiduciary duties, such

---

[19]    The "Fairfield Defendants" are defined in the SCAC as all of the FG Defendants and some
additional Fairfield Greenwich affiliated defendants.  *See* SCAC Glossary of Defined Terms
at ix.

[20]    For example, the Offshore Funds paid FGBL management fees pursuant to investment
management agreements.  *See* Sentry IMA (Ex. 5); Sigma IMA (Ex. 6).

claims likewise are derivative and should be dismissed. Claims for failure to provide competent and active management are "entirely derivative in nature" because they are based on "direct wrong[s] to the corporation that [are] indirectly experienced by all shareholders." *Kramer v. W. Pac. Indus., Inc.*, 546 A.2d 348, 353 (Del. 1988). Causes of action based on allegations that management wasted, mismanaged, or misused corporate assets or funds "do not affect contractual rights of shareholders," but represent an alleged harm to the corporate entity. *Id.*; *see also Albert v. Alex. Brown Mgmt. Servs., Inc.*, Nos. Civ.A. 762-N, 763-N, 2005 WL 2130607, at *13 (Del. Ch. Aug. 26, 2005); *Carfagno ex rel. Centerline Holding Co. v. Schnitzer*, 591 F. Supp. 2d 630, 635-37 (S.D.N.Y. 2008); *FS Parallel Fund L.P.*, 2004 WL 3048751, at *3; *ABF Capital Mgmt. v. Askin Capital Mgmt.*, 957 F. Supp. 1308, 1334 (S.D.N.Y. 1997).

The same result applies under BVI law. *See* Farara Aff. ¶ 24.

3. <u>Gross Negligence</u>. The gravamen of Plaintiffs' gross negligence claim is that the Fairfield Defendants inadequately managed the Funds thereby causing the losses. *See, e.g.*, ¶ 397. "[C]laims for gross negligence and failure to provide competent and active management" are "paradigmatic derivative claim[s]." *Albert*, 2005 WL 2130607, at *13; *see also Kramer v. W. Pac. Indus., Inc.*, 546 A.2d 348, 353 (Del. 1988). Indeed, Delaware law does not even recognize an independent cause of action against corporate directors and officers for reckless and gross mismanagement; such claims are instead treated as claims for breach of fiduciary duty. *See Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 155-57 (Del. Ch. 2004); *Albert v. Alex. Brown Mgmt. Servs., Inc.*, Nos. C.A. 04C-05-250 PLA, C.A. 04C-05-251 PLA, 2004 WL 2050527, at *6 (Del. Ch. Sept. 15, 2004); *Bokat v. Getty Oil Co.*, 262 A.2d 246, 249-50 (Del. 1970), *abrogated on other grounds by Tooley v. Donaldson, Lufkin, Jenrette,*

*Inc.*, 845 A.2d 1031, 1035-39 (Del. 2004); *Primavera Familienstiftung v. Askin*, No. 95 Civ. 8905 (RWS), 1996 WL 494904, at *15 (S.D.N.Y. Aug. 30, 1996).

Similarly, as set forth above, under BVI law, shareholder claims based on allegations that directors mismanaged the corporation cannot be brought individually. *See* Farara Aff. ¶ 24.

4.     <u>Fraud and Negligent Misrepresentation</u>.  Plaintiffs' fraud and negligent misrepresentation claims are based on the theory that the Fairfield Defendants failed to disclose allegedly inadequate due diligence with respect to BMIS' operations. *See, e.g.*, ¶ 389.  Claims supported only by conclusory allegations that misinformation regarding corporate management was fraudulently or negligently provided are derivative in nature.  Any claim "based upon the *mere fact* of knowing misrepresentation is necessarily derivative." *Manzo v. Rite Aid Corp.*, No. Civ. A. 18451-NC, 2002 WL 31926606, at *6 (Del. Ch. Dec. 19, 2002) (emphasis in original). In order to "state a *direct* claim on that basis, plaintiff must identify some resultant injury that . . . affects some shareholder disproportionately." *Id.* (emphasis in original).  To succeed as an individual claim, claims for fraudulent or negligent misrepresentation must allege a wrong "independent of the general wrong to the partnership from mismanagement, and separate from any other investor." *United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 447 (3d Cir. 2005). *See, e.g.*, *Smith v. Waste Mgmt., Inc.*, 407 F.3d 381, 384 (5th Cir. 2005); *Aboushanab v. Janay*, No. 06 Civ. 13472 (AKH), 2007 WL 2789511, at *6 (S.D.N.Y. Sept. 26, 2007).

These requisites are not met here.  Plaintiffs' allegations of fraud and negligent misrepresentation are based on marketing materials that Plaintiffs allege were offered uniformly to market participants. *See, e.g.*, ¶ 196.  This is not a basis upon which a shareholder may seek relief. *See In re Goldman Sachs Mutual Funds*, No. 04 Civ. 2567 (NRB), 2006 WL 126772

(S.D.N.Y. Jan. 17, 2006) (dismissing claims for alleged mismanagement because plaintiffs failed to allege any injury independent of the injury to all shareholders).

## II.    PLAINTIFFS' CLAIMS ARE PREEMPTED BY STATE AND FEDERAL STATUTES

### A.    The Martin Act Preempts All of Plaintiffs' Claims Except for Fraud

All of Plaintiffs' claims except for fraud are preempted by New York's Blue Sky Law, the Martin Act.  *See* N.Y. Gen. Bus. Law §352 *et seq* (McKinney 1996).[21]  "The Martin Act prohibits various fraudulent and deceitful practices in the distribution, exchange, sale, and purchase of securities but does not require proof of intent to defraud or scienter."  *Kassover v. UBS AG*, 619 F. Supp. 2d 28, 36 (S.D.N.Y. 2008) (quoting *Granite Partners, L.P. v. Bear, Stearns & Co.*, 17 F. Supp. 2d 275, 291 (S.D.N.Y. 1998)).  No private right of action exists under the Martin Act.  *Kassover v. UBS AG*, 619 F. Supp. 2d 28, 36 (S.D.N.Y. 2008).  Instead, the New York Attorney General has "sole discretion to investigate securities violations within or from the state of New York."  *In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 421 (S.D.N.Y. 2007) (citing N.Y. Gen. Bus. Law §352(1) (McKinney 2007)).

"The vast majority of state and federal courts have found that 'causes of action related to a plaintiff's securities fraud claim that do not include scienter as an essential element are typically preempted by the Martin Act….'"  *In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 421 (S.D.N.Y. 2007) (citing *Sedona Corp. v. Ladenburg Thalmann & Co.*, No. 03 Civ. 3120 (LTS) (THK), 2005 WL 1902780, at *22 (S.D.N.Y. Aug. 9, 2005)); *see also Abbey v. 3F Therapeutics, Inc.*, No. 06 CV 409 (KMW), 2009 WL 4333819, at *14 (S.D.N.Y. Dec. 2, 2009); *Whitehall Tenants Corp. v. Estate of Olnick*, 623 N.Y.S.2d 585, 585 (N.Y. App. Div. 1995).

---

[21]    Plaintiffs' non-fraud claims against the FG Defendants are negligent misrepresentation, gross negligence, breach of fiduciary duty, constructive trust, mutual mistake, unjust enrichment, and third-party beneficiary breach of contract.

Here, Martin Act preemption applies because all of Plaintiffs' claims are founded on Defendants' alleged misstatements and omissions concerning due diligence and monitoring of BMIS in connection with their investments in the Funds.[22] This Court has specifically held that claims similar to those asserted by Plaintiffs here are preempted by the Martin Act.[23]

*In re Bayou Hedge Fund Litigation* is particularly instructive. As is the case here, plaintiff based a breach of fiduciary duty claim against an investment advisor on the same allegations as a Rule 10b-5 claim – inadequacies in the defendant's due diligence. 534 F. Supp. 2d 405, 422 (S.D.N.Y. 2007). Based on this pleading, Judge McMahon concluded that the plaintiff's breach of fiduciary duty claim arose in the securities context and was preempted by the Martin Act. *Id.*

Martin Act preemption is particularly appropriate in this case because the New York Attorney General has already brought charges under the Martin Act against the manager

---

[22] The Martin Act's requirement that the claims be based on conduct "within or from" New York is satisfied here because a substantial portion of the events giving rise to the claims occurred in New York. *See, e.g.*, *Sedona Corp. v. Ladenburg Thalman & Co.*, No. 03 Civ. 3120 (LTS) (THK), 2005 WL 1902780, at *21-22 (S.D.N.Y. Aug. 9, 2005). Here, the partnership and equity interests were sold from New York, several of the FG Defendants were based in New York, Madoff and BMIS were located in New York, and Plaintiffs allege that GSP and GS were marketed and sold to investors in New York. *See* ¶¶ 172-173.

[23] *See, e.g.*, *Abbey*, 2009 WL 4333819, at *14 (negligent misrepresentation claim preempted); *Dover Ltd. v. A.B. Watley, Inc.*, 423 F. Supp. 2d 303, 330-31 (S.D.N.Y. 2006) (same); *see also Owens v. Gaffken & Barriger Fund, LLC*, No. 08 CIV. 8414 (PKC), 2009 WL 3073338, at *13-14 (S.D.N.Y. Sept. 21, 2009) (unjust enrichment claim preempted); *Kassover v. UBS AG*, 619 F. Supp. 2d 28, 37-39 (S.D.N.Y. 2008) (breach of fiduciary duty, negligent misrepresentation, and negligence claims preempted); *In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 422 (S.D.N.Y. 2007) (breach of fiduciary duty claim preempted); *Greene v. Hanover Direct, Inc.*, No. 06 Civ. 13308 (NRB), 2007 WL 4224372, at *5 (S.D.N.Y. Nov. 19, 2007) (same); *Pro Bono Invs., Inc. v. Gerry*, No. 03-cv-4347, 2005 WL 2429787, at *16 (S.D.N.Y. Sept. 30, 2005) (breach of fiduciary duty, gross negligence, constructive trust and unjust enrichment counterclaims preempted); *Sedona Corp. v. Ladenburg Thalmann & Co., Inc.*, No. 03 Civ. 3120 (LTS) (THK), 2005 WL 1902780, at *22 (S.D.N.Y. Aug. 9, 2005) (negligent misrepresentation, negligence, and breach of fiduciary duty claims preempted).

of several other Madoff "feeder funds," Ascot, Ariel, and Gabriel, on behalf of investors.  *See New York v. J. Ezra Merkin*, Index No. 450879/2009 (N.Y. Sup. Ct. filed Apr. 7, 2009).  This Court should follow the strong prevailing view in this District and hold that the Martin Act preempts all of Plaintiffs' state law claims except for fraud.

### B.        SLUSA Preempts All of Plaintiffs' Claims Except for Securities Fraud

All of Plaintiffs' claims except for securities fraud also are preempted by SLUSA. SLUSA provides, "No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1)(A) (2000); § 77p(b)(1) (1998).

Courts have applied SLUSA to preempt the kind of claims asserted by Plaintiffs.[24] SLUSA preempts a claim if it is: (i) a covered class action; (ii) based on state and common law; (iii) alleging a material misrepresentation or omission; (iv) in connection with the purchase or sale of a covered security.  *See In re WorldCom ERISA Litig., Inc.*, 263 F. Supp. 2d 745, 769 (S.D.N.Y. 2003).  The required elements for SLUSA preemption are met here.

---

[24]        *See, e.g., Cinicolo v. Morgan Stanley Dean Witter & Co.*, No. 01 Civ. 6940 (GBD), 2004 WL 2848542, at *5-6 (S.D.N.Y. Dec. 9, 2004) (breach of fiduciary duty and unjust enrichment claims preempted); *In re WorldCom, Inc. ERISA Litig.*, 263 F. Supp. 2d 745, 770 (S.D.N.Y. 2003) (negligence claim preempted); *Winne v. Equitable Life Assurance Soc'y*, 315 F. Supp. 2d 404, 417 (S.D.N.Y. 2003) (breach of contract claim preempted); *Araujo v. John Hancock Life Ins. Co.*, 206 F. Supp. 2d 377, 383 (E.D.N.Y. 2002) (breach of contract and unjust enrichment claims preempted); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 442-43 (S.D.N.Y. 2001) (fraud and negligent misrepresentation claims preempted); *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 308, 312 (6th Cir. 2009) (breach of fiduciary and contract claims preempted); *Dommert v. Raymond James Fin. Servs., Inc.*, No. Civ. A. 1:06-CV-102, 2007 WL 1018234, at *12 (E.D. Tex. Mar. 29, 2007) (breach of contract and breach of fiduciary duty claims preempted); *Schnorr v. Schubert*, No. 05-303, 2005 WL 2019878, at *5-7 (W.D. Okla. Aug. 18, 2005) (breach of fiduciary duty and restitution claims preempted).

1. <u>Plaintiffs' Action is a Covered Class Action</u>.  SLUSA broadly defines a "covered class action" to include lawsuits in which "damages are sought on behalf of more than 50 persons" or "one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated."  15 U.S.C. § 78bb(f)(5)(B) (2000); § 77p(f)(2) (1998).  Plaintiffs here seek to sue on behalf of a class alleged to number in the thousands.  *See* ¶¶ 351-353.

2. <u>Misrepresentations and Omissions Underpin Plaintiffs' Claims</u>.  Plaintiffs' state law claims for negligent misrepresentation and common law fraud plainly meet SLUSA's requirement that a misrepresentation or omission be alleged.  *See, e.g.*, ¶ 357 (fraud claim based on allegation that the FG Defendants made "false and misleading representations and omissions"); ¶ 383 (negligent misrepresentation claim based on allegation that the "Fairfield Defendants" made "false representations and material omissions").  This Court has squarely held that fraud and negligent misrepresentation claims fall within SLUSA's preemptive scope.  *See, e.g.*, *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 443 (S.D.N.Y. 2001).

While a misrepresentation or material omission is not an essential element of Plaintiffs' other legal theories of recovery – gross negligence, breach of fiduciary duty, third party beneficiary breach of contract, constructive trust, and mutual mistake – they are still preempted by SLUSA because they are based on the exact same factual allegations as the fraud and negligent misrepresentation claims, which are preempted.[25]

---

[25]  Each of Plaintiffs' claims arises from the same core securities fraud allegations – that the "Fairfield Defendants" made material misstatements and omissions of fact in connection with Plaintiffs' purchase of shares and/or equity interests in one of the Funds.  Indeed, over one third of the "Allegations of Fact" section pertaining to the "Fairfield Defendants" is included under the caption, "Fairfield Defendants' False Representations and Omissions in Marketing the Funds and Their Breaches of Fiduciary Duties to Investors."  *See* ¶¶ 181-216. The similarity between Plaintiffs' fraud and negligent misrepresentation claims and their

In analogous factual circumstances courts in this district and elsewhere have held that state common law claims are preempted under SLUSA. *See, e.g.*, *Cinicolo*, 2004 WL 2848542, at *5; *Dommert.*, 2007 WL 1018234, at *8, *12; *see also Disher v. Citigroup Global Mkts., Inc.*, 487 F. Supp. 2d 1009, 1023 (S.D. Ill. 2007); *In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d 845, 871-72 (D. Md. 2005).

3. <u>Plaintiffs Allege the Purchase and Sale of "Covered" Securities</u>. "Covered" securities for purposes of SLUSA include those securities that are listed or authorized for listing on the New York Stock Exchange or another national exchange. *See* 15 U.S.C. § 77r(b)(1)(A), (B) (1998), *cited in* 15 U.S.C. § 78bb(f)(5)(E) (2000), § 77p(f)(3) (1998). Here, the relevant covered securities are the "group or basket of equity securities…intended to highly correlate to the S&P 100 Index" that Plaintiffs allege the Funds were supposed to have purchased through BMIS pursuant to the split-strike conversion strategy. ¶ 184.

That Plaintiffs were not supposed to have purchased the "covered" securities directly is inconsequential. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006) ("Under our precedents, it is enough that the fraud alleged 'coincide' with a securities transaction-whether by the plaintiff or by someone else."); *Sofonia v. Principal Life Ins. Co.,* 465 F.3d 873, 879 n.4 (8th Cir. 2006).

---

other claims is striking. *See, e.g.*, ¶¶ 354-366 (fraud claims based on alleged misrepresentations regarding due diligence conducted by FG Defendants and omissions by these Defendants concerning 'red flags'); SCAC 379-394 (negligent misrepresentation claims based on alleged misrepresentations and omissions by "Fairfield Defendants" regarding their due diligence and the existence of 'red flags'); ¶¶ 395-401 (gross negligence claim based on alleged failure to perform adequate due diligence); ¶¶ 402-409 (breach of fiduciary duty claim based on failure to conduct adequate due diligence and monitoring); ¶¶ 417-420 (constructive trust count based on obligation to "perform adequate due diligence and monitoring").

That Madoff never actually purchased any covered securities is similarly irrelevant. *See,*
*e.g.*, *Schnorr v. Schubert*, No. 05-303, 2005 WL 2019878, at *5-7 (W.D. Okla. Aug. 18, 2005)
(in the context of a Ponzi scheme, "unfulfilled promises to purchase securities qualify as actual
purchases so long as the defrauded party actually pays for what he or she is led to believe are
securities or the right to purchase securities") (emphasis omitted); *Instituto de Prevision Militar*
*v. Merrill Lynch*, 546 F.3d 1340, 1347-51 (11th Cir. 2008) (SLUSA applied to class action
seeking to hold defendant liable for fraud in which third party stole investors' money rather than
purchasing securities); *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1129-30 (9th Cir. 2002)
("[I]f a person contracts to sell a security, that contract is a 'sale' even if the sale is never
consummated."), *amended by* 320 F.3d 905 (9th Cir. 2003); *cf. SEC v. Zandford*, 535 U.S. 813,
819-20 (2002) (citing with approval in the securities fraud context, the SEC's position that "a
broker who accepts payment for securities that he never intends to deliver…violates §10(b) and
Rule 10b-5").

4. The Alleged Misrepresentations and Omissions Were in Connection with the
Purported Purchase and Sale of Covered Securities.   The last element under SLUSA considers
whether the alleged fraud is in connection with the purchase or sale of a covered security.  Under
the Supreme Court's holding in *Dabit*, "it is enough that the fraud alleged 'coincide' with a
securities transaction" to satisfy this element.  *See Merrill Lynch, Pierce, Fenner & Smith Inc. v.*
*Dabit*, 547 U.S. 71, 85 (2006); *see also Ind. Elec. Workers Pension Trust Fund v. Millard*, No.
07 Civ. 172, 2007 WL 2141697, at *6 (S.D.N.Y. July 25, 2007) ("An alleged fraud is 'in
connection with' a purchase or sale of securities under SLUSA if the fraud 'coincides' with or is
'more than tangentially related' to the transaction.") (internal citations omitted); *Fisher v. Kanas*,
487 F. Supp. 2d 270, 277 (E.D.N.Y. 2007) (SLUSA "has been interpreted broadly by the

Supreme Court in *Dabit* to include any misrepresentation *touching* upon the purchase or sale of securities.") (emphasis added); *SEC v. Pirate Investor LLC*, 580 F.3d 233, 244 (4th Cir. 2009); *Dommert*, 2007 WL 1018234, at *11.

Here, the nexus between the alleged misrepresentations and omissions by the "Fairfield Defendants" and Madoff's purported purchase and sale of "covered" securities passes the modest "in connection with" requirement. Plaintiffs allege that the Fairfield Defendants made (i) "false representations and omissions regarding the split-strike conversion strategy" pursuant to which Madoff was supposed to purchase covered securities, (ii) "false representations and omissions regarding the Funds' track record of profitability," which was derived from Madoff's purported purchase and sale of covered securities, (iii) "false representations and omissions in Fund reports to investors," which again were based on Madoff's purported purchase and sale of covered securities, and (iv) "false representations and omissions concerning due diligence and oversight of Madoff," in essence claiming that the Fairfield Defendants should have uncovered the fact that Madoff was not purchasing covered securities. *See* ¶¶ 184-216.

SLUSA preemption also applies because Madoff made misrepresentations in connection with his purported purchase and sale of covered securities. Indeed, Plaintiffs allege that Madoff's operations were "'all just one big lie.'" SCAC ¶ 167. Madoff's misrepresentations count for SLUSA purposes because the statute does not require the misrepresentations or omissions to have been made by the defendants. *See, e.g.*, *Potter v. Janus Inv. Fund*, 483 F. Supp. 2d 692, 702 (S.D. Ill. 2007).

### III. THE SENTRY AND SIGMA PLAINTIFFS' CLAIMS ARE BARRED BY THE EXCULPATION PROVISIONS IN THE SENTRY AND SIGMA INVESTMENT MANAGEMENT AGREEMENTS

The claims brought by Plaintiffs who invested in the Sentry and Sigma Funds (previously defined as the "Offshore Funds") also must be dismissed because they are barred by the

exculpation provisions in the IMAs between the Offshore Funds and their investment managers, FGBL and FGL. For example, the October 2004 IMA entered into between FGBL and Sentry provides,

> The Investment Manager, its directors, officers and employees, agents and counsel (each, an "Investment Manager Indemnitee"), shall not be subject to, and the Fund shall indemnify to the fullest extent permitted by law and hold each Investment Manager Indemnitee free and harmless from and against, any and all claims, demands, liability or expenses for any loss suffered by the Fund arising out or [sic] any act or omission of an Investment Manager Indemnitee relating to the Fund, except to the extent such an act or omission constitutes *willful misconduct, or reckless disregard* of the duties of the Investment Manager or on the part of the Investment Manager Indemnitee.

Sentry IMA (Ex. 5) at ¶ 10(b) (emphasis added).[26] These exculpation clauses are incorporated directly into the Sentry and Sigma PPMs that Plaintiffs alleged they relied on before investing. *See, e.g.*, 8/14/06 Sentry PPM (Ex. 1) at 7; 12/1/08 Sigma PPM (Ex. 2) at 8-9. The exculpation clauses apply to FGBL and to the individual FG Defendants as directors and officers of FGBL. To the extent that the other FG Defendant entities were agents of FGBL, these entities are also protected under the exculpation clauses.

The exculpation clauses bar Plaintiffs from pursuing claims other than those based on willful misconduct, willful malfeasance, gross negligence, reckless disregard, or bad faith. These terms must be interpreted under Bermuda law because the IMAs contain Bermuda choice of law provisions. *See* Sentry IMA (Ex. 5) at ¶ 15; Sigma IMA (Ex. 6) at ¶ 15; *cf. Dessert Beauty, Inc. v. Platinum Funding Corp.,* No. 06 CIV. 2279 (SAS), 2006 WL 3780902, at

---

[26] The October 1, 2004 Investment Management Agreement between FGBL and Sigma ("Sigma IMA") contains an identical exculpation clause. Sigma IMA (Ex. 6) at ¶ 10(b).

*4 (S.D.N.Y. Dec. 26, 2006) (contract terms should be construed pursuant to the law of the state identified in a choice of law provision). [27]

Under Bermuda law, the concepts of willful misconduct, willful malfeasance, gross negligence, reckless disregard, and bad faith apply only where the defendant actually owed a duty of care to the plaintiff. Attride-Stirling Aff. ¶¶ 30-31, 36. Here, as a matter of Bermuda law, the FG Defendants did not owe any duties to the Plaintiffs who allegedly invested in the Offshore Funds. *Id.* ¶¶ 21-23. Rather, the FG Defendants owed a duty solely to FGBL, as officers and directors of that corporation. *Id.* ¶ 23. Therefore, under Bermuda law the FG Defendants could not have acted with willful misconduct, willful malfeasance, gross negligence, reckless disregard of a duty, or bad faith, and the exculpation clauses apply. *Id.* ¶¶ 29-48. [28]

## IV. PLAINTIFFS FAIL TO ALLEGE A DE FACTO PARTNERSHIP OR PARTNERSHIP BY ESTOPPEL

Plaintiffs' attempt to allege that each of the FG Defendants was part of a "de facto partnership" or that the "Fairfield Greenwich Group" was a "partnership by estoppel" (*see* ¶¶ 117, 176-180) fails as a matter of law. As an initial matter, the PPMs and COMs pursuant to

---

[27] FGL served as Sentry's Investment Manager prior to FGBL assuming the role. *See* ¶ 118. The governing FGL-Sentry IMA contained an exculpation provision similar to the one contained in the FGBL-Sentry IMA (*see* 2002 Sentry IMA ¶ 9) although it was governed by New York law (2002 Sentry IMA ¶ 14). The FG Defendants are protected under that earlier IMA as well because, as a matter of New York law, they did not engage in willful misfeasance/misconduct, bad faith, gross negligence, or reckless disregard of their duties.

[28] Even if the FG Defendants did owe a duty of care to Plaintiffs (which they did not), Plaintiffs fail to allege that each FG Defendant breached such a duty willfully, recklessly, with gross negligence, or in bad faith. *Id.* ¶¶ 37, 40, 43, 45. In order to plead willful misconduct, recklessness, or bad faith under Bermuda law, a plaintiff is required to precisely identify the individuals alleged to have breached a duty of care to the plaintiff. *Id.* ¶¶ 37, 43. Plaintiffs also must allege primary facts evidencing each defendant's high degree of carelessness in carrying out its duties. *Id.* Here, Plaintiffs' allegations improperly are directed at all "Fairfield Fraud Claim Defendants" as a group, failing to meet Plaintiffs' obligation to allege willful misconduct, willful malfeasance, gross negligence, recklessness, or bad faith with specificity. *Id.* ¶¶ 37, 40, 43, 45.

which Plaintiffs invested clearly set forth the corporate status of the FG Defendant entities. For

example, the Sentry PPM dated August 14, 2006 states that FGBL is "a corporation organized

under the laws of Bermuda"; that FGL is "an exempted company incorporated under the laws of

the Cayman Islands"; that FGA is "based in the U.S. and is registered with the Securities and

Exchange Commission as a registered investment adviser"; and that FRS is a wholly owned

subsidiary of FGL. *See* 08/14/06 Sentry PPM (Ex. 1) at 2, Form ADV Part II, Page 5.[29] This

disclosure alone defeats Plaintiffs' partnership by estoppel or de facto partnership claim.

Plaintiffs also fail to plead any facts to support their contention that FGG was a de facto

partnership. Under New York law, "the party pleading the existence of a partnership has the

burden of proving its existence." *N. Am. Knitting Mills, Inc. v. Int'l Women's Apparel, Inc.*, No.

99 Civ. 4643 (LAP), 2000 WL 1290608, at *1 (S.D.N.Y. Sept. 12, 2000) (internal citation

omitted). Failure to plead "facts that would establish the elements of a partnership" is a fatal

defect. *Id.* at *2. Courts consider whether the alleged partners: (i) shared profits and losses, (ii)

jointly controlled the management of the business, (iii) contributed property, financial resources,

effort, skill or knowledge, and (iv) intended to be partners. *Kidz Cloz, Inc. v. Officially For Kids,

Inc.*, 320 F. Supp. 2d 164, 171 (S.D.N.Y. 2004).

These elements are not pled here. The SCAC contains no facts suggesting that the

numerous alleged partners shared both profits and losses, jointly managed the business,

contributed financial resources to the alleged partnership, or intended to be part of a legal

partnership. *See, e.g., Kosower v. Gutowitz*, No. 00 Civ. 9011 (JGK), 2001 WL 1488440, at *6

---

[29]     *See also* 12/1/08 Sigma PPM (Ex. 2) at 2; 7/1/03 Sentry PPM (Ex. 12) at 2; 8/2006 GS
        COM (Ex. 3) at 9. Not only are the corporate identities of the entity FG Defendants clearly
        disclosed in the offering documents, they are also acknowledged by Plaintiffs in their
        Complaint. *See* ¶¶ 118-121.

(S.D.N.Y. Nov. 21, 2001) (dismissing claims based on alleged partnership where plaintiff failed to allege that the purported partners agreed to share losses as well as profits).

Likewise, Plaintiffs do not allege partnership by estoppel. Under the doctrine of estoppel, the plaintiff must not only show that the defendant held himself out as a partner, but also that the plaintiff reasonably relied on those representations to his detriment. N.Y. P'ship Law § 27(1) (McKinney 2005); *see also First Am. Corp. v. Price Waterhouse LLP*, 988 F. Supp. 353, 358 (S.D.N.Y. 1997). The doctrine of partnership by estoppel "is to be strictly guarded," and its application depends upon a plaintiff meeting his burden of showing actual reliance on knowing misrepresentations. *Sitchenko v. DiResta*, 512 F. Supp. 758, 762 (E.D.N.Y. 1981) (internal quotations omitted). Because the doctrine is narrowly construed, New York courts are loath to accept partnership by estoppel claims. *Hartford Accident & Indemnity Co. v. Oles*, 274 N.Y.S. 349, 353 (N.Y. Sup. Ct. 1934) (courts are "disposed to consider the rule [of estoppel] a harsh one" that can be invoked only where "the party is attempting to do that what casuists would decide to be a wrong; something which is against good conscience and honest dealing" because "estoppels are odious") (internal quotation marks omitted).

Courts have dismissed estoppel claims where, as here, plaintiffs fail to adequately allege they relied on purported representations regarding the existence of a partnership. *See, e.g.*, *Milano v. Freed,* 64 F.3d 91, 98 (2d Cir. 1995); *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1169 (2d Cir. 1993); *Staples, Inc. v. W.J.R. Assocs.*, No. 04 CV 904 (SJ) (KAM), 2007 WL 3046352, at *3 (E.D.N.Y. Sept. 28, 2007); *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 488 (S.D.N.Y. 2001); *First Am. Corp.*, 988 F. Supp. at 360. Here, Plaintiffs have not pled any facts evidencing any reliance on any alleged partnership representations, but only a conclusory allegation of reliance (*see* ¶ 178) which is insufficient.

Plaintiffs' reference to a September 2008 marketing brochure that used the term "partner" is, as a matter of law, insufficient to plead the existence of a partnership. *See, e.g.*, *Kosower v. Gutowitz*, No. 00 Civ. 9011 (JGK), 2001 WL 1488440, at *6 (S.D.N.Y. Nov. 21, 2001) ("'[C]alling an organization a partnership does not make it one.'") (quoting *Brodsky v. Stadlen*, 526 N.Y.S.2d 478, 479 (N.Y. App. Div. 1988)).  As a preliminary matter, the brochure post-dates the vast majority of Plaintiffs' investments. *See* ¶ 179.  Of the 116 Plaintiffs named in the SCAC, 102 – or 88% – invested *before* the marketing brochure was published. *See* ¶¶ 1-116. Plaintiffs could not have relied on any representations made in a document not in existence at the time of their investment. *See Hartford Accident & Indem. Co. v. Oles*, 274 N.Y.S. 349, 358 (N.Y. Sup. Ct. 1934) ("Plaintiff cannot create a retroactive estoppel.").

Further, Plaintiffs cannot allege reliance on the brochure because they were explicitly advised that they could rely only on the offering memorandum and their own due diligence, and Plaintiffs acknowledged this condition in signing their subscription documents.[30] *See Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 195-96 (2d Cir. 2003); *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1542 (2d Cir. 1997); *Belin v. Weissler*, No. 97 Civ. 8787, 1998 WL 391114, at *7-8 (S.D.N.Y. July 14, 1998).

---

[30] *See, e.g.*, 7/1/03 Sentry PPM (Ex. 12) at Appendix B - Fairfield Sentry Limited Subscription Documents, at ¶ 7 ("Subscriber acknowledges that in making a decision to subscribe for Shares, Subscriber has relied solely upon the Fund Documents and independent investigations made by Subscriber and has not relied on any representation inconsistent with the information in the Fund Documents.").  The Fund Documents are defined as the subscription agreement, the PPM, and the Fund's Memorandum of Association and Articles of Association. *Id*. at ¶ 1.

## V. PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 10(B) AND SECTION 20(A) OF THE EXCHANGE ACT

Plaintiffs' federal securities law claims must be dismissed because they do not meet the heightened pleading requirements of Fed. R. Civ. P. 9(b) and the PSLRA, which apply to all federal securities claims. *See ECA v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009).

### A. Plaintiffs Do Not Plead the Elements of a Claim Under Section 10(b) and Rule 10b-5

To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must allege with particularity facts sufficient to show that: (i) in connection with the purchase or sale of securities, (ii) the defendant, acting with scienter, (iii) made a false material representation or omitted to disclose material information, and (iv) the plaintiff's reliance on defendant's action (v) caused plaintiff's injury. *See id.* at 197. Plaintiffs have not pled any of these elements with particularity.

As a preliminary matter, Plaintiffs fail to identify any alleged misstatements or omissions in their 10b-5 count. Instead, they make a vague reference to "statements…particularized above." ¶ 370. This sort of scatter-shot pleading, whereby the FG Defendants and this Court must guess as to the factual basis for their securities fraud claims, is at odds with the heightened pleading standards of Rule 9(b) and the PSLRA. *See, e.g.*, *In re PetsMart, Inc. Sec. Litig.*, 61 F. Supp. 2d 982, 991 (D. Ariz. 1999) ("The court should not have to play connect-the-dots in order to identify the facts and trends upon which plaintiffs base their claim.").

Working backwards in the Complaint, Plaintiffs' claim may be premised on the allegation that all "Fairfield Defendants" misrepresented the strategy of the Funds that were invested with Madoff and BMIS (¶¶ 184-186); the performance of the Funds (¶¶ 187-192); and (3) their due diligence efforts (¶¶ 193-216). Even assuming these are the alleged misrepresentations, they do not form the basis of a Rule 10b-5 violation.

1.    Plaintiffs Do Not Allege that Any FG Defendant Intended to Defraud Any Plaintiff

Under the PSLRA, Plaintiffs are required to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).  To plead scienter in the Second Circuit, a plaintiff must allege facts that show either, (1) defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness.  *See Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1129-30 (2d Cir. 1994).  In either scenario, the inference "must be more than merely plausible or reasonable – it must be cogent and *at least as compelling as any opposing inference of nonfraudulent intent*."  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007) (emphasis added).  This inquiry is "inherently comparative."  *Id*. at 323.

Plaintiffs here plainly fail this test.  After examining the competing inferences as mandated by the Supreme Court, the most compelling inference is clear: the FG Defendants, like the SEC and scores of sophisticated investors, were deceived by Madoff's well-concealed fraud and had no intent to defraud Plaintiffs.  Indeed, five of the six individual FG Defendants invested in one or more of the same Funds that Plaintiffs claim to have invested in and from which the alleged losses are derived.[31]  It is not reasonable to infer that the FG Defendants knowingly put their own assets at risk by knowingly investing in a fraudulent fund.

(i)    Plaintiffs Do Not Allege Motive and Opportunity to Commit Fraud

To properly plead motive to commit fraud, a plaintiff must allege, among other things, facts that demonstrate "concrete benefits that could be realized by one or more of the false

---

[31]   Messrs. Noel, Tucker, Vijayvergiya, Piedrahita and McKeefry were all invested in one or more of the Funds directly or through a family member.  Thorne Decl. at ¶ 6.

statements and wrongful nondisclosures alleged." *In re Alstom*, 406 F. Supp. 2d 433, 446 (S.D.N.Y. 2005) (internal quotation marks and citation omitted).

Plaintiffs fail to plead any such benefits. Plaintiffs allege that the FG Defendants were motivated to commit fraud by the fees they received based on Plaintiffs' investments. *See* ¶ 372. It is very clear in this Circuit that such allegations are not sufficient to establish motive under Rule 10b-5. *See S. Cherry St., LLC v. Hennessee Group LLC*, 573 F.3d 98, 113 (2d Cir. 2009) ("The only fact cited — in South Cherry's brief on appeal — as to a possible motive for such [a fraudulent] intent is that HG receives a fee when a client invests in a recommended fund, and South Cherry suggests that HG wanted to receive its fee without incurring the expense of performing the promised due diligence…This is hardly a cogent or compelling suggestion."); *see also Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*, 551 F. Supp. 2d 210, 227 (S.D.N.Y. 2008) ("To accept a generalized allegation of motive based on a desire to continue to obtain management fees would read the scienter requirement out of the statute.").

Moreover, Plaintiffs' motive allegations are contradicted by their references to the Emerald Fund (¶ 235), in which Messrs. Noel and Tucker invested millions of dollars of their own personal assets with BMIS just before the Ponzi scheme was revealed. Thorne Decl. at ¶ 7. Again, that the FG Defendants lost millions of dollars in Madoff's Ponzi scheme is inconsistent with Plaintiffs' scienter allegations and supports the more compelling inference that they too were victims of Madoff's well-concealed fraud.

        (ii)       *Plaintiffs Fail to Allege Conscious Misbehavior or Reckless Disregard for the Truth*

Because the SCAC fails to include allegations of any plausible motive, Plaintiffs' burden to allege strong circumstantial evidence of conscious misbehavior or recklessness "must be correspondingly greater." *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001). The SCAC

contains no allegations of conscious misbehavior. Instead, Plaintiffs merely allege that the fraud

would have been discovered if more diligence had been performed.

Plaintiffs also fail to allege recklessness. Recklessness is conduct "represent[ing] an

extreme departure from the standards of ordinary care to the extent that the danger was either

known to the defendant or so obvious that the defendant must have been aware of it." *ECA*, 553

F.3d at 198 (internal quotations and citation omitted). Recklessness is not merely a heightened

form of negligence, and therefore even an "egregious failure to gather information will not

establish 10b-5 liability as long as the defendants did not deliberately shut their eyes to the

facts." *Hart v. Internet Wire, Inc.*, 145 F. Supp. 2d 360, 368-69 (S.D.N.Y. 2001) (quotations and

citation omitted).

At the heart of the SCAC are Plaintiffs' allegations that the "Fairfield Defendants"

misrepresented the thoroughness of their due diligence and misrepresented the strategy and

returns of the Funds because they had not performed satisfactory due diligence, including an

independent investigation of Madoff. *See, e.g.*, ¶¶ 186, 189. It is settled law that such

allegations do not plead scienter. *See, e.g.*, *In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405,

417 (S.D.N.Y. 2007) ("The failure to conduct due diligence is not the same thing as knowing of

or closing one's eyes to a known 'danger' or participating in the fraud."), *aff'd*, *S. Cherry St.,*

*LLC v. Hennessee Group LLC*, 573 F.3d 98, 110 (2d Cir. 2009); *see also Shields v. Citytrust*

*Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994) (scienter not adequately alleged where

allegations "strongly suggest[ed] that the defendants should have been more alert and more

skeptical, but nothing alleged indicate[d] that management was promoting a fraud"); *In re PXRE*

*Group, Ltd. Sec. Litig.*, 600 F. Supp. 2d 510, 547 (S.D.N.Y. 2009); *Ellington Mgmt. Group, LLC*

*v. Ameriquest Mortgage Co.*, No. 09 Civ. 0416 (JSR), 2009 WL 3170102, at *3 (S.D.N.Y. Sept.

29, 2009); *Hart v. Internet Wire, Inc.*, 145 F. Supp. 2d 360, 368-69 (S.D.N.Y. 2001); *In re WRT Energy Sec. Litig.,* No. 96 Civ. 3610, 3611 (JFK), 1997 WL 576023, at *13 (S.D.N.Y. Sept. 15, 1997), *vacated on other grounds by* 75 Fed. Appx. 839 (2d Cir. 2003) ("[T]he allegation that a defendant's due diligence investigation should have turned up the asserted improprieties in the offering materials is insufficient to satisfy [Rule] 9(b).") (quotation marks and citation omitted); *Goldman v. McMahan, Brafman, Morgan & Co.*, 706 F. Supp. 256, 259 (S.D.N.Y. 1989) (allegations that accountant "failed to properly audit" the partnership's books and records and should have "independently confirmed and verified" material information do not suffice to allege scienter); *The Limited, Inc. v. McCrory Corp.*, 683 F. Supp. 387, 395 (S.D.N.Y. 1988) ("Even if [the defendant] should have done more to attempt to uncover and disclose the alleged fraud, without factual allegations tending to establish knowledge of those practices," the defendant's failure to make additional inquiries is legally insufficient to allege scienter.); *Griffin v. McNiff*, 744 F. Supp. 1237, 1251 (S.D.N.Y. 1990) ("[A] failure to investigate does not rise above the level of negligence unless there are factual allegations which tend to establish knowledge of alleged [fraud or misconduct].").  The recent *Bayou* decision in particular controls Plaintiffs' Rule 10b-5 claim and requires that it be dismissed.

Moreover, scienter cannot be inferred from the alleged "red flags" identified in the Complaint.[32]  First, these alleged "red flags" are not themselves indicia of fraud.  *See, e.g.*, *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 270 (2d Cir. 1996) (defendant's failure to "equate record profits with misconduct cannot be said to be reckless."); *In re Bisys Sec. Litig.*, 397 F. Supp. 2d 430, 450 (S.D.N.Y. 2005) ("Weak accounting controls may pave the way for fraud.  They do not

---

[32]   Plaintiffs allege the following were "red flags": (1) the lack of transparency regarding Madoff's operations; (2) the fact that key positions were held by Madoff family members; (3) Madoff's custody of assets; (4) Madoff's "unknown" accounting firm; (5) Madoff's use of paper trading records; and (6) the allegedly implausible positive returns.  ¶ 217.

themselves constitute fraud."). Indeed, Plaintiffs appear to admit that the alleged "red flags" are merely facts that they allege should have prompted further investigation. *See, e.g.*, ¶ 221 (describing Madoff's custody of Fund assets as something that "should have alerted Defendants to the need for heightened scrutiny, monitoring, and verification of transactions."). And the case law in this Circuit is clear that allegations suggesting a defendant should have been more alert or skeptical are not sufficient to plead scienter. *See, e.g.*, *In re PXRE Group, Ltd. Sec. Litig.*, 600 F. Supp. 2d 510, 547 (S.D.N.Y. 2009); *see also Hart v. Internet Wire, Inc.*, 145 F. Supp. 2d 360, 368-69 (S.D.N.Y. 2001).

Second, Plaintiffs themselves knew or should have known about many, if not all, of the alleged "red flags." For example, the Sentry offering documents could not have been clearer that Madoff would serve as the sub-custodian for the Funds' assets. *See* 8/14/06 Sentry PPM (Ex. 1) at 16; *see also* 12/1/08 Sigma PPM (Ex. 2) at 16. They were equally clear regarding the risk of misappropriation. *See* 7/1/03 Sentry PPM (Ex. 12) at 25; 10/1/04 Sentry PPM (Ex. 13) at 19; 8/14/06 Sentry PPM (Ex. 1) at 21; 12/1/08 Sigma PPM (Ex. 2) at 23. Similarly, Plaintiffs themselves had access to information describing the profitability of the Funds that invested with Madoff and BMIS. *See, e.g.*, ¶ 187 (alleging PPMs and sales materials set forth the Funds' rate of returns).

Third, any attempt by Plaintiffs to use the alleged "red flags" to plead scienter is undermined by the fact that these alleged "red flags" did not suggest fraud to the SEC or to scores of other sophisticated investors. *Cf. In re Bayou*, 534 F. Supp. 2d 405, 416-18 (S.D.N.Y. 2007) (finding "the inference of recklessness alleged by plaintiff – that the [defendant's] failure to uncover the fraud evidences a reckless lack of due diligence – to be less compelling than an opposing inference – that [defendant's] failure to discover the fraud merely places it alongside

the SEC, the IRS, and every other interested party that reviewed [the asset manager's] finances.").

### (iii)    *Plaintiffs Fail to Allege Scienter as to Each Defendant*

In addition to the fundamental deficiencies in Plaintiffs' scienter allegations, Plaintiffs' Rule 10b-5 claim also must be dismissed because the Complaint does not plead scienter as to *each* FG Defendant. "[T]o establish scienter in misrepresentation cases, facts must be alleged which particularize how and why *each* defendant actually knew, or was reckless in not knowing, that the statements were false at the time made." *In re PXRE Group, Ltd. Sec. Litig.*, 600 F. Supp. 2d 510, 536 (S.D.N.Y. 2009) (emphasis added) (internal quotation marks and citation omitted); *see also Stair v. Calhoun*, No. 07-CV-03906 (JFB)(ETB), 2009 WL 792189, at *12 (E.D.N.Y. Mar. 23, 2009); *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 217 (S.D.N.Y. 2004). This Court has repeatedly held that scienter cannot be alleged through group pleading. *See, e.g.*, *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 449-450 (S.D.N.Y. 2005); *In re Bisys Sec. Litig.*, 397 F. Supp. 2d 430, 440 (S.D.N.Y. 2005).

Here, Plaintiffs attempt to rely on the very sort of broad-brush allegations that have been held inadequate. *See, e.g.*, ¶ 363 ("[The FG Defendants] knew facts or had access to information suggesting that their public statements were not accurate or failed to check information they had a duty to monitor and which would have demonstrated the falsity of their statements."); ¶ 372 ("[The FG Defendants] were motivated to commit wrongful acts by the hundreds of millions of dollars in fees they received based on Plaintiffs' investments and the illusory profits from those investments."). Such generalized allegations do not, and cannot, support the scienter element of Plaintiffs' Rule 10b-5 claim.

To the extent Plaintiffs even mention the FG Defendants individually, they do little more than recite their titles and purported roles. *See, e.g.*, ¶¶ 117-121, 124-129. These allegations are

entirely inadequate. Courts consistently reject attempts to plead fraud by title. *See, e.g.*, *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 535-36 (3d Cir. 1999) ("[A]llegations that a securities fraud defendant, because of his position within the company, 'must have known' a statement was false or misleading are 'precisely the types of inferences which [courts], on numerous occasions, have determined to be inadequate to withstand Rule 9(b) scrutiny.'") (citing *Maldonado v. Dominguez,* 137 F.3d 1, 10 (1st Cir. 1998)); *see also Goplen v. 51job, Inc.*, 453 F. Supp. 2d 759, 773 (S.D.N.Y. 2006); *Kinsey v. Cendant Corp.*, No. 04 Civ. 0582, 2005 WL 1907678, at *5 (S.D.N.Y. Aug. 10, 2005).

As reflected below, none of the allegations with respect to specific individuals support the requisite strong inference of scienter. This deficiency is even more apparent when placed in the context of the Complaint as a whole, which despite being over 200 pages long, contains no allegations suggesting that any of the FG Defendants engaged in any fraudulent activity. *Cf. In re PXRE Group*, 600 F. Supp. 2d at 536.

<u>Walter Noel</u>

The SCAC does not allege that Noel made any oral or written statement, much less an oral or written statement that could support a strong inference of scienter. In fact, the only allegation in the SCAC that could even conceivably be relevant is that on October 2, 2008, Noel, along with Tucker, McKeefry and Vijayvergiya (by telephone), allegedly attended a due diligence meeting at BMIS with Madoff and Frank DiPascali.[33] ¶ 230. Plaintiffs characterize the meeting as follows,

> During that meeting, Madoff refused to answer many of the central questions that FGG had asked in a questionnaire. For example, he refused

---

[33] Plaintiffs also allege that "Internal FGG emails…demonstrate that [Noel] was aware of FGG's lack of knowledge of Madoff's operations" but do not allege that Noel was an author of or addressee on any of the emails identified in the SCAC. ¶ 207.

> to supply the names of key personnel involved in implementation of the split-strike conversion strategy and would not identify the persons responsible for placing trade orders or their supervisors. Despite the fact that they had received numerous customer inquiries regarding counterparty risk and the identities of counterparties, the Fairfield Defendants did not press Madoff for this and other important information or otherwise follow up with any due diligence.

*Id.* Allegations regarding this meeting are not sufficient to support the scienter element of a 10b-5 claim, which requires that the fraud be "so obvious that the defendant must have been aware of it." *ECA*, 553 F.3d at 198 (internal quotations and citation omitted). Indeed, the assertion that the "Fairfield Defendants" could have pressed Madoff for more information is the very sort of allegation that the Second Circuit has held to be insufficient. *See, e.g.*, *Chill*, 101 F.3d at 270 ("Fraud cannot be inferred simply because GE might have been more curious or concerned about the activity at Kidder."); *see also Hart v. Internet Wire, Inc.*, 50 F. App'x 464, 466 (2d Cir. 2002); *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994). Moreover, the allegations that the FG Defendants sent Madoff a questionnaire and further questioned Madoff in person creates a strong inference that the FG Defendants did *not* know about Madoff's fraud – if they had the requisite scienter, there would have been no reason or incentive to conduct diligence on Madoff.

Andrés Piedrahita

The SCAC fails to allege any oral or written statements by Piedrahita, who during the period in question worked and resided in London and then Madrid. Rather, Plaintiffs weakly attempt to show scienter by citing only to three internal emails on which he, along with many others, was allegedly copied. Notably, Plaintiffs do not and cannot allege that any of these emails suggested an obvious fraud. In fact, as reflected below, the three emails are far from the type of "red flag" that could form the basis for a strong inference of recklessness. According to Plaintiffs,

38

- On August 19, 2008 Vijayvergiya allegedly sent an email to Charles Murphy, Philip Toub, Tucker, Piedrahita, the Executive Committee and others stating that "[u]nfortunately there are certain aspects of [Madoff's] operations that remain unclear." ¶ 228.

- On September 22, 2008, Richard Landsberger allegedly sent an email to Vijayvergiya, Tucker and the Executive Committee, which Piedrahita is alleged to have been on, asking whether "we [can] get some clarity from BLM on how he sees the markets and liquidity from his counterparties on the options?" ¶ 208.

- On September 24, 2008, Vijayvergiya allegedly sent an email to Andrew Smith, Landsberger, Tucker, Lipton, and the Executive Committee stating that "[w]e have a number of questions for BLM relating to the derivatives [counter-parties] - including his views on the willingness of the options [counter-parties] that have been historically used to continue trading with BLM, as Agent in this environment. These are in addition to several other important questions we have for BLM relating to their operations and trading (Bernie has already been sent a fax of our questions). ... [M]y preference would be to approach Bernie with well thought out, reasoned questions that focus on filling the gaps in our knowledge." ¶ 209.

These emails show that several "Fairfield Defendants" were engaged in ongoing due diligence by seeking additional information relating to Madoff and BMIS's operations at a time of extreme turbulence in the worldwide financial markets. Indeed, the two latter emails were sent in the immediate aftermath of the collapse of Lehman Brothers. The most plausible inference to be drawn from these emails is that the Fairfield Defendants recognized that this collapse called into question the stability of other counterparties, and were thus acting to alleviate their concerns. Nothing in these emails, or in the SCAC as a whole, in any way suggests that Piedrahita "deliberately shut [his] eyes to the facts." *Hart v. Internet Wire, Ins.*, 145 F. Supp. 2d 360, 368-69 (S.D.N.Y. 2001) (citation and quotation omitted). To the contrary, the emails demonstrate an effort to learn the facts, and show the senders' good faith belief in the legitimacy of the SSC strategy; they are simply trying to determine the potential impact on Madoff of the unparalleled market dislocation. Scienter cannot be inferred from active efforts at

diligence or from such generalized concerns.  *See, e.g.*, *In re PXRE Group*, 600 F. Supp. 2d at 537.

Daniel Lipton

Plaintiffs do not allege that Lipton made any statements to Plaintiffs at all, let alone false statements or omissions.  The SCAC refers to two internal emails allegedly sent by Lipton, but Plaintiffs have not even attempted to allege that those emails reflect Lipton's intent to defraud them.  In the first email, dated September 12, 2005, Lipton wrote that Madoff's auditors ("F&H") were "a small to medium size financial services audit and tax firm, specializing in broker-dealers and other financial services firms," and that the firm had "100's of clients and are well respected in the local community."  ¶ 225.  There is nothing to suggest that Lipton knew that this statement was false at the time it was made.  *Cf. In re Sierra Wireless, Inc. Sec. Litig.*, 482 F. Supp. 2d 365, 378 (S.D.N.Y. 2007).  To the contrary, according to the SCAC, Lipton did not receive information that called the size of F&H into question until two days *after* he had sent the email described above, when he received an email from another Fairfield employee stating that "[i]t appears Friehling is the only employee." ¶ 225.  In any event, the fact that Madoff employed a small auditing firm (the identity of which was publicly disclosed) is not clear evidence of fraud.

In the second email, Plaintiffs allege that Lipton asked Vijayvergiya whether "we know any of the other client [sic] of BLM's [BMIS's] auditors? Or how big they are? I remember we called over there a while ago." ¶ 226.  Again, this email does not support the allegation that Lipton intended to defraud Plaintiffs.

Similarly, other allegations in the SCAC reflect Lipton's efforts to stay abreast of Madoff's activities through communications with certain PricewaterhouseCoopers ("PwC") entities.  Plaintiffs allege that PwC Canada and PwC Netherlands served as the auditors of the

Funds. ¶¶ 154-155. According to Plaintiffs, on March 15, 2005, PwC Netherlands wrote to Lipton informing him that in "December 2004 PwC Bermuda had a meeting with Madoff 'in order to obtain and/or update PwC's understanding of the procedures in place at . . . [BMIS].' The letter stated that the purpose was to 'obtain[] an understanding of certain procedures and organization aspects of . . . [BMIS] for the purpose of gaining comfort thereon for the audits by several PwC offices of a number of funds having moneys managed by . . . [BMIS].'" ¶ 271. This merely suggests that Lipton took comfort in the fact that PwC was also monitoring Madoff.[34] Taking the SCAC as a whole, the most compelling inference is that Lipton believed that BMIS was being effectively monitored.

<u>Jeffrey Tucker</u>

Plaintiffs do not allege that Tucker made any statements to Plaintiffs at all, let alone any false statements or omissions. Indeed, the allegations concerning Tucker substantially overlap with those made against Noel, Piedrahita, and Lipton. *See* ¶¶ 208, 209, 225-226, 228, 230. Plaintiffs also excerpt testimony that Tucker provided to the Massachusetts Securities Division in connection with a Massachusetts administrative proceeding. *See* ¶ 214. In the excerpted testimony, Tucker stated that he never toured the part of Madoff's offices where the split strike conversion strategy was purportedly executed and that he was unfamiliar with the "proprietary models and algorithms" underlying the strategy. *See* ¶ 214. Plaintiffs do not even attempt to allege that scienter can be inferred from this testimony. Indeed, Plaintiffs allege only that

---

[34] The FG Defendants took comfort in the fact that PwC consistently gave the Funds unqualified (clean) audit opinions. *See* ¶¶ 261-267.

"Tucker's testimony demonstrates that the Fairfield Defendants failed to perform the due diligence that they represented to Plaintiffs." *See* ¶ 214.[35]

The most compelling inference to be drawn from the SCAC is that Tucker engaged in appropriate due diligence by, *inter alia*, going to BMIS and reviewing Madoff's trading records. ¶ 213. This diligence visit undermines Plaintiffs' attempt to show that Tucker acted recklessly, and instead establishes a compelling inference that he was another victim of Madoff's well-concealed fraud.

<u>Mark McKeefry</u>

Plaintiffs do not allege that McKeefry made any statements to Plaintiffs at all, let alone false statements or omissions. The allegations concerning McKeefry substantially overlap with those made against Noel, Piedrahita, Tucker, and Lipton. *See* ¶¶ 225, 230. Plaintiffs also allege that McKeefry, along with Vijayvergiya, spoke with Madoff during an SEC investigation of BMIS' operations. ¶ 234. According to Plaintiffs, during this alleged conversation Madoff "instruct[ed] the Fairfield Defendants in what to say and what not to say to the SEC." *Id.* However, Plaintiffs fail to allege anything about the substance of the alleged conversation at all – let alone facts suggesting that Madoff revealed anything incriminating. Nor do Plaintiffs allege any facts that suggest that McKeefry and Vijayvergiya heeded Madoff's alleged instructions on what to tell the SEC. Most importantly, Plaintiffs omit the fact that the FG Defendants told the SEC about the conversation with Madoff at the time it occurred, and complied with the SEC's requests for information about Madoff. *See* OIG Report (Ex. 14) at 269-271, 279. Plaintiffs'

---

[35] The Massachusetts proceeding was brought against only two of the Fairfield entities, no Fairfield related individuals, and there was never any adjudication of law or fact. The Massachusetts Securities Division did not assert fraud claims in that proceeding or anywhere else against any Fairfield related entity or individual.

cherry picking of certain parts of the alleged conversation with Madoff, while conspicuously omitting anything of substance, does not give rise to a strong inference of scienter.

<u>Amit Vijayvergiya</u>

The allegations concerning Vijayvergiya substantially overlap with those made against Noel, Piedrahita, Tucker, Lipton, and McKeefry. *See* ¶¶ 225, 226, 228, 230, 234. As with the aforementioned FG Defendants, Plaintiffs' allegations are devoid of any indication that Vijayvergiya acted with the requisite scienter.[36]

In addition, Plaintiffs allege that on September 16, 2008, Vijayvergiya "sent an email to Fairfield Sentry investors stating that Fairfield Sentry had dodged the market meltdown over the Lehman Brothers bankruptcy because '[c]urrently the [split-strike conversion] portfolio of Sentry is fully invested in short date U.S. Treasury bills.'" ¶ 229. Plaintiffs fail to allege – as they must to plead a 10(b) violation – that Vijayvergiya made this statement knowing it was false or that its falsity was so obvious that he should have known it was incorrect. Instead, Plaintiffs merely allege that Vijayvergiya had "no factual basis" for the statement "in view of [the Fairfield Defendants'] failure to conduct the represented due diligence and oversight of Madoff." *Id.*

In fact, contrary to Plaintiffs' conclusory allegation, it is clear from an exhibit to the Massachusetts Proceeding – selective exhibits of which Plaintiffs rely upon only when it suits them – that Fairfield personnel contacted Frank Di Pascali at BMIS on September 15, 2008 to determine the status of their accounts, and were told that the strategy was largely out of stocks, with "an orderly exit" planned for the following day. *See* Massachusetts Securities Division

---

[36] Some of the allegations against other Defendants – which in any event are insufficient to establish a strong inference of scienter – are not made against Vijayvergiya or McKeefry. For example, with respect to Madoff's auditors, there is no assertion in the Complaint that Vijayvergiya or McKeefry was aware of F&H's size or stature, or that either of them communicated any representations about F&H – much less knowingly false ones – to any investor.

Complaint, In the Matter of Fairfield Greenwich Advisors and Fairfield Greenwich (Bermuda) Ltd., Docket No. 2009-0028 (Mass. Sec. Div. Apr. 1, 2009) (Ex. 15) at Ex. 13. Thus, rather than being "unsubstantiated," Vijayvergiya's statement was based upon information actively sought and obtained from BMIS. Where all of relevant facts are available to the Court on this motion, it should not rely on Plaintiffs' cherry-picking of only the ones convenient to their case.

The FG Defendant Entities

The inability of Plaintiffs to allege scienter as to any of the individual FG Defendants is fatal to Plaintiffs' scienter claims against the entity FG Defendants. *See, e.g.*, *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*, 531 F.3d 190, 195 (2d Cir. 2008) (In order to allege corporate scienter, Plaintiffs' "pleaded facts must create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter."). Therefore, Plaintiffs' Rule 10b-5 claims against FGL, FGBL, FGA, and FRS must also be dismissed.

2.    Plaintiffs Do Not Allege Justifiable Reliance

Plaintiffs' allegations of reliance are too conclusory to support a 10b-5 claim.[37] Plaintiffs allege only that they "relied, to their detriment, on such misleading statements and omissions in purchasing limited partnerships or shares in the Funds." *See* ¶ 373. Such vague allegations are insufficient as a matter of law to sustain a claim of reliance. *See, e.g., In re Citigroup Auction Rate Sec. Litig.*, Nos. 08 Civ. 3095 (LTS) (FM), 09 md 2043 (LTS), 2009 WL 2914370, at *7 (S.D.N.Y. Sept. 11, 2009); *Creditsights, Inc. v. Ciasullo,* No. 05 Civ 9345 (DAB), 2008 WL 4185737, *13 (S.D.N.Y. Sept. 5, 2008).

---

[37] Reliance has sometimes been referred to as "transaction causation" in Second Circuit case law. *See Lentell v. Merrill Lynch & Co.,* 396 F.3d 161, 172 (2d Cir. 2005). In a securities fraud case, plaintiffs must allege both transaction causation/reliance and loss causation. *See ATSI Commc'ns, Inc.*, 493 F.3d at 106. Loss causation is discussed *infra*.

Moreover, Plaintiffs were required to be and represented themselves to be sophisticated investors.[38] This fact is significant because sophisticated investors know, or should know, that advertising and marketing materials routinely include important legal notices providing that such materials are for informational purposes only, that the information contained therein is not to be relied upon in making an investment, and prospective investors should rely only on the information found in the formal subscription documents. In addition, sophisticated investors are deemed to be on notice of all publicly available information concerning their investments. *See, e.g., Crigger v. Fahnestock and Co.*, 443 F.3d 230, 235 (2d Cir. 2006) (citation omitted) (stating that, where sophisticated investors "enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance."); *Estate of Detwiler v. Offenbecher*, 728 F. Supp. 103, 145 (S.D.N.Y. 1989) (stating that access to information precludes omission claim).

Notwithstanding their sophisticated investor status, in their SCAC, Plaintiffs allege reliance on the very same materials that they agreed they were not relying on in making their investments and were explicitly told not to rely on. *See, e.g.*, 7/1/03 Sentry PPM (Ex. 12) at Appendix B - Fairfield Sentry Limited Subscription Documents, at ¶ 7 ("Subscriber acknowledges that in making a decision to subscribe for Shares, Subscriber has relied *solely*

---

[38]  *See, e.g.*, 7/1/03 Sentry PPM (Ex. 12) at 11 ("Shares may be offered only to experienced and sophisticated investors who are neither citizens nor residents of the United States ("Non-U.S. Investors") and to a limited number of United States investors that are tax-exempt entities ("U.S. Tax-Exempt Investors")"); 8/2006 GS COM (Ex. 3) at 38 ("The interests are suitable only for sophisticated investors…."); *see also* 7/1/03 Sentry PPM (Ex. 12) at iv, 1; 10/1/04 Sentry PPM (Ex. 13) at iv, 1, 10; 8/14/06 Sentry PPM (Ex. 1) at iv, 1, 11; 12/1/08 Sigma PPM (Ex. 2) at iv, 6; 7/1/98 GS COM (Ex. 10) at ii; 13, 38; 5/2006 GS COM (Ex. 11) at 17-18, 37; 8/2006 GS COM (Ex. 3) at 18; 8/2006 GSP COM (Ex. 4) at 18, 37.

upon the Fund Documents[39] and independent investigations made by Subscriber and has not relied on any representation inconsistent with the information in the Fund Documents") (emphasis added); Sentry IMA (Ex. 5) at iii ("The Shares… will be issued only on the basis of the information in this Confidential Private Placement Memorandum and any attachments hereto (the "Memorandum"). No other information about Fairfield Sentry Limited (the "Fund") has been authorized. Any investment in the Fund on the basis of information that is not contained, or which is consistent with, the information herein shall be solely at your risk."); 7/1/98 GS COM (Ex. 10) at iii ("No offering literature or advertising in whatever form shall be employed in the offering of the interests except for this memorandum. No person has been authorized to make any representation, or give any information, with respect to the interests, except the information contained herein or in the supplement.").

Indeed, the marketing and advertising materials cited in the SCAC themselves clearly informed Plaintiffs that they were for informational purposes only and could not be relied upon as the basis for their investment decision. For example, the "Fairfield Sentry Ltd. October 2008 Update" contained the following disclaimer:

> [This document] is for informational purposes only and *may not be relied on* by you in evaluating the merits of investing in the Fund. It is *qualified in its entirety by the PPM* and no offering of interests in the Fund may be made by any literature, advertising, or document in whatever form other than the PPM, which may qualify, and differ from, the information and opinions contained herein."

"Fairfield Sentry Ltd. October 2008 Update" (emphasis added).[40]

---

[39]  The Fund Documents are defined as the subscription agreement, the PPM, and the Fund's Memorandum of Association and Articles of Association. *See* 7/1/03 Sentry PPM (Ex. 12) at Appendix B - Fairfield Sentry Limited Subscription Documents, at ¶ 1.

[40]  Similarly, the document entitled "Investment Process and Risk Management Overview" provides: "The information and opinions contained in this document are for background purposes only and do not purport to be full or complete. *No reliance may be placed for any purpose* on the information or opinions contained in this document or their accuracy or

As a matter of law, Plaintiffs cannot now claim to have justifiably relied on marketing materials and other documents external to the PPM or COM – material on which they explicitly disclaimed reliance before investing in the Funds. *See, e.g.*, *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1542 (2d Cir. 1997); *Belin*, 1998 WL 391114, at *7.

Further, Plaintiffs have claimed certain issues were 'red flags' despite the fact that they themselves were aware of those issues prior to investing or could have easily discovered them. For example, Plaintiffs allege that "[i]n contravention of standard risk management practice, Madoff also executed the purported trades through the broker-dealer operation of BMIS, and served as the custodian or sub-custodian for the assets of the Funds." ¶ 169. However, as shown above, the Sentry offering documents explicitly and unequivocally disclose Madoff's multiple roles and the concurrent risks. *See supra* at V.A.1.ii. These disclosures are fatal to any allegation that Plaintiffs were misled regarding Madoff's role as sub-custodian of Plaintiffs' assets. *See, e.g.*, *Halperin v. eBankerUSA.com, Inc.*, 295 F.3d 352, 360 (2d Cir.) ("[C]autionary language addresses the relevant risk directly, and therefore neither offering memorandum was misleading."), *aff'd*, 40 F. App'x 624 (2d Cir. 2002).

Similarly, information about the performance of the Funds was readily accessible to Plaintiffs. Indeed, Plaintiffs in their SCAC cite semi-annual reports and strategy reviews describing the Funds' performance. *See* ¶ 191. If, as Plaintiffs allege, the Funds were reporting

---

completeness. *No representation, warranty or undertaking, express or implied, is given* by FGG as to the accuracy or completeness of the information or opinions contained in this document…"

"implausibly consistent positive returns" (¶ 217), that was not kept secret from Plaintiffs. Indeed, it was precisely these returns that made Madoff so desirable to investors like Plaintiffs.

3.   Plaintiffs' Alleged Losses Were Caused by Madoff, Not Any of the FG Defendants

It cannot be disputed that the Funds' losses – and thus Plaintiffs' losses – were directly caused by Madoff's fraud.  Thus, Plaintiffs' allegation that their losses were the result of allegedly false statements attributable to the FG Defendants is implausible as a matter of fact and wrong as a matter of law.

The requirement that Plaintiffs plead loss causation is analogous to the requirement of proximate cause.  *See, e.g.*, *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 36 (2d Cir. 2009).  Plaintiffs must address more than "why a particular investment was made"; they must also "speak to the relationship between the fraud and the loss of the investment."  *Lentell v. Merrill Lynch & Co.*, 396 F. 3d 161, 174 (2d Cir. 2005); *see also Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 343-44 (2005)  (finding that "but for" causation is insufficient to meet loss causation requirements necessary to state a claim for fraud); *Verona Partners, LLC v. Tenet Capital Partners Convertible Opportunities Fund L.P.*, No. 05 Civ. 5369 PJH, 2006 WL 2669035, at *14 (N.D. Cal. Sept. 18, 2006) (finding that loss causation not adequately pled where plaintiff's economic loss was caused by the decline in value of the investment fund but the complaint alleged no facts showing a connection between the fund's decline and the alleged omission by defendant).

Here, Plaintiffs conclusorily allege only that "[t]he loss of Plaintiffs' assets in the Madoff Ponzi scheme is a direct and proximate result of Defendants' false representations and omissions and failure to fulfill their duties to Plaintiffs."  ¶ 3.  These allegations plainly do not suffice under the exacting loss causation standards articulated by the Second Circuit.  The most compelling

inference, indeed the only logical one, is that Plaintiffs' losses were the direct and proximate result of Madoff's fraud, not any alleged conduct of the FG Defendants.

### B. Plaintiffs Do Not Plead the Elements of a Section 20(a) Violation

To state a claim for control person liability under Section 20(a), Plaintiffs must allege, with particularity, facts showing: (1) a primary violation; (2) control of the primary violator by the defendant; and (3) culpable participation by the defendant in the primary violation. *See Bogulavsky v. Kaplan,* 159 F.3d 715, 720 (2d Cir. 1998). For the reasons discussed above, Plaintiffs have failed to plead a primary violation of Rule 10b-5. Accordingly, their Section 20(a) claim must be dismissed on this ground alone. *See ATSI Commc'ns, Inc.*, 493 F.3d at 105-106 (affirming dismissal of Section 20(a) claim because plaintiff "fails to allege any primary violation; thus it cannot establish control person liability"). Moreover, as detailed in the Motion to Dismiss submitted on behalf of the Other FG Defendants at Section I, which is incorporated herein by reference, Plaintiffs also have not adequately alleged the other two elements of a Section 20(a) claim.[41]

### VI. PLAINTIFFS FAIL TO PLEAD THE ELEMENTS OF THEIR TORT CLAIMS

### A. Plaintiffs Do Not and Cannot Allege Proximate Causation

For each of their claims Plaintiffs must allege that their losses were directly and proximately caused by the FG Defendants. *See, e.g.*, *Adamski v. Lama*, 869 N.Y.S.2d 256, 257 (N.Y. App. Div. 2008) (negligence); *Friedman v. Anderson*, 803 N.Y.S.2d 514, 517 (N.Y. App. Div. 2005) (fraud); *Laub v. Faessel*, 745 N.Y.S.2d 534, 536 (N.Y. App. Div. 2002) (negligent

---

[41] To the extent Plaintiffs premise their Section 20(a) claim on the allegation that "[t]he Executive Committee of FGG controlled the day-to-day operations of FGG and its corporate partners," ¶ 176, they have not pled any facts to support that conclusion. Alleging membership on the Executive Committee, without anything more, is not sufficient to state a claim under Section 20(a). In any event, Vijayvergiya and Lipton never served on the Executive Committee. *See* ¶¶ 127, 128.

misrepresentation); *Thorpe ex rel. Castleman v. CERBCO, Inc.*, 676 A.2d 436, 444 (Del. 1996) (breach of fiduciary duty). Proximate cause is the "immediate effective cause of plaintiff's injuries." *Ventricelli v. Kinney Sys. Rent a Car, Inc.*, 411 N.Y.S.2d 555, 556 (1978). Here, the "immediate effective cause" of Plaintiffs' alleged injuries was Madoff's massive fraud.

Madoff's criminal act was a "superseding and intervening event[] breaking [any alleged] chain of causation" between any alleged misconduct by the FG Defendants and Plaintiffs' losses. *See Port Auth. of N.Y. & N.J. v. Arcadian Corp.*, 189 F.3d 305, 319 (3d Cir. 1999) (applying New York law). Therefore, Plaintiffs do not, and cannot, allege causation.

Plaintiffs cannot overcome this fatal defect by alleging that the FG Defendants should have detected Madoff's fraud. "The general rule is that, absent special circumstances, no duty is imposed on a party to anticipate and prevent the intentional or criminal acts of a third party." *Henry v. Merck & Co.*, 877 F.2d 1489, 1492 (10th Cir. 1989). No "special circumstances" exist here. Indeed, the Second Circuit has held that a defendant cannot be liable for failing to prevent a third party's criminal acts unless those acts were "normal and foreseeable consequence" of the defendant's own actions. *Caraballo v. United States*, 830 F.2d 19, 22 (2d Cir. 1987). Plaintiffs have not attempted to allege that Madoff's massive fraud was a "normal and foreseeable consequence" of the misconduct allegedly engaged in by the FG Defendants, nor could they plausibly do so.

### B. Plaintiffs' Common Law Fraud Claims Fail

Plaintiffs' common law fraud claims must be dismissed for additional pleading defects. Plaintiffs allege two fraud counts. First, Plaintiffs allege that "purchasers" were induced to invest in one of the Funds based on allegedly fraudulent misrepresentations and omissions attributed to the FG Defendants. *See* Count 1, "Purchaser Claims," ¶¶ 354-359. Second, Plaintiffs allege that "holders" – *i.e.* existing investors in the Funds – were induced to maintain

their investments based on allegedly fraudulent misrepresentations and omissions attributed to the FG Defendants. *See* Count 2, "Holder Claims," ¶¶ 360-366.

In order to allege fraud under New York law, Plaintiffs must allege that "'(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.'" *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996) (quoting *Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995)).[42] These elements must be pled in accordance with the heightened pleading standard of Rule 9(b). *See Edison Fund*, 551 F. Supp. 2d at 232. Plaintiffs' common law fraud claims fail to meet this exacting requirement.

### 1. Plaintiffs' Common Law Fraud Claims Suffer From the Same Deficiencies as Their Rule 10b-5 Claim

The elements of common law fraud under New York law are essentially the same as those required to state a claim under Section 10(b) and Rule 10b-5. *Dover Ltd.*, 423 F. Supp. 2d at 327. Therefore, all of the deficiencies requiring dismissal of Plaintiffs' Rule 10b-5 claim are

---

[42] The citation to New York law in this Section of the Memorandum should not be construed as an admission that New York law applies to each of Plaintiff's tort claims. Indeed, the application of New York choice of law rules for torts would likely result in the laws of countries around the world and other states having to be applied, as Plaintiffs hail from all over the world and their home country or state was likely where the actions constituting the alleged torts took place. *See, e.g.*, *In re Currency Conversion Fee Antitrust Litig.*, 230 F.R.D. 303, 311 (S.D.N.Y. 2004) ("The torts arose in all fifty states and the District of Columbia-where the individual cardholders were solicited. . . ."). Although the task of applying the law of each Plaintiff's home country or state would no doubt prove overwhelming, it does not support abandoning New York choice of law principles and choosing one particular country's or state's laws. Instead, it demonstrates one reason (among many) why Plaintiffs cannot bring their claims as a class. *See, e.g.*, *In re Currency Conversion Fee Antitrust Litig.*, 230 F.R.D. 303, 311 (S.D.N.Y. 2004) (denying class certification because variations in state law swamped common issues and defeated predominance); *see also Lilly v. Ford Motor Co.,* No. 00 C 7372, 2002 WL 507126, at *2 (N.D.Ill. Apr. 03, 2002). Therefore, it is only for the purposes of this Memorandum that New York law is applied.

equally applicable to their common law fraud claims. *See supra* at V.A; *cf. Gordon Partners v. Blumenthal*, 293 F. App'x 815, 818 (2d Cir. 2008) (dismissing common law fraud claim on same grounds as Section 10(b) claim); *Muller-Paisnar v. TIAA*, 289 Fed. App'x 461, 463-65 (2d Cir. 2008) (same). Among those deficiencies equally requiring dismissal here are,

- Plaintiffs' allegations are almost exclusively focused on alleged lapses in due diligence and monitoring, which this Circuit has held insufficient to plead scienter. *See supra* at V.A.1.ii.

- Plaintiffs' attempt to group plead scienter fails to comply with the heightened pleading standards of Rule 9(b) and the PSLRA. *See supra* at V.A.1.iii.

- Plaintiffs' alleged reliance on documents they were explicitly prohibited from relying on in making their investments precludes Plaintiffs establishing justifiable reliance. *See supra* at V.A.2.

- Plaintiffs' damages were the result of Madoff's fraud, not any alleged misconduct by the FG Defendants. *See supra* at V.A.3.

2.      The "Purchaser" Fraud Claims Fail Because They are Based on Prospective Statements

The "Purchaser" fraud claims fail for the additional reason that they are primarily based on prospective statements. *See, e.g.*, ¶ 355 ("[The FG Defendants] falsely represented that "the Funds *would* invest their monies into a legitimate fund" and that the FG Defendants "*would* conduct due diligence into, monitor, and verify the investments made by them.") (emphasis added). Representations regarding future intentions are not actionable unless the allegations permit a fair inference that the intent was not honestly held when the representations were made. *See, e.g.*, *ATSI Commc'ns, Inc.*, 493 F.3d at 105-106; *see also Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993) ("The failure to carry out a promise…does not constitute fraud unless, when the promise was made, the defendant secretly intended not to perform or knew that he could not perform."); *cf. Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000) ("It is well-settled that the failure to carry out a promise made in connection with a securities transaction is

normally a breach of contract and does not justify a Rule 10b-5 action.") (internal quotation marks omitted).

Here, Plaintiffs have not pled any facts that suggest the FG Defendants secretly intended not to perform the promises they allegedly made to Plaintiffs that form the backbone of the "Purchaser Claims" for fraud.

### C. Plaintiffs Fail to State a Claim for Negligent Misrepresentation

As with their fraud claims, Plaintiffs allege "Purchaser Claims" and "Holder Claims" for negligent misrepresentation. *See* Count 5, "Purchaser Claims," ¶¶ 379-386; Count 6, "Holder Claims," ¶¶ 387-394. Both claims are inadequately pled and must be dismissed.

Under New York law, the elements for a negligent misrepresentation claim are that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment. *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000). A plaintiff must plead these elements with particularity. *In re Parmalat Sec. Litig.*, 479 F. Supp. 2d 332, 340 n.30 (S.D.N.Y. 2007); *Arnold Chevrolet LLC v. Tribune Co.*, No. 04-CV-3097 (DRH) (WDW), 2007 WL 2743490, at *7 (S.D.N.Y. Sept. 17, 2007).

Here, Plaintiffs have failed to allege the essential elements of negligent misrepresentation. In particular, Plaintiffs do not allege that they had a special relationship with any of the FG Defendants; the Purchaser Claims are not actionable because they are again based on prospective statements; and Plaintiffs do not allege that the FG Defendants knew or should have known of the falsity of the allegedly false statements attributed to them. In addition, the

claim is precluded under the longstanding New York rule that pure economic loss is not recoverable under a theory of negligence.

Moreover, Plaintiffs' negligent misrepresentation claims suffer from many of the same deficiencies as their Rule 10b-5 and common law fraud claims and must be dismissed for the same reasons. *See DeBlasio v. Merrill Lynch & Co., Inc.*, No. 07 Civ 318 (RJS), 2009 WL 2242605, at *32 (S.D.N.Y. July 27, 2009) ("Negligent misrepresentation involves most of the same elements as fraud, with a negligence standard substituted for the scienter requirement.") (internal quotation marks and citation omitted). These deficiencies include (i) alleged reliance on materials that Plaintiffs were explicitly prohibited from relying on in making their investments; (ii) alleged reliance on alleged omissions which were, in fact, disclosed to Plaintiffs, or to which they had easy access; and (iii) the fact that Plaintiffs' losses were caused by Madoff and not by any of the allegedly false statements or omissions attributed to the FG Defendants. *See supra* at V.A.

> ### 1. Plaintiffs Do Not Allege a Special Relationship

"New York courts do not recognize a cause of action for negligent misrepresentation in the absence of some special relationship of trust or confidence between the parties." *Accusystems, Inc. v. Honeywell Info. Sys., Inc.*, 580 F. Supp. 474, 480 (S.D.N.Y. 1984). Moreover, "[t]he New York Court of Appeals takes a rather cautious approach to determining whether a relationship necessary to support a claim for negligent misrepresentation exists." *Sykes v. RFD Third Ave. 1 Assocs. LLC*, 884 N.Y.S. 2d 745, 747 (N.Y. App. Div. 2009); *see also Ossining Union Free Sch. Dist. v. Anderson,* 73 N.Y.2d 417, 424 (1989) ("[W]e have defined [duty of care in misrepresentation cases] rather narrowly, more narrowly than other jurisdictions.").

The "Purchaser Claims" for negligent misrepresentation must be dismissed outright because there are no allegations that prospective investors had any relationship whatsoever with the FG Defendants prior to their investments, let alone a special relationship. *See, e.g.*, *Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano*, No. 03 Civ. 0015 (RWS), 2006 WL 1997628, at *10 (S.D.N.Y. July 18, 2006) ("[U]nless a prior relationship existed between the defendant and plaintiff, the defendant is not liable for negligent misrepresentation"); *FSP, Inc. v. Societe Generale*, No. 02CV4786GBD, 2005 WL 475986, at *13 (S.D.N.Y. Feb. 28, 2005).

Moreover, Plaintiffs' investments resulted from classic arms-length negotiations and therefore the making of such investments could not establish a special relationship with the FG Defendants. *Am. Protein Corp. v. AB Volvo*, 844 F.2d 56, 63-64 (2d Cir. 1988); *Henneberry v. Sumitomo Corp. of Am.*, 532 F. Supp. 2d 523, 539 (S.D.N.Y. 2007); *Greenberg v. Chrust*, 198 F. Supp. 2d 578, 585-86 (S.D.N.Y. 2002).

The existing investors also did not have a special relationship with the FG Defendants. In determining whether a special relationship exists, New York courts consider three factors: "'whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose.'" *Madison Capital Co., LLC v. Alasia, LLC*, 615 F. Supp. 2d 233, 240 (S.D.N.Y. 2009) (quoting *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001)). Plaintiffs have not adequately alleged that any of the indicia of a special relationship are present here.[43]

---

[43] New York courts also require, as a threshold matter, plaintiffs to be in privity or near privity with the defendant in order to bring a negligent misrepresentation claim. *See, e.g.*, *Momentive Performance Materials USA, Inc. v. Astrocosmos Metallurgical, Inc.*, No.

As to the first element, Plaintiffs baldly assert a special relationship based on the "Fairfield Defendants" alleged "unique or special expertise with respect to investments generally and the Madoff funds in particular." *See* ¶ 380. However, this Court has held that "knowledge of the particulars of the company's business…does not constitute the type of 'specialized' knowledge that is required in order to impose a duty of care in the commercial context." *See Gusmao v. GMT Group, Inc.*, No. 06 Civ. 5113 (GEL), 2008 WL 2980039, at *15 (S.D.N.Y. Aug. 1, 2008) (quoting *JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 402 (S.D.N.Y. 2004)); *cf. Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 466 (S.D.N.Y. 2009); *Gaidon v. Guardian Life Ins. Co. of Am.*, 679 N.Y.S.2d 611, 612 (N.Y. App. Div. 1998).

As to the second element, Plaintiffs do not even attempt to plead facts that evidence a "special relationship of trust or confidence." Plaintiffs have not alleged, for example, that there were any bonds or communications between particular FG Defendants and specific Plaintiffs that could have given rise to a relationship of trust and confidence. *See Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 466 (S.D.N.Y. 2009); *In re Sterling Foster & Co., Inc. Sec. Litig.*, 222 F. Supp. 2d 216, 284 (E.D.N.Y. 2002) ("In the absence of any allegations that the plaintiffs and these defendants had any contact, the Court cannot find that any relationship existed between the parties much less one of trust or confidence."). Rather, Plaintiffs merely attempt to bootstrap the alleged special expertise of the "Fairfield Defendants" to the conclusory allegation that a relationship of trust or confidence existed. *See* ¶ 380 ("Based on their unique or special expertise with respect to investments generally and the Madoff Funds in particular, the Fairfield Defendants had a special relationship of trust or confidence with Plaintiffs. . . ."). This Court has

---

1:07CV567 (FJS/DRH), 2009 WL 3111717, at *11 (N.D.N.Y. Sept. 23, 2009); *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 281 (S.D.N.Y. 2004). Here, Plaintiffs have not even attempted to plead this prerequisite.

previously rejected attempts to gloss over the second element of the special relationship test. *See, e.g.*, *DeBlasio*, 2009 WL 2242605, at *32-34 (dismissing negligent misrepresentation claim where special expertise was alleged but not the other two prongs of the special relationship test); *Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 466 (S.D.N.Y. 2009).

Plaintiffs also fail to plead the third prong of the special relationship test – that the FG Defendants were aware of the use to which the allegedly false statements cited in the SCAC would be put and supplied the statements for that purpose. To the contrary, as discussed in the Rule 10b-5 analysis above, most of the allegedly false statements cited in the SCAC are drawn from documents that Plaintiffs agreed they would not rely on in making their investments. *See supra* at V.A.2.

  2. <u>The Purchaser Claims Are Not Actionable Because They Improperly Are Based on Prospective Statements</u>

As with the Purchaser Claims for fraud, the Purchaser Claims for negligent misrepresentation are based on prospective statements that are not actionable. *See, e.g.,* ¶ 381 (The Fairfield Defendants falsely represented to Plaintiffs that the Funds "*would* invest their monies into a legitimate fund" and that "the Fairfield Defendants *would* monitor the investments made by them in the Funds operated by Madoff.") (emphasis added). Second Circuit case law is clear that "[p]romises of future conduct are not actionable as negligent misrepresentations." *Murray v. Xerox Corp.*, 811 F.2d 118, 123 (2d Cir. 1987); *accord U.S. W. Fin. Servs., Inc. v. Tollman,* 786 F. Supp. 333, 344 (S.D.N.Y. 1992).

  3. <u>Plaintiffs Do Not Allege that Each FG Defendant Was Negligent</u>

Plaintiffs fail to allege, as they must, how each FG Defendant was negligent in making the allegedly false statements attributed to him. *See supra* at V.A. It is not sufficient to plead collective negligence. *See, e.g.*, *Simon v. Castello*, 172 F.R.D. 103, 106-07 (S.D.N.Y. 1997);

*Landy v. Mitchell Petroleum Tech. Corp.,* 734 F. Supp. 608, 621 (S.D.N.Y. 1990) ("Plaintiffs must clearly identify each defendant's role in the scheme and what their connection was to the alleged misrepresentation.").

Further, even if Plaintiffs had properly pled negligence as to each FG Defendant, Plaintiffs' claims are barred by the exculpatory provisions in the IMAs of each of the Funds, Sentry, Sigma, GS and GSP, which are enforceable terms that waive any right to bring claims based on negligence. *See supra* at III; *see also Champion Home Builders Co. v. ADT Sec. Servs., Inc.*, 179 F. Supp. 2d 16, 24 (N.D.N.Y. 2001) (barring negligent misrepresentation claim due to a valid exculpatory clause).[44]

       4.      <ins>The Economic Loss Doctrine Bars the Negligent Misrepresentation Claim</ins>

Plaintiffs' negligent misrepresentation claim also is precluded by the economic loss doctrine. Under this "longstanding" New York rule, purely "economic loss is not recoverable under a theory of negligence." *Robin Bay Assocs., LLC v. Merrill Lynch & Co.*, No. 07 Civ. 376, 2008 WL 2275902, at *5 (S.D.N.Y. June 3, 2008) (citation and internal quotation marks omitted); *PPI Enters. (U.S.), Inc. v. Del Monte Foods Co.*, No. 99 Civ. 3794(BSJ), 2003 WL 22118977, at *27 (S.D.N.Y. Sept. 11, 2003) ("New York's 'economic loss' rule restricts a claimant who has not suffered personal or property injury, but only 'economic loss,' to an action in contract for the benefit of its bargain . . . New York retains this rule in order to preserve the distinction between tort and contract, in an 'attempt to keep contract law 'from drown[ing] in a sea of tort.'") (internal quotation marks and citation omitted).

---

[44]    In addition to the exculpation clauses referred to in Section III, *supra*, there are exculpation clauses in the GS and GSP IMAs that apply to preclude claims based on negligence. *See* Exs. 7 and 8.

This Court has consistently held that the economic loss doctrine bars negligent misrepresentation claims where, as here, the plaintiff has suffered only economic loss. *Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 609-10 (S.D.N.Y. 2009) (Marrero, J.); *GMA Accessories, Inc. v. ePartners Inc.*, No. 07 Civ. 8414 (LAK), 2008 WL 781188, at *1 (S.D.N.Y. Mar. 19, 2008); *PPI Enters. (U.S.), Inc. v. Del Monte Foods Co.*, No. 99 Civ. 3794(BSJ), 2003 WL 22118977, at *27 (S.D.N.Y. Sept. 11, 2003).

### D. Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty

Plaintiffs broadly allege "breaches of fiduciary duties" against the fifteen Fairfield Defendants. ¶¶ 402-409. However, Plaintiffs fail to allege the existence of a fiduciary relationship between Plaintiffs and the FG Defendants, or that any particular FG Defendant breached an alleged fiduciary duty.

"A federal court . . . adjudicating state law claims that are pendent to a federal claim must apply the choice of law rules of the forum state." *Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989). Under New York law, "breach of fiduciary duty claims are governed by the place of incorporation." *Druck Corp. v. Macro Fund (U.S.) Ltd.*, No. 02 Civ. 6164 (RO), 2007 WL 258177, at *2 (S.D.N.Y. Jan. 29, 2007), *aff'd*, 290 F. App'x 441 (2d Cir. 2008). *See also Walton v. Morgan Stanley & Co., Inc.*, 623 F.2d 796, 798 n.3 (2d Cir. 1980) ("New York law dictates that the law of the state of incorporation governs an allegation of breach of fiduciary duty owed to a corporation."); *Davimos v. Halle*, No. 03 Civ. 9199 (JGK), 2006 WL 859368, at *4 (S.D.N.Y. Mar. 31, 2006).[45] Accordingly, the breach of fiduciary duty claims by Plaintiffs who invested in GS and GSP are governed by Delaware law, and the breach of fiduciary duty claims

---

[45] *But see Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163 (S.D.N.Y. 2006). The FG Defendants respectfully disagree with the choice of law analysis set forth in Judge Scheindlin's opinion.

by Plaintiffs who invested in Sentry and Sigma are governed by BVI law. Under both Delaware and BVI law, their claims fail.

      1.     <u>Plaintiffs' Breach Of Fiduciary Duty Claims Fail Under BVI Law Because No FG Defendant Stood In A Fiduciary Relationship With Any Plaintiff</u>

BVI law is clear that an entity acting as an investment advisor or investment manager does not owe a fiduciary duty to the shareholders of the fund it serves. Affidavit of Gerard Farara ¶ 60. Thus, Plaintiffs' claim that FGL and FGBL breached a fiduciary duty toward Sentry's or Sigma's shareholders fails. *Id.* Plaintiffs' claim against FRS – which is based solely on FRS's engagement as the Funds' risk advisor –fails for the same reason. *Id.* ¶ 69.

The claims against FGA, FHC, Piedrahita and Vijayvergiya, as directors, officers, or affiliates of FGL and FGBL, also fail. *Id.* ¶ 73. To the extent the directors and officers of a BVI company have fiduciary duties, they owe those duties *only to the company* of which they are directors or officers. *Id.* ¶ 68. They do not owe any fiduciary duty to individual shareholders of a third party that contracts with their company – in this case, the Funds. *Id.* ¶ 71.

The claims against the other FG Defendants (Noel, Tucker, Lipton, and McKeefry) similarly fail. As set forth in the Farara Affidavit, the Complaint contains no allegations that sufficiently establish, under BVI law, that these defendants had a relationship of trust with Plaintiffs such that any fiduciary obligations could be breached. *Id.* ¶ 75.

      2.     <u>Plaintiffs' Breach Of Fiduciary Duty Claims Fail Under Delaware Law Because The Limited Partnership Agreements Modify Or Eliminate Any Fiduciary Duties</u>

Under Delaware law, the traditional fiduciary duties of loyalty and care among and between partners "may be modified by partnership agreements." *Kahn v. Icahn*, No. CIV. A.

15916, 1998 WL 832629, at *2 (Del. Ch. Nov. 12, 1998), *aff'd*, 746 A.2d 276 (Del. 2000).[46]

Indeed, a general partner's or other person's fiduciary duties of loyalty and care to the limited

partnership and its partners "may be . . . *restricted or eliminated* by provisions in the partnership

agreement." Del. Code Ann. tit. 6, § 17-1101(d) (2009) (emphasis added).

Where a partnership agreement specifies the partners' fiduciary duties, a claim for a

breach of those duties must be analyzed in terms of the partnership agreement. *See Gotham*

*Partners, L.P. v. Hallwood Realty Partners, L.P.*, No. Civ. A. 15754, 2000 WL 1476663, at *10

(Del. Ch. Oct. 20, 2000) ("Therefore, where the Partnership Agreement provides the standard

that will govern the duty owed by a General Partner to its partners in self-dealing transactions, it

is the contractual standard and not the default fiduciary duty of loyalty's fairness standard that

exclusively controls."); *In re Cencom Cable Income Partners, L.P. Litig.*, C.A. No. 14634, 1996

WL 74726, at *4 (Del. Ch. Feb. 15, 1996).[47]

Here, any duties owed by the General Partner to the unit holders of GS and GSP

regarding the management of those partnerships are exclusively defined by the partnership

agreements – which unambiguously modify and set aside any common law or statutory fiduciary

duties that might otherwise be applicable. These provisions provide,

---

[46]  Indeed, "[Delaware] cases have gone so far as to suggest that partnership agreements act as safe harbors for actions that might otherwise qualify as breaches of fiduciary duties under the traditional default rules." *Kahn v. Icahn*, No. Civ. A. 15916, 1998 WL 832629, at *2 (Del. Ch. Nov. 12, 1998) (citing *In re Cencom Cable Income Partners, L.P. Litig.*, C.A. No. 14634, 1996 WL 74726, at *4 (Del. Ch. Feb. 15, 1996)), *aff'd*, 746 A.2d 276 (Del. 2000); *Litman v. Prudential-Bache Props., Inc.*, C.A. No. 12137, 1993 WL 5922, at *5 (Del. Ch. Jan. 4, 1993), *remanded on other grounds*, C.A. No. 61, 1993 WL 603303 (Del. Super. Ct. Nov. 18, 1993), *aff'd*, 642 A.2d 837 (Del. 1994)).

[47]  *See also*, *Kahn v. Icahn*, No. CIV. A. 15916, 1998 WL 832629, at *2-3 (Del. Ch. Nov. 12, 1998), *aff'd*, 746 A.2d 276 (Del. 2000); *Brickell Partners v. Wise*, 794 A.2d 1, 3-4 (Del. Ch. 2001); *Sonet v. Timber Co., L.P.*, 722 A.2d 319, 322 (Del. Ch. 1998).

No General Partner or any officer, director, employee or agent of any of them shall be liable to any Partner or the Partnership *for mistakes of judgment* or for actions or inactions which said person *reasonably believed to be in the best interests of the Partnership*, or for losses due to such mistakes, actions or inaction or to the negligence, dishonesty or bad faith of any employee, broker, money manager or other agent of the Partnership, provided that such employee, broker, money manager or agent was selected, engaged or retained by the Partnership with reasonable care… Notwithstanding any of the foregoing to the contrary, the provisions of this Sec. 2.05 shall not be construed so as to relieve (or attempt to relieve) any General Partner or any Affiliates of the General Partner of any liability, to the extent (but only to the extent) that such liability may not be waived, modified, or limited under applicable law, but shall be construed so as to effectuate the provisions of this Sec. 2.05 to the fullest extent permitted by law.

GS LPA (Ex. 7) at § 2.05; GSP LPA (Ex. 8) at § 2.05 (emphasis added)

Plaintiffs do not plead the duties set forth in the partnership agreements and so do not even attempt to allege that the Fairfield Defendants breached those duties. Perhaps this is because the partnership agreements shield the General Partner from liability for mistakes in judgment reasonably believed to be in the best interest of the partnerships. GS LPA (Ex. 7) at § 2.05; GSP LPA (Ex. 8) at § 2.05.[48] There are no allegations in the SCAC that suggest the General Partner ever acted in a way that was contrary to what it believed was in the best interests of the partnership. Rather, Plaintiffs' entire fiduciary breach claim derives from Plaintiffs' claim that the General Partner ought to have conducted more due diligence. *See* ¶ 408. Such allegations are insufficient to establish a breach of the LPAs.[49] As Delaware courts have noted, a

---

[48] This limitation on liability is fully consistent with Delaware law and has been upheld by Delaware courts. Del. Code Ann. tit. 6, § 17-1101(f) (2009); *Anglo Am. Sec. Fund, L.P. v. S.R. Global Int'l Fund*, No. Civ. A 20066-N, 2006 WL 1494360, at *4 (Del. Ch. May 24, 2006) (finding no liability for negligent disclosure where partnership agreement required higher level of culpability).

[49] *Cf.* Lubaroff & Altman on Delaware Limited Partnerships § 11.2.6 at 11-26.7 ("When any level of dissatisfaction concerning a matter relating to the limited partnership occurs, people are quick to complain about what has occurred in terms of a breach of fiduciary duty. While such duties do exist, it is not proper to assert or rely on such duties as a means of rewriting a

court cannot be "tempted by the piteous pleas of limited partners who are seeking to escape the consequences of their own decisions to become investors in a partnership whose general partner has clearly exempted itself from traditional fiduciary duties." *Miller v. Am. Real Estate Partners, L.P.*, No. C.A. 16788, 2001 WL 1045643, at *8 (Del. Ch. Sept. 6, 2001); *accord Gelfman v. Weeden Investors, L.P.*, 792 A.2d 977, 985 (Del. Ch. 2001); *Gotham Partners, L.P.*, 2000 WL 1476663, at *6.[50]

Plaintiffs' breach of fiduciary duty claims fail for the additional reason that Section 17-407 of the Delaware Code protects a general partner from liability to its limited partners when the general partner relies in good faith upon those charged with properly preparing and presenting the financial records of the partnership. Del. Code Ann. tit. 6, § 17-407(c) (2009). Section 17-407(c) states:

> A general partner of a limited partnership that is not a limited liability limited partnership shall be *fully protected from liability* to the limited partnership, its partners or other persons party to or otherwise bound by the partnership agreement *in relying in good faith upon the records of the limited partnership* and upon information, opinions, reports or statements presented by another general partner of the limited partnership, an officer or employee of the limited partnership, a liquidating trustee, or committees of the limited partnership, limited partners or partners, or *by any other person as to matters the general partner reasonably believes are within such other person's professional or expert competence, including information, opinions, reports or statements as to the value and amount of the assets, liabilities, profits or losses of the limited partnership, or the value and amount of assets. . .* or any other facts pertinent to the existence and amount of assets from which distributions to partners or creditors might properly be paid.

---

partnership agreement.... [T]he agreement of partners concerning what the duties between them are should control. Courts and partners and their advisors should avoid making the mistake of thinking that, on the basis of generalized or even specific statements of duties which are contrary to the specific provisions of a partnership agreement, it is appropriate to rewrite the understanding of partners as set forth in the partnership agreement.").

[50] Delaware courts have upheld such exercises of discretion even when the result is not "entirely fair" as judged through the lens of fiduciary duty law. *Sonet v. Timber Co., L.P.*, 722 A.2d 319, 324-25 (Del. Ch. 1998); *see also Gelfman v. Weeden Investors, L.P.*, 792 A.2d 977, 987 (Del. Ch. 2001).

Del. Code Ann. tit. 6, § 17-407(c) (2009) (emphasis added).[51]  The Complaint alleges that the

Funds relied on the Citco Defendants to administer the Funds (¶¶ 319-350) and on the PwC

Defendants to prepare the Funds' audited financial statements.  (¶¶ 259-318).  Having relied

upon these professionals, and facing no allegation that such reliance was in bad-faith, the

Fairfield Defendants are protected from liability by Section 17-407.  *Anglo Am. Sec. Fund*, 2006

WL 1494360, at *4 (absolving general partner of a hedge fund from liability based on, *inter alia*,

its good-faith reliance on the fund administrator and auditor).

　　　　Finally, the claims against Lipton and McKeefry fail because Plaintiffs do not allege that

they were General Partners, and the Complaint contains no facts to support the existence of a

fiduciary relationship between these FG Defendants and investors in GS or GSP.  *See, e.g.*, *IT

Litig. Trust v. D'Aniello*, No. 02-10118, Civ. A. 04-1268-KAJ, 2005 WL 3050611, at *9 (D. Del.

Nov. 15, 2005); *Continuing Creditors' Comm. of Star Telecomm. Inc. v. Edgecomb*, 385 F. Supp.

2d 449, 466 (D. Del. 2004); *Bridgeport Holdings, Inc. v. Boyer*, 388 B.R. 548, 573 (Bankr. D.

Del. 2008).

　　　　Even if this Court finds that the LPAs do not modify or supplant common law fiduciary

duties under Delaware law, the FG Defendants are protected by the business judgment

presumption, which affords general partners "a presumption that they acted on an informed basis

and in the honest belief that they acted in the best interests of the partnership and the limited

partners." *Zoren v. Genesis Energy, L.P.*, 836 A.2d 521, 528 (Del. Ch. 2003) (internal quotation

marks and citations omitted).  To rebut the presumption of the business judgment rule, Plaintiffs

---

[51] Although Section 17-407 became effective on August 1, 2005, DRULPA expressly allows
for the retroactive effect of any amendments to DRULPA.  The Court of Chancery explicitly
held that Section 17-1108 "makes clear that the General Assembly's intent was to make all
amendments to DRULPA retroactive regardless of when the amendments were made."
*Gotham Partners, L.P.*, 2000 WL 1597909, at *3.

must plead particularized facts showing the FG Defendants' breached their fiduciary duty of care or of loyalty or acted in bad faith.[52] *See In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 62-66 (Del. 2006). The Complaint contains no such facts.

Allegations that the FG Defendants failed "to conduct adequate due diligence and monitoring" and failed "to follow-up on red flags that would have caused them to discover that Madoff was conducting Ponzi scheme," and earned fees "based on fraudulent asset values and investment returns" (¶ 408) are legally insufficient to show any breach of the duty of care or loyalty, nor do they demonstrate bad faith.

To allege a breach of the duty of care, a plaintiff must – at a minimum – plead gross negligence. *See, e.g.*, *Prod. Res. Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772, 799 (Del. Ch. 2004) (gross negligence insufficient to rebut the business judgment presumption) (citing *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 968 n.16 (Del. Ch.1996)). Because Plaintiffs fail to plead gross negligence (*see infra* at VI.E), they fail to establish a breach of the duty of care.

Plaintiffs cannot establish a breach of the duty of loyalty merely by alleging that the FG Defendants earned fees on incorrect asset values and investment returns. *See, e.g.*, *In re Cencom Cable Income Partners*, No. 14634, 1997 WL 666970, at *2 (Del. Ch. Oct. 15, 1997) (conclusory allegation that General Partner borrowed excessively at the expense of the partnership in order to enhance its management fees insufficient to establish breach of duty of loyalty).

Finally, Plaintiffs' allegations do not even come close to establishing bad faith. A

---

[52] To the extent Plaintiffs reference representations made before they became limited partners in the Funds, no fiduciary duty could have been breached because no duties were owed at that time. *See Anadarko Petroleum Corp. v. Panhandle E. Corp.*, 545 A.2d 1171, 1177 (Del. 1988) (no fiduciary duty is owed to prospective investors).

showing of bad faith requires a plaintiff to allege that the defendant either: (i) intended to harm the corporation; (ii) intended to violate positive law; or (iii) intentionally failed to act in the face of a known duty to act, demonstrating a conscious disregard for his duties. *See In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 65-67 (Del. 2006). The Complaint here is devoid of any such allegations. Indeed, courts have held that even gross negligence – which Plaintiffs here cannot establish – does not, on its own, constitute bad faith. *See In re Citigroup S'holder Derivative Litig.*, 964 A.2d 106, 126-27 (Del. Ch. 2009) (finding no bad faith where, despite knowing about certain "warning signs" related to investment risks, defendants failed to prevent company's losses associated with those risks); *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 64-65 (Del. 2006) (finding that in the absence of intentional harm or violation of positive law, gross negligence is insufficient to constitute bad faith); *see also Globis Partners, L.P. v. Plumtree Software, Inc.*, No. 1577, 2007 WL 4292024, at *6 (Del. Ch. Nov. 30, 2007).

### E.  Plaintiffs Fail to State a Claim for Gross Negligence

To plead gross negligence a plaintiff must allege the defendant's conduct "evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." *AT&T v. City of New York,* 83 F.3d 549, 556 (2d Cir. 1996) (quoting *Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.,* 81 N.Y.2d 821, 823-24 (1993)). Plaintiffs fail to adequately allege such conduct.

*Baker v. Andover Assocs. Mgmt. Corp.*, Index No. 6179/09 (N.Y. Sup. Ct. Nov. 30, 2009), a similar action by an investor seeking to recover losses against an investment group after sustaining losses as a result of Madoff's fraud, is instructive. There, the court dismissed the gross negligence claim, holding,

> Plaintiff's gross negligence claim…merely alleges that Defendants missed red flags…and failed to undertake their fiduciary duties…based on their failure to perform or cause to be performed "appropriate due diligence that would have revealed the illegitimate and fraudulent activities of Madoff and BMIS."… These claims fail to satisfy the pleading requirement for a

66

claim of gross negligence which requires "factual allegations of conduct evincing a reckless disregard for the rights of others or smacking of intentional wrongdoing…."

*Baker*, Index No. 6179/09, slip op. at 27 (internal citations omitted).

Moreover, Plaintiffs' claim for gross negligence, like their negligent misrepresentation claim, is barred by the economic loss doctrine. New York law is clear that "a negligence action seeking recovery for economic loss will not lie." *See County of Suffolk v. Long Island Lighting Co.*, 728 F.2d 52, 62 (2d Cir. 1984); *accord Cherny*, 604 F. Supp. 2d at 609 (Marrero, J.). Because Plaintiffs have not pled any loss other than purely economic loss, their claim for gross negligence fails.

## VII. PLAINTIFFS' CONTRACT RELATED CLAIMS MUST BE DISMISSED

### A. Plaintiffs Fail to State a Claim for Unjust Enrichment

Plaintiffs' quasi-contractual claim for unjust enrichment is precluded by actual written contracts covering the same subject matter: the Sentry and Sigma IMAs and the GS and GSP limited partnership agreements ("LPAs") (collectively, the "Agreements").

An unjust enrichment claim must be dismissed if there is a valid and enforceable written agreement covering the subject matter of the claim. *See, e.g.*, *Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 572 (2005); *see also Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987); *Metro. Elec. Mfg. Co. v. Herbert Constr. Co.*, 583 N.Y.S.2d 497, 498 (N.Y. App. Div. 1992). This rule holds true whether or not the contract that precludes the unjust enrichment claim is between the parties to the lawsuit. *See Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, No. 03 Civ. 1537 (MBM), 2003 WL 23018888, at *17-18 (S.D.N.Y. Dec. 22, 2003), *aff'd*, 110 F. App'x 191 (2d Cir. 2004).

Here, the Agreements not only cover the same subject matter as Plaintiffs' unjust enrichment claim, but are a necessary predicate to the cause of action. Through their unjust

enrichment claim, Plaintiffs are seeking to recover fees that were paid pursuant to the Agreements. Indeed, Plaintiffs have also pled a third-party beneficiary breach of contract claim based on the Agreements to recover the same fees. *See* ¶¶ 410-416. That contract claim is identical to their unjust enrichment claim. *Compare* ¶ 416 (alleging FGBL and FGL breached the Agreements by "receiving and holding fees based on fictitious profits and for services not properly performed) *with* ¶ 569 ("[I]t is unjust and inequitable for the Defendants to have enriched themselves through the collection of fees for their services."). Since any recovery on the unjust enrichment claim would necessarily be based on a valid and existing contract, it must be dismissed. *See Baker*, Index No. 6179/09, slip op. at 28 ("Because there is no dispute that the Defendants' receipt and retention of fees was made pursuant to the various agreements, there is no dispute that there exists a written contract covering the subject matter of this cause of action and Plaintiff's claim for unjust enrichment…shall be dismissed.").

Moreover, the merits of the unjust enrichment claim as to Plaintiffs who invested in Sentry and Sigma, are governed by the IMAs. As shown above, the IMAs contain an exculpation clause that provides that Sentry and Sigma's investment manager (FGBL) and its directors, officers and employees, agents, and counsel cannot be held liable to the Funds unless they engaged in willful misconduct or recklessly disregarded their duties. *See supra* at III; Sentry IMA (Ex. 5) at ¶ 10(b); Sigma IMA (Ex. 6) at ¶ 10(b). Therefore, the FG Defendants cannot be held liable under an unjust enrichment theory unless the exculpation provisions of the IMAs are held not to apply. The IMAs are thus again directly implicated by Plaintiffs' unjust enrichment claim.

Further, Plaintiffs who invested in the Offshore Funds cannot recover against any of the FG Defendants for unjust enrichment because there is no privity. *Baker*, Index No. 6179/09, slip

op. at 28 n.18 ("[B]ecause Plaintiff is not in privity with Defendants, she cannot allege that they were enriched at her expense.").  "Again, any claim for unjust enrichment would belong to the Fund, and, as such, Plaintiff would need to pursue this claim derivatively if it were otherwise viable, which it is not."  *Id.*

## B.  Plaintiffs Are Not Entitled to a Constructive Trust

Plaintiffs are not entitled to have a constructive trust imposed.  First, a constructive trust is not a cause of action but rather an equitable remedy, and therefore should "not be imposed unless it is demonstrated that a legal remedy is inadequate."  *See, e.g.*, *In re First Cent. Fin. Corp.*, 377 F.3d 209, 215 (2d Cir. 2004) (quoting *Bertoni v. Catucci,* 498 N.Y.S.2d 902, 905 (N.Y. App. Div. 1986)).  Here, Plaintiffs have failed to allege, as they must, that they lack an adequate remedy at law.

Second, Plaintiffs have failed to identify a res – a "segregated fund or property" – to which a constructive trust could attach.  *Weis Sec., Inc. v. Redington*, 605 F.2d 590, 597 (2d Cir. 1978), *cert. denied*, 439 U.S. 1128 (1978).  The Second Circuit has clearly held that the remedy of a constructive trust cannot be awarded where no res has been identified.  *See, e.g.*, *United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 416 (2d Cir. 2001); *Weis Sec., Inc. v. Redington*, 605 F.2d 590, 597 (2d Cir. 1978), *cert. denied*, 439 U.S. 1128 (1978); *Bennett Silvershein Assocs. v. Furman*, No. 91 Civ. 3118 (JGK), 1997 WL 531310, at *7 (S.D.N.Y. Aug. 28, 1997).  A plaintiff must be able to trace property that is rightfully his to the defendant.  *See In re Drexel Burnham Lambert Group, Inc.*, 142 B.R. 633, 637 (S.D.N.Y. 1992).

In attempted contravention of this rule, Plaintiffs seek a constructive trust on "the amount of all monies and other property in the possession of the Fairfield Defendants and Fairfield Fee Claim Defendants which relate to fees paid to them on account of fictitious profits and assets of

the Funds, the amount of which is to be determined." ¶ 420.  This plainly does not allege the requisite identifiable res.[53]

Third, Plaintiffs have not alleged a cognizable claim that would entitle them to a constructive trust.  The Second Circuit has held that a constructive trust will be imposed only where it is "essential to prevent unjust enrichment."  *Counihan v. Allstate Ins. Co.*, 194 F.3d 357, 362 (2d Cir. 1999); *accord United States v. Ribadeneira,* 105 F.3d 833, 837 n.5 (2d Cir. 1997).  As shown above, Plaintiffs have not stated a claim for unjust enrichment against any of the FG Defendants.  *See supra* at VII.A.

Fourth, Plaintiffs' constructive trust claim must be analyzed under Bermuda law to the extent that Plaintiffs are seeking to recover fees paid pursuant to the IMAs between FGBL and the Offshore Funds because the IMAs contain a Bermuda choice of law clause.  *See* Sentry IMA (Ex. 5) at ¶ 15; Sigma IMA (Ex. 6) at ¶ 15.  Under Bermuda law, Plaintiffs' constructive trust claim fails because it is premised on the erroneous allegation that all "Fairfield Defendants" and "Fairfield Fee Claim Defendants" were in a fiduciary relationship with Plaintiffs.  ¶ 418.

## C.    Plaintiffs Do Not Allege Mutual Mistake

Plaintiffs claim the FG Defendants "were paid. . . fees under a mutual mistake of the parties as to the amount and value of net assets under management and the amount of profits." ¶ 423.  This allegation does not state a claim for mutual mistake for several independent reasons.

---

[53]    In fact, it is highly likely that the fees, paid over a number of years to various individuals, have already been spent in the ordinary course.  *Cf. Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 213-14 (2002) (quoting Restatement of Restitution § 215 cmt. a (1936)) ("[W]here 'the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claims is only that of a general creditor,' and the plaintiff cannot enforce a constructive trust…upon other property of the [defendant].").

First, Plaintiffs have identified the wrong documents as the basis for their mutual mistake claim. Plaintiffs seek to recover fees based on alleged mistakes in the PPMs and COMs. ¶ 422. However, no fees were paid to any FG Defendant pursuant to these offering memoranda. Rather, fees were paid pursuant to the Sentry and Sigma IMAs and the GS and GSP LPAs. *See* GS LPA (Ex. 7) at § 2.07; GSP LPA (Ex. 8) at § 2.07; Sentry IMA (Ex. 5) at ¶ 8; Sigma IMA (Ex. 6) at ¶ 8. Plaintiffs do not allege that there was a mutual mistake as to these Agreements.

Second, even if Plaintiffs had identified the correct agreements – the IMAs and LPAs – their mutual mistake claim still fails. Plaintiffs have no basis to rescind the IMAs because neither they nor any FG Defendant except for FGL, and then FGBL, were parties to the IMAs.[54] Similarly, Plaintiffs fail to allege that each FG Defendant was a party to the LPAs, which govern the fee payments by the Onshore Funds to the General Partner of the Funds.[55]

Third, Plaintiffs were explicitly warned of the risk that their assets could be misappropriated and thus there could not have been a mistake as to that issue.[56] As the Second Circuit has held, "'[w]here the parties know that there is doubt in regard to a certain matter and

---

[54] The IMAs were between the Offshore Funds and FGL and then FGBL. *See* 2002 Sentry IMA (Ex. 9); Sentry IMA (Ex. 5); Sigma IMA (Ex. 6); Attride-Stirling Aff. ¶¶ 25-27 (Under Bermuda law, which governs the IMAs, "there can be no mistake of contract as there is no contract between the parties").

[55] Plaintiffs do not allege FGA, FRS, Lipton, McKeefry, or Vijayvergiya were ever General Partners of GS and GSP and therefore they would not have been parties to the LPAs.

[56] For example, the August 14, 2006 Fairfield Sentry PPM warned,

> **Possibility of Misappropriation of Assets.** When the Fund invests utilizing the "split strike conversion" strategy or in Non-SSC Investment vehicle, it will not have custody of the assets so invested. Therefore, there is always the risk that the personnel of any entity with which the Fund invests could misappropriate the securities or funds (or both) of the Fund.

7/1/03 Sentry PPM (Ex. 12) at 25; 10/1/04 Sentry PPM (Ex. 13) at 19; 8/14/06 Sentry PPM (Ex. 1) at 21; 12/1/08 Sigma PPM (Ex. 2) at 23.

contract on that assumption, the contract is not rendered voidable because one is disappointed in the hope that the facts accord with his wishes. The risk of the existence of the doubtful fact is then assumed as one of the elements of the bargain.'"). *Leasco Corp. v. Taussig*, 473 F.2d 777, 782 (2d Cir. 1972) (quoting *Backus v. MacLaury*, 106 N.Y.S.2d 401, 404 (N.Y. App. Div. 1951) (quoting Restatement of Contracts § 502-f (1934)).

### D. Plaintiffs Fail to State a Claim for Third-Party Beneficiary Breach of Contract

Plaintiffs attempt to assert a third-party beneficiary breach of contract claim based on the (1) IMAs and (2) "general partnership agreements" entered into by FGL and FGBL. *See* ¶ 411. Plaintiffs, however, are not third-party beneficiaries under these agreements.

#### 1. Plaintiffs Are Not Third-Party Beneficiaries Under the IMAs

The IMAs contain a Bermuda choice of law clause and therefore Bermuda law governs their interpretation. *See* Sentry IMA (Ex. 5) at ¶ 15; Sigma IMA (Ex. 6) at ¶ 15; *Dessert Beauty, Inc.*, 2006 WL 3780902, at *4 (contract terms should be construed pursuant to the law of the state identified in a choice of law provision).[57] Bermuda law does not recognize third party rights to a contract. *See* Attride-Stirling Aff. ¶¶ 23-24. Therefore, this Court cannot infer that the parties to the IMAs intended for Plaintiffs to be third-party beneficiaries.[58]

---

[57] Bermuda law would apply even in the absence of a choice of law provision because Bermuda has the most significant relationship to the IMAs. *See, e.g.*, *LaSala v. Bank of Cyprus Pub. Co. Ltd.*, 510 F. Supp. 2d 246, 266 (S.D.N.Y. 2007) (For contract cases, New York choice of law "evaluates the center of gravity or group of contracts, with the purpose of establishing which state has the most significant relationship to the transaction and the parties.") (internal quotations omitted). The primary purpose of the IMAs was for FGBL, a Bermuda corporation, to carry out investment management activities, which it did in Bermuda.

[58] Plaintiffs also fail to state a third-party beneficiary claim under New York law. In New York, third-party beneficiary status is conferred only where "no one other than the third-party can recover if the promisor breaches the contract" or when "the language of the contract otherwise clearly evidences an intent to permit enforcement by the third-party."

Moreover, Plaintiffs do not allege that the individual FG Defendants entered into any contracts with the Offshore Funds, alleging instead that FGL and FGBL did so. ¶ 411. The individual FG Defendants cannot be liable for any alleged breach of contract by FGL and FGBL because officers, directors, and employees of a corporation are not personally liable for corporate contracts. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1177 (2d Cir. 1993); *Bon Temps Agency Ltd.v. Mittman*, 688 N.Y.S.2d 43, 43 (N.Y. App. Div. 1999).

Further, the IMAs contain broad exculpation clauses under which the FG Defendants are not liable for "any loss suffered by the Fund" unless the loss is a result of their "willful misconduct, or reckless disregard of [their] duties." Sentry IMA (Ex. 5) at ¶ 10(b); Sigma IMA (Ex. 6) at ¶ 10(b). Here, Plaintiffs do not allege that any FG Defendant engaged in willful misconduct or acted recklessly. *See supra* at V.A.1.ii, V.I.C. Therefore, Plaintiffs have not alleged a breach of the IMAs, and Plaintiffs' third-party beneficiary breach of contract claim must be dismissed.

---

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co. Inc.*, 66 N.Y.2d 38, 45 (1985). Here, Plaintiffs do not, and cannot, claim that they are the only ones who can enforce the IMAs. To the contrary, the Sentry Fund, which is a party to the IMAs, itself has brought a direct breach of contract claim against the FG Defendants and others to recover fees under the IMAs. *See Fairfield Sentry Ltd. v. Fairfield Greenwich Group*, No. 09 Civ. 5650 (S.D.N.Y. filed June 19, 2009); *cf. Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, No. 08 civ. 7508 (SAS), 2009 WL 2828018, at *16 (S.D.N.Y. Sept. 2, 2002). Moreover, Plaintiffs fail to show how the contract allegedly breached by the Fairfield Defendants clearly evidences the intent to allow Plaintiffs to enforce it. *Abu Dhabi*, 2009 WL 2828018, at *17; *accord Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 191 (S.D.N.Y. 2009) (Marrero, J.) (denying third party beneficiary claim where there was no indication that the contract was intended to be enforced by plaintiffs); *Banco Espirito Santo de Investimento*, 2003 WL 23018888, at *11.

2.  <u>Plaintiffs Are Not Third-Party Beneficiaries to Any General Partnership Agreements</u>

Plaintiffs who invested in GS and GSP also cannot be third-party beneficiaries to any general partnership agreements because, as limited partners, they are direct parties to such agreements. *See, e.g.* GSP LPA (Ex. 8) at 1 ("This Agreement…among the undersigned (herein called "Partners", which term shall include all persons hereafter admitted to the Partnership…)").

Moreover, Plaintiffs have failed to, (i) identify the particular general partnership agreement that was allegedly breached; (ii) cite any provision in any general partnership agreement that was allegedly breached; or (iii) explain how any FG Defendant breached any provision of any general partnership agreement. Indeed, nowhere in the SCAC do Plaintiffs identify any general partnership agreement and no such agreement is attached to the SCAC. This alone is fatal to this claim. *See Anderson v. Wachovia Mortgage Corp.*, 609 F. Supp. 2d 360, 366 (D. Del. 2009) (dismissing breach of contract claim where plaintiffs merely identified the contracts at issue but "fail[ed] to identify an express contract provision that was breached"); *see also Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001) (Marrero, J.) (dismissing breach of contract claim because the complaint failed to "provide [defendant] notice of the contractual provision allegedly breached, or the nature of the breach"); *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 872 A.2d 611, 630 (Del. Ch. 2005), *aff'd in part and rev'd on other grounds in part*, 901 A.2d 106 (Del. 2006).[59]

**VIII. PLAINTIFFS ARE NOT ENTITLED TO PUNITIVE DAMAGES OR TO FURTHER AMEND THEIR COMPLAINT**

"Punitive damages may only be awarded for exceptional misconduct which transgresses mere negligence, as when the wrongdoer had acted maliciously, wantonly, or with a recklessness

---

[59]  Further, Plaintiffs do not allege that Lipton, McKeefry, or Vijayvergiya were parties to any general partnership agreements.

that betokens an improper motive or vindictiveness. . . ." *Kopec v. Hempstead Gardens, Inc.*, 696 N.Y.S.2d 53, 55 (N.Y. App. Div. 1999) (internal quotation marks and citations omitted); *accord Munoz v. Puretz*, 753 N.Y.S.2d 463, 466 (N.Y. App. Div. 2003) ("In order to recover punitive damages, a plaintiff must show, by clear, unequivocal and convincing evidence egregious and willful conduct that is morally culpable, or is actuated by evil and reprehensible motives.") (internal quotation marks and citations omitted).  Likewise, in an action premised on fraud, a plaintiff must "establish that the defendants' alleged conduct was so gross, wanton, or willful, or of such high moral culpability, as to warrant an award of punitive damages." *Outside Connection, Inc. v. DiGennaro*, 795 N.Y.S.2d 669, 670 (N.Y. App. Div. 2005); *Sforza v. Health Ins. Plan of Greater N.Y., Inc.*, 619 N.Y.S.2d 734, 736 (N.Y. App. Div. 1994).  Plaintiffs have not alleged that the FG Defendants acted maliciously or wantonly and therefore their punitive damages claim must be dismissed with prejudice.

Plaintiffs also should not be permitted to further amend their complaint to attempt to cure the pervasive deficiencies discussed in this Memorandum.  Plaintiffs originally filed their complaint on December 18, 2008.  Over four months later, on April 24, 2009, Plaintiffs filed a Consolidated Amended Complaint.  More than five months after that, on September 29, 2009, Plaintiffs filed their SCAC.  The SCAC in turn incorporates pleading from several other cases that have been consolidated with Plaintiffs' case.  Plaintiffs thus have had multiple opportunities over nine months to articulate viable legal theories.  Having failed to do so, it would be both unfair to the FG Defendants and a waste of this Court's resources to allow Plaintiffs yet another bite at the apple.  *See Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) ("[M]otions to amend should generally be denied in instances of futility . . . .").

## **CONCLUSION**

For all the foregoing reasons, the FG Defendants' motion to dismiss should be granted in all respects.

Dated: New York, New York
December 22, 2009

Respectfully submitted,

SIMPSON THACHER & BARTLETT LLP

KASOWITZ BENSON TORRES &
FRIEDMAN LLP


By: \_\_\_/s/ Mark G. Cunha_____
     Mark G. Cunha
     Michael J. Chepiga
     Peter E. Kazanoff
     425 Lexington Avenue
     New York, NY 10017
     (212) 455-2000

By: \_\_\_/s/ Marc Kasowitz_____
     Marc E. Kasowitz
     Daniel J. Fetterman
     1633 Broadway
     New York, NY 10019
     (212) 506-1700

*Attorneys for Fairfield Greenwich Limited,
Fairfield Greenwich (Bermuda) LTD., Fairfield
Greenwich Advisors LLC, Fairfield Risk Services
Ltd., Fairfield Heathcliff Capital LLC, Daniel
Lipton, and Mark McKeefry*

*Attorneys for Jeffrey Tucker*

DECHERT LLP

WHITE & CASE LLP


By: \_\_/s/ Andrew Levander_____
     Andrew Levander
     David Hoffner
     1095 Avenue of the Americas
     New York, NY 10036
     (212) 698-3500

By: \_\_/s/ Glenn Kurtz_____
     Glenn Kurtz
     Andrew Hammond
     1155 Avenue of the Americas
     New York, NY 10036
     (212) 819-8200

*Attorneys for Andrés Piedrahita*

*Attorneys for Walter M. Noel, Jr.*

DEBEVOISE & PLIMPTON LLP


By: \_\_\_/s/ Mark Goodman_____
     Mark Goodman
     Helen Cantwell
     919 Third Avenue
     New York, NY 10022
     (212) 909-6000

*Attorneys for Amit Vijayvergiya*