## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
                                              ::
ANWAR, *et al.,*                              ::
                                              ::
                          Plaintiffs,         ::
                                              ::
            v.                                ::
                                              ::
FAIRFIELD GREENWICH LIMITED, *et al.,*        ::   MASTER FILE NO. 09-CV-0118 (VM)
                                              ::
                          Defendants.         ::
                                              ::
                                              ::
This Document Relates To:  All Actions        ::
                                              ::
------------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS THE SECOND CONSOLIDATED AMENDED COMPLAINT ON BEHALF OF LOURDES BARRENECHE, ROBERT BLUM, CORNELIS BOELE, YANKO DELLA SCHIAVA, VIANNEY D'HENDECOURT, DAVID HORN, JACQUELINE HARARY, HAROLD GREISMAN, JULIA LUONGO, MARIA TERESA PULIDO MENDOZA, CORINA PIEDRAHITA, SANTIAGO REYES, AND PHILIP TOUB (THE "FEE DEFENDANTS")**

i

# Table of Contents

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

FACTUAL BACKGROUND ...................................................................................... 3

    A.    Plaintiffs' Complaint ........................................................................... 3

    B.    The Fee Defendants .......................................................................... 4

    C.    The Investments ................................................................................ 6

ARGUMENT .......................................................................................................... 7

I.     PLAINTIFFS LACK STANDING TO BRING A SHAREHOLDER ACTION ..................................... 8

    A.    Plaintiffs' Alleged Injury Is Based on the Losses Sustained by the Funds ............ 8

    B.    Plaintiffs Lack Standing to Bring A Shareholder Action Under Relevant Law ..... 8

        1.    Plaintiffs Lack Standing Under BVI Law .................................. 9

        2.    Plaintiffs Lack Standing Under Delaware Law ....................... 10

    C.    The Claims Asserted by Plaintiffs Are Not Shareholder Claims ......................... 12

II.    PLAINTIFFS' CLAIMS ARE PREEMPTED BY STATE AND FEDERAL STATUTE ...................... 13

    A.    New York's Martin Act Preempts All of Plaintiffs' Claims ........................... 13

    B.    SLUSA Preempts All of Plaintiffs' Claims ...................................... 13

III.    PLAINTIFFS FAIL PROPERLY TO ALLEGE THE FEE DEFENDANTS WERE PART OF A "DE FACTO PARTNERSHIP" OR A "PARTNERSHIP BY ESTOPPEL" .............................................. 14

IV.    PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT ..................................... 16

V.    PLAINTIFFS ARE NOT ENTITLED TO A CONSTRUCTIVE TRUST ......................................... 18

VI.    PLAINTIFFS DO NOT ALLEGE MUTUAL MISTAKE ......................................................... 20

VII.    PLAINTIFFS FAIL TO STATE A CLAIM FOR THIRD-PARTY BENEFICIARY BREACH OF CONTRACT ....................................................................................................... 22

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.,
Inc.*, No. 08 civ. 7508 (SAS), 2009 WL 2828018
(S.D.N.Y. Sept. 2, 2002) .................................................................................. 23

*Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*,
2009 WL 2191318 (S.D.N.Y. 2009).................................................................. 23

*Anderson v. Wachovia Mortgage Corp.*, 609 F. Supp. 2d
360 (D. Del. 2009) ............................................................................................ 23

*Araujo v. John Hancock Life Ins. Co.*, 206 F. Supp. 2d 377
(E.D.N.Y. 2002) ............................................................................................... 14

*Backus v. MacLaury*, 106 N.Y.S.2d 401 (N.Y. App. Div.
1951) ................................................................................................................. 22

*Baker v. Andover Assocs. Mgmt. Corp.*, Index No. 6179/09,
slip. op at 28 (N.Y. Sup. Ct. Nov. 30, 2009)................................................... 17

*Banco Espirito Santo de Investimento, S.A. v. Citibank,
N.A.*, No. 03 Civ. 1537(MBM), 2003 WL 23018888
(S.D.N.Y. Dec. 22, 2003), *aff'd*, 110 F. App'x 191 (2d
Cir. 2004) .......................................................................................................... 16

*Bennett Silvershein Assocs. v. Furman*, No. 91 Civ. 3118
(JGK), 1997 WL 531310 (S.D.N.Y. Aug. 28, 1997)........................................ 19

*Bertoni v. Catucci*, 117 A.D.2d 892, 498 N.Y.S.2d 902 (3d
Dep't 1986) ....................................................................................................... 19

*Brass v. Am. Film Techs., Inc.*, 987 F.2d 142 (2d Cir. 1993) .................................... 18

*Brodsky v. Stadlen*, 526 N.Y.S.2d 478 (N.Y. App. Div.
1988) ................................................................................................................. 14

*Cinicolo v. Morgan Stanley Dean Witter & Co.*, No. 01
Civ. 6940 (GBD), 2004 WL 2848542 (S.D.N.Y. Dec. 9,
2005) ................................................................................................................. 13

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d
382 (1987) ......................................................................................................... 16

*Confin Int'l Invs. v. AT&T Corp.*, No. 19997, 2004 WL
485464 (Del. Ch. Mar. 12, 2004) .................................................................... 12

*Counihan v. Allstate Ins. Co.,* 194 F.3d 357 (2d Cir. 1999) ...................... 20

*Cowin v. Bresler*, 741 F.2d 410 (D.C. Cir. 1984) ...................... 11

*Crossen v. Bernstein*, No. 91 Civ. 3501 (PKL), 1994 WL
    281881 (S.D.N.Y. June 23, 1994) ...................... 11

*Dessert Beauty, Inc. v. Platinum Funding Corp.,* No. 06
    CIV. 2279(SAS), 2006 WL 3780902 (S.D.N.Y. Dec. 26,
    2006) ...................... 22

*Dietrich v. Harder*, 857 A.2d 1017 (Del. Ch. 2004) ...................... 12

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Group,
    Inc.*, 343 F.3d 189 (2d Cir. 2003) ...................... 15

*Fairfield Sentry Limited v. Fairfield Greenwich Group, et
    al.*, Docket No. 09 Civ. 5650 (S.D.N.Y.) ...................... 23

*First Am. Corp. v. Price Waterhouse LLP*, 988 F. Supp.
    353 (S.D.N.Y. 1997) ...................... 15

*First Nat'l City Bank v. Banco Para El Comercio
    Exterior de Cuba*, 462 U.S. 611 (1983) ...................... 8

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.
    Inc.*, 485 66 N.Y.S.2d 38 (1985) ...................... 22

*FS Parallel Fund v. Ergen*, Civ. No. 19853, 2004 WL
    3048751 (Del. Ch. Nov. 3, 2004) ...................... 12

*Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561 (2005) ...................... 16

*Gostin v. Nelson*, 213 F. Supp. 164 (D. Del. 1962) ...................... 12

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S.
    204 (2002) ...................... 20

*Hartford Accident & Indem. Co. v. Oles*, 274 N.Y.S. 349
    (N.Y. Sup. Ct. 1934) ...................... 15

*Hausman v. Buckley*, 299 F.2d 696 (2d Cir. 1962) ...................... 9

*In re Aegis Mortgage Corp.*, 385 B.R. 102 (Bankr. D. Del.
    2008) ...................... 21

*In re Drexel Burnham Lambert Group, Inc.*, 142 B.R. 633
    (S.D.N.Y. 1992) ...................... 19

*In re First Cent. Finan. Corp.*, 377 F.3d 209 (S.D.N.Y. 2004) ................................................................................. 18

*In re Smith Barney Fund Transfer Agent Litig.*, No. 05 Civ. 7583 (WHP), 2007 WL 2809600 (S.D.N.Y. Sept. 26, 2007) ............................................................................ 8

*In re Syncor Int'l Corp. S'holders Litig.*, 857 A.2d 994 (Del. Ch. 2004) ........................................................................ 10

*In re WorldCom, Inc.*, 263 F. Supp. 2d 745 (S.D.N.Y. 2003) ...................................................................................... 14

*Kidz Cloz, Inc. v. Officially For Kids, Inc.*, 320 F. Supp. 2d 164 (S.D.N.Y. 2004) ..................................................... 14

*Kosower v. Gutowitz*, No. 00 Civ. 9011 (JGK), 2001 WL 1488440 (S.D.N.Y. Nov. 21, 2001) ................................. 14

*LaSala v. Bank of Cyprus Pub. Co. Ltd.*, 510 F. Supp. 2d 246 (S.D.N.Y. 2007) .................................................... 22

*Leasco Corp. v. Taussig*, 473 F.2d 777 (2d Cir. 1972) .......... 22

*Levien v. Sinclair Oil Corp.*, 314 A.2d 216 (Del. Ch.), *aff'd*, 332 A.2d 139 (Del. 1973) ................................................... 12

*Litman v. Prudential Bache Properties, Inc.*, 611 A.2d 12 (Del. Ch. 1992), *amended by* Civ. A. No. 12137, 1992 WL 94369 (Del. Ch. 1992) ......................................... 10, 11

*Metro. Elec. Mfg. Co. v. Herbert Constr. Co.*, 583 N.Y.S.2d 497 (N.Y. App. Div. 1992) .............................................. 16

*Milano v. Freed,* 64 F.3d 91 (2d Cir. 1995) ........................... 15

*New York v. J. Ezra Merkin*, Index No. 450879/2009 (N.Y. Sup. Ct. filed Apr. 7, 2009) ............................................... 13

*Owens v. Gaffken & Barriger Fund, LLC*, No. 08 civ. 8414 (PKC), 2009 WL 3073338 (S.D.N.Y. Sept. 21, 2009) ....... 13

*Pacific West Health Medical Center Inc. Employees Retirement Trust v. Fairfield Greenwich Group et al.* (09 CV 00134) .................................................................... 1

*Primavera Familienstiftung v. Askin*, No. 95 Civ. 8905 (RWS), 1996 WL 494904 (S.D.N.Y. Aug. 30, 1996) ......... 12

*Pro Bono Invs., Inc. v. Gerry*, No. 03-cv-4347, 2005 WL
2429787 (S.D.N.Y. Sept. 30, 2005) ................................................................. 13

*Schnorr v. Schubert*, No. 05-303, 2005 WL 2019878 (W.D.
Okla. Aug. 18, 2005) ...................................................................................... 13

*Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305 (6th Cir.
2009) ................................................................................................................ 13

*Sitchenko v. DiResta*, 512 F. Supp. 758 (E.D.N.Y. 1981) ............................ 15

*Smith v. Waste Mgmt., Inc.*, 407 F.3d 381 (5th Cir. 2005) .......................... 11

*Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158
(2d Cir. 1993) .................................................................................................. 16

*Stoller v. Factor*, 714 N.Y.S.2d 667 (N.Y. App. Div. 2000) ...................... 14

*Strougo v. Bassini*, 282 F.3d 162 (2d Cir. 2002) .......................................... 9

*Taormina v. Taormina Corp.*, 78 A.2d 473 (Del. Ch. 1951) ...................... 12

*Tooley v. Donaldson, Lufkin, Jenrette, Inc.*, 845 A.2d 1031
(Del. 2004) ...................................................................................................... 10

*United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411
(2d Cir. 2001) .................................................................................................. 19

*United States v. Ribadeneira,* 105 F.3d 833 (2d Cir. 1997) ........................ 20

*Vaughn v. LJ Int'l, Inc.*, 174 Cal. App. 4th 217 (Cal. Ct.
App. 2009) ...................................................................................................... 10

*Walton v. Morgan Stanley & Co.*, 623 F.2d 796 (2d Cir.
1980) ................................................................................................................ 9

*Weir v. Guardian Life Ins. Co. of Am.*, No. 06 Civ. 410
JTC, 2009 WL 899437 (W.D.N.Y. Mar. 30, 2009) ...................................... 21

*Weis Sec., Inc. v. Redington*, 605 F.2d 590 (2d Cir. 1978),
*cert. denied*, 439 U.S. 1128 (1978) .............................................................. 19

*Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354 (S.D.N.Y.
2001) ................................................................................................................ 23

## Statutes and Other Materials

15 U.S.C. § 77p(b)(1) (1998) ............................................................................ 2, 13

15 U.S.C. § 78bb(f)(1)(A) (2000) .................................................................... 2, 13

N.Y. General Business Law §352 *et seq* (McKinney 1996)........................................................ 13

N.Y. P'ship Law § 27(1) (McKinney 2005) ............................................................ 15

N.Y. Gen. Bus. Law §352 *et seq* (Martin Act) ............................................................ 2

## Other Authority

Restatement of Contracts § 502-f (1934)........................................................ 22

Restatement of Restitution § 215 cmt. a (1936)........................................................ 20

# ABBREVIATIONS

| ABBREVIATION | DESCRIPTION | EXHIBIT |
|---|---|---|
| **Private Placement Memoranda** | | |
| 7/1/03 Sentry PPM | Fairfield Sentry, Confidential Private Placement Memorandum, dated July 1, 2003 | 12 |
| 10/1/04 Sentry PPM | Fairfield Sentry, Confidential Private Placement Memorandum, dated October 1, 2004 | 13 |
| 8/14/06 Sentry PPM | Fairfield Sentry Private Placement Memorandum, dated August 14, 2006 | 1 |
| 12/1/08 Sigma PPM | Fairfield Sigma Private Placement Memorandum, dated December 1, 2008 | 2 |
| **Confidential Offering Memoranda** | | |
| 7/1/98 COM | Greenwich Sentry, Confidential Offering Memorandum, dated July 30, 1994, as amended February 15, 1995, February 15, 1996, March 31, 1997, and July 1, 1998. | 10 |
| 5/2006 GS COM | Greenwich Sentry Confidential Offering Memorandum, dated May 2006 | 11 |
| 8/2006 GS COM | Greenwich Sentry Confidential Offering Memorandum, dated August 2006 | 3 |
| 8/2006 GSP COM | Greenwich Sentry Partners Confidential Offering Memorandum, dated August 2006 | 4 |
| **Limited Partnership Agreements** | | |
| GS LPA | Greenwich Sentry Limited Partnership Agreement, dated December 24, 2004 | 7 |
| GSP LPA | Greenwich Sentry Partners Limited Partnership Agreement, dated April 30, 2006 | 8 |
| **Investment Management Agreements** | | |
| 2002 Sentry IMA | Investment Management Agreement between Fairfield Greenwich Limited and Fairfield Sentry, dated October 1, 2002 | 9 |
| Sentry IMA | Investment Management Agreement between Fairfield Greenwich (Bermuda) Ltd. and Fairfield Sentry, dated October 1, 2004 | 5 |
| Sigma IMA | Investment Management Agreement between Fairfield Greenwich (Bermuda) Ltd. and Fairfield Sigma, dated October 1, 2004 | 6 |

## PRELIMINARY STATEMENT

The Fee Defendants have no place in this litigation. The Complaint barely mentions the Fee Defendants and Plaintiffs do not allege that any of them engaged in misconduct. Instead, Plaintiffs proceed on a guilt-by-association theory, concluding that because these thirteen individuals were associated with companies referred to under the marketing name Fairfield Greenwich Group ("FGG"), a group of companies formerly involved in the management of funds (the "Funds") which invested with Bernard L. Madoff Investment Securities LLC ("BMIS"), they must be liable for Plaintiffs' losses in the Madoff fraud.

But Plaintiffs are improperly attempting to hold the Fee Defendants responsible for losses caused by a fraud that they are not alleged to have participated in or to have had knowledge of, and that thousands of others – including investors, advisors, banks, auditors, and regulators – failed to uncover.[1] Indeed, the Fee Defendants are not even accused of negligence. Plaintiffs seek to impose liability on the Fee Defendants not on any theory of fault, but simply because they are alleged to have received income from entities which, in turn, derived a portion of their revenue from Madoff-related investment activity. This quasi-veil-piercing theory has no legal basis and would impose liability beyond any cognizable limit.

In their Second Consolidated Amended Complaint ("SCAC" or "Complaint"), Plaintiffs assert claims against the Fee Defendants for unjust enrichment, mutual mistake and third-party beneficiary breach of contract, and seek a constructive trust. For the following reasons, the pleading of each of Plaintiffs' claims is grossly inadequate and fails as a matter of law. Each of

---

[1] Most of the Plaintiffs apparently agree that the claims against the Fee Defendants are improper. Only one of the six individual, pre-consolidated, putative class action complaints asserted claims against the Fee Defendants. *See Pac. W. Health Med. Ctr. Inc. Employees Ret. Trust v. Fairfield Greenwich Group et al.,* 09 CV 00134 (Jan. 8, 2009).

these claims also is asserted against other Fairfield-related defendants and, accordingly, also should be dismissed for the reasons set forth in the memoranda in support of motions to dismiss being filed concurrently by the "FG Defendants" and the "Fee Defendants," which arguments are incorporated here by reference.[2]

*First*, Plaintiffs do not have standing to bring a shareholder action. The claims Plaintiffs seek to assert belong to the Funds – not the shareholders of the Funds – because the injury was sustained in the first instance by the Funds. Plaintiffs are attempting to recover for the loss in value of their shares or limited partnership interests in the Funds. This lawsuit is barred by well-established precedent requiring injuries to the Funds to be pursued by the Funds themselves, not their shareholders.

The requirement that litigation be pursued by the Funds themselves, directly or derivatively, is not merely formalistic. Recovery by the Funds rather than their shareholders would prevent potential duplicative liability on the part of Defendants. It also would insure that the Funds meet their legal obligations to first pay creditors, and only then distribute remaining amounts to their investors according to their contractual rules. Plaintiffs are trying to circumvent the law and collect damages for a specific subset of "shareholders" (*see* definition of Plaintiffs' putative class at ¶ 351[3]), depriving creditors and other shareholders of their rightful share of any potential recovery.

*Second*, all of Plaintiffs' claims are preempted by New York's Martin Act and the Securities Litigation Uniform Standards Act of 1998 ("SLUSA").

---

[2] To avoid duplication, this brief assumes familiarity with the memorandum in support of the motion to dismiss being filed by the FG Defendants.

[3] Unless otherwise stated, references here to "¶ _" are to paragraphs in the SCAC.

*Third*, Plaintiffs' attempt to use the concept of de facto partnership or partnership by estoppel to impute liability to the Fee Defendants fails. Plaintiffs do not plead any facts suggesting that a "de facto partnership" even existed. Nor have Plaintiffs adequately alleged that they relied on any purported partnership representations. To the contrary, when making their investments, Plaintiffs explicitly disclaimed reliance on the documents they now seek to rely on to assert a partnership existed.

*Fourth*, Plaintiffs' unjust enrichment claim is barred by the existence of valid and enforceable written agreements governing the same subject matter.

*Fifth*, a constructive trust cannot be awarded because Plaintiffs merely seek to recover monetary damages and no res has been identified on which a constructive trust could be imposed.

*Sixth*, Plaintiffs' mutual mistake claim fails because the Fee Defendants were not parties to any contract identified in the SCAC. Furthermore, prior to making their investments, Plaintiffs were explicitly warned of the risk that their assets could be misappropriated.

*Seventh*, Plaintiffs' third-party beneficiary breach of contract claim relies on a contract governed by Bermuda law which does not recognize third party rights to a contract. Moreover, the Fee Defendants were not parties to any contract identified in the SCAC and therefore they could not have committed a breach.

## FACTUAL BACKGROUND

### A. Plaintiffs' Complaint

Plaintiffs assert claims on behalf of themselves and a putative class of investors in four funds: Fairfield Sentry Limited ("Sentry"), Fairfield Sigma Limited ("Sigma"), Greenwich Sentry, L.P. ("GS"), and Greenwich Sentry Partners, L.P. ("GSP"), (previously defined herein collectively as the "Funds"). Sentry and Sigma (collectively, the "Offshore Funds") are private

investment companies organized under the laws of the British Virgin Islands.[4]  GS and GSP

(collectively, the "Onshore Funds") are hedge funds organized under Delaware law as limited

partnerships.[5]  Plaintiffs purport to assert claims on behalf of a putative class of "shareholders"[6]

in the Funds as of December 10, 2008, with some exceptions, who suffered a net loss of principal

invested in the Funds.  ¶ 351.

### B.     The Fee Defendants

The Fee Defendants are thirteen individuals who apparently have been joined in this

action because they currently are or previously were associated with FGG companies.  The

SCAC does little more than mention their purported titles and provide boilerplate descriptions of

their duties.  Plaintiffs do not allege that the Fee Defendants were in a position to control the

day-to-day operations of the Fairfield entities.  Nor do they specifically allege how the Fee

Defendants had any influence over where the assets in the Funds would be invested, including

whether the assets would be invested with BMIS.  Nor do they allege that any of the Fee

Defendants was involved with performing due diligence on, monitoring or risk management of

Fund investments with BMIS.  Rather, Plaintiffs allege that:

---

[4]     *See* SCAC ¶¶ 170-171; *see also* Fairfield Sentry Private Placement Memorandum, dated August 14, 2006 ("8/14/06 Sentry PPM") (Ex. 1) at 6; Fairfield Sigma Private Placement Memorandum, dated December 1, 2008 ("12/1/08 Sigma PPM") (Ex. 2) at 5.  References to "Ex._" herein are to exhibits accompanying the Declaration of Michael Thorne, submitted herewith.

[5]     SCAC ¶¶ 172-173; *see also* Greenwich Sentry Confidential Offering Memorandum ("8/2006 GS COM") (Ex. 3) at iv; Greenwich Sentry Partners Confidential Offering Memorandum ("8/2006 GSP COM") (Ex. 4) at iv.

[6]     Plaintiffs presumably mean to include shareholders in the Offshore Funds and limited partners in the Onshore Funds.

- Defendants Barreneche, Boele, Della Schiava, d'Hendecourt, Harary, C. Piedrahita, Pulido Mendoza[7], Reyes, and Toub were involved in the marketing and sales of the Funds primarily to foreign-based investors. *See* ¶¶ 131, 135-141, 144.

- Defendant Luongo was an in-house tax counsel for several Fairfield entities. *See* ¶ 142.

- Defendant Greisman focused on evaluating alternative asset investments and managers. *See* ¶ 143.

- Beginning in 2008, Defendant Horn served as a strategist for the Fairfield entities; he is not listed in the so-called "Partner Compensation" chart on pages 35-36 of the Complaint. *See* ¶ 132, 148.

- At the time of his departure in 2005, Defendant Blum focused on the diversified hedge fund side of the Fairfield business. *See* ¶ 145.

Plaintiffs do not allege any misconduct by the Fee Defendants. Indeed, there are almost no factual allegations whatsoever against the Fee Defendants in Plaintiffs' 200+ page Complaint. Twelve of the fourteen Fee Defendants are not referenced at all in the "Allegations of Fact" in the SCAC, and the remaining two – Defendants Barreneche and Toub – are referenced a total of only four times, and even then only in passing. Plaintiffs' claims against the Fee Defendants all seem to be based on the single allegation that, as alleged "partners" of "FGG", they received fees indirectly derived from the Funds' investments with Madoff. *See* ¶¶ 132-146. Contrary to Plaintiffs' allegations of partnership, the **corporate** form of the Fairfield companies affiliated

---

[7] In the Complaint, Pulido Mendoza is listed once as a Fee Defendant and once as a Fairfield Defendant. *Compare* SCAC Glossary of Terms at ix (listing Pulido Mendoza as a "Fairfield Fee Claim Defendant"), with ¶ 150 (grouping Pulido Mendoza with the "Fairfield Defendants."). We assume Plaintiffs intended to designate Pulido Mendoza as a Fee Defendant because she (i) is not mentioned at all in the Allegations of Fact in the SCAC, (ii) is not alleged to have held an executive position, and (iii) unlike all other individual Fairfield Defendants, is not alleged to have acted as a control person for purposes of Section 20(a) of the Securities Exchange Act of 1934. To the extent Plaintiffs meant to designate Pulido Mendoza as a Fairfield Defendant, all the grounds for dismissal asserted in the FG Defendants' motion to dismiss apply with equal vigor as to her and are incorporated here.

under the marketing name "Fairfield Greenwich Group" is clearly set forth in the offering

memoranda pursuant to which Plaintiffs invested in the Funds.[8]

### C.     The Investments

The Offshore Funds sold shares of stock to qualified investors pursuant to private

placement memoranda ("PPMs").  The Onshore Funds sold limited partnership interests to

qualified investors pursuant to Confidential Offering Memoranda ("COMs").  Because of the

significant risks associated with the Funds, investors were required to meet stringent standards of

sophistication established by the SEC before they could invest.[9]  Investors also were warned that

the Funds were suitable only for those willing "to bear the potential loss of their entire

investment." *See, e.g.*, 10/1/04 Sentry PPM (Ex. 13) at iv; 8/14/06 Sentry PPM (Ex. 1) at iv; *see*

*also* 5/2006 GS COM (Ex. 11) 37 ("The interests are suitable only for sophisticated investors…

[who] are willing to assume the risks involved...and to bear the potential loss of their entire

---

[8]     Plaintiffs acknowledge in their Complaint that, (1) FGBL is a company organized under
the laws of Bermuda (¶ 118); *see also* 12/1/08 Sigma PPM (Ex. 2) at 2; 7/1/03 Sentry
PPM (Ex. 12) at 2; (2) FGL is an exempted company organized under the laws of the
Cayman Islands (¶ 119); *see also* 12/1/08 Sigma PPM (Ex. 2) at 2; 7/1/03 Sentry PPM
(Ex. 12) at 2; (3) FGA is a wholly owned subsidiary of FGL registered with the SEC as
an investment advisor (¶ 120); *see also* 8/14/06 Sentry PPM (Ex. 1) at Form ADV Part II,
Item 8.C.(3) and 8.D.); and (4) FRS is a Bermuda company and a wholly owned
subsidiary of FGL (¶ 121); *see also* 8/14/06 Sentry PPM (Ex. 1) at Form ADV Part II,
Items 4.A.(5) and 4.B.(8).

[9]     *See, e.g.*, 7/1/03 Sentry PPM (Ex. 12) at 11 ("Shares may be offered only to experienced
and sophisticated investors who are neither citizens nor residents of the United States
("Non-U.S. Investors") and to a limited number of United States investors that are tax-
exempt entities ("U.S. Tax-Exempt Investors"); 8/2006 GS COM (Ex. 3) at 38 ("The
interests are suitable only for sophisticated investors…"); *see also* 7/1/03 Sentry PPM
(Ex. 12) at iv, 1; 10/1/04 Sentry PPM (Ex. 13) at iv, 1, 10; 8/14/06 Sentry PPM (Ex. 1) at
iv, 1, 11; 12/1/08 Sigma PPM (Ex. 2) at iv, 6; 7/1/98 GS COM (Ex. 10) at ii; 13, 38;
5/2006 GS COM (Ex. 11) at 17-18, 37; 8/2006 GS COM (Ex. 3) at 18; 8/2006 GSP COM
(Ex. 4) at 18, 37.

investment…."); 7/1/98 GS COM (Ex. 10) at 38; 8/2006 GS COM (Ex. 3) at 38; 8/2006 GSP

COM (Ex. 4) at 37.

The PPMs and COMs disclosed the material terms and risks of an investment with the

Funds and that all or substantially all of the Funds' assets would be in the custody of BMIS.

8/1/06 Sentry PPM (Ex. 1) at 9, 16.[10]  The PPMs further warned investors about the possibility of

misappropriation of assets:

> When the Fund invests utilizing the 'split strike conversion' strategy or in a Non-
> SSC Investment vehicle, it will not have custody of the assets so invested.
> Therefore, **there is always the risk that the personnel of any entity with which
> the Fund invests could misappropriate the securities or funds** (or both) of the
> Fund."  (emphasis added).

*See* 7/1/03 Sentry PPM (Ex. 12) at 25; 10/1/04 Sentry PPM (Ex. 13) at 19; 8/14/06 Sentry PPM

(Ex. 1) at 21; 12/1/08 Sigma PPM (Ex. 2) at 23.

Of the 33 claims in the Complaint, only four are brought against the Fee Defendants:

unjust enrichment (Count 33), imposition of a constructive trust (Count 10), mutual mistake

(Count 11), and third-party beneficiary breach of contract (Count 9).  Each of these claims is

defective for the reasons addressed below and in the accompanying motions to dismiss of the FG

Defendants and the Other Fairfield Defendants

**ARGUMENT**

The Fee Defendants adopt the standards for evaluation of a motion to dismiss set

forth in the memorandum in support of the FG Defendants motion to dismiss at 10.

---

[10]    *See also* 8/14/06 Sentry PPM (Ex. 1) at 9, 16; 12/1/08 Sigma PPM (Ex. 2) at 9, 16.  *See
    also* 7/1/98 GS COM (Ex. 10) at ii, viii, 6; 5/2006 GS COM (Ex. 11) at 2, 8-9; 8/2006 GS
    COM (Ex. 3) at 2, 8-9; 8/2006 GSP COM (Ex. 4) at 2, 8.

# I. PLAINTIFFS LACK STANDING TO BRING A SHAREHOLDER ACTION

## A. Plaintiffs' Alleged Injury Is Based on the Losses Sustained by the Funds

Plaintiffs lack standing to bring a shareholder action because their alleged injuries are solely derivative of injury to the Funds in which they allegedly invested:

- Plaintiffs' third-party beneficiary breach of contract claim is based on the allegation that two Fairfield entities, Fairfield Greenwich (Bermuda) Ltd. ("FGBL") and Fairfield Greenwich Limited ("FGL"), breached their investment management and general partnership contracts by failing to "provide competent investment management services to the *Funds*." ¶ 416 (emphasis added).

- Plaintiffs seek a constructive trust over fees that were paid by the *Funds* to certain Fairfield entities, such as Sentry and Sigma's investment manager, FGBL.

- Plaintiffs' mutual mistake theory is that the fees paid by the *Funds* to certain Fairfield entities were based on inaccurate valuations of the net assets under management and amount of profits generated by the *Funds*. ¶¶ 423-424.

- Plaintiffs' unjust enrichment claim is that the Fee Defendants wrongfully received fees paid by the *Funds*.

## B. Plaintiffs Lack Standing to Bring A Shareholder Action Under Relevant Law

Whether a shareholder has standing to assert claims directly or whether those claims belong to the corporation is determined by the law of the state or country in which the company is incorporated. *See, e.g.*, *In re Smith Barney Fund Transfer Agent Litig.*, No. 05 Civ. 7583 (WHP), 2007 WL 2809600, at *4 (S.D.N.Y. Sept. 26, 2007). Under the internal affairs doctrine, the legal relationship between a corporation and its shareholders (including how and by whom the internal affairs of the corporation are managed) is governed by the law of the place of incorporation. *See First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983) ("As a general matter, the law of the state of incorporation normally determines issues relating to the internal affairs of a corporation. Application of that body of law achieves the need for certainty and predictability of result

while generally protecting the justified expectations of parties with interests in the corporation.") (emphasis omitted).[11]

Because Sentry and Sigma are British Virgin Islands ("BVI") corporations, and GS and GSP are Delaware limited partnerships, BVI and Delaware law, respectively, apply to these Funds' internal affairs. *See* ¶¶ 170-173. Under both BVI and Delaware law, each of Plaintiffs' claims belongs to the Funds and cannot be asserted in a shareholder action.

### 1. Plaintiffs Lack Standing Under BVI Law

Under BVI law, which applies to the claims brought by investors in the Offshore Funds, injuries to a shareholder derived solely from injuries to the corporation belong only to the corporation. *See* Affidavit of Gerard Farara ¶ 15 ("Farara Aff.") ("[T]he proper plaintiff in an action to redress a wrong done to a company is prima facie the company itself."); *Id.* ¶ 42 (The Reflective Loss Principle "limits a shareholder's ability to bring an action against a company for a diminution of the value of the shares caused by a wrong carried out against the company."). Only the corporation may sue for damages it has sustained. Farara Aff. ¶¶ 15-17, 24.

Here, Plaintiffs who invested in the Offshore Funds allege only a loss in the value of their shares. These losses are "merely reflective of the [Funds'] losses." Farara Aff. ¶¶ 42, 45. Thus, under BVI law only the Funds have standing to pursue a claim to recover the fees that

---

[11] *See also Strougo v. Bassini*, 282 F.3d 162, 167-69 (2d Cir. 2002); *Walton v. Morgan Stanley & Co.*, 623 F.2d 796, 798 n.3 (2d Cir. 1980); *Hausman v. Buckley*, 299 F.2d 696, 702 (2d Cir. 1962) (summarizing New York's "internal affairs" choice-of-law rule to mean that "[t]he right of a shareholder to object to conduct occurring in the operation of the corporate enterprise is determined by the law of the state of incorporation") (internal citation omitted).

they paid to one of the Fairfield entities. Plaintiffs lack standing to assert claims directly against the Fee Defendants.[12]

## 2. Plaintiffs Lack Standing Under Delaware Law

Equity holders such as Plaintiffs also lack standing to pursue shareholder claims for injuries sustained by a limited partnership under Delaware law.[13] The Delaware Supreme Court has held that whether a claim belongs to a shareholder or the corporation depends on the answer to two questions: "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)." *Tooley v. Donaldson, Lufkin, Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004). "Under *Tooley*, the duty of the court is to look at the nature of the wrong alleged, not merely at the form of words used in the complaint." *In re Syncor Int'l Corp. S'holders Litig.*, 857 A.2d 994, 997 (Del. Ch. 2004).

To plead a shareholder claim the plaintiff must demonstrate that he or she can prevail without showing an injury to the corporation. *Tooley*, 845 A.2d at 1039. Here, it is plain that injury to the Funds is a necessary predicate to all of Plaintiffs' claims. Indeed, as noted above, the only injury Plaintiffs assert is the loss in the value of their investments in the Funds.

---

[12]     Even if Plaintiffs had asserted their claims derivatively on behalf of the Offshore Funds, those claims would fail under BVI law because Plaintiffs have not sought leave from a BVI court to bring them. *See* Farara Aff. ¶ 48; *Vaughn v. LJ Int'l, Inc.*, 174 Cal. App. 4th 217, 223-25 (Cal. Ct. App. 2009) (applying BVI law). Section 184C of the recently enacted BVI Business Companies (Amendment) Act 2005 ("BVI BC Act") requires a registered shareholder to obtain leave from the BVI High Court in order to attempt to bring a derivative claim. Farara Aff. ¶ 47.

[13]     The determination of whether a shareholder has been injured individually or the harm has been suffered generally by the corporation is substantially the same regardless of whether the case involves a corporation or a limited partnership. *See Litman v. Prudential Bache Props., Inc.*, 611 A.2d 12, 15 (Del. Ch.), *amended by* Civ. A. No. 12137, 1992 WL 94369 (Del. Ch. 1992).

Plaintiffs cannot bring a shareholder claim to recover for such injury. *See, e.g.*, *Litman*, 611 A.2d at 15-17 (dismissing limited partners' complaint for lack of standing because "defendants' misconduct damaged plaintiffs only to the extent of their proportionate interest in the Partnership. Clearly, this was not a direct injury to limited partners or one that existed independently of the Partnership."); *Crossen v. Bernstein*, No. 91 Civ. 3501 (PKL), 1994 WL 281881, at *3 (S.D.N.Y. June 23, 1994) (dismissing breach of contract, breach of fiduciary duty, gross negligence, misconduct and partnership waste, and unjust enrichment claims because they "should have been brought as derivative actions on behalf of the limited partnerships").

*Tooley* also requires Plaintiffs to show that they should receive the benefit of the recovery sought. Here, allowing Plaintiffs to recover directly would deprive other similarly situated shareholders and creditors from their rightful portion of any recovery. *See Smith v. Waste Mgmt., Inc.*, 407 F.3d 381, 384-85 (5th Cir. 2005) (applying Delaware law); *Cowin v. Bresler*, 741 F.2d 410, 414 & n.4 (D.C. Cir. 1984) (applying Delaware law). Plaintiffs' proposed class includes certain limited partners but excludes others. *See* ¶ 351 (limiting class to investors "who suffered a net loss of principal invested in the Funds," with certain exceptions). However, as demonstrated above, any monetary recovery properly belongs to the Funds and should therefore be paid to the Funds for ultimate distribution to first creditors then limited partners pursuant to applicable law and the relevant Fund's governing documents, which set out the method of calculating each stakeholder's share of the Fund's assets. Plaintiffs' attempt to bring these claims as shareholder claims is an effort by some claim-holders to unfairly obtain priority status over other claim-holders.

### C.   The Claims Asserted by Plaintiffs Are Not Shareholder Claims

The fees that Plaintiffs are seeking to recover from the Fee Defendants were all paid by the Funds pursuant to contracts that the Funds entered into with certain Fairfield entities.[14]  It has long been recognized in the BVI and Delaware that a suit to enforce a corporation's alleged rights (*i.e.*, the return of fees paid) can be maintained only by the corporation itself, not by a shareholder individually.  *See* Farara Aff. ¶¶ 15-18; *Gostin v. Nelson*, 213 F. Supp. 164, 166 (D. Del. 1962); *Levien v. Sinclair Oil Corp.*, 314 A.2d 216, 221 (Del. Ch.), *aff'd*, 332 A.2d 139 (Del. 1973); *Taormina v. Taormina Corp.*, 78 A.2d 473, 476-77 (Del. Ch. 1951).  A shareholder may not bring a direct suit based on breach of a corporate contract or to collect his proportionate share of money due to the corporation.  *See* Farara Aff. ¶¶ 14-18, 24; *Primavera Familienstiftung v. Askin*, No. 95 Civ. 8905 (RWS), 1996 WL 494904, at *11, *17 (S.D.N.Y. Aug. 30, 1996).

Moreover, to the extent that Plaintiffs' claims are based on allegations that the Fee Defendants failed to fulfill alleged fiduciary duties, such claims should likewise be dismissed as derivative.  *See* FG Defendants' Brief at I.D.1; Farara Aff. ¶ 24; *FS Parallel Fund v. Ergen*, Civ. No. 19853, 2004 WL 3048751, at *3 (Del. Ch. Nov. 3, 2004) (holding that "claims that arise from classic fiduciary principles of care and loyalty" belong to the corporation); *Confin Int'l Invs. v. AT&T Corp.*, No. 19997, 2004 WL 485464, at *2 (Del. Ch. Mar. 12, 2004) (dismissing breach of fiduciary duty claim brought as direct action); *Dietrich v. Harder*, 857 A.2d 1017, 1027 (Del. Ch. 2004) (same).

---

[14]    For example, the Offshore Funds paid FGBL management fees pursuant to IMAs.  *See* Exs. 5 and 6.

## II.    PLAINTIFFS' CLAIMS ARE PREEMPTED BY STATE AND FEDERAL STATUTE

### A.    New York's Martin Act Preempts All of Plaintiffs' Claims

As explained in greater detail in the FG Defendants' Brief at II.A, which is incorporated herein by reference, all of Plaintiffs' claims against the Fee Defendants are preempted by the Martin Act.  *See* N.Y. General Business Law §352 *et seq* (McKinney 1996); *cf. Owens v. Gaffken & Barriger Fund, LLC*, No. 08 civ. 8414 (PKC), 2009 WL 3073338, at *13-14 (S.D.N.Y. Sept. 21, 2009) (unjust enrichment claim preempted); *Pro Bono Invs., Inc. v. Gerry*, No. 03-cv-4347, 2005 WL 2429787, at *16 (S.D.N.Y. Sept. 30, 2005) (breach of fiduciary duty, gross negligence, constructive trust and unjust enrichment counterclaims preempted).  Martin Act preemption is particularly appropriate in this case because the New York Attorney General has already brought charges under the Martin Act against the manager of several other Madoff "feeder funds," Ascot, Ariel and Gabriel, on behalf of investors.  *See New York v. J. Ezra Merkin*, Index No. 450879/2009 (N.Y. Sup. Ct. filed Apr. 7, 2009).  This Court should follow the strong prevailing view in this District and hold that the Martin Act preempts Plaintiffs' claims against the Fee Defendants.  *See* FG Defendants' Brief at II.A.

### B.    SLUSA Preempts All of Plaintiffs' Claims

Also, for the reasons set forth in the FG Defendants' brief at II.B, all of Plaintiffs' claims against the Fee Defendants are preempted by SLUSA.  *See* 15 U.S.C. § 78bb(f)(1)(A) (2000); § 77p(b)(1) (1998); *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 308, 312 (6th Cir. 2009) (breach of fiduciary and contract claims preempted); *Cinicolo v. Morgan Stanley Dean Witter & Co.*, No. 01 Civ. 6940 (GBD), 2004 WL 2848542, at *5-6 (S.D.N.Y. Dec. 9, 2005) (breach of fiduciary duty and unjust enrichment claims preempted); *Schnorr v. Schubert*, No. 05-303, 2005 WL 2019878, at *5-7 (W.D. Okla. Aug. 18, 2005) (breach of fiduciary claim, constructive trust, and

restitution claims preempted); *Araujo v. John Hancock Life Ins. Co.*, 206 F. Supp. 2d 377, 383

(E.D.N.Y. 2002) (breach of contract and unjust enrichment claims preempted).[15]

## III. PLAINTIFFS FAIL PROPERLY TO ALLEGE THE FEE DEFENDANTS WERE PART OF A "DE FACTO PARTNERSHIP" OR A "PARTNERSHIP BY ESTOPPEL"

Plaintiffs allege that FGG is a de facto partnership or partnership by estoppel which

encompasses the Fee Defendants. *See* ¶¶ 117, 176-180. This effort to invoke partnership

liability fails as a matter of law.

As discussed in the FG Defendants' Brief at IV, the SCAC is "entirely devoid of facts

from which the existence of the purported partnership" can be inferred. *Stoller v. Factor*, 714

N.Y.S.2d 667, 667 (N.Y. App. Div. 2000). Indeed, the SCAC contains no facts suggesting that

the Fee Defendants shared profits and losses, jointly managed the business, contributed financial

resources to the alleged partnership, or intended to be part of a legal partnership. *Cf. Kidz Cloz,*

*Inc. v. Officially For Kids, Inc.*, 320 F. Supp. 2d 164, 171 (S.D.N.Y. 2004) (listing elements that

form the indicia of partnership). That Plaintiffs allege certain marketing materials invoked the

term "partner" is, as a matter of law, insufficient to plead the existence of a partnership. *See,*

*e.g.*, *Kosower v. Gutowitz*, No. 00 Civ. 9011 (JGK), 2001 WL 1488440, at *6 (S.D.N.Y. Nov.

21, 2001) ("'[C]alling an organization a partnership does not make it one.'") (quoting *Brodsky v.*

*Stadlen*, 526 N.Y.S.2d 478, 479 (N.Y. App. Div. 1988)).[16]

---

[15]    As discussed in detail in the FG Defendants brief at II.B, all the required elements for SLUSA preemption are met here. SLUSA applies to: (1) covered class actions; (2) based on state and common law; (3) alleging a material misrepresentation or omission; (4) in connection with the purchase or sale of a covered security. *See In re WorldCom, Inc.*, 263 F. Supp. 2d 745, 769 (S.D.N.Y. 2003). The claims against the Fee Defendants fall within this framework.

[16]    The only document Plaintiffs cite in support of their de facto partnership and partnership by estoppel theory is a September 2008 marketing brochure that post-dates the vast majority of Plaintiffs' investments. *See* ¶ 179. Of the 116 Plaintiffs named in the SCAC, 102 – or 88% – invested *before* the marketing brochure was published. *See* ¶¶ 1-116.

Likewise, Plaintiffs do not allege partnership by estoppel. Under the doctrine of estoppel, a defendant who represents that a partnership exists is estopped from denying its existence against a plaintiff who reasonably relied on those representations to his detriment. N.Y. P'ship Law § 27(1) (McKinney 2005); *see also First Am. Corp. v. Price Waterhouse LLP*, 988 F. Supp. 353, 358 (S.D.N.Y. 1997). The doctrine of partnership by estoppel "is to be strictly guarded," and its application depends upon a plaintiff meeting his burden of showing actual reliance on knowing misrepresentations. *Sitchenko v. DiResta*, 512 F. Supp. 758, 762 (E.D.N.Y. 1981) (internal quotations omitted). Because the doctrine is narrowly construed, New York courts are very reluctant to accept partnership by estoppel claims. *Hartford Accident & Indem. Co.*, 274 N.Y.S. at 353 (courts are "disposed to consider the rule [of estoppel] a harsh one" and can only be invoked where "the party is attempting to do that what casuists would decide to be a wrong; something which is against good conscience and honest dealing" because "estoppels are odious") (internal quotation marks omitted).

Courts have dismissed estoppel claims where plaintiffs fail adequately to allege they reasonably relied on the defendant's representations regarding the existence of a partnership. *See, e.g.*, *Milano v. Freed,* 64 F.3d 91, 98 (2d Cir. 1995) (rejecting "partnership by estoppel" claim where plaintiffs could not demonstrate that they had relied on any representations

---

Plaintiffs could not have relied on any representations made in a document not in existence at the time of their investment. *See Hartford Accident & Indem. Co. v. Oles*, 274 N.Y.S. 349, 358 (N.Y. Sup. Ct. 1934) ("Plaintiff cannot create a retroactive estoppel."). Further, Plaintiffs cannot allege reliance on any representations made in the September 2008 marketing brochure because they were explicitly advised that they could only rely on the offering memorandum and their own due diligence, and Plaintiffs agreed to this condition when they signed on. *See, e.g.*, 7/1/03 Sentry PPM (Ex. 12) at Appendix B; *cf. Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 195-96 (2d Cir. 2003) (where contract contained numerous specific representations by seller and general disclaimer of reliance on extra-contractual representations, sophisticated investor could not establish reasonable reliance on "extra-contractual representations").

concerning non-partner when selecting medical care); *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1169 (2d Cir. 1993) (no partnership by estoppel where plaintiff failed to allege that it gave credit to defendant on basis of representations of partnership).

Here, Plaintiffs have not pled any facts that evidence reliance on any alleged partnership representations. Instead, Plaintiffs make only the bald allegation that the "Defendants' identification of the operating entity as FGG and themselves as 'partners' was intended by defendants to induce Plaintiffs and other members of the Class to invest in Fairfield Sentry and Greenwich Sentry, and did induce such investment." ¶ 178. Plaintiffs' failure to plead any facts that indicate reliance is fatal to their partnership by estoppel claim.

## IV. PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT

Plaintiffs' quasi-contractual claim for unjust enrichment is precluded by actual written contracts covering the same subject matter: the Sentry and Sigma IMAs and the GS and GSP limited partnership agreements ("LPAs") (collectively, the "Agreements").

An unjust enrichment claim must be dismissed if there is a valid and enforceable written agreement covering the subject matter of the claim. *See, e.g.*, *Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 572 (2005) (holding that a party cannot recover in quasi-contract where a valid and enforceable contract exists for events arising out of the same subject matter); *see also Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987) (same); *Metro. Elec. Mfg. Co. v. Herbert Constr. Co.*, 583 N.Y.S.2d 497, 498 (N.Y. App. Div. 1992). This rule holds true whether or not the contract that precludes the unjust enrichment claim is between the parties to the lawsuit. *See Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, No. 03 Civ. 1537(MBM), 2003 WL 23018888, at *17-18 (S.D.N.Y. Dec. 22, 2003) (contracts governing payments preclude unjust enrichment claims against even those with whom plaintiffs did not personally contract), *aff'd*, 110 F. App'x 191 (2d Cir. 2004).

Here, the Agreements not only cover the same subject matter as Plaintiffs' unjust enrichment claim, but are a necessary predicate to the cause of action. Through their unjust enrichment claim, Plaintiffs are seeking to recover fees that were paid pursuant to the Agreements. Indeed, Plaintiffs have also pled a third-party beneficiary breach of contract claim based on the same Agreements to recover the same fees. *See* ¶¶ 410-416. That contract claim is identical to their unjust enrichment claim. *Compare* ¶ 416 (alleging FGBL and FGL breached the Agreements by "receiving and holding fees based on fictitious profits and for services not properly performed) *with* ¶ 569 ("[I]t is unjust and inequitable for the Defendants to have enriched themselves through the collection of fees for their services."). Since any recovery on the unjust enrichment claim would necessarily be based on a valid and existing contract, it must be dismissed. *Cf. Baker v. Andover Assocs. Mgmt. Corp.*, Index No. 6179/09, slip. op at 28 (N.Y. Sup. Ct. Nov. 30, 2009) ("Because there is no dispute that the Defendants' receipt and retention of fees was made pursuant to the various agreements, there is no dispute that there exists a written contract covering the subject matter of this cause of action and Plaintiff's claim for unjust enrichment…shall be dismissed.").

Moreover, Plaintiffs' unjust enrichment claim is based on the unsupported premise that all "Defendants" named in the SCAC breached their fiduciary duties. *See* ¶ 568. Plaintiffs do not even attempt to plead facts that could show the Fee Defendants owed Plaintiffs a fiduciary duty – let alone that the Fee Defendants breached that duty. Nor do Plaintiffs allege, as they must, a relationship of trust or confidence that is necessary to establish a fiduciary relationship.[17]

---

[17]  *See Ciccone v. Hersh*, 530 F. Supp. 2d 574, 579 (S.D.N.Y. 2008) (To determine the existence of a fiduciary relationship, New York courts "focus on whether one person has reposed trust or confidence in another who thereby gains a resulting superiority or influence over the first"); *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 872 A.2d 611, 624-25 (Del. Ch. 2005) ("A fiduciary duty exists where one party places a special trust in

Tellingly, Plaintiffs did not bring an independent breach of fiduciary duty claim against the Fee Defendants despite doing so for all other Fairfield Defendants.

Nor could such a fiduciary relationship be alleged. Most of the Fee Defendants held sales and marketing positions (Defendants Barreneche, Boele, Della Schiava, d'Hendecourt, Harary, C. Piedrahita, Pulido Mendoza, Reyes, and Toub). ¶¶ 135-141, 144. Sales personnel are engaged in classic "arms-length" business transactions, which the Second Circuit has held do not give rise to a fiduciary relationship. *See Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). Similarly, there is nothing inherent in the roles of the remaining Fee Defendants that would establish, without more, a fiduciary relationship.[18]

## V. PLAINTIFFS ARE NOT ENTITLED TO A CONSTRUCTIVE TRUST

Plaintiffs are not entitled to have a constructive trust imposed over the money earned by the Fee Defendants in connection with their work for Fairfield entities. First, a constructive trust is not a cause of action but rather an equitable remedy, and therefore should "not be imposed unless it is demonstrated that a legal remedy is inadequate." *See, e.g.*, *In re First Cent. Fin. Corp.*, 377 F.3d 209, 215 (S.D.N.Y. 2004) (quoting *Bertoni v. Catucci*, 498 N.Y.S.2d 902, 905

---

another" and it "generally requires 'confidence reposed by one side.'"), *aff'd in part and rev'd on other grounds in part*, 901 A.2d 106 (Del. 2006); Farara Aff. ¶ 64 ("A fiduciary obligation [under BVI law] arises when an individual has undertaken a role involving a relationship of trust and confidence."); Affidavit of Attride-Stirling at ¶ 14 ("A fiduciary [under Bermuda law] is someone who has undertaken to act for or on behalf of another in a particular matter in circumstances which give rise to a relationship of trust and confidence.").

[18]  Plaintiffs allege Luongo "serves as FGG's Assistant General Counsel - Tax Director"; Greisman "focuses on evaluating alternative asset investments and managers"; Blum "co-led the build-out of FGG's capabilities to a diversified hedge fund management firm and co-managed FGG's hedge fund business"; Horn was the "Chief Global Strategist who served on the firm's Board of Directors"; and Bowes focused on business development. ¶¶ 132, 142, 143, 145. There allegations do not suggest any fiduciary relationship with Plaintiffs.

(N.Y. App. Div. 1986)).  Here, money damages are the very essence of Plaintiffs' claims against the Fee Defendants and therefore the SCAC itself forecloses any assertion that Plaintiffs lack an adequate remedy at law.

Second, Plaintiffs have failed to identify a res – a "segregated fund or property" – to which a constructive trust could attach.  *Weis Sec., Inc. v. Redington*, 605 F.2d 590, 597 (2d Cir. 1978), *cert. denied*, 439 U.S. 1128 (1978).  The Second Circuit has clearly held that the remedy of a constructive trust cannot be awarded where no res has been identified.  *See, e.g.*, *United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 416 (2d Cir. 2001); *Weis Sec., Inc.*, 605 F.2d at 597 ("It is elementary…that before a constructive trust may arise, there must be a Res – a segregated fund or property to which the trust can attach."); *Bennett Silvershein Assocs. v. Furman*, No. 91 Civ. 3118 (JGK), 1997 WL 531310, at *7 (S.D.N.Y. Aug. 28, 1997).  A plaintiff must be able to trace property that is rightfully his to the defendant.  *See In re Drexel Burnham Lambert Group, Inc.*, 142 B.R. 633, 637 (S.D.N.Y. 1992) ("'It is hornbook law that before a constructive trust may be imposed, a claimant to a wrongdoer's property must trace his own property into a product in the hands of the wrongdoer.'").

In contravention of this rule, Plaintiffs request a constructive trust on "the amount of all monies and other property in the possession of the Fairfield Defendants and Fairfield Fee Claim Defendants which relate to fees paid to them on account of fictitious profits and assets of the Funds, the amount of which is to be determined" ¶ 420 (emphasis added).  Plaintiffs' reference to a non-specific, contingent pooling of undeterminable and dispersed assets plainly does not identify a res.[19]

_____

[19]    It is highly likely that the fees, paid over a number of years to various individuals, including persons other than the "Fairfield Defendants" and the "Fairfield Fee Claim Defendants," such as persons associated with the Fairfield entities but not named as

Third, Plaintiffs have not alleged a cognizable claim that would entitle them to a constructive trust. The Second Circuit has clearly held that a constructive trust will be imposed only where it is "essential to prevent unjust enrichment." *Counihan v. Allstate Ins. Co.*, 194 F.3d 357, 362 (2d Cir. 1999); *accord United States v. Ribadeneira,* 105 F.3d 833, 837 n.5 (2d Cir. 1997). As shown above, Plaintiffs have not stated a claim for unjust enrichment against any of the Fee Defendants. *See supra* at IV.

Fourth, as with their unjust enrichment claim, Plaintiffs' constructive trust claim fails because it too is premised on the erroneous and unsubstantiated allegation that the Fee Defendants had a fiduciary relationship with Plaintiffs. *See* ¶ 418.

## VI.  PLAINTIFFS DO NOT ALLEGE MUTUAL MISTAKE

Plaintiffs claim the Fee Defendants "were paid…fees under a mutual mistake of the parties as to the amount and value of net assets under management and the amount of profits." ¶ 423. This allegation does not state a claim for mutual mistake for a number of independent reasons.

First, Plaintiffs have identified the wrong documents as the basis for their mutual mistake claim. Plaintiffs seek to recover fees based on alleged mistakes in the PPMs and COMs. ¶ 422. However, no fees were paid to any Fee Defendant pursuant to these offering memoranda. Rather, fees were paid pursuant to the Sentry and Sigma IMAs and the GS and GSP LPAs. *See*

---

defendants in the Complaint, and external contractors and service providers, have been spent. *Cf. Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213-14 (2002) (quoting Restatement of Restitution § 215 cmt. a (1936)) ("[W]here 'the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claims is only that of a general creditor,' and the plaintiff cannot enforce a constructive trust…upon other property of the [defendant].").

GS LPA (Ex. 7) at § 2.07; GSP LPA (Ex. 8) at § 2.07; Sentry IMA (Ex. 5) at ¶ 8; Sigma IMA

(Ex. 6) at ¶ 8.  Plaintiffs do not allege that there was a mutual mistake as to these Agreements.[20]

Second, even if Plaintiffs had identified the correct agreements – the IMAs and LPAs –

their mutual mistake claim still fails because neither they nor the Fee Defendants were a party to

the IMAs and no Fee Defendant was a party to the LPAs.[21]  *See* Attride-Stirling Aff. ¶¶ 25-27

(Under Bermuda law, which governs the IMAs, "there can be no mistake with respect to a

contract because there is no contract" between the parties); *In re Aegis Mortgage Corp.*, 385

B.R. 102, 109 (Bankr. D. Del. 2008) (same holding under Delaware law, which governs the

LPAs).

Third, Plaintiffs were explicitly warned of the risk that their assets could be

misappropriated prior to their investments and thus there could not have been a mutual mistake

as to that issue.[22]  As the Second Circuit has held, "'[w]here the parties know that there is doubt

in regard to a certain matter and contract on that assumption, the contract is not rendered

---

[20]  Even assuming that the PPMs and COMs are the right documents (which they are not),
Plaintiffs fail to make the fundamental allegation that any Fee Defendant was a party to
these offering memoranda.  On this basis alone, Plaintiffs' mutual mistake claim must be
dismissed.  *Weir v. Guardian Life Ins. Co. of Am.*, No. 06 Civ. 410 JTC, 2009 WL
899437, at *4 (W.D.N.Y. Mar. 30, 2009).

[21]  The IMAs were between the Offshore Funds and FGL and then FGBL.  *See* 2002 Sentry
IMA (Ex. 9); Sentry IMA (Ex. 5); Sigma IMA (Ex. 6).

[22]  For example, the August 14, 2006 Fairfield Sentry PPM warned,

> **Possibility of Misappropriation of Assets.** When the Fund
> invests utilizing the "split strike conversion" strategy or in Non-
> SSC Investment vehicle, it will not have custody of the assets so
> invested. Therefore, there is always the risk that the personnel of
> any entity with which the Fund invests could misappropriate the
> securities or funds (or both) of the Fund.

7/1/03 Sentry PPM (Ex. 12) at 23; 10/1/04 Sentry PPM (Ex. 13) at 19; 8/14/06 Sentry
PPM (Ex. 1) at 21; 12/1/08 Sigma PPM (Ex. 2) at 23.

voidable because one is disappointed in the hope that the facts accord with his wishes. The risk of the existence of the doubtful fact is then assumed as one of the elements of the bargain." *Leasco Corp. v. Taussig*, 473 F.2d 777, 782 (2d Cir. 1972) (quoting *Backus v. MacLaury*, 106 N.Y.S.2d 401, 404 (N.Y. App. Div. 1951) (quoting Restatement of Contracts § 502-f (1934)).

## VII.   PLAINTIFFS FAIL TO STATE A CLAIM FOR THIRD-PARTY BENEFICIARY BREACH OF CONTRACT

Plaintiffs assert a third-party beneficiary breach of contract claim based on (1) the IMAs and (2) "general partnership agreements" entered into by FGL and FGBL and the Funds. *See* ¶ 411. Plaintiffs, however, are not third-party beneficiaries under these agreements.

With respect to the Offshore Funds, The IMAs contain a Bermuda choice of law clause and therefore Bermuda law governs their interpretation. *See* Sentry IMA (Ex. 5) at ¶ 15; Sigma IMA (Ex. 6) at ¶ 15; *Dessert Beauty, Inc. v. Platinum Funding Corp.,* No. 06 CIV. 2279(SAS), 2006 WL 3780902, at *4 (S.D.N.Y. Dec. 26, 2006) (contract terms should be construed pursuant to the law of the state identified in a choice of law provision).[23] Bermuda law does not recognize third party rights to a contract. *See* Attride-Stirling Aff. at ¶¶ 23-24. Therefore, this Court cannot infer that the parties to the IMAs intended for Plaintiffs to be third-party beneficiaries.[24]

---

[23]   Bermuda law would apply even in the absence of a choice of law provision because Bermuda has the most significant relationship to the IMA. *See, e.g.*, *LaSala v. Bank of Cyprus Pub. Co. Ltd.*, 510 F. Supp. 2d 246, 266 (S.D.N.Y. 2007) (For contract cases, New York choice of law "evaluates the center of gravity or group of contracts, with the purpose of establishing which state has the most significant relationship to the transaction and the parties.") (internal quotations omitted). The primary purpose of the IMAs was for FGBL, a Bermuda corporation, to carry out investment management activities, which it did in Bermuda.

[24]   Plaintiffs also fail to state a third-party beneficiary claim under New York law. In New York, third-party beneficiary status is conferred only where "no one other than the third party can recover if the promisor breaches the contract" or when "the language of the contract otherwise clearly evidences an intent to permit enforcement by the third party." *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co. Inc.*, 485 66 N.Y.S.2d 38, 45 (1985) (citations omitted). Here, Plaintiffs do not, and cannot, claim that they are the

With respect to the Onshore Funds, the SCAC alleges that Plaintiffs are third-party beneficiaries of "general partnership agreements entered into by FGL and FGBL." ¶ 411. However, Plaintiffs fail to identify the particular "general partnership agreement" or cite a particular provision that was allegedly breached. Any breach of contract claim (including a claim by a third-party beneficiary) cannot be sustained where, as here, the Complaint fails to plead the particular contract provision that has been breached.[25]

Moreover, Plaintiffs who invested in GS and GSP cannot be third-party beneficiaries to any general partnership agreements because, as limited partners, they are direct parties to such agreements. *See, e.g.,* GSP LPA (Ex. 8) at 1 ("This Agreement…among the undersigned

---

only ones who can enforce the IMAs. To the contrary, the Sentry Fund, which is a party to the IMAs, itself has brought a direct breach of contract claim against the FG Defendants and others to recover fees under the IMAs. *See Fairfield Sentry Ltd. v. Fairfield Greenwich Group, et al.*, Docket No. 09 Civ. 5650 (S.D.N.Y. filed June 19, 2009); *cf. Abu Dhabi Commercial Bank v. Morgan Stanley & Co., Inc.*, No. 08 civ. 7508 (SAS), 2009 WL 2828018, at *16 (S.D.N.Y. Sept. 2, 2002) ("Plaintiffs do not qualify as intended third-party beneficiaries on the ground that no other party can recover under the contract. Indeed, the parties to the contracts at issue would have the right to enforce such a contract had it been breached."). Moreover, Plaintiffs fail to show how the contract allegedly breached by the Fairfield Defendants clearly evidences the intent to allow Plaintiffs to enforce it. *Abu Dhabi Commercial Bank,* 2009 WL 2828018, at *17; *Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, No. 08 Civ. 8842 (VM), 2009 WL 2191318, at *4 (S.D.N.Y. 2009) (denying third party beneficiary claim where there was no indication that the contract was intended to be enforced by plaintiffs); *Banco Espirito Santo de Investimento, S.A.*, 2003 WL 23018888, at *30-31 (investor in fund created by defendant bank could not bring a third-party beneficiary claim based on bank's alleged breach of an administrative agreement between fund and defendant).

[25]  *See Anderson v. Wachovia Mortgage Corp.*, 609 F. Supp. 2d 360, 366 (D. Del. 2009) (dismissing breach of contract claim where plaintiffs merely identified the contracts at issue but "fail[ed] to identify an express contract provision that was breached"); *see also Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001) (dismissing breach of contract claim because the complaint fails to "provide [defendant] notice of the contractual provision allegedly breached, or the nature of the breach"); *Wal-Mart Stores*, 872 A.2d at 630 (dismissing breach of contract claim because plaintiff failed to "cite a specific provision of the contract" and only made "scant reference to any actual contract provision" in support of its claim).

(herein called "Partners", which term shall include all persons hereafter admitted to the Partnership…)").

Finally, at a most basic level, Plaintiffs do not even allege that the individual Fee Defendants entered into any contracts with the Funds.[26]  Indeed, the Fee Defendants are not parties to any IMAs or to general partnership agreements and, therefore, they could not have breached those agreements.

## CONCLUSION

For all the foregoing reasons and the reasons set forth in the FG Defendants' motion to dismiss, the Fee Defendants' motion to dismiss should be granted in all respects.

Dated:  New York, New York
          December 22, 2009

Respectfully submitted,

SIMPSON THACHER & BARTLETT LLP

MORVILLO, ABRAMOWITZ, GRAND, IASON, ANELLO & BOHRER, P.C.

By:  _/s/ Mark G. Cunha_____
     Mark G. Cunha
     Michael J. Chepiga
     Peter E. Kazanoff
     425 Lexington Ave.
     New York, NY 10017
     (212) 455-2000

By:  _/s/ Edward. M. Spiro_____
     Edward M. Spiro
     565 Fifth Avenue
     New York, NY 10017
     (212) 856-9600

*Attorneys for David Horn and Robert Blum*

*Attorneys for Defendants Lourdes Barreneche, Yanko Della Schiava, Vianney d'Hendecourt, Jacqueline Harary, Harold Greisman, Julia Luongo, Maria Teresa Pulido Mendoza, Corina Piedrahita, Santiago Reyes, and Philip Toub*

---

[26]     Plaintiffs allege only that FGL and FGBL did so.  ¶ 411.  Plaintiffs allege no basis on which to impute an alleged breach of contract by FGL and FGBL to any Fee Defendants.

O'SHEA PARTNERS LLP


By:     /s/ Sean F. O'Shea
        Sean F. O'Shea
        521 Fifth Avenue, 25th Floor
        New York, NY 10175
        (212) 682-4426

*Attorneys for Cornelis Boele*