**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
                                                                 ::
ANWAR, *et al.,*                                                 ::
                                                                 ::
                              Plaintiffs,                        ::
                                                                 ::
              v.                                                 ::
                                                                 ::
FAIRFIELD GREENWICH LIMITED, *et al.,*                           ::   MASTER FILE NO. 09-CV-0118 (VM)
                                                                 ::
                              Defendants.                        ::
                                                                 ::
                                                                 ::
This Document Relates To:  All Actions                           ::
                                                                 ::
-----------------------------------------------------------------x


<u>**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE SECOND**</u>
<u>**CONSOLIDATED AMENDED COMPLAINT ON BEHALF OF DEFENDANTS**</u>
<u>**RICHARD LANDSBERGER, CHARLES MURPHY, AND ANDREW SMITH (THE**</u>
<u>**"OTHER FAIRFIELD DEFENDANTS")**</u>

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND ..................................................................................................... 4

ARGUMENT ............................................................................................................................. 5

 I.  PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 20(A) OF THE
   EXCHANGE ACT ......................................................................................................... 7

    A.  Plaintiffs Do Not Allege that the Other Fairfield Defendants
      Were in Control Positions ........................................................................ 7

    B.  Plaintiffs Do Not Allege that the Other Fairfield Defendants
      Were Culpable Participants in Any Alleged Fraud ................................... 8

 II.  PLAINTIFFS FAIL TO PLEAD THE ELEMENTS OF THEIR TORT CLAIMS AGAINST
   THE OTHER FAIRFIELD DEFENDANTS ................................................................... 10

    A.  Plaintiffs Fail to State a Negligent Misrepresentation Claim .................. 10

    B.  Plaintiffs Fail to State a Breach of Fiduciary Duty Claim ...................... 12

    C.  Plaintiffs Fail to State a Gross Negligence Claim ................................... 13

CONCLUSION ........................................................................................................................ 15

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ............................. 6

*AT&T v. City of New York,* 83 F.3d 549 (2d Cir. 1996) ............................................................ 14

*Baker v. Andover Assocs. Mgmt. Corp.*, Index No. 6179/09 (N.Y. Sup. Ct. Nov. 30, 2009) ........................................................................................................................... 14

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) .............................................................................................................................. 6, 13

*Bogulavsky v. Kaplan,* 159 F.3d 715 (2d Cir. 1998) .................................................................. 7

*Brass v. American Film Techs., Inc.*, 987 F.2d 142 (2d Cir. 1993) ......................................... 13

*Colnaghi, U.S.A., Ltd. v. Jewelers Protection Servs., Ltd.,* 81 N.Y.2d 821 (1993) ................... 14

*Continuing Creditors' Comm. of Star Telecomm. Inc. v. Edgecomb,* 385 F. Supp. 2d 449 (D. Del. 2004) ......................................................................................... 13

*Druck Corp. v. Macro Fund (U.S.) Ltd.,* No. 02 Civ. 6164(RO), 2007 WL 258177 (S.D.N.Y. Jan. 29, 2007), *aff'd,* 290 F. App'x 441 (2d Cir. 2008) ................................... 12

*Gurfein v. Ameritrade, Inc.*, 411 F. Supp. 2d 416 (S.D.N.Y. 2006) ............................................ 6

*Gusmao v. GMT Group, Inc.*, No. 06 Civ. 5113(GEL), 2008 WL 2980039 (S.D.N.Y. Aug. 1, 2008) ...................................................................................................... 11

*Healthcare Fin. Group, Inc. v. Bank Leumi USA*, No. 08 Civ. 11260(VM), 2009 WL 3631036 (S.D.N.Y. Oct. 26, 2009) ................................................................................ 6

*Hemming v. Alfin Fragrances, Inc.*, 690 F. Supp. 239 (S.D.N.Y. 1988) ...................................... 8

*Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8 (2d Cir. 2000) ................................. 11

*In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d at 486 ........................................................... 7, 8, 9

*In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405 (S.D.N.Y. 2007) ....................................... 9

*In re Citigroup Inc. Shareholder Derivative Litig.*, 964 A.2d 106, 139 (Del. Ch. 2009).……………………………………………………………………....................................1

*In re Emex Corp. Sec. Litig.*, 01 Civ. 4886, 2002 WL 31093612 (S.D.N.Y. Sept. 18, 2002)............................................................................................................................ 10

*In re Marsh & Mclennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452 (S.D.N.Y. 2006) ...................................................................................................... 9

*In re Refco, Inc. Sec. Litig.*, 609 F. Supp. 2d 304 (S.D.N.Y. 2009) ................................................ 7

*In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247 (S.D.N.Y. 2008) ............................ 9

*IT Litig. Trust v. D'Aniello*, No. 02-10118, 2005 WL 3050611 (D. Del. Nov. 15, 2005) .................................................................................................................. 13

*JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393 (S.D.N.Y. 2004) ............................... 11

*Kalin v. Xanboo, Inc.*, No. 04 Civ. 5941 (RJS), 2009 WL 928279 (S.D.N.Y. Mar. 30, 2009) ........................................................................................................... 8

*Landy v. Mitchell Petroleum Tech. Corp.,* 734 F. Supp. 608 (S.D.N.Y. 1990) .......................... 12

*Lerner v. Fleet Bank, N.A.,* 459 F.3d 273 (2d Cir.2006) ............................................................. 6

*Madison Capital Co., LLC v. Alasia, LLC*, 615 F. Supp. 2d 233 (S.D.N.Y. 2009) .................... 11

*Mills v. Polar Molecular Corp.,* 12 F.3d 1170 (2d Cir.1993) ....................................................... 6

*Mishkin v. Ageloff*, No. 97 Civ. 2690 (LAP), 1998 WL 651065 (S.D.N.Y. Sept. 23, 1998) .............................................................................................................. 10

*Rich v. Maidstone Fin., Inc.*, No. 98 Civ. 2569, 2001 WL 286757 (S.D.N.Y. Mar. 23, 2001) .................................................................................................................. 9

*Rubinstein v. Skyteller, Inc.*, 48 F. Supp. 2d 315 (S.D.N.Y. 1999) .............................................. 8

*Simon v. Castello*, 172 F.R.D. 103 (S.D.N.Y. 1997) .................................................................. 12

*South Cherry Street, LLC v. Hennessee Group LLC*, 573 F.3d 98 (2d Cir. 2009) ....................... 9

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank,* 250 F.3d 87 (2d Cir. 2001) .................................................................................................................. 11

## Statutes

15 U.S.C. 78u-4(b)(2) ................................................................................................................. 7

Fed. R. Civ. P. 9(b) ..................................................................................................................... 6

## PRELIMINARY STATEMENT

Defendants Richard Landsberger, Charles Murphy, and Andrew Smith (the "Other Fairfield Defendants") are individuals who were associated with companies referred to under the marketing name Fairfield Greenwich Group ("FGG"), a group of companies formerly involved in the management of funds which were invested with Bernard L. Madoff Investment Securities LLC ("BMIS"). Without pleading any supporting facts, Plaintiffs seek to hold Messrs. Landsberger, Murphy, and Smith liable for actions allegedly taken by Fairfield Greenwich companies and other individuals associated with those companies. For the reasons set forth below and in the two separate memoranda filed by the remaining Fairfield Greenwich defendants, all claims against Messrs. Landsberger, Murphy, and Smith fail as a matter of law.

Plaintiffs do not allege that the Other Fairfield Defendants engaged in any fraud. Rather, the crux of the allegations against these Defendants is that they had the ability to prevent the FG Defendants from committing fraud by virtue of their executive positions but failed to do so. The fallacy of this theory is that no one associated with Fairfield Greenwich is properly alleged to have committed fraud. Plaintiffs' case is about whether adequate due diligence was performed and whether so-called 'red flags' should have alerted these individuals to Madoff's fraud – despite the fact that for years it escaped detection by the SEC and other government regulators whose very mission it was to uncover it.

It is, of course, understandable that investors are seeking to recover their losses from all available sources. However, as the Delaware Chancery Court recently cautioned in dismissing a derivative action arising out of the current financial crisis, it is critical to avoid letting the "desire to blame someone for our losses make us lose sight of the purpose of our law." *In re Citigroup Inc. Shareholder Derivative Litig.*, 964 A.2d 106, 139 (Del. Ch. 2009). The fact that Plaintiffs

have suffered losses caused by Madoff's fraud is not enough.  In order to survive this motion to dismiss, Plaintiffs must plead facts sufficient to hold Messrs. Landsberger, Murphy, and Smith responsible for those losses.  Instead of pleading such facts, Plaintiffs have submitted this Second Consolidated Amended Complaint (the "SCAC" or the "Complaint") of over 200 pages, which is riddled with conclusory allegations and internal inconsistencies and pleads virtually no specific facts about the Other Fairfield Defendants.  The pleadings here are not a sufficient basis to seek to impose personal liability on these individuals.

In the SCAC, Plaintiffs assert claims against the Other Fairfield Defendants for violation of Section 20(a) of the Securities Exchange Act of 1934, negligent misrepresentation, gross negligence, breach of fiduciary duty, unjust enrichment and constructive trust, mutual mistake, and third-party beneficiary breach of contract.  All of these claims are asserted against other Fairfield-related defendants and therefore many of the reasons the claims should be dismissed are set forth in the concurrent submissions by the "FG Defendants" and the "Fee Defendants." Where appropriate, this brief incorporates by reference the memoranda filed by the FG Defendants and the Fee Defendants rather than repeat all the arguments here.  In sum, the claims against the Other Fairfield Defendants fail for the following reasons.

*First*, Plaintiffs lack standing to bring a shareholder action.  The claims Plaintiffs seek to assert belong to the Funds, not the shareholders of the Funds, because their injury – loss in value of their shares – is derivative of injury sustained by the Funds.  *See* FG Defendants' Brief at I.

*Second*, all but Plaintiffs' Section 20(a) claim is preempted by state and federal statutes – New York's Martin Act and the Securities Litigation Uniform Standards Act of 1998 ("SLUSA").  *See* FG Defendants' Brief at II.

*Third*, the Other Fairfield Defendants are shielded from liability under the exculpatory provisions in the investment management agreements ("IMAs") signed by the Fairfield Sentry and Fairfield Sigma Funds (the "Offshore Funds"), which were incorporated directly into the Offshore Funds' Private Placement Memoranda ("PPMs") pursuant to which Plaintiffs invested. *See* FG Defendants' Brief at III.

*Fourth*, Plaintiffs' attempt to impute liability to the Other Fairfield Defendants by asserting de facto partnership and partnership by estoppel fails.  Plaintiffs do not plead any facts suggesting the Other Fairfield Defendants were part of a "de facto partnership."  Nor have Plaintiffs adequately alleged that they relied on any purported partnership representations.  *See* FG Defendants' Brief at IV.  To the contrary, when making their investments, Plaintiffs explicitly disclaimed reliance on the documents they now rely on to assert a partnership existed.

*Fifth*, Plaintiffs' Section 20(a) claim fails because Plaintiffs do not plead a primary securities fraud violation, fail to adequately allege control, and completely disregard the culpable participation prerequisite to assert control person liability.  This argument is discussed in detail below.

*Sixth*, Plaintiffs' negligent misrepresentation, breach of fiduciary duty, and gross negligence claims fail because Plaintiffs have not pled the requisite elements of those claims.  Importantly, the SCAC fails to allege facts sufficient to hold the Other Fairfield Defendants liable for the actions undertaken and statements allegedly made by other Defendants.  This argument is discussed in detail below.

*Seventh*, Plaintiffs' contract related claims must be dismissed.  Plaintiffs do not state a claim for unjust enrichment, nor have they alleged that they are entitled to a constructive trust, which in any event is not a cause of action but rather an equitable remedy.  Plaintiffs do not

allege a claim for mutual mistake because the documents containing the alleged mistakes are not contracts subject to rescission, and the Other Fairfield Defendants are not parties to the contracts pursuant to which the fees were paid that are sought to be recovered on this claim.  Further, no mutual mistake is pled because Plaintiffs were explicitly warned of the risk that their assets could be misappropriated.  Finally, the claim for third party breach of contract fails because Plaintiffs are not third-party beneficiaries under the relevant contracts.  *See* Fee Defendants' Brief at VII.

## FACTUAL BACKGROUND

A summary of Plaintiffs' factual allegations, the parties, and the nature of Plaintiffs' investments is set forth in the Factual Background section of the FG Defendants' Brief at 4-10.

Briefly, facts more specifically relevant to the Other Fairfield Defendants' motion to dismiss are as follows.  According to the SCAC, Defendants Landsberger, Murphy and Smith allegedly served on the Executive Committee of the "Fairfield Greenwich Group."  SCAC ¶¶ 130, 133, 134.[1]  Beyond that, the descriptions of the Other Fairfield Defendants are remarkably sparse:

- Defendant Landsberger is alleged to have been responsible for business development in Europe and Asia and had marketing responsibilities.  ¶ 130.[2]

- Defendant Murphy is alleged to have been "responsible for strategy and capital markets business."  ¶ 134.

- Defendant Smith is in one place alleged to have been "FGG's Chief Risk Officer and President of FGB."  ¶ 133.  However, as the SCAC itself makes clear (*see* ¶ 127), Smith was *not* "FGG's Chief Risk Officer" and Plaintiffs have not alleged that an entity called FGB even existed.

---

[1]   FGG is named as a defendant in the SCAC but is not a legal entity and therefore cannot be served. FGG is the marketing name for the securities and investment advisory business of Fairfield Greenwich Limited and its subsidiaries and affiliates, including Fairfield Greenwich (Bermuda) Ltd. and Fairfield Greenwich Advisors.  *See* Inter-American Trust Compl. at ¶¶  6, 8; *see also* Declaration of Michael Thorne in Support of the Motions to Dismiss the Second Amended Complaint ("Thorne Declaration") at ¶ 2.

[2]   Unless otherwise noted, all references to "¶" refer to paragraphs in the SCAC.

4

Plaintiffs reference Defendants Landsberger, Murphy, and Smith only four times in the Allegations of Fact section of the SCAC (¶¶ 207, 208, 209, 228).  Plaintiffs do not allege that these three individuals had any direct communications with Plaintiffs, had any interactions with Madoff, or were responsible for monitoring the Funds' investments with Madoff.  The entirety of the factual allegations as to the Other Fairfield Defendants are as follows:

- On September 22, 2008, Defendant Landsberger sent an internal email to Defendants Vijayvergiya, Tucker, and the Executive Committee asking "[c]an we get some clarity from BLM on how he sees the markets and liquidity from his counterparties on the options?"  ¶ 208.

- On September 24, 2008, Defendant Vijayvergiya sent an internal email to Defendants Smith, Landsberger, the Executive Committee and other Defendants stating that "[w]e have a number of questions for BLM relating to the derivatives [counter-parties] - including his views on the willingness of the options [counter-parties] that have been historically used to continue trading with BLM, as Agent in this environment.  These are in addition to several other important questions we have for BLM relating to their operations and trading (Bernie has already been sent a fax of our questions). ... [M]y preference would be to approach Bernie with well thought out, reasoned questions that focus on filling the gaps in our knowledge." ¶ 209.

- On August 28, 2009, Defendant Vijayvergiya sent an internal email to Murphy, the Executive Committee, and others stating, "[u]nfortunately there are certain aspects of [Madoff's] operations that remain unclear." ¶ 228.

Without a single supporting fact, Plaintiffs also baldly allege that the "Executive Committee of FGG controlled the day-to-day operations of FGG and its corporate partners."  ¶ 176; *see also* ¶ 150.  This conclusory allegation appears to be Plaintiffs' sole basis for asserting control person claims against Landsberger, Murphy, and Smith under Section 20(a) of the Exchange Act and for asserting against them common law claims for negligent misrepresentation, gross negligence, and breach of fiduciary duty.

## ARGUMENT

To survive a motion to dismiss, "a complaint must contain sufficient factual matter… to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.

Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,*

550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement

to relief requires more than labels and conclusions, and a formulaic recitation of the elements of

a cause of action will not do." *Twombly,* 550 U.S. at 545 (internal quotations, citations, and

alterations omitted); *see also Healthcare Fin. Group, Inc. v. Bank Leumi USA*, No. 08 Civ.

11260(VM), 2009 WL 3631036, at *3 (S.D.N.Y. Oct. 26, 2009) (Marrero, J.) ("[A]llegations

that are no more than legal conclusions 'are not entitled to the assumption of truth.'") (citing

*Iqbal,* 129 S. Ct. at 1950).

   Claims sounding in fraud must also meet Rule 9(b)'s heightened pleading standard. *See*

Fed. R. Civ. P. 9(b).  To comply with Rule 9(b), a complaint "must: (1) specify the statements

that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the

statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet*

*Bank, N.A.,* 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.,* 12 F.3d

1170, 1175 (2d Cir.1993) (internal quotations omitted).  While any fraud must be pled with

particularity under Rule 9(b), that rule is applied "assiduously to securities fraud."  *Gurfein v.*

*Ameritrade, Inc.*, 411 F. Supp. 2d 416, 426 (S.D.N.Y. 2006).

   The Private Securities Litigation Reform Act of 1995, Pub. L. 104-67, 109 Stat. 737

(1995) ("PSLRA") "has expanded on Rule 9(b)'s pleading requirements."  *In re Refco, Inc. Sec.*

*Litig.*, 609 F. Supp. 2d 304, 311 (S.D.N.Y. 2009).  The PSLRA mandates the dismissal of any

securities fraud claim that does not "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. 78u-4(b)(2).

I.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 20(A) OF THE EXCHANGE ACT[3]

To state a claim for control person liability under Section 20(a), Plaintiffs must allege, with the particularity required by Rule 9(b) and the PSLRA, facts showing: (1) a primary violation; (2) control of the primary violator by the defendant; and (3) culpable participation by the defendant in the primary violation.  *See Bogulavsky v. Kaplan,* 159 F.3d 715, 720 (2d Cir. 1998).  For the reasons discussed in the FG Defendants' Brief at V, Plaintiffs have not pled a primary securities fraud violation and therefore their Section 20(a) claim against the Other Fairfield Defendants must be dismissed on this ground alone.  Moreover, as set forth below, Plaintiffs fail to plead actual control and culpable participation by the Other Fairfield Defendants.

### A.     Plaintiffs Must Allege Actual Control with Facts, Not "Presume" It

"A determination of Section 20(a) liability requires 'an individualized determination' of a defendant's control of the primary violator, as well as of the defendant's particular culpability." *See In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 486 (S.D.N.Y. 2005) (quoting *Bogulavsky*, 159 F.3d at 720).  "To be liable as a control person, the defendant 'must actually possess, in fact, rather than in theory, the ability to direct the actions of the controlled person.'"  *Id.* at 487 (quoting *Wallace v. Buttar*, 239 F. Supp. 2d 388, 396 (S.D.N.Y. 2003)).  "Moreover, the Section 20(a) defendant must not only have actual control over the primary violator, but have actual control over the *transaction* in question."  *Id.* (internal quotations and citation omitted) (emphasis in original).

---

[3]     The arguments set forth in this section also apply to the Section 20(a) claims against the FG Defendants and are incorporated by reference in the FG Defendants' Brief.

Here, Plaintiffs fail to specify how any of the three Other Fairfield Defendants actually had control over the content and dissemination of the material that Plaintiffs allege were misleading.  Instead, Plaintiffs allege that the "Fairfield Fraud Claim Defendants, and defendants Landsberger, Murphy, and Smith…are *presumed* to have had the power to control or influence the particular statements giving rise to the securities violations as alleged herein, and exercised the same."  ¶ 377 (emphasis added).  As a matter of law, however, control may not be "presumed."  *In re Alstom*, 406 F. Supp. 2d at 487.

Similarly, mere allegations that the Other Fairfield Defendants held high level positions in Fairfield Greenwich entities (¶ 376) is insufficient to plead actual control.  *See, e.g.*, *In re Alstom*, 406 F. Supp. 2d at 487 ("In conducting [a 20(a) analysis], courts have held that officer or director status alone does not constitute control for the purposes of Section 20(a) liability."); *Rubinstein v. Skyteller, Inc.*, 48 F. Supp. 2d 315, 323 (S.D.N.Y. 1999) (holding that allegation that defendant is Treasurer and/or CFO of a company insufficient to establish control); *Hemming v. Alfin Fragrances, Inc.*, 690 F. Supp. 239, 245 (S.D.N.Y. 1988) ("A person's status as an officer, director or shareholder, absent more, is not enough to trigger liability under § 20.").

### B.    Plaintiffs Do Not Allege that the Other Fairfield Defendants Were Culpable Participants in Any Alleged Fraud

"A plaintiff bears the burden of pleading culpable participation with particularity as part of his prima facie claim."  *Kalin v. Xanboo, Inc.*, No. 04 Civ. 5941 (RJS), 2009 WL 928279, at *12 (S.D.N.Y. Mar. 30, 2009) (citing *In re Alstom SA*, 406 F. Supp. 2d at 491).  Plaintiffs have not sustained their burden here.

"In order to make the requisite showing of culpable participation, a plaintiff 'must adequately allege that the defendant acted at least with recklessness, in the sense required by Section 10(b) of the Exchange Act and Rule 10b-5.'"  *Id.*, at *12 (citing *In re Take-Two*

*Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 308 (S.D.N.Y. 2008)); *see also In re Marsh &*

*Mclennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 494 (S.D.N.Y. 2006) (dismissing Section

20(a) claims against defendants with respect to whom plaintiffs failed to allege scienter element

of Section 10(b) claims); *Rich v. Maidstone Fin., Inc.*, No. 98 Civ. 2569, 2001 WL 286757, at

*11 (S.D.N.Y. Mar. 23, 2001) ("[W]here a complaint contains no detailed allegations regarding

the state of mind of the 'control person,' a Section 20(a) claim must be dismissed . . . .").

      Here, Plaintiffs do not allege any facts that evidence recklessness on the part of the Other

Fairfield Defendants.[4]  The heart of the SCAC is Plaintiffs' allegation that all "Fairfield

Defendants" misrepresented the thoroughness of their due diligence and misrepresented the

strategy and returns of the Funds because they had not performed satisfactory due diligence,

including an independent investigation of Madoff.  *See, e.g.*, ¶¶ 186, 189.  Importantly, Plaintiffs

do not allege that any of the Other Fairfield Defendants was involved in the due diligence or was

responsible for monitoring BMIS.[5]

      Further, Plaintiffs' allegations against the Other Fairfield Defendants are not pled with

any degree of specificity, let alone the specificity necessary to allege culpable participation.  A

complaint "must provide some detail about what the [defendant] is alleged to have done, and

when he did it" in order for a court to conclude that the complaint provides "'particularized facts'

of [the defendant's] culpable participation."  *Mishkin v. Ageloff*, No. 97 Civ. 2690 (LAP), 1998

---

[4]    Plaintiffs cannot plead culpable participation merely by alleging that Landsberger, Smith, and
Murphy had the ability to control the content and dissemination of the allegedly false or misleading
statements.  *See, e.g.*, *In re Alstom*, 406 F. Supp. 2d at 489-90, 493 (rejecting plaintiffs' attempt to
allege culpable participation by pleading control).

[5]    Moreover, allegations concerning inadequacies in due diligence are insufficient to plead recklessness.
*See, e.g.*, *In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 417 (S.D.N.Y. 2007) ("The failure to
conduct due diligence is not the same thing as knowing of or closing one's eyes to a known 'danger'
or participating in the fraud."), *aff'd, S. Cherry St., LLC v. Hennessee Group LLC*, 573 F.3d 98, 110
(2d Cir. 2009).

WL 651065, at *26 (S.D.N.Y. Sept. 23, 1998); *see also In re Emex Corp. Sec. Litig.*, 01 Civ.

4886, 2002 WL 31093612, at *11 (S.D.N.Y. Sept. 18, 2002) (dismissing Section 20(a) claim

where complaint "fail[ed] to provide any particularized facts as to what [the defendants] are

alleged to have done or failed to do as a participant in [the controlled person's] primary

violation").  Here, the SCAC is bereft of any factual allegations regarding individuals that could

show that the Other Fairfield Defendants culpably participated in any fraud.

## II.   PLAINTIFFS FAIL TO PLEAD THE ELEMENTS OF THEIR TORT CLAIMS AGAINST THE OTHER FAIRFIELD DEFENDANTS

Plaintiffs' tort claims must be dismissed for all the reasons discussed in the FG

Defendants' Brief, including the fact that their losses were caused by Madoff's massive fraud

and not by any misconduct on the part of the Other Fairfield Defendants; Plaintiffs do not stand

in a fiduciary or special relationship with any of the Other Fairfield Defendants as required for

their negligent misrepresentation, breach of fiduciary duty, and gross negligence claims; and

Plaintiffs do not allege a breach of any duties by the Other Fairfield Defendants.  *See* FG

Defendants' Brief at VI.

### A.   Plaintiffs Fail to State a Negligent Misrepresentation Claim

Plaintiffs have not alleged the requisite element that they stood in a special relationship

with any of the Other Fairfield Defendants or that each of these Defendants was negligent.[6]  In

determining whether a special relationship exists, New York courts consider "'whether the

person making the representation held or appeared to hold unique or special expertise; whether a

---

[6]   Under New York law, the elements for a negligent misrepresentation claim are (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.  *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000).

special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose.'" *Madison Capital Co., LLC v. Alasia, LLC*, 615 F. Supp. 2d 233, 240 (S.D.N.Y. 2009) (quoting *Suez Equity Investors, L.P. v. Toronto-Dominion Bank,* 250 F.3d 87, 103 (2d Cir. 2001)). Plaintiffs have not adequately alleged that any of the indicia of a special relationship are present here.

Plaintiffs claim a special relationship existed because the "Fairfield Defendants" allegedly had "unique or special expertise with respect to investments generally and the Madoff funds in particular." *See* ¶ 380. As discussed in the FG Defendants' Brief at V.1.C, however, this Court has held that "knowledge of the particulars of the company's business…does not constitute the type of 'specialized' knowledge that is required in order to impose a duty of care in the commercial context." *See Gusmao v. GMT Group, Inc.*, No. 06 Civ. 5113(GEL), 2008 WL 2980039, at *15 (S.D.N.Y. Aug. 1, 2008) (quoting *JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 402 (S.D.N.Y. 2004)). In any event, Plaintiffs plead no facts providing any basis for the allegation that the Other Fairfield Defendants had special expertise with respect to Madoff investments. As discussed above, the SCAC is devoid of any allegations that these Defendants were responsible for the Madoff side of Fairfield Greenwich's business.[7]

Plaintiffs also entirely disregard the "negligence" element in alleging negligent misrepresentation. Plaintiffs fail to allege, as they must, how the Other Fairfield Defendants were negligent in making the allegedly false statements attributed to them. Guilt-by-association is not a cognizable claim. *See, e.g.*, *Simon v. Castello*, 172 F.R.D. 103, 106-07 (S.D.N.Y. 1997) ("It is well established under New York law that a corporation officer or director is liable for the

---

[7]    A substantial percentage of the business of Fairfield Greenwich companies and individuals was concerned with investments with vehicles other than BMIS. *See, e.g.,* 12/1/08 Sigma PPM at 6.

torts of the corporation only when he or she knowingly participated in the wrong or, in the case

of fraud, had knowledge of the misrepresentation.") (internal citation and quotation marks

omitted); *Landy v. Mitchell Petroleum Tech. Corp.*, 734 F. Supp. 608, 621 (S.D.N.Y. 1990)

("Plaintiffs must clearly identify each defendant's role in the scheme and what their connection

was to the alleged misrepresentation.").

### B.      Plaintiffs Fail to State a Breach of Fiduciary Duty Claim

BVI and Delaware law govern Plaintiffs' breach of fiduciary duty claim because the

Funds Plaintiffs invested in are BVI and Delaware funds.  *See Druck Corp. v. Macro Fund (U.S.)*

*Ltd.*, No. 02 Civ. 6164(RO), 2007 WL 258177, at *2 (S.D.N.Y. Jan. 29, 2007), *aff'd*, 290 F.

App'x 441 (2d Cir. 2008) ("[B]reach of fiduciary duty claims are governed by the place of

incorporation.").  Under both BVI and Delaware law Plaintiffs fail to allege any basis for their

breach of fiduciary duty claim.  Plaintiffs do not cite to any contacts between them and the Other

Fairfield Defendants that could have given rise to a fiduciary duty on the part of these

Defendants.  Plaintiffs attempt to base their breach of fiduciary duty claim against the Other

Fairfield Defendants on the bald allegation that the "Fairfield Defendants" had "discretion and

control over Plaintiffs' assets in the Madoff feeder funds, the marketing of those Funds, and

communications to Plaintiffs" (*see* ¶ 133).  That is not enough.

First, the allegation does not apply to Smith, who unlike every other individual Fairfield

Defendant named in the SCAC, is not alleged to have had any "significant discretion and control

over assets in the Funds."  *See* ¶ 133.  Second, Plaintiffs provide no support for the allegation

that Defendants Landsberger and Murphy – as part of the group Plaintiffs have lumped together

as "Fairfield Defendants" – had significant discretion and control concerning investments with

BMIS.  Accordingly, the allegation cannot be credited.  *See Twombly,* 550 U.S. at 545 ("While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

Merely reciting the Other Fairfield Defendants' positions also is insufficient.  *See IT Litig. Trust v. D'Aniello*, No. 02-10118, 2005 WL 3050611, at *13 (D. Del. Nov. 15, 2005) (dismissing fiduciary duty claim where complaint stated only the officer's residence and position in the company); *Continuing Creditors' Comm. of Star Telecomm. Inc. v. Edgecomb*, 385 F. Supp. 2d 449, 466 (D. Del. 2004) (dismissing fiduciary duty claims where the complaint stated only that the officer was made CFO and assisted with the alleged sale, but all other references related to the "team" he took part in).  For example, Plaintiffs allege that Landsberger was responsible for business development and marketing.  Such activity is, at most, classic "arms-length" bargaining, which the Second Circuit has held does not give rise to a fiduciary relationship.  *See Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).  Similarly, there is nothing inherent in the alleged responsibilities carried out by Smith and Murphy that could establish, without more, a fiduciary relationship.[8]

### C.   Plaintiffs Fail to State a Gross Negligence Claim

To plead gross negligence a plaintiff must allege the defendant's conduct "evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing."  *AT&T v. City of New York,* 83 F.3d 549, 556 (2d Cir. 1996) (quoting *Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.,* 81 N.Y.2d 821, 823-24 (1993)).  Plaintiffs fail to adequately allege such conduct.

*Baker v. Andover Assocs. Mgmt. Corp.*, Index No. 6179/09 (N.Y. Sup. Ct. Nov. 30, 2009), a similar action by an investor seeking to recover losses against an investment group after

---

[8]   Even if the Other Fairfield Defendants did owe Plaintiffs a fiduciary duty (which they did not), Plaintiffs have failed to allege a breach of such duty.  *See* FG Defendants' Brief at V.1.D.

sustaining losses as a result of Madoff's fraud, is instructive.  There, the court dismissed the

gross negligence claim, holding,

> Plaintiff's gross negligence claim…merely alleges that Defendants missed
> red flags…and failed to undertake their fiduciary duties…based on their
> failure to perform or cause to be performed "appropriate due diligence that
> would have revealed the illegitimate and fraudulent activities of Madoff
> and BMIS."…  These claims fail to satisfy the pleading requirement for a
> claim of gross negligence which requires "factual allegations of conduct
> evincing a reckless disregard for the rights of others or smacking of
> intentional wrongdoing…."

*Baker v. Andover Assocs. Mgmt. Corp.*, Index No. 6179/09, slip op. at 27 (N.Y. Sup. Ct. Nov.

30, 2009) (internal citations omitted).  Here, Plaintiffs' gross negligence claim is even weaker

than the claim dismissed in *Baker* because the Other Fairfield Defendants are not even alleged to

have been responsible for the diligence on Madoff and BMIS.

**CONCLUSION**

For all the foregoing reasons and the reasons set forth in the accompanying memoranda submitted by the FG Defendants and the Fee Defendants, the Other Fairfield Defendants' motion to dismiss should be granted in all respects.

Dated:  New York, New York
          December 22, 2009

                              Respectfully submitted,


                              SIMPSON THACHER & BARTLETT LLP


                              By:    /s/ Mark G. Cunha_____
                                     Mark G. Cunha
                                     Michael J. Chepiga
                                     Peter E. Kazanoff
                                     425 Lexington Ave.
                                     New York, NY 10017
                                     (212) 455-2000

                              *Attorneys for Defendants Landsberger, Murphy,
                              and Smith*