UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

ANWAR, et al.,

                                      Plaintiffs,

              v.                                          Master File No. 09-cv-118(VM)

FAIRFIELD GREENWICH LIMITED, et al.,

                                      Defendants.

This Document Relates to : All Actions

## AFFIDAVIT OF GERARD ST.C. FARARA, Q.C.

## AFFIDAVIT OF GERARD ST.C. FARARA, Q.C.

I, **GERARD ST.C. FARARA** of Road Town, Tortola, British Virgin Islands, MAKE OATH and SAY as follows:

1.  I am a Barrister at Law and one of Her Majesty's Counsel ("Queen's Counsel") qualified to practice law in the British Virgin Islands ("BVI") and in all member jurisdictions of the Eastern Caribbean Supreme Court. I am the Senior Partner in the law firm of Farara Kerins. A copy of my curriculum vitae is attached and marked "GF1".

2.  I have practiced civil, corporate and commercial litigation in the British Virgin Islands for over 32 years and also in other member countries of the Eastern Caribbean Supreme Court. I have practiced on a regular basis as an advocate before all courts in the BVI including the High Court and the Court of Appeal and also before the Privy Council in London, England.

3.  I make this Affidavit in these proceedings and on the basis of my knowledge of and expertise in the law of the BVI.

**Documents Reviewed**

4.  I have been provided with and have reviewed for the purpose of providing this affidavit as to BVI law, a copy of the Second Consolidated Amended Complaint in *Anwar, et al. v. Fairfield Greenwich Limited, et al.*, Master File No. 09-CV-118 (VM) (the "Complaint"). I have also reviewed the Funds' Private Placement Memoranda ("PPMs") and the Investment Management Agreements ("IMAs") Fairfield Sentry Limited ("Sentry") and Fairfield Sigma Limited ("Sigma") signed, including the Sentry PPM, dated July 1, 2003; the Sentry PPM, dated October 1, 2004; the Sentry PPM, dated August 14, 2006; the Sigma PPM dated December 1, 2008; the IMA between Fairfield Greenwich (Bermuda) Ltd. and Sigma, dated October 1, 2004; the IMA between Fairfield Greenwich (Bermuda)

Ltd. and Sentry, dated October 1, 2004; and the IMA between Fairfield Greenwich Limited and Sentry, dated October 1, 2002.

**BVI Legal System and Laws**

5.    The legal system in the BVI is founded on the English system and has largely (but not entirely) as its foundation local statutes and some English statutes that have been specifically extended to the BVI or incorporated into the law and practice in BVI by virtue of the West Indies Associated States Supreme Court (Virgin Islands) Act Cap. 80, and also English common law and principles of equity. The principles of English common law and equity are extended to the BVI by statute. The Common Law (Declaration of Application) Act (Cap 13) provides: "That the Common Law of England, as far as it stands unaltered by any writ[t]en Laws of these Islands, or some of them, confirmed by Your Majesty ... is in force in each of these your Majesty's Leeward Caribee [Caribbean] Islands...". Section 21 of the West Indies Associated States Supreme Court (Virgin Islands) Act (Cap 80) provides: "In all matters in which there was formerly or is any conflict or variance between the rules of equity and the rules of common law with reference to the same matter the rules of equity shall prevail".

6.    The doctrine of judicial precedent applies in the BVI as in England. There is a comparatively small body of case law in the BVI, but where there is no applicable BVI case law, the BVI will look to other Caribbean, English and/or Commonwealth authorities.

7.    As a general rule, BVI courts follow English and/or Commonwealth authorities to the extent that they are not inconsistent with either BVI statutory provisions or binding BVI authorities, and to the extent that they do not relate to English statutory provisions which

have no equivalent in the BVI. Decisions of courts in other Commonwealth jurisdictions are similarly of persuasive but not binding authority.

8.  The BVI court system consists of a Magistrates Court, a High Court and a Court of Appeal of the Eastern Caribbean Supreme Court, with final appeal to the Privy Council in England. Decisions of the Privy Council in England are binding authority on BVI courts, particularly where a Privy Council decision comes from a BVI or Eastern Caribbean Supreme Court appeal. Decisions of the House of Lords and Court of Appeal in England are highly persuasive authority before BVI courts.

**Company Law Scheme in BVI**

9.  Since 1984, international business companies (known as "IBCs") have been incorporated under the International Business Companies Act Cap. 291 of the Laws of the BVI. Other or so-called local companies have been incorporated under the Companies Act Cap. 285. The passage of the BVI Business Companies Act of 2004 ("the BC Act") provided for one type of company to be incorporated or to exist under the laws of the BVI. The BC Act contained certain 'transitional' provisions in Schedule 2 which, *inter alia*, provided for IBCs or other companies to re-register as a company under the BC Act, during the 'transition period', that is, from 1st January 2005 to 31st December 2006. It also provided for all companies which did not avail themselves of the right to apply to be re-registered during the transition period, to be automatically deemed re-registered under the BC Act on 1st January 2007. Upon its re-registration under the BC Act, whether by application or by the deeming provision, a company continues in existence as a legal entity without affecting its identity, assets, rights, obligations or the commencement of proceedings by

or against the company. Upon its re-registration, the company is to be treated as a company incorporated under the BC Act (section 6 Schedule 2).

## The Funds

10.     Sentry is recognized as a professional fund under the BVI Mutual Funds Act of 1996 (as amended) of the British Virgin Islands. As a professional fund, Sentry is, *inter alia*, required to make its shares available only to professional investors and to ensure that the initial investment, in respect of a majority of investors, is not less than $100,000. *See* Sentry PPM, dated July 1, 2003, at iv.

11.     Sigma is recognized as a professional fund under the BVI Mutual Funds Act of 1996. As a professional fund, Sigma is, *inter alia,* required to make its shares available only to professional investors and to ensure that the initial investment, in respect of a majority of investors, is not less than $100,000. *See* Sigma PPM, dated December 1, 2008, at iii-iv.

12.     As BVI companies, the corporate affairs of Sentry and Sigma (the "Funds") are principally governed by their Memorandum of Association and Articles of Association, and by the BC Act.

## The Issues

13.     The issues that I have been asked to opine on are, based on the facts alleged in the Second Consolidated Amended Complaint ("the Complaint"):

   (a)     First, do Plaintiffs, as shareholders of BVI corporations, have standing to bring a direct action against the Fairfield Greenwich Defendants?[1]

   (b)     Second, do any of the Fairfield Greenwich Defendants owe Plaintiffs a fiduciary duty under BVI law?

---

[1] I use the term "Fairfield Greenwich Defendants" to refer to the defendants listed on pages 20-37 of the Complaint.

**A.** **Plaintiff-Shareholders Lack Standing Under BVI Law to Bring Their State Law Claims for Breach of Fiduciary Duty, Gross Negligence, Fraud, Negligent Misrepresentation, Third-Party Beneficiary Breach of Contract, Constructive Trust, Mutual Mistake, and Unjust Enrichment**

**The Rule in *Foss v. Harbottle* Bars All of Plaintiffs' State Law Claims**

14. I have read the Complaint, and I believe a BVI court would conclude that the rule in *Foss v. Harbottle* would bar all of Plaintiffs' state law claims.

15. It is a well-established rule of English common law, which forms part of BVI law, that the proper plaintiff in an action to redress a wrong done to a company is prima facie the company itself. This principle derives from the seminal English case *Foss v. Harbottle* [1843] 2 Hare 461.

16. The rule in *Foss v. Harbottle* rests upon the following propositions:

    (a) the proper plaintiff for a wrong done to the company is the company itself;

    (b) the English courts, and hence the BVI courts, are reluctant to interfere in the internal affairs of companies;

    (c) when a shareholder acquires shares in a company, he agrees to abide by the will of the majority; and

    (d) if every shareholder could sue on behalf of the company without limitation, the company and its directors would be subject to a multiplicity of suits.

17. The rule in *Foss v. Harbottle* thus precludes shareholder actions for damage derived from wrongs done to the corporation because under BVI law, the proper plaintiff in an action to redress a wrong done to a company is prima facie the company itself.

18. Pursuant to the rule in *Foss v. Harbottle*, the right to maintain an action is available only to a minority shareholder in restrictive circumstances. In *Foss v. Harbottle*, a company had been formed for the purpose of buying land for residential development. Two shareholders brought an action on behalf of themselves and all other shareholders (except the defendants) against the directors and other promoters of the company. The plaintiffs

alleged that the defendants had engaged in a fraudulent scheme whereby several of them purchased land and resold it to the company at exorbitant prices. The defendants argued that the company was not before the Court and that the defect could not be cured by making the company a party because the plaintiffs were not entitled to represent the company.

19. The Court in *Foss v. Harbottle* assumed that the company was entitled to complain of the transaction at issue. The Court nevertheless dismissed the plaintiff's claim because only the company, not the individual shareholders, were entitled to sue for the alleged harm to the corporation. Wigram VC stated as follows:

> "*The Victoria Park Company is an incorporated body, and the conduct with which the Defendants are charged in this suit is an injury not to the Plaintiffs exclusively; it is an injury to the whole corporation by individuals whom the corporation entrusted with the powers to be exercised only for the good of the corporation...*
>
> *It was not, nor could it successfully be, argued that it was a matter of course for any individual members of a corporation thus to assume themselves the right of suing in the name of the corporation. In law the corporation and the aggregate members of the corporation are not the same thing for purposes like this; and the only question can be whether the facts alleged in this case justify a departure from the rule which, prima facie, would require that the corporation should sue in its own name and in its corporate character...*" 2 Hare at 490-91.

The Vice Chancellor then reasoned that the corporation was competent to determine whether or not to initiate an action on its own behalf:

> "*[W]hilst the supreme governing body, the proprietors at a special general meeting assembled, retained the power of exercising the functions conferred upon them by the Act of Incorporation, it cannot be competent to individual corporators to sue in the manner proposed by the Plaintiffs on the present record... The corporation, in a sense, is undoubtedly the cestui que trust; but the majority of the proprietors at a special general meeting assembled, independently of any general rules of law upon the subject, by the very terms of the incorporation in the present case, has power to bind the whole body, and every individual corporator must be taken to have come into the corporation upon the terms of being liable to be so bound. How then can this Court act in a suit*

> *constituted as this, if it is to be assumed, for the purposes of the argument, that the powers of the body of the proprietors are still in existence, and may lawfully be exercised for a purpose like that I have suggested? Whilst the Court may be declaring the acts complained to be void at the suit of the present Plaints, who in fact may be the only proprietors who disapprove of them, the governing body of proprietors may defeat the decree by lawfully resolving the confirmation of the very acts which are the subject of the suit. The very fact that the governing body of proprietors assembled at the special general meeting may so bind even a reluctant minority is decisive to show that the frame of suit cannot be sustained whilst that body retains its functions..." Id. at 493-94.*

20. Finding that there was no impediment to convening a meeting of shareholders to determine whether or not the corporation should pursue the damage claims against the allegedly self-dealing directors, Wigram VC held that the minority action should not proceed. *Id.* at 497-99.

21. Similarly, in *MacDougall v. Gardner*,[2] a minority shareholder brought an action complaining of the directors' refusal to take a poll on a resolution to adjourn a general meeting. The Vice Chancellor gave judgment in favour of the shareholder, but the Court of Appeal reversed this decision. James LJ stated that it is "*of the utmost importance that...Foss v. Harbottle should always be adhered to.*" 1 Ch. D. at 21. James LJ added that decisions regarding whether to commence litigation on behalf of the corporation lies solely with the corporation, not its shareholders:

> *"Because there may be a great many wrongs committed in a company-there may be claims against directors, there may be claims against officers, there may be claims against debtors; there may be a variety of things which a company may well be entitled to complain of but which, as a matter of good sense, they do not think it right to make the subject of litigation; and it is the company, as a company, which has to determine whether it will make anything that is wrong to the company a subject-matter of litigation, or whether it will take steps itself to prevent the wrong from being done. If the majority of the company really are in favour of any particular shareholder who has been interfered with improperly, by misconduct of a director.... there is never any difficulty whatever, in filing a bill in*

---

[2]     (1875) 1 Ch. D. 13 (English Court of Appeal decision).

> the name of the company, if the majority of the company desire it to be filed..." *Id.* at 22.

22. Though *Foss v. Harbottle* was decided in 1843, the rule in *Foss v. Harbottle* has been reaffirmed many times by the BVI, English and other commonwealth courts and remains a prevailing common law rule to this day.

23. BVI courts continue to rely on the long-standing rule in *Foss v. Harbottle*. The judgment of Bannister J. of the Commercial Court in BVI in Claim no. BVIHCV 2009/0020A *Citco Global Custody NV v. Y2K Finance Inc* delivered 18 September 2009 is a recent application of the rule in *Foss v. Harbottle*. In that case, Bannister J. noted that a shareholder had no right to bring an action to wind up the affairs of a hedge fund based on a claim that its directors had breached fiduciary duties. Otherwise, "[i]f it were right that such a set of facts gave a minority shareholder the right to have the company wound up, it would, in my judgment, make serious inroads into the *Foss v. Harbottle* principle of majority rule."

24. Consistent with the rule in *Foss v. Harbottle*, Plaintiffs' state law causes of action, including breach of fiduciary duty, unjust enrichment, fraud, negligent misrepresentation, constructive trust, third-party beneficiary breach of contract, mutual mistake, and gross negligence, are barred. Under BVI law, only the corporation has standing to vindicate these alleged wrongs, and such claims cannot be brought by shareholders individually. Breach of fiduciary duty claims and other claims of mismanagement belong to the corporation. Likewise, a shareholder cannot bring a direct suit to recover funds due to a corporation pursuant to a contract to which only the corporation is a party under any theory alleged in the Complaint.

**The Claims Do Not Fall Within the Exceptions to the Rule of *Foss v. Harbottle***

25.    Over the years, the English cases have recognised four very limited classes of exceptions

to the rule in *Foss v. Harbottle*.  These exceptions are:

(a)    actions to restrain *ultra vires* or illegal acts;

(b)    denial of an individual membership right;

(c)    where the transaction at issue requires a special resolution (*i.e.*, a super majority
vote); and

(d)    "fraud on the minority" – as noted in *Edwards v. Halliwell*, where what has been
done amounts to a fraud and the wrongdoers are themselves in control of the
company, the rule in *Foss v. Harbottle* is relaxed in favour of the aggrieved
minority shareholder who is allowed to bring a derivative action.

26.    For the reasons set out below, I believe a BVI court would not find that any of Plaintiffs'

state law claims fall within any exception to the rule in *Foss v. Harbottle*.

27.    The first exception involves actions restraining the company from entering into illegal or

*ultra vires* transactions.

28.    As a matter of BVI law, a BVI court would be most unlikely to view the allegations in

the Complaint to fall under the first exception.  I do not consider that the Complaint is

alleging that the acts were illegal or *ultra vires* in the sense required under this exception.

29.    At common law, a company only has the capacity to carry out acts that fall within the

objects clause of its memorandum or which were reasonably incidental or ancillary to it.[3]

In the event that the acts fall within the objects of the company as a matter of

construction, even if they were in excess of the authority of those who carried it out, they

cannot be *ultra vires* as a matter of BVI law.

---

[3]    *Rolled Steel Products Holdings Ltd v. British Steel Corporation* [1986] CH 246.

30. Knox J noted in *Smith v. Croft (No.2)*,[4] specifically referring to the decision of Slade LJ in *Rolled Steel Products*:

> "I take as the fundamental rule that in considering the scope of what is properly called ultra vires, by which I mean beyond the capacity of the company as opposed to that of its officers, the following passage in the judgment of Slade LJ in Rolled Steel Products (Holdings Ltd) v British Steel Corp [1985] 3 All ER at 85:
>
> > "...if a particular act such as each of the transactions of 22 January 1969 in the present case) is of a category which, on the true construction of the company's memorandum, is capable of being performed as reasonably incidental to the attainment or pursuit of its objects, it will not be rendered ultra vires the company merely because in a particular instance its directors, in performing the act, are in truth doing so for purposes other than those set out in the memorandum."

31. With respect to "illegality," the Complaint does not plead any breach or offences under the laws of the BVI including the BC Act or any or other BVI legislation.

32. In addition, any act capable of ratification by a majority of members cannot be *ultra vires* the company.[5] It is not pleaded in the Complaint that any of the actions taken by the Fairfield Greenwich Defendants were ones that could not have been carried out by a majority of members in any event.

33. The second exception to the rule in *Foss v. Harbottle* concerns situations where the shareholder sues not on behalf of the company but in his own name to prevent a violation of his individual membership rights, such as a wrongful deprivation of his right to vote. *Pender v. Lushington*.[6] As a matter of BVI law, a BVI court would be most unlikely to

---

[4]  Ch D [1987] at 937.

[5]  *See Prudential Assurance co Ltd. v. Newman, ibid.*

[6]  6 Ch D70 (1877).

view the allegations in the Complaint to fall under the second exception given that Plaintiffs have not made any allegations of this kind.

34. The third exception to *Foss v. Harbottle*, states that the rule will not apply where a supermajority vote is required by the company's constitution to ratify that particular transaction and a shareholder sues to challenge a decision which has disregarded such a requirement. The Plaintiffs in the Complaint do not allege that a super majority vote was required under the Funds' Articles of Association to approve the transactions referred to therein. Accordingly, this exception is also inapplicable.

35. Finally, the fourth exception to the rule in *Foss v. Harbottle* involves situations where the plaintiff can demonstrate a prima facie case of "fraud on the minority". To come within this exception, a plaintiff must show both: (a) fraud or other breach of duty to the company which "not only harms the company but benefits the directors"; and (b) that the alleged wrongdoers "control" a majority of the company's shares such that a minority shareholder "has no other remedy" but to sue derivatively, see *Daniels v. Daniels*.[7]

36. Plaintiffs do not adequately plead that the alleged wrongdoers "control" a majority of the Funds' shares and therefore cannot come within the fourth exception in *Foss v. Harbottle*.

37. In the cases in which a minority shareholder has been permitted to proceed with an action based on the "fraud on the minority" exception to *Foss v. Harbottle*, the English courts have repeatedly stressed the need for a factual situation whereby the alleged wrongdoers' ownership of a majority of the shares of the corporation makes it impossible for the

---

[7] [1978] Ch 406 (1977).

shareholders as a group to authorise the corporation's commencement of litigation against the wrongdoers.

38. In *Daniels v. Daniels*, the minority shareholders alleged that the company, on the instructions of the two defendant directors (husband and wife) who owned 60 per cent of its shares, sold the company's land to the wife at far less than its fair value. Four years later the wife sold the property for 28 times what she had paid for it. After a thorough review of the precedents, Templeman J ruled that the case fell within the "fraud on the minority" exception to *Foss v. Harbottle* because the majority shareholders conferred a substantial benefit upon themselves at great expense of the company.

39. Where plaintiffs have been unable to show that the defendant directors or those who are in control of the company owned a majority of the shares, the Courts have found the "fraud on the minority" exception to be unavailable. For example, in *Pavlides v. Jensen*,[8] a minority shareholder brought suit against the directors for gross negligence in effecting the sale of a mine to a third party at a great undervalue. Following *Foss v. Harbottle*, the action was dismissed as there was no benefit to the directors and whilst not necessary in deciding the issue, the court was not satisfied that, "...*the Defendant directors [were] in such control of the company as [was] necessary to justify an action by a minority shareholder.*"

40. The Complaint here does not plead that the Fairfield Greenwich Defendants had a controlling interest in the Funds or own a majority of the outstanding shares in either of the Funds. As a result, the "fraud on the minority" exception cannot apply.

---

[8]     [1956] 1 Ch. 565.

### The Rule of Reflective Loss Also Bars Plaintiffs' Claims

41. A BVI Court would likely hold that the Plaintiffs have no standing upon which to bring a shareholder action pursuant to the rule of reflective loss because Plaintiffs have not pled the existence of any loss beyond diminution in the value of their shares.

42. The rule in *Foss v. Harbottle* is closely linked to the rule of reflective loss. Broadly, this rule limits a shareholder's ability to bring an action against a company for a diminution of the value of the shares caused by a wrong carried out against the company because the diminution in value of the shares is merely reflective of the company's losses.

43. The concept was initially considered by the Court of Appeal in the *Prudential Assurance Co. Ltd.*, 1 All E.R. at 366-67:

> *"But what [a shareholder] cannot do is to recover damages merely because the company in which he is interested has suffered damage. He cannot recover a sum equal to the diminution in the market value of his shares, or equal to the likely diminution in dividend, for such a "loss" is merely a reflection of the loss suffered by the company. The shareholder does not suffer any personal loss. His only "loss" is through the company, in the diminution in the value of the net assets of the company, in which he has (say) a 3% shareholding. The plaintiffs' shares are merely a right of participation in the company on the terms of the articles of association. The shares themselves, his right of participation, are not directly affected by the wrong doing. The plaintiff still holds all the shares as his own absolutely unencumbered property. The deceit practiced on the plaintiff does not affect the shares; it merely enables the defendant to rob the company. . . . A personal action would subvert the rule in Foss v. Harbottle and that rule is not merely a tiresome procedural obstacle placed in the path of a shareholder by a legalistic judiciary. The rule is the consequence of the fact that a corporation is a separate legal entity. . . . When the shareholder acquires a share he accepts the fact that the value of his investment follows the fortunes of the company and that he can only exercise his influence over the fortunes of the company by the exercise of his voting rights in general meeting."*

44. In *Johnson v Gore Wood and Co,*[9] the House of Lords clarified this concept. The plaintiff, Johnson, was the managing director and controlling shareholder of a property

---

[9]    [2002] 2 AC 1.

company. The property company sued the defendants (a firm of solicitors) for professional negligence and the claim subsequently settled. Johnson then brought a claim himself for personal losses incurred as a result of, *inter alia*, a drop in the value of his shareholding and other personal losses. The House of Lords ruled that Johnson could only recover the losses that were not recoverable by the property company. The House of Lords established three (3) criteria:

(a) A shareholder cannot claim a loss which could be made good if the company itself sued, even where the company chooses not to take such action or fails to do so;

(b) Where a company has no cause of action to recover a loss, then the shareholder may bring an action for a diminution in the value of shares; and

(c) A shareholder may sue if the loss is distinct from that of the company.

Lord Millet observed:

> *"In such a case the shareholder's loss, insofar as this is measured by the diminution in the value of the shareholding or the loss of dividends, merely reflects the loss suffered by the company in respect of which the company has a cause of action. If the shareholder is allowed to recover in the respect of such loss, then either there will be double recovery at the expense of the defendant or the shareholder will recover at the expense of the company and its creditors and shareholders. Neither course can be permitted. This is a matter of principle; there is no discretion involved."*

45. Under BVI law, Plaintiffs' alleged loss is not separate or distinct from any loss allegedly caused to the company.

46. For a recent application of the rule of reflective loss, I refer also to the decision of the Court of Appeal of the Eastern Caribbean Supreme Court in Civil Appeal HCVAP 2008/022 Citco Global Custody NV v. Y2K Finance Inc delivered 19th October 2009, in particular, paragraphs 35 to 42 of the judgment. There, the Court of Appeal affirmed the well settled rule that a "shareholder may not bring proceedings to recover loss which is merely reflective of loss suffered by his company."

**Section 184C of the BC Act Also Precludes Plaintiffs' State Law Causes of Action**

47.     Section 184C of the BC Act as amended by the BVI Business Companies (Amendment)

Act 2005 codifies the procedure for shareholders to seek leave to file a derivative action.

Section 184C states:

> (1)    Subject to subsection (2), the Court may, on the application of a member of
> a company, grant leave to that member to
>
>> (a)    bring proceedings in the name and on behalf of that company; or
>>
>> (b)    intervene in proceedings to which the company is a party for the
>> purpose of continuing, defending or discontinuing the proceedings
>> on behalf of the company.
>
> (2)    Without limiting subsection (1), in determining whether to grant leave under
> that subsection, the Court must take the following matters into account
>
>> (a)    whether the member is acting in good faith;
>>
>> (b)    whether the derivative action is in the interests of the company
>> taking into account the views of the company's directors on
>> commercial matters;
>>
>> (c)    whether the proceedings are likely to succeed;
>>
>> (d)    the costs of the proceedings in relation to the relief likely to be
>> obtained; and
>>
>> (e)    whether an alternative remedy to the derivative claim is available.
>
> (3)    Leave to bring or intervene in proceedings may be granted under subsection
> (1) only if the Court is satisfied that
>
>> (a)    the company does not intend to bring, diligently continue or
>> defend, or discontinue the proceedings, as the case may be; or
>>
>> (b)    it is in the interests of the company that the conduct of the
>> proceedings should not be left to the directors or to the
>> determination of the shareholders or members as a whole.
>
> (4)    Unless the Court otherwise orders, not less than 28 days notice of an
> application for leave under subsection (1) must be served on the company
> and the company is entitled to appear and be heard at the hearing of the
> application.

(5) The Court may grant such interim relief as it considers appropriate pending the determination of an application under subsection (1).

(6) Except as provided in this section, a member is not entitled to bring or intervene in any proceedings in the name of or on behalf of a company.

48. Section 184C of the BC Act requires shareholders seeking to pursue derivative actions to obtain leave of a BVI court, which Plaintiffs have not done.

49. Only a BVI court can grant leave under section 184C, and a foreign court cannot do so.

50. Moreover, a BVI court would be unlikely to grant leave for a derivative suit by the shareholders of Sentry or Sigma.

51. Under the BC Act, a derivative claim may be allowed only if the court is convinced that the factors set out in section 184C (2) and (3) are satisfied.

52. Section 184C (2)(b) requires the court to consider "whether the derivative action is in the interests of the company taking account of the views of the company's directors on commercial matters"; and Section184C (2)(e) requires the court to consider "whether an alternative remedy to the derivative claim is available".

53. Under the BC Act, Section 184C (3)(a) and (b) allows a BVI Court to grant leave only if the court is satisfied that (a) the company does not intend to bring, diligently continue or defend, or discontinue proceedings, as the case may be; or (b) it is in the interests of the company that the conduct of the proceedings should not be left to the directors or to the determination of the shareholders or members as a whole."

54. Unless the court orders otherwise, the shareholder/member must give notice of the application for leave to the company and the company is entitled to appear and be heard at the hearing of the application. (Section 184C (4)).

55. Here, Plaintiffs do not satisfy Sections 184C (2)(b) and (e), Sections 184C (3)(a) and (b), or Section 184C (4) of the BC Act.

56. I am informed that since Bernard Madoff's fraud was revealed on December 11, 2008, Sentry commenced actions through various avenues to maximize Sentry's assets and to recover its losses. For example, on March 4, 2009, Sentry filed a customer claim in the Securities Investor Protection Act liquidation proceeding of BLMIS. On May 29, 2009, Sentry filed a lawsuit in New York state court seeking the return of management and performance fees paid.

57. On July 21, 2009, the Eastern Caribbean Supreme Court in the High Court of Justice, British Virgin Islands granted an order providing for the winding up of the Sentry subject to the supervision of the High Court and appointed Christopher Stride and Kenneth Krys of Krys & Associates Ltd. as the Liquidators of Sentry.

58. According to the Complaint, Sigma was wholly invested in Sentry. On July 21, 2009, the High Court in BVI granted an order providing for the winding up of Sigma subject to the supervision of the High Court and appointed Christopher Stride and Kenneth Krys of Krys & Associates Ltd. as the Liquidators of Sigma.

59. A BVI court is not likely to therefore grant leave for a derivative suit by shareholders of Sentry or Sigma because it could not be shown that "the company does not intend to bring, diligently continue or defend, or discontinue proceedings, as the case may be."

**B.  Under BVI Law, the Fairfield Greenwich Defendants Do Not Owe Any Fiduciary Duties to Individual Shareholders in Sentry or Sigma**

60. I also conclude that Plaintiffs' claims for breach of fiduciary duty against the Fairfield Greenwich Defendants would fail under BVI law because Plaintiffs were not owed any fiduciary duties. It is well settled under BVI law that the directors and/or officers of a company do not owe fiduciary duties to individual shareholders. Likewise, directors

and/or officers of an entity acting as an investment manager do not owe fiduciary duties to the shareholders of the funds the investment manager serves.

61. BVI law follows English law with regard to the incidence and nature of fiduciary duties. In *Arklow Investments Ltd* v. *Maclean*,[10] the Privy Council approved the following dictum of Millet L.J. in *Bristol and West Building Society v. Mothew*[11] regarding the nature of fiduciary duties:

> *"A fiduciary is someone who has undertaken to act for or on behalf of another in a particular matter in circumstances which give rise to a relationship of trust and confidence. The distinguishing obligation of a fiduciary is the obligation of loyalty. The principal is entitled to the single-minded loyalty of his fiduciary. This core liability has several facets. A fiduciary must act in good faith; he must not make a profit out of his trust; he must not place himself in a position where his duty and his interest may conflict; he may not act for his own benefit or the benefit of a third person without the informed consent of his principal. This is not intended to be an exhaustive list, but it is sufficient to indicate the nature of fiduciary obligations. They are the defining characteristics of the fiduciary. As Dr. Finn pointed out in his classic work Fiduciary Obligations (1977), p. 2, he is not subject to fiduciary obligations because he is a fiduciary; it is because he is subject to them that he is a fiduciary...*
>
> *The nature of the obligation determines the nature of the breach. The various obligations of a fiduciary merely reflect different aspects of his core duties of loyalty and fidelity. Breach of fiduciary obligation, therefore, connotes disloyalty or infidelity. Mere incompetence is not enough. A servant who loyally does his incompetent best for his master is not unfaithful and is not guilty of a breach of fiduciary duty."*

62. The Privy Council is the highest court in the BVI court system, and its decisions are binding on the lower courts of the BVI. *Arklow Investments Ltd v. Maclean* thus represents an authoritative statement of BVI law with respect to the circumstances in which a BVI Court will impose fiduciary obligations upon a person.

---

[10] [2000] 1 W.L.R. 594, 599G.

[11] [1998] Ch. 1, 18.

63. As explained in *Arklow Investments Ltd v. Maclean*, one does not become a fiduciary under BVI law merely because one is trusted by the other party to a business transaction, or by superior knowledge, or by having the right or ability to control some action or asset.[12]

64. Under BVI law, one only becomes a fiduciary by voluntarily undertaking a duty to put another's interests before one's own. A fiduciary obligation arises when an individual has undertaken a role involving a relationship of trust and confidence. Only such a relation of trust and confidence gives rise to fiduciary duties of the kind described above.

65. The Complaint contains no allegations establishing that any Fairfield Greenwich Defendant provided any specific undertaking to act as a fiduciary to any individual shareholder under BVI law. Any obligations undertaken were contractual in nature and are set out in the IMAs, to which the Plaintiff-shareholders are not privies.

66. The IMAs may have created a fiduciary duty between the Funds and their investment managers (FGL and FGBL). In the English Court of Appeal case of *Diamantides v. JP Morgan Chase Bank and Others* [2005] EWCA Civ. 1612, it was said:

    *"It would be unusual for an investment manager acquiring and managing a portfolio of investments under a formal management agreement not to owe duties ... of a fiduciary nature to the other party to the agreement."*(Emphasis added)

67. However, a company is a legal personality in its own right, distinct from its shareholders. *See Salomon v. Salomon (A.) & Co. Ltd.* [1897] A.C. 22. As a separate corporate entity, a company owns the assets of the company, including any rights of action accrued in its favour; those assets do not belong to the shareholders.

---

[12] [2000] 1 W.L.R. 594, 599G.

68. Accordingly, whatever fiduciary duties FGBL or FGL owed to Sentry or Sigma, those duties would be owed to the relevant Fund, as a corporate entity. Those duties would not, in the absence of separate fiduciary relationships, be owed to the individual shareholders of those Funds.

69. Plaintiffs' claim against FRS, the Funds' risk advisor, fails for the same reason. Although FRS may have owed fiduciary duties to the Funds themselves, FRS did not owe any fiduciary duty to shareholders of the Funds.

70. It is well established under BVI law that the directors and/or officers of a company owe a fiduciary duty only to the company of which they are directors and/or officers; they do not owe any fiduciary duty to individual shareholders of the company.[13]

71. Moreover, directors and/or officers most certainly do not owe any fiduciary duty to individual shareholders of a third party company which contracts with their company.

72. There is no "transitive property" of fiduciary duties. Fiduciary duties are owed only to those for whom the fiduciary has agreed to act as a fiduciary, and not to others. Fiduciary duties do not "flow" through the corporate structure.

73. Thus, under BVI law it cannot be said that individual defendants Andres Piedrahita and Amit Vijayvergiya stood in a fiduciary relationship with shareholders of the Funds by virtue of their positions as directors or officers of FGBL.

74. Similarly, a BVI court would not find that defendants FGA or FHC, as affiliates or agents of FGL and/or FGBL, stood in a fiduciary relationship with shareholders of the Funds.

---

[13] See *Percival v Wright* [1902] 2 Ch. 421.

75.  Finally, in my opinion the Complaint fails to allege that any Fairfield Greenwich

individual Defendant undertook a relationship of trust giving rise to fiduciary duties to

shareholders of the Funds.


SWORN TO by the said )
GERARD ST.C. FARARA, QC )
at Road Town, Tortola )
British Virgin Islands )
on the 29th day of December, 2009 )
Before me: )
.............................................. )
A COMMISSIONER TO ADMINISTER
OATHS IN THE BRITISH VIRGIN ISLANDS

**GERARD ST.C. FARARA**